## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **City of Dallas,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 23cv2367** |
| | § | |
| **Triple D Gear, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff City of Dallas files its Complaint against Defendant Triple D Gear, LLC. Plaintiff would respectfully show the Court as follows:

### NATURE OF THE ACTION

1.     This is a civil action for review of a decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("TTAB") pursuant to 15 U.S.C. § 1071(b)(2) and for cancellation of fraudulently obtained registrations pursuant to 15 U.S.C. §§ 1119 and 1120.

2.     The City of Dallas seeks review of the TTAB's decision dated August 23, 2023, in the matter of *City of Dallas. v. Triple D Gear, LLC*, Cancellation No. 92077406. A true and correct copy of this decision is attached hereto as Exhibit 1.

3.     The City of Dallas seeks cancellation of U.S. Trademark Registration Nos. 4,586,688 and 6,330,048 in order to rectify the register with respect to the registrations of Defendant.

4.     The City of Dallas also seeks cancellation of U.S. Trademark Registration Nos. 4,586,688 and 6,330,048 on the basis that they were obtained by false or fraudulent declarations or representations and that the City of Dallas has been injured by such registrations.

## THE PARTIES

5.     Plaintiff City of Dallas (the "City") is a municipal corporation with an address of 1500 Marilla Street, Dallas, Texas 75202.

6.     Defendant Triple D Gear, LLC ("Defendant") is a Texas limited liability company with an address at 503 N. Interurban St., Richardson, TX 75081. Defendant may be served with process by serving its registered agent Alfredo Sanchez at 503 N. Interurban St., Richardson, TX 75081.

## JURISDICTION AND VENUE

7.     This court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a) as it arises under an Act of Congress relating to trademarks.

8.     This Court has personal jurisdiction over Defendant because it is a Texas limited liability company operating in this District.

9.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

## FACTS COMMON TO ALL COUNTS

### The City and its Mark

10.     Dallas, Texas is not just one of the largest cities in the United States but one of the most famous cities in the world. Among other things, Dallas is associated with the NBA

Championship winning Dallas Mavericks, the Stanley Cup winning Dallas Stars, the second busiest airport in the world, and the "Who shot J.R.?" phenomenon[1].

11.    In 1972, the City adopted the following logo as a trademark and service mark for the services rendered by the City and marketing and informational materials (including promotional merchandise such as t-shirts, bags, and other goods) distributed therewith:



("City Logo").

12.    For fifty-one years now, the City Logo "graces just about everything that emanates from City Hall."[2] Most residents of Dallas likely see the City Logo several times per day, and almost every Dallas visitor encounters it as well. There are literally millions and millions of commercial impressions of the City Logo each year, and those impressions have compounded for more than five decades.

13.    Due in part to the use of three concentric "Ds" in the City Logo, Defendant's predecessor in interest alleged – and obtained a Texas state district court judgment finding – that, "'Triple D' is a well recognized nickname for the City of Dallas, Texas."[3]

14.    The City Logo identifies the City of Dallas. A Texas state district court has held that the Triple D nickname also identifies the City of Dallas. *Id.*

---

[1] Available at https://www.latimes.com/archives/la-xpm-1990-11-23-ca-5345-story.html
[2] Available at https://www.dallasobserver.com/news/bust-out-the-d-shaped-cake-dallas-logo-turns-40-this-year-7106959
[3] *Youssef v. Jackson*, No. DC 13-01632 in the 101st Judicial District of Dallas County, Texas (May 22, 2013). For the Court's convenience, a true and correct copy of this judgment is attached as Exhibit 2.

**The Triple D Gear Logos:** ***"Basically, we just took the City of Dallas Logo."***

15.     In or around 2007, Ahmed Youssef[4] ("Youssef") and Arturo Sanchez ("Sanchez") purportedly began doing business as co-owners of Triple D Gear.

16.     Upon establishing their partnership, Youssef and Sanchez allegedly began using a mark that, it is plain to see, was directly copied from the City's Logo:



("Ghost Logo").

