UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION

| | | |
|---|---|---|
| **CITY OF DALLAS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 3:23-cv-02367-K |
| | § | |
| **TRIPLE D GEAR, LLC,** | § | |
| *Defendant.* | § | |

### DEFENDANT TRIPLE D GEAR, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE ITS FIRST AMENDED COMPLAINT

Defendant Triple D Gear, LLC, herein responds to Plaintiff City of Dallas's *Motion for Leave to File its First Amended Complaint* ("Motion") and respectfully requests that this Court deny said Motion.

### I.   LEGAL STANDARD

1. As all parties are aware, the standard to file a motion for leave is Fed. R. Civ. P. 15, which states, "[T]he court should freely give leave when justice so requires." Generally, there is a bias toward granting leave to amend *unless* a district court finds a "substantial reason" to deny such request, such as undue delay, bad faith, undue prejudice, or futility of the amendment. *Jones v. Robinson Prop. Grp., L.P.,* 427 F.3d 987, 994 (5th Cir. 2005).

2. The Fifth Circuit has recognized that judicial economy and the prejudicial impact of denial are factors in determining whether to grant leave to amend. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (also finding that mere

passage of time does not constitute "undue delay" and amendments changing the theory of the case on the eve of trial were allowed.).

## II.   FACTS AND ARGUMENT

3. The differences between the Original Complaint (Doc. 1) and proposed First Amended Complaint (Doc. 37-1) include:

   a) add allegations that Triple D Gear has provided false disclosures, and;

   b) add an additional request to cancel the registration of Triple D Gear's mark for the Ghost Logo, R/N 6,141,994.

**A) The false disclosure allegations are irrelevant to this case, because cancelation centers on the applications for the challenged marks.**

4. The City of Dallas claims that this cancelation attempt of the Ghost Logo should be allowed because it learned that a notebook was incorrectly given an earlier date than warranted. But this notebook has nothing to do with the applications.

5. As the applications for three marks show, the latest specimen used include:

   a) For R/N 4586688, and R/N 6,330,048, the Tilted Star registrations, the specimen are viewable on the online USPTO portal at: https://tsdr.uspto.gov/documentviewer?caseId=sn85537432&docId=SPE20120211073000&linkId=31#docIndex=30&page=1, and https://tsdr.uspto.gov/documentviewer?caseId=sn88802417&docId=SPE20230120072129&linkId=6#docIndex=5&page=1, respectively.[1]

---

[1] Defendant asks the Court to take judicial notice of the application specimen, exempted from hearsay.

b) For R/N 6,141,994, Ghost Logo, viewable on the online USPTO portal at:

https://tsdr.uspto.gov/documentviewer?caseId=sn88850773&docId=SPE20200331080813&linkId=11#docIndex=10&page=1:

R/N 4586688:



R/N 6,330,048



R/N 6,141,994



6.      As shown above and in the remainder of the filings of the three applications, not once did Triple D Gear, LLC depend on any invoice book as a specimen. Without a false statement in an application, the cancelation effort fails. The City's efforts to impugn Triple Gear's applications based on later-discussed invoice books is irrelevant, brings no new claims, and is just more mud on the wall in hopes that something sticks.

<u>A detailed consideration of the City's allegations do not help the City.</u>

7.      Dallas correctly states that Triple D claims it began using the Ghost Logo as early as 2007. Dallas also correctly states that Triple D produced receipts that were not the originals for sales in 2008. Where Dallas veers from the truth is when it begins speculating on what happened to the original receipts and what Triple D's motive was for producing a copy of the originals, and whether this issue matters.

8.      Triple D began using the Ghost Logo on its products in 2008. Given that that is now sixteen years ago, it is natural that some documents have been lost. Triple D did not act nefariously to fabricate evidence of its use; it merely produced the documents that it had in response to its ongoing duty to supplement its discovery responses. In this situation, Triple D lost its original tax records for the 2010-2012 era. As a result, it was necessary to re-create those records. The produced receipts are the result of that effort. Triple D did not maliciously fabricate evidence to create an early use date; this is Dallas's speculation.

9. Dallas goes on to make multiple additional statements concerning perceived discrepancies. While these contentions are at home in Dallas's allegations, its characterization of Triple D's motivation as deceptive and its speculation about what it believes to have "actually" happened are not facts. They are nothing more than assumptions that Triple D denies and for which Triple D demands strict proof.

10. As already stated, the applications for the Ghost Logo do not include or refer to the receipts that Dallas wants to include in this suit.

11. Relevant to this case, Plaintiff filed its Original Complaint in October of 2023. In comparison, the application for the Ghost Logo was filed on March 27, 2020, and granted on September 1, 2020. Three years before the Original Complaint was filed.

12. As Plaintiff recounts, the parties have been aware of each other at least since the City of Dallas attacked the registrations of Triple D Gear's in the preceeding TTAB cancelation proceedings, which began in December 9, 2022.