17.     The one and only difference between the Ghost Logo and the City's Logo is the absence of the stylized oak leaf that is part of the City's Logo. Both logos contain the same interruption near the top of the vertical lines of the concentric "Ds," creating the same proportion of solid space to white space. Both logos have a subtle angle between the top and bottom edges of the "Ds" and the rounded right side, rather than a smooth elliptical shape.

18.     At some point in or after 2007 – Defendant's assertions varied in the proceedings below as to when – Triple D Gear began using a different facsimile of the City's Logo:



---

[4] Youssef was the original owner of U.S. Registration No. 4,586,688 and later assigned it to Defendant. Youssef was the Manager named in Defendant's Certificate of Formation and reportedly left the business sometime between 2017 and 2019. Sanchez remains the sole owner of Defendant and is its CEO.

("Tilted Star Logo").

19.     As is readily apparent, the only differences between the City Logo and the Tilted Star Logo are that the stylized oak leaf in the City Logo was replaced by a tilted star and the open ends of the "Ds" are rounded in the Tilted Star Logo. Otherwise, both use (1) three concentric "Ds" with a space between the top and left side of the "Ds" and (2) the same curved and straight lining for the "Ds".

20.     The similarity between the logos alone sufficiently shows intent to copy. But in this case, Sanchez (the current sole owner of Defendant) admitted it on live television.

21.     Specifically, on or about December 17, 2018, during a television appearance on Good Morning Texas on local Dallas channel WFAA, Sanchez said of the Tilted Star Logo: "Basically, we just took the City of Dallas Logo and we just put a star in it and tilted it."[5]



(screen capture from Sanchez's appearance on Good Morning Texas)

---

[5] Available at https://www.wfaa.com/video/entertainment/television/programs/good-morning-texas/show-off-your-love-for-dallas-with-triple-d-gear/287-8380002.

**ORIGINAL COMPLAINT—PAGE 5**

22.     Notably, this admission was made in response to the interviewer's unprompted observation of the similarity between the Tilted Star Logo and the City's Logo: "Now, the logo is the D, the Dallas D. Now, it looks very familiar. It looks like the City D..."[6]

23.     Given that the Ghost Logo lacks even the two minor distinctions from the City's Logo that the Tilted Star Logo has, there can be no doubt that Defendant "just took the City of Dallas Logo" for the Ghost Logo as well—but in this case did not even bother to "just put a star [or anything else] in it."

24.     In fact, and as shown further below, Defendant and its current and former representatives have repeatedly stated and argued in administrative and state court filings that "Triple D" is a reference to the City of Dallas, Texas.

25.     For example, in a declaration filed with the TTAB, Sanchez stated Triple D referred to "dirty dirty **Dallas**."[7]

26.     Previously, Youssef filed a motion for summary judgment in a Texas state court case and submitted an affidavit in which he testified that:

> *We call the mark the Triple D Logo, as "Triple D" is the well known nickname for the City of Dallas. There is no dispute that the term "Triple D" means Dallas. All you have to say is "Triple D" and practically anybody in our targeted purchasing public knows and understands that you are talking about Dallas, Texas.[8]*

27.     Importantly, Sanchez asserted in deposition testimony given under the penalty of perjury that, when he "designed" the Ghost Logo and the Tilted Star Logo, he did not consider any other arrangements for the three Ds (such as stacking the three Ds horizontally or vertically, or in

---

[6] Available at https://www.wfaa.com/video/entertainment/television/programs/good-morning-texas/show-off-your-love-for-dallas-with-triple-d-gear/287-8380002.
[7] A true and correct copy of this declaration is attached as Exhibit 3.
[8] A true and correct copy of this affidavit is attached as Exhibit 4.

an interlocking pattern similar to the Olympic rings). Rather, from the beginning, Defendant wanted to use the City's Logo and took it.

28.     The use of the City's Logo and the City's judicially recognized nickname was not the only way Defendant sought to associate itself with the City. In addition, Defendant placed the following statement on its website: "In 2011 Triple D Gear LLC was granted the full legal trademark for the brand mark by the city of Dallas and the United States Supreme Court."