13. If the City of Dallas wanted to challenge the Ghost Logo, it could have done so in its Original Complaint, and even now the City gives no good reason why it did not seek cancelation then. Its late-breaking reasoning about discovery in this case does not explain how even a falsified invoice is somehow news that impacts the case.

14. As the City even alleges, the cancelation of the Ghost Logo is relevant to an entire different case, in which these matters may be more relevant…and where the City's allegations belong.

### III. ADDITIONAL ARGUMENT

15. The City of Dallas asks this Court to allow it to file an amended complaint, which it says will not add additional claims or parties. Rather, Dallas wishes to add additional facts to its complaint. That is all. Since this is the full extent of Dallas's amendments, this Court should deny the request to amend the complaint because it will be futile, expensive, pointless, and wasteful of this Court's resources. The receipt allegations have no bearing on the cancelation effort by Dallas.

**Permitting the City's Amendment would not impact this suit.**

16. Dallas's amendment serves no purpose other than to create pointless work for this Court and for Triple D. Fed. R. Civ. P. 15 exists to promote an efficient adversarial judicial system where both sides seek to vigorously prosecute their position. Vigorous prosecution is only possible where the parties are fully aware of the theory of recovery and defenses to that theory. *See, e.g., Cotton Bros. Baking Co., Inc. v. Indus. Risk Insurers*, 690 F. Supp. 1541, 1548 (W.D. La. 1988) (discussing that the spirit of Rule 15 preserves judicial economy by preventing formalistic new trials for lack of amendment).

17. The most significant reason why the Federal Rules provide for the liberal granting of amendments is to avoid situations where evidence is excluded at trial because it does not match the scope of the theory of recovery or defense. Even in those situations, Fed. R. Civ. P. 15(b) provides two ways for the proponent to request

the Court allow an amendment during trial. This is again to prevent formalistic new trials based on the exclusion of evidence. *Jefferies & Co. Inc. v. Arkus-Duntov*, 357 F. Supp. 1206 (S.D. N.Y. 1973).[2]

18.    Among the readily available cases on the necessity of amendment, one key point remains the same: an amendment is necessary when it prevents trial by ambush on a theory of recovery or defense. Dallas's amendment does not accomplish this goal and thus should not be permitted.

19.    In contrast with the plethora of factors that render an amendment necessary, Dallas proposes to add only additional facts. It will not add new claims. It will not add new defenses. It will not add new parties. Instead, Dallas wants to add new factual allegations that do not materially change the claims it has pled.

20.    In its current pleadings, Dallas is claiming that TTAB made an erroneous decision and that Triple D's registration should be canceled. But the burden attempting to challenge an application has nothing to do with later issues; a After the additional facts, Dallas's claims and theory will be the same. If Triple D were to make an objection at trial that Dallas was presenting evidence beyond the scope of its pleadings, this Court would no doubt overrule Triple D's objections without so

---

[2] In this case, the court allowed an amendment of the pleadings under Rule 15(b) to conform the pleadings to the theory that was tried at trial because the opposing party had sufficient notice of the theory that he would not be subject to a trial by ambush and to preserve judicial economy.

much as a second thought because the additional facts do not change the theory of recovery in any material way. Therefore, Dallas's amendment is pointless.

21. On top of making no difference to the theory of recovery, Dallas's amendment creates additional unnecessary work and expense for this Court and for Triple D. If this Court permits Dallas to file an amendment, the amended complaint will either supersede the previous complaint or—as seems more likely—be treated as a supplemental petition adding facts to the current allegations. In either case, Triple D will have to spend time and resources to file a new answer to the same cause of action and the same theory of recovery. Then, this Court will have to review the new complaint and answer, expending more of this Court's limited time and resources to no party's benefit. Therefore, Triple D asks this Court to deny Dallas's motion to amend its complaint on the basis of judicial economy.

## IV.  PRAYER

Because the amended complaint proposed by Dallas would add only irrelevant allegations with no bearing on this cancelation suit and an ancillary registration properly involving a different suit, Defendant Triple D prays this Court deny the Plaintiff City of Dallas's Motion to File First Amended Complaint.

Respectfully submitted,

*/s/Warren V. Norred*
Warren V. Norred, TBN 24045094, warren@norredlaw.com
515 E. Border Street; Arlington, Texas 76010
P: 817-704-3984, F: 817-524-6686

## CERTIFICATE OF SERVICE

      I certify that on September 6, 2024, I electronically filed the preceding with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

  Megan M. O'Laughlin (TX24013263)
  E-Mail: molaughlin@hitchcockevert.com
  Anne M. Turner (TX24085626)
  E-Mail: aturner@hitchcockevert.com
  HITCHCOCK EVERT LLP
  750 N. Saint Paul Street, Suite 1110
  Dallas, TX 75201
  Telephone: (214) 953-1111
  Facsimile: (214) 953-1121
  *Counsel for Plaintiff City of Dallas*

                                        */s/ Warren V. Norred*
                                        Warren V. Norred