(screenshot of Defendant's website as it appeared on January 15, 2021)

29.     Neither claim is true. The Supreme Court has no involvement in granting trademark registrations other than review of appeals concerning registration. But Defendant's statement that the City of Dallas granted Defendant trademark rights would be viewed by the average consumer as a claim that the City either licensed use of the City's Logo or otherwise consented to Defendant's use of the Tilted Star Logo. The City did neither.

**ORIGINAL COMPLAINT—PAGE 7**

**The Challenged Registrations**

*Registration No. 4,586,688 for the Tilted Star Logo*

30.     On February 8, 2012, Ahmed Youssef, DBA Triple D Gear, filed U.S. Trademark Application No. 85/537,432 ("the '432 Application") with the United States Patent and Trademark Office ("USPTO") to register the Tilted Star Logo on and in connection with "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms" in International Class 25.

31.     Youssef directed his attorney of record to declare under penalty of perjury that he, as the sole individual applicant, was "the owner of the trademark/service mark sought to be registered." Counsel's declaration is imputed to Defendant. Sanchez has subsequently testified under oath that he and Youssef were joint proprietors of Triple D Gear from its inception and, further, that it was Sanchez who "designed" the Tilted Star Logo. If Sanchez's testimony is to be believed, *Youssef's declaration was false*—Youssef and Sanchez were joint owners of the Tilted Star Logo as of February 8, 2012.

32.     A trademark application must name and set forth the citizenship of each joint applicant. 37 C.F.R. § 2.32(a)(2). The '432 Application failed to identify Sanchez as a joint applicant with Youssef. Accordingly, the '432 Application was void *ab initio*. 37 C.F.R. § 2.71(d).

33.     Youssef also directed his attorney of record to declare under penalty of perjury that "to the best of [his] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." *This was untrue.* Youssef was well aware that the Tilted Star Logo had been copied from the City's Logo and that Defendant's use of the

Tilted Star Logo was likely to deceive consumers that the City of Dallas endorsed, approved, or sanctioned Defendant's use.

34.     Youssef further directed his attorney of record to declare under penalty of perjury that he had used the Tilted Star Logo in interstate commerce on or in connection with the claimed goods since at least as early as January 1, 2007. *This was also untrue.* Defendant has subsequently admitted that the Tilted Star Logo has never been used on or in connection with footwear or athletic uniforms by Defendant or its predecessors, and Sanchez's sworn deposition testimony in the proceedings below cast doubt on whether the Tilted Star Logo had even been created as of January 1, 2007.

35.     Although Youssef was represented by counsel when these false declarations were made and had doubtless been appropriately advised by his counsel of the substance of the trademark declaration and the seriousness with which such declarations must be made, Youssef nonetheless directed his counsel to make a declaration replete with knowingly false statements.

36.     On May 21, 2012, the '432 Application was refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), because of a likelihood of confusion with the mark in U.S. Registration No. 4,048,819, shown below:



37.     In order to overcome the refusal, on September 9, 2012, Youssef filed Cancellation No. 92055839 against the owner of the cited registration, Freddie Jackson dba Triple D Clothing

Co., alleging, *inter alia*, that "Petitioner [Ahmed Youssef] and his associate Arturo Sanchez designed and used their mark in 2007."

38.     Youssef also filed an Original Petition for Declaratory Judgment on February 11, 2013 in the 101st Judicial District Court of Dallas County, Texas seeking, *inter alia*, a declaration that Freddie Jackson had no rights in the registered logo or in the word mark "Triple D." *Youssef again falsely alleged that he was the sole owner of the Tilted Star Logo.*

39.     The Texas district court granted summary judgment, finding that, as between the parties, "Plaintiff Ahmed Youssef is awarded all common law rights of ownership of Plaintiff's *Leaning Star Triple D mark*, and a judicial determination of prior use of his Leaning Star Triple D mark as it relates to any dispute between Plaintiff Ahmed Youssef's *Leaning Star Triple D* mark and Defendant Freddie Jackson's *Stylized D* mark" (emphasis in original).[9]

40.     Following notification to the Trademark Trial & Appeal Board of the Texas state court's ruling, the Commissioner of Trademarks cancelled Freddie Jackson's registration.

41.     U.S. Trademark Registration No. 4,586,688 ("the '688 Registration") for the Tilted Star Logo was issued to Ahmed Youssef, DBA Triple D Gear, on August 19, 2014 for "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms."

42.     A Certificate of Formation for Triple D Gear, LLC was filed with the Texas Secretary of State on February 8, 2012, the same day the '432 Application was filed. On September 17, 2014, Youssef assigned "one hundred percent (100%) interest in Assignor's share of trademark in the registered Word Mark 'D' to Defendant." The assignment was recorded with the Assignment Branch of the USPTO on November 17, 2014.

---

[9] Exhibit 2.

43.     On February 19, 2021, Defendant filed a Combined Declaration of Use and Incontestability under Sections 8 & 15, alleging that "the mark is in use in commerce on or in connection with **all** of the goods…listed in the existing registration for this specific class: Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms" (emphasis in original). Defendant verified this assertion in a declaration under penalty of perjury personally signed by Sanchez. *Once again, Defendant's declaration was false*—Defendant had never used the mark on or in connection with footwear or athletic uniforms.

44.     Here again, Defendant had the benefit of counsel to impress upon its authorized signatory the seriousness of the declaration and the importance of precision. Yet Sanchez still made a false declaration to the Trademark Office.

45.     The mark shown in the '688 Registration was selected for the specific purpose of invoking in the mind of consumers the well-known City Logo and, as such, is confusingly similar to the City's Logo and creates a false affiliation between Defendant and the City of Dallas.

46.     The '688 Registration is void *ab initio* for failure to correctly identify the joint applicants, and this is an incurable error. 37 C.F.R. § 2.71(d).

47.     Even if the error could be cured, the '688 Registration was obtained by fraud. Ahmed Youssef repeatedly represented himself – to the USPTO Trademark Examination Branch, to the Trademark Trial & Appeal Board, and to the Texas district court – as the sole owner of the mark and that no other person had the right to use a confusingly similar mark.

48.     In addition, both Youssef and Sanchez made false declarations that the Tilted Star Logo was used on or in connection with footwear and athletic uniforms when they never had been. It was not until the City filed its Petition for Cancellation against Registration No. 6,141,994 for

the Ghost Logo and sought discovery verifying the goods upon which Defendant's marks were used did Defendant attempt to amend the '688 Registration under Section 7 of the Trademark Act.

49.     Defendant also falsely declared that it was aware of no other person that had the right to use a confusingly similar mark, knowing that the Tilted Star Logo was a colorable imitation of the City's Logo and that the widespread recognition of the City's Logo all but ensured that consumers would believe that the City sanctioned Defendant's trademark use. Indeed, Defendant and its representatives have publicly made affirmative statements to all but ensure that such confusion occurred – that Triple D refers to Dallas, that Defendant "took the City of Dallas Logo and we just put a star in it and tilted it," and that Defendant was "granted the full legal trademark for the brand mark by the city of Dallas."

50.     The City of Dallas has been harmed by Defendant's and its predecessor's fraud in obtaining Registration No. 4,586,688 for the Tilted Star Logo, as it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with the City of Dallas, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by the City of Dallas.

*Registration No. 6,141,994 for the Ghost Logo*

51.     On March 27, 2020, Defendant filed U.S. Trademark Application No. 88/850,773 ("the '773 Application") with the United States Patent and Trademark Office to register the Ghost Logo on and in connection with "Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing" in International Class 25.

52.     Defendant declared in its application that it had used the Ghost Logo in interstate commerce in connection with all of the claimed goods since at least as early as 2007. But Defendant has since made numerous conflicting statements about when it first used the Ghost Logo, claiming during its corporate representative deposition in the proceeding below that it sold products bearing the Ghost Logo prior to January 1, 2007, and later stating in a declaration that the Ghost Logo wasn't even designed until late 2007. *Both statements were given under oath, but at least one of those statements must be untrue.*

53.     Defendant's declaration that the Ghost Logo "was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application" when filing Application No. 88/850,773 was also made under oath. *That, too, was untrue.* Defendant has subsequently admitted in its corporate representative deposition that the Ghost Logo has never been used on or in connection with pants, footwear, jackets, jerseys, sweaters, tank tops, swimwear, underwear, shorts, socks, jeans, leggings, robes, ties, coats, polo shirts, suits, footwear, or bottoms as clothing.

54.     Defendant also declared under penalty of perjury that "to the best of [its] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." *This was untrue.* Defendant was well aware that the Ghost Logo was an imitation of the City's Logo and that Defendant's use of the Ghost Logo was likely to deceive consumers that the City of Dallas endorsed, approved, or sanctioned Defendant's use.

55.     U.S. Trademark Registration No. 6,141,994 ("the '994 Registration") for the Ghost Logo was issued on September 1, 2020 for "Shirts; Hats; Headwear; Beanies; Pants; Footwear;

Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing."

56.     The mark shown in the '994 Registration was selected for the specific purpose of invoking in the mind of consumers the well-known City Logo and, as such, is confusingly similar to the City's Logo and creates a false affiliation between Defendant and the City of Dallas.

57.     In addition, the registration was obtained by fraud. Defendant made a false declaration that the Ghost Logo was used on or in connection with pants, footwear, jackets, jerseys, sweaters, tank tops, swimwear, underwear, shorts, socks, jeans, leggings, robes, ties, coats, polo shirts, suits, footwear, or bottoms as clothing when they never had been. It was not until the City filed its Petition for Cancellation and sought discovery verifying the goods upon which Defendant's marks were used did Defendant attempt to amend the '994 Registration under Section 7 of the Trademark Act.

58.     Moreover, Defendant falsely declared that the Ghost Logo was used on the claimed goods at least as early as January 1, 2007 when, in fact, Defendant has subsequently admitted that the Ghost Logo was not even designed until late 2007.

59.     Defendant also falsely declared that it was aware of no other person that had the right to use a confusingly similar mark, knowing that the Ghost Logo was copied directly from, and visually nearly identical to, the City's Logo and that the widespread recognition of the City's Logo all but ensured that consumers would believe that the City sanctioned Defendant's trademark use.

60.     The City of Dallas has been harmed by Defendant's fraud in obtaining Registration No. 6,141,994 for the Ghost Logo, as it is likely to cause confusion, or to cause mistake, or to

deceive as to the affiliation, connection, or association of Defendant with the City of Dallas, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by the City of Dallas.

*Registration No. 6,330,048 for the Tilted Star Logo*

61.     On February 19, 2020, Defendant filed U.S. Trademark Application No. 88/802,417 ("the '417 Application") with the United States Patent and Trademark Office to register the Tilted Star Logo on and in connection with "Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing" in International Class 25 and "Retail store services featuring eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; online retail store services in the field of eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; Retail apparel stores; Online retail store services featuring apparel" in International Class 35.

62.     Defendant declared under penalty of perjury that "to the best of [its] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." *This was untrue.* Defendant was well aware that the Tilted Star Logo had

been copied from the City's Logo and that Defendant's use of the Tilted Star Logo was likely to deceive consumers that the City of Dallas endorsed, approved, or sanctioned Defendant's use.

63.     Defendant also declared under penalty of perjury that it had used the Tilted Star Logo in interstate commerce on or in connection with all of the claimed goods in International Class 25 since at least as early as 2008. *This was also untrue.* Defendant has subsequently admitted that the Tilted Star Logo has never been used on or in connection with pants, footwear, jackets, jerseys, sweaters, tank tops, swimwear, underwear, shorts, socks, jeans, leggings, robes, ties, coats, polo shirts, suits, footwear, or bottoms as clothing.

64.     In addition, Defendant declared under penalty of perjury that it had a *bona fide* intention to use the Tilted Star Logo in interstate commerce on or in connection with all of the claimed services in International Class 35.

65.     On February 11, 2021, Defendant filed a Trademark/Service Mark Statement of Use pursuant to 15 U.S.C. § 1051(d). In it, Defendant declared under penalty of perjury that: "The mark is in use in commerce on or in connection with all of the goods/services, or to indicate membership in the collective organization listed in the application or Notice of Allowance or as subsequently modified for this specific class." *This was untrue.* Defendant has since admitted that the Tilted Star Logo has never been used on or in connection with retail store services featuring eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; online retail store services in the field of eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, and footwear; or retail apparel stores.

66.     U.S. Trademark Registration No. 6,330,048 ("the '048 Registration") for the Tilted Star Logo was issued on April 20, 2021 for "Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing" in International Class 25 and "Retail store services featuring eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; online retail store services in the field of eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; Retail apparel stores; Online retail store services featuring apparel" in International Class 35.

67.     The mark shown in the '048 Registration was selected for the specific purpose of invoking in the mind of consumers the well-known City Logo and, as such, is confusingly similar to the City's Logo and creates a false affiliation between Defendant and the City of Dallas.

68.     The registration was also obtained by fraud. Defendant made a false declaration that the Tilted Star Logo was used on or in connection with pants, footwear, jackets, jerseys, sweaters, tank tops, swimwear, underwear, shorts, socks, jeans, leggings, robes, ties, coats, polo shirts, suits, footwear, or bottoms as clothing and retail store services featuring eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; online retail store services in the field of eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather,

cushions, cups, mugs, and footwear; and retail apparel stores when they never had been. It was not until the City filed its Petition for Cancellation and sought discovery verifying the goods upon which Defendant's marks were used did Defendant attempt to amend the '048 Registration under Section 7 of the Trademark Act.

69.    Defendant also falsely declared that it was aware of no other person that had the right to use a confusingly similar mark, knowing that the Tilted Star Logo was copied directly from the City's Logo and that the widespread recognition of the City's Logo all but ensured that consumers would believe that the City sanctioned Defendant's trademark use.

70.    The City of Dallas has been harmed by Defendant's fraud in obtaining Registration No. 6,330,048 for the Tilted Star Logo, as it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with the City of Dallas, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by the City of Dallas.

### TTAB Proceedings

71.    On May 7, 2021, shortly after learning about the '994 Registration for the Ghost Logo, the City sent a cease-and-desist letter to Defendant. After attempting to resolve the issue without success, the City filed a TTAB Petition to Cancel the '994 Registration for the Ghost Logo on June 17, 2021.

72.    The City continued to attempt to resolve the dispute on business terms, even agreeing to suspend the cancellation proceeding for thirty days to allow for additional opportunity to negotiate a resolution. After several more weeks of unsuccessful discussions, Defendant filed its Answer on August 26, 2021.

73.     After discovery and briefing, the TTAB panel denied the City's Petition to Cancel on August 23, 2023. The panel correctly noted that, to succeed on its petition, the City had to show two things: (1) priority—that is, the City used its mark first; and (2) a likelihood of confusion.

74.     The panel solely addressed priority and held that, although the City used the City's Logo before Defendant used the Ghost Logo, the City still did not establish priority because the City did not use the City Logo "in connection with t-shirts *for others*." Exhibit 1 at 25 (emphasis added). It was undisputed that the City used the City Logo for shirts for City employees. *Id.* at 3.

75.     In requiring that the City sell "t-shirts for others" to meet its burden, the TTAB ignored hornbook trademark law that holds that parties do not need to offer identical or even competing goods and services for there to be a likelihood of confusion. TMEP § 1207.01(a) ("the goods or services do not have to be identical or even competitive to find a likelihood of confusion. The issue is not whether the goods and/or services will be confused with each other, but rather whether consumers would be confused as to their source."); *Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods. It is this sense of relatedness that matters in the likelihood of confusion analysis.").

76.     For example, many restaurants sell t-shirts or license others to do so using the restaurants' marks.[10] Under the panel's reasoning, a third party could use the logo of any restaurant that *does not* offer licensed clothing on any item of apparel it wishes, and that restaurant could do nothing about it because the restaurant itself did not offer "t-shirts for others." That is clearly contrary to the Lanham Act as written and as intended. Rather, it is the fact that a consumer would

---

[10] *See, e.g.*, https://smilemakersonline.com/ (McDonald's branded clothing); https://www.bonfire.com/store/pizzaswag/ (Cane Rosso branded clothing).

view the third party's t-shirts bearing the restaurant's mark as coming from the restaurant (directly or via license) or being endorsed by the restaurant that is the key issue.

77.     Of course, looking to the analogous restaurant industry is unnecessary because many cities and states sell t-shirts or license others to do so using the governmental entities' marks. For example, the New York State Department of Economic Development is a governmental agency of the State of New York[11]; it owns the famous I [heart] NY trademark:



(U.S. Registration No. 1,555,836). The New York State Department of Economic Development licenses the use of the trademarked logo.[12]

78.     Similarly, the City of New York (a New York municipal corporation) has registered the trademarks FDNY® (U.S. Registration Nos. 2,606,740 and 3,026,049), NYPD® (U.S. Registration No. 3,014,363), NEW YORK CITY TAXI AND LIMOUSINE COMMISSION (& design) (U.S. Reg. No. 3,577,976), and others for use in connection with, *inter alia*, clothing and fashion accessories. These marks are licensed to third parties by the City of New York[13] and enforced against infringers.[14]

---

[11] Available at https://esd.ny.gov/
[12] Available at https://www.iloveny.com/licensee-info/
[13] Available at https://business.nycgo.com/about-us/engage-with-nyc/licensing/
[14] *See, e.g., Rubin v. City of New York,* No. 06 Civ. 6524 (HB), 2007 BL 237235, 2007 ILRC 1527, 2007 US Dist Lexis 23003, 2007 WL 950088 (S.D.N.Y. Mar. 29, 2007) (City of New York brought claims for trademark infringement, false designation of origin, trademark dilution, and common law unfair competition against operator of website who sold products bearing the NYPD trademark); *City of New York v. Lopez*, No. 21-CV-7862 (JPO), 2022 BL 335969 (S.D.N.Y. Sept. 22, 2022) (City of New York brought claims for trademark infringement, trademark counterfeiting, false designation of origin, trademark dilution, and unfair competition against operator of cannabis clothing store selling infringing products).

79.     Consumers who encounter the I [HEART] NY mark, the NYPD mark, and the NEW YORK CITY TAXI AND LIMOUSINE COMMISSION mark correctly believe that the items emanate from the governmental entities that own the marks or from their licensees. In other words, they assume the use is approved.

80.     Closer to home, the Texas Department of Transportation ("TxDOT") owns U.S. Trademark Registration No. 3,872,108 for DON'T MESS WITH TEXAS® and licenses that mark to third parties for products that meet TxDOT's criteria, including that the proposed product is consistent with the anti-littering purpose of the Don't Mess with Texas campaign.[15]

81.     Indeed, the City of Dallas itself has long approved uses of the City's Logo on apparel for promotions and events sponsored by or put on in cooperation with the City of Dallas, such as the annual Dallas YMCA Turkey Trot, the Dallas Marathon, and the like. It has never granted such approval to Defendant.

82.     Those same consumers who encounter the Tilted Star Logo and/or the Ghost Logo will incorrectly believe that that the items emanate from the City or its licensees—especially since Defendant formerly advertised that it had approval from the City. In other words, while consumers assume the use is approved, it is not. That is the very essence of trademark infringement.

**CLAIM FOR RELIEF**

**Request for Judicial Review of the TTAB Decision**
**(15 U.S.C. § 1071(b)(1) and 37 CFR § 2.145(c))**

83.     The City incorporates the allegations of paragraphs 1-82 as if fully set forth at this point.

---

[15] Available at https://www.dontmesswithtexas.org/about/usage/

84.    The City appeals the decision of the TTAB and its erroneous conclusion that the City failed to establish priority in its D (stylized) mark pursuant to 15 U.S.C. § 1071(b)(1) and 37 CFR § 2.145(c).

85.    The Court should reverse and vacate the TTAB decision and enter its own Order directing the United States Patent and Trademark Office to reverse its decision and cancel U.S. Registration No. 6,141,994 for D (stylized).

**Request for Cancellation of Trademark Registrations to Rectify the Register**
**(15 U.S.C. § 1119)**

86.    The City incorporates the allegations of paragraphs 1-85 as if fully set forth at this point.

87.    The Tilted Star Logo shown in U.S. Registration Nos. 4,586,688 and 6,330,048 is not only confusingly similar to the City's Logo; it was deliberately selected for the purpose of trading upon the notoriety of the City's Logo and falsely suggesting a connection with the City of Dallas, Texas.

88.    Defendant should never have been granted U.S. Registration Nos. 4,586,688 and 6,330,048, as they reward a deliberate attempt by Defendant to falsely suggest an affiliation between Defendant and the City of Dallas and/or to cause confusion, or to cause mistake, or to deceive and, further, to conceal these motives from the United States Patent and Trademark Office by repeatedly making false declarations under oath.

89.    The Court should direct the United States Patent and Trademark Office to rectify the register by cancelling U.S. Registration No. 4,586,688 and U.S. Registration No. 6,330,048 pursuant to 15 U.S.C. § 1119.

**Request for Cancellation of Fraudulently Obtained Trademark Registrations**
**(15 U.S.C. § 1120)**

90.     The City incorporates the allegations of paragraphs 1-89 as if fully set forth at this point.

91.     The City is harmed by Defendant's and its predecessor's fraudulently obtained U.S. Registration Nos. 4,586,688 and 6,330,048 because they have been cited as barring references to the City's registration of its own logo in connection with stationery goods, apparel, and other promotional materials of the type normally distributed by municipalities.

92.     The City is harmed by Defendant's and its predecessor's fraudulently obtained U.S. Registration Nos. 4,586,688 and 6,330,048 because the registrations legitimize and protect Defendant's colorable imitations of the City's Logo.

93.     The Court should direct the United States Patent and Trademark Office to cancel U.S. Registration No. 4,586,688 and U.S. Registration No. 6,330,048 pursuant to 15 U.S.C. § 1120.

## PRAYER

WHEREFORE, the City prays for judgment:

a.  That this Court reverse the August 23, 2023 decision in Cancellation No. 92077406 pursuant to 15 U.S.C. § 1071(b);

b.  That this Court order the United States Patent and Trademark Office to grant the City's Petition for Cancellation and cancel Registration No. 6,141,994 for D (stylized);

c.  That this Court order the United States Patent and Trademark Office to cancel Registration No. 4,586,688 for D (stylized);

d.  That this Court order the United States Patent and Trademark Office to cancel Registration No. 6,330,048 for D (stylized);

e.  That the Court award the City its reasonable attorneys' fees, expenses, and costs in this action; and

f.  That this Court grant the City such other relief to which the City is entitled.

**NOTICE OF NEW EVIDENCE AND REQUEST FOR DE NOVO REVIEW**

The City intends to (a) introduce evidence in this case, beyond that which was considered by the United States Patent and Trademark Office and (b) develop and pursue such new evidence to the full extent permitted by the Federal Rules of Civil Procedure, Federal Rules of Evidence, the Local Rules of this Court, and any Order of the Court. The City thus requests that this Court undertake *de novo* review for any factual disputes in this case.

DATED: October 25, 2023                    Respectfully submitted,

/s/ Megan M. O'Laughlin
Megan M. O'Laughlin (TX24013263)
E-Mail: molaughlin@hitchcockevert.com
Anne M. Turner (TX24085626)
E-Mail: aturner@hitchcockevert.com
HITCHCOCK EVERT LLP
750 North St. Paul Street, Suite 1110
Dallas, TX 75201
Telephone: (214) 953-1111
Facsimile: (214) 953-1121

COUNSEL FOR PLAINTIFF
CITY OF DALLAS