**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION**

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 3:23-cv-02367-K |
| | § | |
| TRIPLE D GEAR, LLC, | § | |
| | § | |
| *Defendant.* | § | |

### DEFENDANT'S COUNTERCLAIMS

Defendant TRIPLE D Gear, LLC, herein files counterclaims against Plaintiff, the City of Dallas and shows the Court as follows:

**Summarizing,** Defendant files these counterclaims based on new and existing information concerning trademark infringement by Plaintiff and credible counterclaims arising therefrom. Specifically, Plaintiff alleges Infringement of a Registered Trademark Under 15 U.S.C. § 1114.

### FACTS



1.      TRIPLE D is the holder of the federally registered rights in the TRIPLE D "Ghost Logo" (the "Ghost Logo"), which it uses for apparel and headwear of the athletic and streetwear genres, sold in retail channels to consumers who seek that style of clothing and are acquainted with and appreciate urban hip-hop culture. Defendant's ownership thereof has been affirmed by a decision of the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("TTAB").

2.      The City of Dallas has used the "oak leaf" City Logo for sanitation services for many years, but has only recently began using the City Logo for apparel sales and licensed new versions of its logo which cause confusion between Defendant's marks and the product offerings of the City.

3.      TRIPLE D advertises and promotes its goods bearing the Ghost Logo via its website, its Instagram account, its Facebook page and its Twitter account; it also uses Mailchimp and Google Merchant Services and it has been promoted via mention on the following media outlets: Central Track, WFAA, PPV, ESPN, HBO, BET, and the Grammys, as well as on the websites associated with these media outlets.

4.      Retail prices for Ghost Logo items have changed over time but currently range from $55-$175 per item. Defendant estimates sales of approximately 7,500 products bearing the Ghost Logo.

5.      The City of Dallas ("Plaintiff") has used its D and Leaf Logo, the "Big D symbol", a blue capital letter D with a green stylized tree inside it,  (the "City Logo") in connection with its provision of municipal services to the residents of Dallas, Texas, on, *inter alia,* wayfinding signage, street signs, municipal buildings, motor vehicles, employee uniforms, utility bills, social media accounts, marketing and informational materials, and other customary ways in which a municipal government interacts with its constituents. Plaintiff has only used its City Logo with the distinctive tree/leaf center, has not shown any use of the City Logo without the distinctive center design element.

6.      These facts notwithstanding, TRIPLE D has recently become aware that in spite of a TTAB ruling awarding the Ghost Logo to Plaintiff, the City of Dallas has employed derivatives of the Ghost Logo on t-shirts and other apparel, goods that are similar or related to Plaintiff's goods, in contempt of the TTAB's ruling in favor of Plaintiff and contrary to law as outlined supra. For example, TRIPLE D has learned that the City is using a derivative of the Ghost Logo in other

environments, such as shown here, where the derivative is used for City of Dallas Water Department workers without TRIPLE D'S consent:



7.     Consumers are capable of discerning between the City Logo and the Ghost Logo as to the sources of the dissimilar goods and services offered under each of them. The actual confusion Defendant has experienced was *not* between the City Logo and the Ghost Logo, but any resulting confusion was caused by Plaintiff's wrongful appropriation of Defendant's Ghost Logo.

8.     Plaintiff does not and has not referred to itself as "TRIPLE D" and has not shown any evidence that it has or does. Plaintiff has only shown that it has used its City Logo (with the tree/leaf center) in connection with the provision of municipal services to constituents of Dallas, Texas. The City Logo is referred to as the "Big D" symbol, and "Big D" is a commonly known nickname for "Dallas, Texas."

9.      The TTAB denied Plaintiff's previous effort to cancel Defendant's Ghost Logo registration under Section 2(d) of the Trademark Act, 15 U.S.C. Sec. 1052(d), suggesting that the City knows of its infringement and has decided to deliberately and willingly infringe.

10.     Plaintiff's initial disclosures have revealed that it has entered into a Logo use Agreement to license Defendant's Ghost Logo to Southern Methodist University ("SMU") and allowed incorporation of SMU's Mustang into the Ghost Logo, absent Plaintiff's Consent. See Exhibit 1 to these Counterclaims (City's Production, CITY 00080-00118) as of January 8, 2020.

11.     Without TRIPLE D's consent or authorization, and beginning after TRIPLE D acquired protectable, exclusive rights in its TRIPLE D Marks as used on apparel, SMU adopted and began using the TRIPLE D Marks in connection with its advertisement, promotion, and sale of apparel via its licensing agreement with the City of Dallas.

12.     SMU, Plaintiff's licensee, actively sells infringing apparel with TRIPLE D marks:




13.    The products on which the City's Licensee uses TRIPLE D's Marks are directly competitive with products promoted and sold by TRIPLE D including, b ut not limited to, apparel.



*From SMU's website, at https://smuteamstore.com/collections/triple-d,*

14.    Both TRIPLE D and City's Licensee promote and sell their respective products through common trade channels such as stores and websites.

15.     SMU's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of SMU's goods and services and are likely to deceive the relevant consuming public into mistakenly believing that SMU's goods and services originate from, are associated with, and/or are otherwise authorized by TRIPLE D or connected in some way to TRIPLE D.

*SMU's Twitter Feed*                              *TRIPLE D Gear's Instagram Direct Message Page*




## COUNTER CLAIM:
## INFRINGMENT OF A REGISTERED TRADEMARK UNDER 15 U.S.C. § 1114

16.     The purposes of trademark law are to secure to the owner of the mark the goodwill of its business and to protect the ability of consumers to distinguish among competing producers. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)*; Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985) ("The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.").

17.     Ownership of a trademark is established by use of the trademark and does not need to be registered to obtain protection. *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990).

18.     A trademark is any word, name, symbol, device or any combination of these things, used by a person or corporation to identify and distinguish that person's goods from those manufactured or sold by others and to indicate the source of the goods even if that source is unknown to the consumer. 15 U.S.C. § 1127; *Bd. Of Supervisors for La. State Univ. Agric. & Mech. Coll. V. Smack Apparel Co*., 550 F.3d 465, 475 (5th Cir. 2008).

19.     If through use, the word or design comes to symbolize a person's or corporation's product or service in the public mind, that person or corporation acquires a property right in the mark. *Bos. Prof'l Hockey Ass'n v. Dall. Cap & Emblem Mfg., Inc*., 510 F.2d 1004, 1014 (5th Cir. 1975).

20.     A federal trademark registration is [rebuttable] evidence of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the registration. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citing 15 U.S.C. § 1115(a)).

21.     The standard in a trademark infringement claim is "likelihood of confusion." 15 U.S.C. § 1114(1); *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc*., 80 F.4th 607 (5th Cir. 2023). To prevail on a claim of trademark infringement or unfair competition against Defendant, Plaintiff must prove by a preponderance of evidence that Defendant's use of its logo in connection with selling product creates a likelihood of consumer confusion as to source, affiliation, or sponsorship. *Id.* Merely reproducing a trademark is not trademark infringement if there is no likelihood of confusion.  A "likelihood of confusion" means that confusion is not just possible, but probable. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co*., 671 F.3d 526, 532 (5th Cir. 2012).

22.    The analysis with respect to plaintiff's federal and common law claims under the federal law may often be dispositive of its corresponding claims under Texas law as well, as the same legal standard applies to federal infringement claims under the Lanham Act and Texas state claims, whether statutory, common law, or even unfair competition. *Luxottica Grp. S.P.A. v. Atl. Sunglasses LLC*, No. 15-CV-1795, 2017 U.S. Dist. LEXIS 217991, at \*19 (S.D. Tex. Mar. 24, 2017).

23.    To prevail on a trademark infringement claim, a plaintiff must establish: (1) ownership in a legally protectable mark; and (2) infringement by demonstrating a likelihood of confusion. Ownership of a mark is established by actual use in the market. *Am. Rice, Inc. v. Producers Rice Mill, Inc*., 518 F.3d 321, 329 (5th Cir. 2008). Ownership of a mark is established by actual use in the market. *Id.*

24.     Plaintiff's unauthorized licensing and use in commerce of the TRIPLE D Marks as alleged herein is likely to cause confusion, to cause mistake, or to deceive consumers with regard to TRIPLE D's Marks. Plaintiff's conduct therefore constitutes infringement of TRIPLE D's Marks in violation of 15 U.S.C. § 1114.

25.    Specifically, these actions constitute infringement of the various registrations of the TRIPLE D Marks listed supra.

26.    As a direct and proximate result of the acts described above, TRIPLE D has been damaged, and Plaintiff has been unjustly enriched, in an amount to be determined at the time of trial.

27.    Unless enjoined by this Court, Plaintiff's unlawful acts will continue to cause irreparable damage, loss, and injury to TRIPLE D for which it has no adequate remedy at law.

28.    Pursuant to 15 U.S.C. §§ 1116-1117, TRIPLE D is entitled to actual damages in an amount to be determined at trial, to have such damages trebled, to Plaintiff's profits, to corrective advertising damages, to the costs of this Action, and to its attorneys' fees.

## PRAYER

Wherefore, TRIPLE D respectfully requests that this Court against the City of Dallas

as follows:

a.  Find that City of Dallas has infringed TRIPLE D's trademark rights in violation of the Lanham Act, 15 U.S.C. § 1114;

b.  Awarding TRIPLE D, under 15 U.S.C. § 1117, (i) all profits received by City of Dallas from sales and revenues of any kind made as a result of City of Dallas's infringement of TRIPLE D's trademark rights, (ii) all damages sustained by TRIPLE D as a result of City of Dallas's infringement of TRIPLE D's trademark rights, trebled, (iii) the amount necessary for TRIPLE D to conduct corrective advertising to ameliorate the consumer confusion concerning the relationship between TRIPLE D and City of Dallas and (iv) TRIPLE D's costs incurred in this Action;

c.  For an award of pre-judgment interest, post-judgment interest, and costs in this action; and

d.  For an award of such other relief to TRIPLE D as this Court deems just and proper.

For an award of such other relief to TRIPLE D as this Court deems just and proper.

Respectfully submitted,

/s/Warren V. Norred
Warren V. Norred
State Bar No. 24045094
Norred Law, PLLC
515 E. Border Street
Arlington, Texas 76010
warren@norredlaw.com
P: 817-704-3984, F: 817-524-6686

**CERTIFICATE OF CONFERENCE:** I hereby certify that on August 16, 2024 I have conferred with counsel for Plaintiff Megan M. O'Laughlin at molaughlin@hitchcockevert.com and Anne M. Turner at aturner@hitchcockevert.com regarding the foregoing motion and the relief sought therein. Plaintiff's counsel indicated by return email on August 16th that her client is opposed.          /s/ Warren V. Norred

**CERTIFICATE OF SERVICE:** I hereby certify that on August 16, 2024, a true and correct copy of the foregoing was served on Plaintiff's counsel of record Megan M. O'Laughlin at molaughlin@hitchcockevert.com and Anne M. Turner at aturner@hitchcockevert.com via the Court's CM/ECF system.          /s/ Warren V. Norred

# LOGO USE AGREEMENT

THIS LOGO USE AGREEMENT (this "Agreement") is made and entered into by and between the CITY OF DALLAS, a Texas municipal corporation of Dallas County, Texas (hereinafter called "City" or "City/Licensor"), acting by and through its duly authorized officers, and SOUTHERN METHODIST UNIVERSITY, a Texas nonprofit corporation (hereinafter called "SMU" or "SMU/Licensee"), acting by and through its duly authorized officers.

## WITNESSETH:

WHEREAS, SMU and City have the authority to enter into this Agreement, and have each entered into this Agreement by the action of its governing body or authorized representative in the appropriate manner prescribed by law; AND

WHEREAS, City/Licensor is the sole and exclusive owner of the trademark logo, as shown in and attached hereto as **Exhibit** A and incorporated herein, ("City's Logo"); AND

WHEREAS, SMU/Licensee is the sole and exclusive owner of the trademark logo, as shown in and attached hereto as **Exhibit B** and incorporated herein, ('SMU's Logo"); AND

WHEREAS, SMU wishes to use the City's Logo in combination with SMU's Logo for a limited time, as shown in and attached hereto as **Exhibit C** and incorporated herein, ("Combined Mark"); AND

WHEREAS, pursuant to Dallas City Code Section 31-23, City has the power and authority to grant to SMU a non-exclusive license to use the City's Logo with the right, privilege and license to use the City's Logo; AND

WHEREAS, SMU shall manufacture, advertise, and sell apparel, including hats, clothing, jerseys, and mini helmets with the Combined Mark for a limited time (the "Licensed Products") pursuant to the terms herein; AND

WHEREAS, SMU's athletic department is creating and promoting a Dallas Born and Raised Campaign in the City of Dallas ("SMU's Campaign") and City is granting a non-exclusive limited right to use the Combined Mark for purposes of marketing and promoting the Licensed Products; AND

WHEREAS, SMU desires to obtain from City a non-exclusive license to use, make, have made, distribute, advertise, and sell, and offer for sale, the Licensed Products and to use, reproduce, display, and perform the Combined Mark on or in association with the Licensed Products and promotional materials and event related to SMU's Campaign, pursuant to the terms herein; AND

CITY 00080

WHEREAS, City has the power and authority to grant to SMU the right, privilege and license to use the City's Logo pursuant to the terms herein; AND

WHEREAS, SMU agrees to collect all proceeds from the sales of Licensed Products and to apply the proceeds to support the City's public purpose as set forth herein; AND

WHEREAS, SMU and City are in agreement with respect to the terms and conditions set forth herein.

NOW THEREFORE, this Agreement is made and entered into by SMU and City in consideration of the aforementioned recitals and for the mutual consideration stated herein:

## ARTICLE 1
## PURPOSE

The purpose of this Agreement is to allow SMU to create the Combined Mark, as shown in **Exhibit C** for the purposes of celebrating SMU's impact on the City of Dallas, Texas through the manufacture, distribution, advertisement, promotion, and sale of the Licensed Products. The parties agree that City's grant of this non-exclusive license is not intended to, and shall not be construed to:

(i)     suggest or create an affiliation, sponsorship, or association between City and SMU;

(ii)    indicate that City is a sponsor or affiliate of SMU;

(iii)   constitute an endorsement or approval of SMU, its departments, branches, or associations;

(iv)    suggest or create an affiliation, sponsorship or association between City and SMU's goods and services

(v)     indicate that City is the origin or sponsor of SMU's goods and services; and/or

(vi)    constitute an endorsement or approval of SMU's goods and services.

## ARTICLE 2
## GRANT OF LICENSE AND USE OF CITY'S LOGO

2.1     City hereby grants to SMU, for the Term (as defined in Article 6) of this Agreement, the non-exclusive right and license to use the City's Logo, as shown in **Exhibit A**, with SMU's Logo, as shown in **Exhibit B**, in the Combined Mark for the sole purpose of using, manufacturing, having manufactured, distributing, advertising, selling, and offering for sale the Licensed Products.

2.2     City hereby grants to SMU, for the Term of this Agreement, the right to sublicense the rights granted in Sections 2.1 and 2.3 to any artist, designer, manufacturer, or other subcontractor for the sole purpose of creating, manufacturing, finishing, packaging and

CITY 00081

delivering to SMU the Licensed Products or advertising, marketing, and promotional materials related to the Licensed Products. Any such sublicense shall be consistent with the terms and conditions of the license granted hereunder and shall terminate immediately upon termination of this Agreement. SMU is solely responsible for ensuring the compliance with the terms of this Agreement by any permitted sublicensee.

2.3    City hereby grants to SMU, for the Term of this Agreement, the non-exclusive, limited right to use the City's Logo with SMU's Logo in the Combined Mark, on SMU's athletic team helmets, hats, jerseys and uniforms, subject to the terms herein and to the liability waivers set forth below, and related promotional materials (including Internet websites and social media) for the advertising and promotion of the Licensed Products through SMU's Campaign pursuant to the terms set forth herein.

## ARTICLE 3
## OWNERSHIP OF IMPROVEMENT AND DERIVATIVE WORKS

3.1    It is understood and agreed that City shall retain all right, title, and interest in the City's Logo used in the Combined Mark and any modifications or improvements made to the City's Logo as used in the Combined Mark by SMU and that SMU's use of the City's Logo in the Combined Mark inures to the benefit of City.

3.2    It is understood and agreed that SMU shall retain all right, title, and interest in SMU's Logo used in the Combined Mark.

3.3    The parties acknowledge and agree that neither City nor SMU shall retain right, title or interest in the Combined Mark and neither party shall have the right to (a) register the Combined Mark as a copyright, trademark, service mark, or other form of intellectual property; or (b) use the Combined Mark upon expiration or termination of this Agreement for any reason.

## ARTICLE 4
## QUALITY CONTROL OF LICENSED PRODUCTS AND PROMOTIONAL MATERIAL

4.1    City shall have the right to inspect and approve any and all uses of the Combined Mark by SMU or its permissible sublicensees during SMU's normal business hours.

4.2    The Licensed Products shall be of a high quality which is at least equal to comparable products sold by SMU as of the Effective Date of this Agreement.

4.3    If the quality of a class of the Licensed Products falls below such standard of quality, SMU shall use its best efforts to restore such quality. In the event that SMU has not taken appropriate steps to restore such quality within thirty (30) days, after written notification by

City in accordance with Section 11.4, Notices, City shall have the right to terminate this Agreement.

4.4     SMU represents and warrants that all advertising and promotional materials for the Licensed Products will comply with all applicable laws, including but not limited to the marking provisions of the patent, trademark, and copyright laws of the United States, federal and state laws regarding fabric content disclosure and state laws regarding marking of hazardous materials and shall be subject to the terms herein.

## ARTICLE 5
## FUNDING AND SUPPORT OF CITY'S PUBLIC PURPOSE

5.1     In support of the purpose of this Agreement, as it is stated in Section 1 herein, SMU and City have a common interest in providing funding for City of Dallas initiatives.  The purpose of this Agreement is to receive and administer proceeds received directly from the private sector for the Licensed Products for the City's initiatives including but not limited to housing and homelessness, workforce development and education, and the Mayor's Summer Internship Fellowship Program ("City's Initiatives").

5.2     SMU covenants and agrees to pay City the following: FIFTY PERCENT (50%) of all gross sales ("City Split"). SMU shall retain and collect the remaining FIFTY PERCENT (50%) of the gross sales (SMU's Split"). The term "gross sales" means all royalties received by SMU from wholesale sales of the Licensed Products made for SMU's official bookstore, athletic facilities (including stadium concession stands) and website stores and made to its authorized local resellers, and excluding cost of manufacturing, third party commissions, shipping and handling, taxes, and returns.  SMU agrees to sell the Licensed Products pursuant to the terms herein and SMU hereby agrees to make on a quarterly basis City Split payments to City (accompanied by quarterly gross sales receipts and with a statement of City Split) on or before the 15th day of next quarter following the prior quarter's sales.  The City Split shall include FIFTY PERCENT (50%) of gross sales generated before the execution of this Agreement for the sale of the Licensed Products and shall be remitted to the City in lump sum within sixty (60) days of execution of this Agreement. City Split shall not include any Licensed Products used or distributed by SMU without charge in the form of event giveaways or donor appreciation gifts so long as the amount of event giveaways and donor appreciation gifts are within reason and SMU athletic teams promotional usage through SMU's Campaign.

5.3     The City's Split shall be made directly to the City of Dallas, to be used solely for services and assistance for the City's Initiatives subject to appropriations, city manager or city council approval and subject to the terms stated herein.  This Agreement shall be interpreted in a manner consistent with the foregoing intention and so as to conform to the requirements of the foregoing provisions of the federal tax laws and any regulations issued pursuant thereto.

5.4     Right of Review and Audit.  City may review any and all of the services performed by SMU pertaining to the Licensed Products or any promotional and advertising material

CITY 00083

under this Agreement. City is granted the right to audit, at City's election, all of SMU's records and billings pertaining to the sale of the Licensed Products of this Agreement. SMU agrees to retain such records for a minimum of three (3) years following completion of this Agreement. Any payment, settlement, satisfaction, or release provided under this Agreement shall be subject to City's rights as may be disclosed by such audit.

## ARTICLE 6
## TERM AND TERMINATION

6.1     The term of this Agreement shall terminate on October 31, 2020 (the "Term"). City, in its sole discretion, may renew this Agreement for two (2) additional periods of one (1) year each (the "Renewal Term"). The first Renewal Term shall commence upon the expiration of the Term and each additional Renewal Term shall commence at the end of the subsequent Renewal Term, if the option is exercised. Each Renewal Term shall be subject to all of the same terms, covenants, and conditions of this Agreement. City shall advise SMU in writing of its intent to enter into the first Renewal Term no later than thirty (30) days prior to the end of the Term and shall provide written notice of its intent to exercise each subsequent renewal option no later than thirty (30) days prior to the end of the then current Renewal Term. If the City does not provide written notice of intent to exercise a renewal option, the lack of notice shall have the effect of termination and shall not constitute an automatic renewal.

6.2     Termination. City may, at its option and without prejudice to any other remedy City may be entitled to at law, in equity or elsewhere under this Agreement, terminate this Agreement in whole or in part for cause or for the convenience of City by giving at least ten (10) days advance written notice of termination to SMU, with the understanding that all performance being terminated shall cease as of a date to be specified in the notice. City also has the right to request that SMU assign and transfer to City all of SMU's rights and obligations under existing subcontracts it has to perform this Agreement in the event of termination under this Section, and SMU may assign such rights and obligations to the extent legally permitted by law or contract. SMU shall not be entitled to recover the cost or value of the Licensed Products should City choose to exercise its option to terminate.

6.2.1     Immediate Right of Termination. City shall have the right to immediately terminate this Agreement by giving written notice to SMU in the event that SMU does any of the following:

a.     files a petition in bankruptcy or is adjudicated as bankrupt or insolvent, or makes an assignment for the benefit of creditors, or an arrangement pursuant to any bankruptcy law, or if SMU discontinues its business or a receiver is appointed for SMU or for SMU's business and such receiver is not discharged within thirty (30) days; or

b.     ceases to sell the Licensed Products for a period of six (6) consecutive months; or

c.     breaches any of the provisions of this Agreement relating to the unauthorized assertion of rights in the Combined Mark; or

d.     fails, after receipt of written notice from City, to immediately discontinue the distribution or sale of the Licensed Products or the use of any packaging or promotional material that does not contain the requisite legal legends or has not been approved by City.

6.2.2    Right to Terminate on Notice.  This Agreement may be terminated by either party upon thirty (30) days' written notice to the other party in the event of a breach of a material provision of this Agreement by the other party that remains uncured at the end of such 30-day period.

## ARTICLE 7
## SELL-OFF OF LICENSED PRODUCTS

7.1    Provided that this Agreement was not terminated pursuant to Section 6.2.1, Immediate Right of Termination above, upon expiration or termination of this Agreement for any reason, SMU shall have the right to sell off new, unused units of Licensed Products in SMU's possession, under SMU's control, and/or in transit to SMU as of the effective date of termination ("Remaining Inventory") within ninety (90) days after termination.

7.2    Any Remaining Inventory that is damaged, defective, or is otherwise not in salable condition must be destroyed by SMU.

## ARTICLE 8
## REPRESENTATIONS AND WARRANTIES

8.1    City represents and warrants that (a) it has the right and power to grant the licenses granted herein and that there are no other agreements with any other party in conflict herewith; and (b) to the best of City's knowledge, the Combined Mark does not infringe any valid right of any third party.

8.2    SMU represents and warrants that it has the capacity to and will use reasonable efforts to promote, market, distribute, advertise, and sell the Licensed Products and will take no action that would be derogatory, degrading, or tarnishing to City's rights or would otherwise tend to call City's reputation into disrepute.

8.3    SMU shall be solely responsible for the manufacture, production, distribution, advertising, and sale of the Licensed Products and will bear all related costs and obligations

CITY 00085

associated therewith, including but not limited to compliance with local, state, and federal laws.

# ARTICLE 9
## INSURANCE AND INDEMNIFICATION

9.1    Upon the City's written request, SMU shall obtain and maintain insurance as specified by the City, through its Office of Risk Management, and the City shall be named as additional insured.

9.2    **SMU AGREES TO SAVE, DEFEND, INDEMNIFY AND HOLD HARMLESS CITY, ITS OFFICERS, OFFICIALS, DIRECTORS, AGENTS, AND EMPLOYEES AGAINST ANY AND ALL CLAIMS, LAWSUITS, JUDGMENTS, COSTS, EXPENSES, AND LOSSES (INCLUDING REASONABLE ATTORNEYS' FEES AND COSTS) INCURRED THROUGH CLAIMS OF THIRD PARTIES AGAINST CITY, WHETHER SOUNDING IN PERSONAL INJURY (INCLUDING DEATH), TORT, CONTRACT, PROPERTY DAMAGE OR OTHER HARM FOR WHICH RECOVERY OF DAMAGES IS SOUGHT, SUFFERED BY ANY PERSON, PERSONS, ENTITY OR OTHER ORGANIZATION, THAT MAY ARISE OUT OF OR BE OCCASIONED BY SMU'S USE OF THE COMBINED MARK AND/OR THE MANUFACTURE, DISTRIBUTION, ADVERTISING AND/OR SALE OF THE LICENSED PRODUCTS, OR BY ANY NEGLIGENT OF STRICTLY LIABLE ACT OR OMISSION OF SMU ITS OFFICERS, AGENTS, EMPLOYEES OR SUBCONTRACTORS, RELATING TO THE PERFORMANCE OF THIS AGREEMENT INCLUDING BUT NOT LIMITED TO CLAIMS ARISING AS A RESULT OF THE USE OF THE COMBINED MARK BY A PERMITTED SUBLICENSEE OR OTHER THIRD PARTY.  IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, NOTHING HEREIN SHALL IMPLY A WAIVER OF THE CITY'S GOVERNMENTAL IMMUNITY OR OTHER DEFENSES AVAILABLE TO THE CITY UNDER TEXAS LAW.  SMU AND CITY ACKNOWLEDGE AND AGREE THAT THE PROVISIONS OF THIS SECTION 9.2 SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THE TERM OF THIS AGREEMENT.**

# ARTICLE 10
## DEFAULT AND REMEDIES

10.1    <u>Cumulative Remedies</u>.  Each right, power, and remedy of City and SMU provided for in this Agreement or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Agreement or now or hereafter existing at law or in equity or by statute or otherwise.  The exercise or beginning of the exercise by City or SMU of any one or more of the rights, powers, or remedies provided for in this Agreement or now or hereafter

existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by City or SMU of any or all such other rights, powers, or remedies.

10.2    No Implied Waiver.  The failure of any party hereto to insist at any time upon the strict performance of any covenant or agreement or to exercise any option, right, power, or remedy contained in this Agreement shall not be construed as a waiver or relinquishment thereof for the future.  The waiver of redress for any violation of any term, covenant, agreement, or condition contained in this Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation.  No express waiver shall affect any condition other than the one specified in such waiver and that one only for the time and in the manner specifically stated.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1    Conflict of Interest

    A.    SMU and its employees, agents or associates are required to make regular, timely, continual and full disclosures to the City of Dallas City Manager of all significant outside interests and responsibilities that may give rise to a direct or indirect conflict of interest, including, but not limited to, any and all significant outside interests and responsibilities that could reasonably be expected to impair independence of judgment in SMU's performance of this Agreement.  Such disclosures must be made no later than ten (10) days following the event giving rise to the potential or actual conflict of interest for the duration of the Term.  A potential or actual conflict of interest exists when commitments and obligations to the City or widely recognized professional norms are likely to be compromised in SMU's performance of its duties under this Agreement by the existence of such party's other professional relationships, contracts, obligations, or commitments.  Failure to disclose such a conflict of interest may result in City's immediate termination of this Agreement by the City's City Manager.

    B.    The following section of the Charter of the City of Dallas shall be one of the conditions, and a part of, the consideration of this Agreement, to wit:

    "CHAPTER XXII. Sec. 11.    FINANCIAL INTEREST OF EMPLOYEE OR OFFICER PROHIBITED.

    (a)    No city official or employee shall have any financial interest, direct or indirect, in any contract with the city, or be financially interested, directly or indirectly, in the sale to the city of any land, materials, supplies or services, except on behalf of the city as a city official or employee. Any violation of this section shall constitute malfeasance in office, and any city official or employee guilty thereof shall thereby forfeit the city official's or

employee's office or position with the city.  Any violation of this section, with knowledge, express or implied, of the person or corporation contracting with the city shall render the contract involved voidable by the city manager or the city council.

(b)    The alleged violations of this section shall be matters to be determined either by the trial board in the case of employees who have the right to appeal to the trial board, and by the city council in the case of other employees.

(c)    The prohibitions of this section shall not apply to the participation by city employees in federally funded housing programs, to the extent permitted by applicable federal or state law.

(d)    This section does not apply to an ownership interest in a mutual or common investment fund that holds securities or other assets unless the person owns more than 10 percent of the value of the fund.

(e)    This section does not apply to non-negotiated, form contracts for general city services or benefits if the city services or benefits are made available to the city official or employee on the same terms that they are made available to the general public.

(f)    This section does not apply to a nominee or member of a city board or commission, including a city appointee to the Dallas Area Rapid Transit Board.  A nominee or member of a city board or commission, including a city appointee to the Dallas Area Rapid Transit Board, must comply with any applicable conflict of interest or ethics provisions in the state law and the Dallas City Code."

11.2    Gift to Public Servant

City may terminate this Agreement immediately if SMU has offered or agreed to confer any benefit upon a City employee or official that the City employee or official is prohibited by law from accepting.

For purposes of this section, "benefit" means anything reasonably regarded as pecuniary gain or pecuniary advantage, including benefit to any other person in whose welfare the beneficiary has a direct or substantial interest, but does not include a contribution or expenditure made and reported in accordance with law.

Notwithstanding any other legal remedies, City may require SMU to remove any employee of SMU in accordance with this Agreement, who has violated the restrictions of this section or any similar state or federal law, and obtain reimbursement for any expenditures made as a result of the improper offer, agreement to confer, or conferring of a benefit to a City employee or official.

CITY 00088

11.3    Notice of Contract Claim

This Agreement is subject to the provisions of Section 2-86 of the Dallas City Code, as amended, relating to requirements for filing a notice of a breach of contract claim against City. Section 2-86 of the Dallas City Code, as amended, is expressly incorporated by reference and made a part of this Agreement as if written word for word in this Agreement. SMU shall comply with the requirements of this ordinance as a precondition of any claim relating to this Agreement, in addition to all other requirements in this Agreement related to claims and notice of claims.

11.4    Notices

Except as otherwise provided in Section 11.3, any notice, payment, statement, or demand required or permitted to be given under this Agreement by either party to the other may be effected by personal delivery in writing or by mail. Any notice given by mail shall be deemed to have been given when deposited in the U.S. mails, certified return receipt requested and postage prepaid, and addressed to the party to be served at the last address given by that party to the other party under the provisions of this Section. Notice given by courier, fax, or other form of personal delivery shall be deemed given only upon actual receipt. Any change in address shall be promptly given in writing to the other party pursuant to this notice provision. The initial addresses for notice are as follows:

    To City:
    Kimberly Bizor Tolbert, Chief of Staff
    Office of the City Manager
    City of Dallas
    1500 Marilla St., 4EN
    Dallas, TX 75201


    To SMU:
    Brad Cheves, Vice President for Development and External Affairs
    Southern Methodist University
    6425 Boaz Lane
    Dallas TX 75205


    With copy to Paul Ward, General Counsel
    Southern Methodist University
    6425 Boaz Lane
    Dallas, TX 75205


11.5    Independent Contractor/ No Partnership

Each party's status shall be that of an independent contractor with respect to the other and not an agent, servant, employee, or representative of the other party in each party's

performance of its obligations herein. Each party shall exercise independent judgment in performing its obligations under this Agreement and is solely responsible for setting working hours, scheduling or prioritizing the work flow and determining how the work is to be performed. No term or provision of this Agreement or act of either party in the performance of this Agreement shall be construed as making such party the agent, servant or employee of the other party, or making either party or any of its employees eligible for the fringe benefits, such as retirement, insurance and worker's compensation, which the other party provides its employees. Nothing in this Agreement shall be deemed to create a partnership, agency, joint venture, or joint enterprise between the Parties.

11.6    Compliance with Laws and Regulations

This Agreement is entered into subject to and controlled by the Charter and ordinances of the City of Dallas and all applicable laws, rules, and regulations of the State of Texas and the Government of the United States of America. Each party shall, during the course of performance of this Agreement, comply with all applicable City codes and ordinances, as amended, and all applicable state and federal laws, rules, and regulations, as amended.

11.7    Assignment

This Agreement and all of the parties' respective rights and obligations set forth herein is not assignable without the express written agreement of all parties.

11.8    Non-discrimination

As a condition of this Agreement, each party covenants that it will take all necessary actions to ensure that, in connection with any operations under this Agreement, such party, its officers, employees and subcontractors, will not discriminate in the treatment or employment of any individual or groups of individuals on the grounds race, age, color, ancestry, national origin, place of birth, religion, sex, sexual orientation, gender identity and expression, military or veteran status, genetic characteristics, or disability unrelated to job performance, either directly, indirectly, or through contractual or other arrangements. Each party shall also comply with all applicable requirements of the Americans with Disabilities Act, 42 U.S.C.A. §§12101-12213, as amended. In this regard, each party shall keep, retain and safeguard all records relating to this Agreement or work performed hereunder for a minimum period of three (3) years from final Agreement completion, with full access allowed to authorized representatives of the other party, upon request, for purposes of evaluating compliance with this and other provisions of the Agreement.

11.9    Governing Law

The Parties agree that this Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of Texas, (without regard to principles of conflict of laws that would require the application of a law of another jurisdiction).

11.10    Venue

The obligations of the parties to this Agreement shall be performable in Dallas County, Texas and if legal action is necessary in connection with or to enforce rights under this Agreement, exclusive venue shall lie in Dallas County, Texas.

11.11    Modification of Agreement

This Agreement may be modified only by written agreement duly signed by persons authorized to sign agreements on behalf of the City and SMU.  Oral modifications are not permitted.

11.12    Captions

The captions to the various clauses of this Agreement are for informational purposes only and shall not alter the substance of the terms and conditions of this Agreement.

11.13    Binding Nature of this Agreement

It is the intent of the Parties that this Agreement be a binding agreement between them in principle with regard to the provisions set forth herein.  Neither Party shall have any obligation that is inconsistent with the general principles, objectives, and provisions set forth herein, or which increases its costs or expenses beyond what is herein contemplated.

11.14    Counterparts

This Agreement may be executed, including electronically, in any number of counterparts, each of which shall be deemed an original and constitute one and the same instrument.  If this Agreement is executed in counterparts, then it shall become fully executed only as of the execution of the last such counterpart called for by the terms of this Agreement to be executed.

11.15    Successors and Assigns

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  City and SMU acknowledge that none of the donors or contributors to or affiliates, officers, directors, shareholders, or employees of SMU and City have any personal liability under this Agreement.

11.16    Language

The terms used herein, shall be applicable to one or more persons, as the case may be, and the singular shall include the plural, and the neuter shall include the masculine and feminine, and if there be more than one, the obligations hereof shall be joint and several.  The words "persons" and "parties" whenever used shall include individuals, firms, associations, and corporations.  City and SMU have freely negotiated this Agreement and its terms.

11.17 Authority to Execute and Perform Agreement

The person or persons signing and executing this Agreement on behalf of their respective party, or representing themselves as signing and executing this Agreement on behalf of such party, do hereby warrant and certify that he, she or they have been duly authorized by their respective party to execute this Agreement on behalf of such party and to validly and legally bind the signatory's respective party to all terms, performances and provisions herein set forth.

11.18 No Third-Party Beneficiaries

This Agreement is solely for the benefit of the parties hereto and their successors and assigns permitted under this Agreement, and no provisions of this Agreement shall be deemed to confer upon any other person any remedy, claim, liability, reimbursement, cause of action or other right.

11.19 Governmental Powers

By execution of this Agreement, City does not waive its sovereign or governmental powers or immunities, all of which are expressly reserved.

11.20 Severability

If any provision of this Agreement shall be determined to be unenforceable, void, or otherwise contrary to law, such condition shall in no manner operate to render any other provision of this Agreement unenforceable, void or contrary to law, and this Agreement shall continue in force in accordance with the remaining terms and provisions hereof, unless such condition invalidates the purpose or intent of this Agreement.

11.21 Third Party Rights

The provisions and conditions of this Agreement are solely for the benefit of SMU and City and are not intended to create any rights, contractual or otherwise, for any person or entity.

11.22 Conflict

In the event of any dispute over the meaning or application of any provision of this Agreement, this Agreement shall be interpreted fairly and reasonably, and neither more strongly for or against any Party, regardless of the actual drafter of this Agreement.

11.23 Entire Agreement

This Agreement (with any referenced Exhibits, attachments, and provisions incorporated by reference) embodies the entire agreement of both parties, superseding all oral or written previous and contemporary agreements between the parties relating to matters set forth in this Agreement. Any alterations, additions, or deletions to the terms of this

Agreement required by changes in federal, state or local law or regulations will be incorporated into this Agreement upon written amendment, and shall become effective on the effective date of such amendment.

*[Remainder of this page intentionally left blank. Signature page to follow.]*

EXECUTED as of this, the 8th day of January_____, 2020 by City, signing by and through its City Manager, duly authorized to execute same by Administrative Action No. 19 - 5396_____, on December 18, 2019 and by SMU acting through its duly authorized official.

APPROVED AS TO FORM:                           CITY OF DALLAS
CHRISTOPHER J. CASO                             T. C. BROADNAX
Interim City Attorney                           City Manager

BY _____                          BY _____
    Assistant City Attorney                         City Manager

SOUTHERN METHODIST UNIVERSITY
a Texas nonprofit corporation

BY _Brad Cheves_____
    Brad Cheves,
    Vice President for Development and External Affairs

BY _Paul J. Ward_____
    Paul Ward,
    Vice President for Legal Affairs, General Counsel, and Secretary

## EXHIBIT A

## CITY LOGO



**EXHIBIT B**

**SMU LOGO**



**EXHIBIT C**

**COMBINED MARK**



CITY 00097

CONFIDENTIAL

RECEIVED

2020 OCT 30  PM 4:56

CITY SECRETARY
DALLAS, TEXAS

Administrative Action No. 20-6131_____
Contract No. CMO-2020-00012441

| | | |
|---|---|---|
| STATE OF TEXAS | § | SUPPLEMENTAL AGREEMENT NO. 1 |
| COUNTY OF DALLAS | § | TO LOGO USE AGREEMENT |

 

THIS SUPPLEMENTAL AGREEMENT NO. 1 to that certain Logo Use Agreement, approved on December 18, 2019 by Administrative Action No. 19-5396 ("the Agreement"), by and between the CITY OF DALLAS, a Texas municipal corporation, hereinafter called "City," and Southern Methodist university, a Texas nonprofit corporation, hereinafter called "SMU" evidences the following:

1.      The term of the Agreement is revised as follows:

The parties shall exercise the first one-year Renewal Term extending the term of the Agreement until October 31, 2021.

2.      All other terms, provisions, conditions, and obligations of the Agreement between City and SMU shall remain in full force and effect, and said Agreement, as same may have been previously amended, and this Supplemental Agreement No. 1 shall be construed together as a single contractual agreement.

*[Remainder of this page intentionally left blank. Signature page to follow.]*

Supplemental Agreement No. 1 to Logo Use Agreement
Southern Methodist University
Page 1 of 2

EXECUTED as of this, the __30th__ day of __October__, 2020 by City, signing by and through its City Manager, duly authorized to execute same by Administrative Action No. 20-__6131__, on __October 23,__ 2020 and by SMU acting through its duly authorized official.

APPROVED AS TO FORM:                          CITY OF DALLAS
CHRISTOPHER J. CASO                            T. C. BROADNAX
City Attorney                                 City Manager


BY _Christina Sevoukas (Oct 30, 2020 16:33 CDT)_          BY _____
C.T.    Assistant City Attorney                    Assistant City Manager


Southern Methodist University
a Texas nonprofit corporation


BY _____
        Authorized Official
        Brad Cheves
        Print Name
        Vice President for Development & External Affairs
        Title

BY _Paul Ward_
        Authorized Official
        Paul Ward
        Print Name
        General Counsel
        Title


Supplemental Agreement No. 1 to Logo Use Agreement
Southern Methodist University
Page 2 of 2

| | **ADMINISTRATIVE ACTION** | **ADMINISTRATIVE ACTION** |
|---|---|---|
| **CITY OF DALLAS** | **ADMINISTRATIVE ACTION**<br>See Administrative Directive 4-05 for additional guidelines and routing.<br>File the approved form and all necessary documentation with the<br>City Secretary's Office to receive an official file stamp. | **195396**<br>**EFFECTIVE DATE**<br>**8/18/17** |

RECEIVED
2020 JAN -8 PM
SECRETARY
DALLAS, TEXAS

*1. Place an "X" in the appropriate box for the approval of:*

☐ a. Contracts of $70,000 or less resulting from competitive bid or formal proposal process, including service procurements made through interlocal or cooperative agreements.

☐ b. Amendments to competitively bid or formal proposal contracts: $50,000 or less (may not increase original contract price by more than 25%).

☐ c. Professional / Personal / Planning / Other Service contracts: $50,000 or less, per City Code Sec. 2-34.

☐ d. Amendments to non-bid contracts: $50,000 or less, per City Code Sec. 2-34.

☐ e. WRR-FM expenditures: $50,000 or less per City Code Sec. 2-79(C) of the City Code.

☒ f. Other Services (explain on attachment; for ratifications the Justification Form must be attached):
NOTE: Minor services and/or repairs not exceeding $3,000 and which do not require a contract should be processed by requisition.

| 2. Is this an amendment to an existing construction contract? If yes, complete an Administrative Change Order. | ☐ Yes ☒ No |
|---|---|
| 3. Any Administrative Actions to this vendor in the last 12 months? If yes, attach copy of AAs within last 12 months. | ☐ Yes ☒ No |
| 4. Is Form 1295 – Certificate of Interested Parties required to comply with House Bill 1295 attached (if applicable)? | ☐ Yes ☒ No |

| **Vendor Name:** | Southern Methodist University | | | | | **Vendor No.** | |
|---|---|---|---|---|---|---|---|
| **Subject:** | Logo Use Agreement | | | | | | |
| **Lead Dept:** | City Manager's Office | | | | | | |
| **Action Requested:** | Authorizing a non-exclusive limited license to use the City's logo with SMU's logo to create the Combined Mark for a one year term on licensed products. | | | | | | |
| | **Contract Number:** | CMO-2020-00012441 | | **Contract Term:** | 11/01/2019 | to | 10/31/2020 |
| **Background:** | The City of Dallas and SMU shall enter into a non-exclusive limited use license agreement to create and use a combined mark with the City's logo and SMU's logo for the purpose of celebrating SMU's impact on the City of Dallas, through the limited manufacturing, distribution, advertisement, promotion and sale of certain licensed products. This agreement shall be entered into for purposes of the providing funding for City of Dallas initiatives. The term of the limited non-exclusive use agreement shall be for a term of one year and shall have two optional one year renewal terms. | | | | | | |

| FUND | DEPT | UNIT | ACTV | OBJ | PROGRAM | ENCUMBRANCE TYPE and NUMBER | | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0001 | CMO | 1110 | | 3099 | | - | CMO-2020-00012441 | $0.00 |
| | | | | | | - | | |
| | | | | | | - | | |
| **Funding:** | | | | | | | | |
| **Financing:** | | | | | | **TOTAL:** | | $0.00 |

| **Contract Amendment Information:** | Supplemental Agreement No. | Base CR/AA No. | Base Contract Date | Base Contract Amount | Sum of Previous Supplemental Agreements | Total Contract Amount Including this Action | Total Supp'l Agreement Percentage |
|---|---|---|---|---|---|---|---|
| | | | | | | $ 0.00 | % |

**APPROVAL: Approved as being in accordance with the budget and Chapter 2 of the Dallas City Code.**

By Department Director _____ Date

By City Manager _____ Date 12/18/19

Approved as to Form by City Attorney _____ Date 12-19-19

REV 11/2018

CITY 00100

1 9 5 3 9 6

Contract ID: CMO-2020-00012441

RECEIVED

2020 JAN -8 PM 1: 37

CITY SECRETARY
DALLAS, TEXAS

## LOGO USE AGREEMENT

THIS LOGO USE AGREEMENT (this "Agreement") is made and entered into by and between the CITY OF DALLAS, a Texas municipal corporation of Dallas County, Texas (hereinafter called "City" or "City/Licensor"), acting by and through its duly authorized officers, and SOUTHERN METHODIST UNIVERSITY, a Texas nonprofit corporation (hereinafter called "SMU" or "SMU/Licensee"), acting by and through its duly authorized officers.

### WITNESSETH:

**WHEREAS**, SMU and City have the authority to enter into this Agreement, and have each entered into this Agreement by the action of its governing body or authorized representative in the appropriate manner prescribed by law; AND

**WHEREAS**, City/Licensor is the sole and exclusive owner of the trademark logo, as shown in and attached hereto as **Exhibit** A and incorporated herein, ("City's Logo"); AND

**WHEREAS,** SMU/Licensee is the sole and exclusive owner of the trademark logo, as shown in and attached hereto as **Exhibit B** and incorporated herein, ('SMU's Logo"); AND

**WHEREAS**, SMU wishes to use the City's Logo in combination with SMU's Logo for a limited time, as shown in and attached hereto as **Exhibit C** and incorporated herein, ("Combined Mark"); AND

**WHEREAS**, pursuant to Dallas City Code Section 31-23, City has the power and authority to grant to SMU a non-exclusive license to use the City's Logo with the right, privilege and license to use the City's Logo; AND

**WHEREAS,** SMU shall manufacture, advertise, and sell apparel, including hats, clothing, jerseys, and mini helmets with the Combined Mark for a limited time (the "Licensed Products") pursuant to the terms herein; AND

**WHEREAS,** SMU's athletic department is creating and promoting a Dallas Born and Raised Campaign in the City of Dallas ("SMU's Campaign") and City is granting a non-exclusive limited right to use the Combined Mark for purposes of marketing and promoting the Licensed Products; AND

**WHEREAS**, SMU desires to obtain from City a non-exclusive license to use, make, have made, distribute, advertise, and sell, and offer for sale, the Licensed Products and to use, reproduce, display, and perform the Combined Mark on or in association with the Licensed Products and promotional materials and event related to SMU's Campaign, pursuant to the terms herein; AND

Logo Use Agreement – City of Dallas & SMU

Page **1** of **15**

195396

**WHEREAS**, City has the power and authority to grant to SMU the right, privilege and license to use the City's Logo pursuant to the terms herein; AND

**WHEREAS**, SMU agrees to collect all proceeds from the sales of Licensed Products and to apply the proceeds to support the City's public purpose as set forth herein; AND

**WHEREAS**, SMU and City are in agreement with respect to the terms and conditions set forth herein.

**NOW THEREFORE**, this Agreement is made and entered into by SMU and City in consideration of the aforementioned recitals and for the mutual consideration stated herein:

## ARTICLE 1
## PURPOSE

The purpose of this Agreement is to allow SMU to create the Combined Mark, as shown in **Exhibit C** for the purposes of celebrating SMU's impact on the City of Dallas, Texas through the manufacture, distribution, advertisement, promotion, and sale of the Licensed Products. The parties agree that City's grant of this non-exclusive license is not intended to, and shall not be construed to:

(i)     suggest or create an affiliation, sponsorship, or association between City and SMU;

(ii)    indicate that City is a sponsor or affiliate of SMU;

(iii)   constitute an endorsement or approval of SMU, its departments, branches, or associations;

(iv)    suggest or create an affiliation, sponsorship or association between City and SMU's goods and services

(v)     indicate that City is the origin or sponsor of SMU's goods and services; and/or

(vi)    constitute an endorsement or approval of SMU's goods and services.

## ARTICLE 2
## GRANT OF LICENSE AND USE OF CITY'S LOGO

2.1     City hereby grants to SMU, for the Term (as defined in Article 6) of this Agreement, the non-exclusive right and license to use the City's Logo, as shown in **Exhibit A**, with SMU's Logo, as shown in **Exhibit B**, in the Combined Mark for the sole purpose of using, manufacturing, having manufactured, distributing, advertising, selling, and offering for sale the Licensed Products.

2.2     City hereby grants to SMU, for the Term of this Agreement, the right to sublicense the rights granted in Sections 2.1 and 2.3 to any artist, designer, manufacturer, or other subcontractor for the sole purpose of creating, manufacturing, finishing, packaging and

CITY 00102

195396

delivering to SMU the Licensed Products or advertising, marketing, and promotional materials related to the Licensed Products. Any such sublicense shall be consistent with the terms and conditions of the license granted hereunder and shall terminate immediately upon termination of this Agreement. SMU is solely responsible for ensuring the compliance with the terms of this Agreement by any permitted sublicensee.

2.3     City hereby grants to SMU, for the Term of this Agreement, the non-exclusive, limited right to use the City's Logo with SMU's Logo in the Combined Mark, on SMU's athletic team helmets, hats, jerseys and uniforms, subject to the terms herein and to the liability waivers set forth below, and related promotional materials (including Internet websites and social media) for the advertising and promotion of the Licensed Products through SMU's Campaign pursuant to the terms set forth herein.

## ARTICLE 3
## OWNERSHIP OF IMPROVEMENT AND DERIVATIVE WORKS

3.1     It is understood and agreed that City shall retain all right, title, and interest in the City's Logo used in the Combined Mark and any modifications or improvements made to the City's Logo as used in the Combined Mark by SMU and that SMU's use of the City's Logo in the Combined Mark inures to the benefit of City.

3.2     It is understood and agreed that SMU shall retain all right, title, and interest in SMU's Logo used in the Combined Mark.

3.3     The parties acknowledge and agree that neither City nor SMU shall retain right, title or interest in the Combined Mark and neither party shall have the right to (a) register the Combined Mark as a copyright, trademark, service mark, or other form of intellectual property; or (b) use the Combined Mark upon expiration or termination of this Agreement for any reason.

## ARTICLE 4
## QUALITY CONTROL OF LICENSED PRODUCTS AND PROMOTIONAL MATERIAL

4.1     City shall have the right to inspect and approve any and all uses of the Combined Mark by SMU or its permissible sublicensees during SMU's normal business hours.

4.2     The Licensed Products shall be of a high quality which is at least equal to comparable products sold by SMU as of the Effective Date of this Agreement.

4.3     If the quality of a class of the Licensed Products falls below such standard of quality, SMU shall use its best efforts to restore such quality. In the event that SMU has not taken appropriate steps to restore such quality within thirty (30) days, after written notification by

CITY 00103

195396

City in accordance with Section 11.4, Notices, City shall have the right to terminate this Agreement.

4.4      SMU represents and warrants that all advertising and promotional materials for the Licensed Products will comply with all applicable laws, including but not limited to the marking provisions of the patent, trademark, and copyright laws of the United States, federal and state laws regarding fabric content disclosure and state laws regarding marking of hazardous materials and shall be subject to the terms herein.

## ARTICLE 5
## FUNDING AND SUPPORT OF CITY'S PUBLIC PURPOSE

5.1      In support of the purpose of this Agreement, as it is stated in Section 1 herein, SMU and City have a common interest in providing funding for City of Dallas initiatives.  The purpose of this Agreement is to receive and administer proceeds received directly from the private sector for the Licensed Products for the City's initiatives including but not limited to housing and homelessness, workforce development and education, and the Mayor's Summer Internship Fellowship Program ("City's Initiatives").

5.2      SMU covenants and agrees to pay City the following: FIFTY PERCENT (50%) of all gross sales ("City Split"). SMU shall retain and collect the remaining FIFTY PERCENT (50%) of the gross sales (SMU's Split"). The term "gross sales" means all royalties received by SMU from wholesale sales of the Licensed Products made for SMU's official bookstore, athletic facilities (including stadium concession stands) and website stores and made to its authorized local resellers, and excluding cost of manufacturing, third party commissions, shipping and handling, taxes, and returns.  SMU agrees to sell the Licensed Products pursuant to the terms herein and SMU hereby agrees to make on a quarterly basis City Split payments to City (accompanied by quarterly gross sales receipts and with a statement of City Split) on or before the 15th day of next quarter following the prior quarter's sales.  The City Split shall include FIFTY PERCENT (50%) of gross sales generated before the execution of this Agreement for the sale of the Licensed Products and shall be remitted to the City in lump sum within sixty (60) days of execution of this Agreement. City Split shall not include any Licensed Products used or distributed by SMU without charge in the form of event giveaways or donor appreciation gifts so long as the amount of event giveaways and donor appreciation gifts are within reason and SMU athletic teams promotional usage through SMU's Campaign.

5.3      The City's Split shall be made directly to the City of Dallas, to be used solely for services and assistance for the City's Initiatives subject to appropriations, city manager or city council approval and subject to the terms stated herein.  This Agreement shall be interpreted in a manner consistent with the foregoing intention and so as to conform to the requirements of the foregoing provisions of the federal tax laws and any regulations issued pursuant thereto.

5.4      <u>Right of Review and Audit</u>. City may review any and all of the services performed by SMU pertaining to the Licensed Products or any promotional and advertising material

195396

under this Agreement.  City is granted the right to audit, at City's election, all of SMU's records and billings pertaining to the sale of the Licensed Products of this Agreement.  SMU agrees to retain such records for a minimum of three (3) years following completion of this Agreement.  Any payment, settlement, satisfaction, or release provided under this Agreement shall be subject to City's rights as may be disclosed by such audit.

## ARTICLE 6
## TERM AND TERMINATION

6.1     The term of this Agreement shall terminate  on October 31, 2020 (the "Term").  City, in its sole discretion, may renew this Agreement for two (2) additional periods of one (1) year each (the "Renewal Term").  The first Renewal Term shall commence upon the expiration of the Term and each additional Renewal Term shall commence at the end of the subsequent Renewal Term, if the option is exercised.  Each Renewal Term shall be subject to all of the same terms, covenants, and conditions of this Agreement.  City shall advise SMU in writing of its intent to enter into the first Renewal Term no later than thirty (30) days prior to the end of the Term and shall provide written notice of its intent to exercise each subsequent renewal option no later than thirty (30) days prior to the end of the then current Renewal Term.  If the City does not provide written notice of intent to exercise a renewal option, the lack of notice shall have the effect of termination and shall not constitute an automatic renewal.

6.2     Termination.  City may, at its option and without prejudice to any other remedy City may be entitled to at law, in equity or elsewhere under this Agreement, terminate this Agreement in whole or in part for cause or for the convenience of City by giving at least ten (10) days advance written notice of termination to SMU, with the understanding that all performance being terminated shall cease as of a date to be specified in the notice.  City also has the right to request that SMU assign and transfer to City all of SMU's rights and obligations under existing subcontracts it has to perform this Agreement in the event of termination under this Section, and SMU may assign such rights and obligations to the extent legally permitted by law or contract.  SMU shall not be entitled to recover the cost or value of the Licensed Products should City choose to exercise its option to terminate.

    6.2.1   Immediate Right of Termination.  City shall have the right to immediately terminate this Agreement by giving written notice to SMU in the event that SMU does any of the following:

        a.      files a petition in bankruptcy or is adjudicated as bankrupt or insolvent, or makes an assignment for the benefit of creditors, or an arrangement pursuant to any bankruptcy law, or if SMU discontinues its business or a receiver is appointed for SMU or for SMU's business and such receiver is not discharged within thirty (30) days; or

CITY 00105

195396

     b.      ceases to sell the Licensed Products for a period of six (6) consecutive months; or

     c.      breaches any of the provisions of this Agreement relating to the unauthorized assertion of rights in the Combined Mark; or

     d.      fails, after receipt of written notice from City, to immediately discontinue the distribution or sale of the Licensed Products or the use of any packaging or promotional material that does not contain the requisite legal legends or has not been approved by City.

    6.2.2  <u>Right to Terminate on Notice</u>. This Agreement may be terminated by either party upon thirty (30) days' written notice to the other party in the event of a breach of a material provision of this Agreement by the other party that remains uncured at the end of such 30-day period.

## ARTICLE 7
## SELL-OFF OF LICENSED PRODUCTS

7.1    Provided that this Agreement was not terminated pursuant to Section 6.2.1, Immediate Right of Termination above, upon expiration or termination of this Agreement for any reason, SMU shall have the right to sell off new, unused units of Licensed Products in SMU's possession, under SMU's control, and/or in transit to SMU as of the effective date of termination ("Remaining Inventory") within ninety (90) days after termination.

7.2    Any Remaining Inventory that is damaged, defective, or is otherwise not in salable condition must be destroyed by SMU.

## ARTICLE 8
## REPRESENTATIONS AND WARRANTIES

8.1    City represents and warrants that (a) it has the right and power to grant the licenses granted herein and that there are no other agreements with any other party in conflict herewith; and (b) to the best of City's knowledge, the Combined Mark does not infringe any valid right of any third party.

8.2    SMU represents and warrants that it has the capacity to and will use reasonable efforts to promote, market, distribute, advertise, and sell the Licensed Products and will take no action that would be derogatory, degrading, or tarnishing to City's rights or would otherwise tend to call City's reputation into disrepute.

8.3    SMU shall be solely responsible for the manufacture, production, distribution, advertising, and sale of the Licensed Products and will bear all related costs and obligations

CITY 00106

195396

associated therewith, including but not limited to compliance with local, state, and federal laws.

## ARTICLE 9
## INSURANCE AND INDEMNIFICATION

9.1     Upon the City's written request, SMU shall obtain and maintain insurance as specified by the City, through its Office of Risk Management, and the City shall be named as additional insured.

9.2     **SMU AGREES TO SAVE, DEFEND, INDEMNIFY AND HOLD HARMLESS CITY, ITS OFFICERS, OFFICIALS, DIRECTORS, AGENTS, AND EMPLOYEES AGAINST ANY AND ALL CLAIMS, LAWSUITS, JUDGMENTS, COSTS, EXPENSES, AND LOSSES (INCLUDING REASONABLE ATTORNEYS' FEES AND COSTS) INCURRED THROUGH CLAIMS OF THIRD PARTIES AGAINST CITY, WHETHER SOUNDING IN PERSONAL INJURY (INCLUDING DEATH), TORT, CONTRACT, PROPERTY DAMAGE OR OTHER HARM FOR WHICH RECOVERY OF DAMAGES IS SOUGHT, SUFFERED BY ANY PERSON, PERSONS, ENTITY OR OTHER ORGANIZATION, THAT MAY ARISE OUT OF OR BE OCCASIONED BY SMU'S USE OF THE COMBINED MARK AND/OR THE MANUFACTURE, DISTRIBUTION, ADVERTISING AND/OR SALE OF THE LICENSED PRODUCTS, OR BY ANY NEGLIGENT OF STRICTLY LIABLE ACT OR OMISSION OF SMU ITS OFFICERS, AGENTS, EMPLOYEES OR SUBCONTRACTORS, RELATING TO THE PERFORMANCE OF THIS AGREEMENT INCLUDING BUT NOT LIMITED TO CLAIMS ARISING AS A RESULT OF THE USE OF THE COMBINED MARK BY A PERMITTED SUBLICENSEE OR OTHER THIRD PARTY. IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, NOTHING HEREIN SHALL IMPLY A WAIVER OF THE CITY'S GOVERNMENTAL IMMUNITY OR OTHER DEFENSES AVAILABLE TO THE CITY UNDER TEXAS LAW. SMU AND CITY ACKNOWLEDGE AND AGREE THAT THE PROVISIONS OF THIS SECTION 9.2 SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THE TERM OF THIS AGREEMENT.**

## ARTICLE 10
## DEFAULT AND REMEDIES

10.1     <u>Cumulative Remedies</u>.  Each right, power, and remedy of City and SMU provided for in this Agreement or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Agreement or now or hereafter existing at law or in equity or by statute or otherwise.  The exercise or beginning of the exercise by City or SMU of any one or more of the rights, powers, or remedies provided for in this Agreement or now or hereafter

CITY 00107

195396

existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by City or SMU of any or all such other rights, powers, or remedies.

10.2     No Implied Waiver.  The failure of any party hereto to insist at any time upon the strict performance of any covenant or agreement or to exercise any option, right, power, or remedy contained in this Agreement shall not be construed as a waiver or relinquishment thereof for the future.  The waiver of redress for any violation of any term, covenant, agreement, or condition contained in this Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation.  No express waiver shall affect any condition other than the one specified in such waiver and that one only for the time and in the manner specifically stated.

**ARTICLE 11**
**MISCELLANEOUS PROVISIONS**

11.1    Conflict of Interest

A.     SMU and its employees, agents or associates are required to make regular, timely, continual and full disclosures to the City of Dallas City Manager of all significant outside interests and responsibilities that may give rise to a direct or indirect conflict of interest, including, but not limited to, any and all significant outside interests and responsibilities that could reasonably be expected to impair independence of judgment in SMU's performance of this Agreement.  Such disclosures must be made no later than ten (10) days following the event giving rise to the potential or actual conflict of interest for the duration of the Term. A potential or actual conflict of interest exists when commitments and obligations to the City or widely recognized professional norms are likely to be compromised in SMU's performance of its duties under this Agreement by the existence of such party's other professional relationships, contracts, obligations, or commitments. Failure to disclose such a conflict of interest may result in City's immediate termination of this Agreement by the City's City Manager.

B.     The following section of the Charter of the City of Dallas shall be one of the conditions, and a part of, the consideration of this Agreement, to wit:

"CHAPTER XXII. Sec. 11.    FINANCIAL INTEREST OF EMPLOYEE OR OFFICER PROHIBITED.

(a)    No city official or employee shall have any financial interest, direct or indirect, in any contract with the city, or be financially interested, directly or indirectly, in the sale to the city of any land, materials, supplies or services, except on behalf of the city as a city official or employee. Any violation of this section shall constitute malfeasance in office, and any city official or employee guilty thereof shall thereby forfeit the city official's or

CITY 00108

**195396**

employee's office or position with the city.  Any violation of this section, with knowledge, express or implied, of the person or corporation contracting with the city shall render the contract involved voidable by the city manager or the city council.

(b)    The alleged violations of this section shall be matters to be determined either by the trial board in the case of employees who have the right to appeal to the trial board, and by the city council in the case of other employees.

(c)    The prohibitions of this section shall not apply to the participation by city employees in federally funded housing programs, to the extent permitted by applicable federal or state law.

(d)    This section does not apply to an ownership interest in a mutual or common investment fund that holds securities or other assets unless the person owns more than 10 percent of the value of the fund.

(e)    This section does not apply to non-negotiated, form contracts for general city services or benefits if the city services or benefits are made available to the city official or employee on the same terms that they are made available to the general public.

(f)    This section does not apply to a nominee or member of a city board or commission, including a city appointee to the Dallas Area Rapid Transit Board.  A nominee or member of a city board or commission, including a city appointee to the Dallas Area Rapid Transit Board, must comply with any applicable conflict of interest or ethics provisions in the state law and the Dallas City Code."

11.2    Gift to Public Servant

City may terminate this Agreement immediately if SMU has offered or agreed to confer any benefit upon a City employee or official that the City employee or official is prohibited by law from accepting.

For purposes of this section, "benefit" means anything reasonably regarded as pecuniary gain or pecuniary advantage, including benefit to any other person in whose welfare the beneficiary has a direct or substantial interest, but does not include a contribution or expenditure made and reported in accordance with law.

Notwithstanding any other legal remedies, City may require SMU to remove any employee of SMU in accordance with this Agreement, who has violated the restrictions of this section or any similar state or federal law, and obtain reimbursement for any expenditures made as a result of the improper offer, agreement to confer, or conferring of a benefit to a City employee or official.

CITY 00109

195396

## 11.3   Notice of Contract Claim

This Agreement is subject to the provisions of Section 2-86 of the Dallas City Code, as amended, relating to requirements for filing a notice of a breach of contract claim against City.  Section 2-86 of the Dallas City Code, as amended, is expressly incorporated by reference and made a part of this Agreement as if written word for word in this Agreement. SMU shall comply with the requirements of this ordinance as a precondition of any claim relating to this Agreement, in addition to all other requirements in this Agreement related to claims and notice of claims.

## 11.4   Notices

Except as otherwise provided in Section 11.3, any notice, payment, statement, or demand required or permitted to be given under this Agreement by either party to the other may be effected by personal delivery in writing or by mail.  Any notice given by mail shall be deemed to have been given when deposited in the U.S. mails, certified return receipt requested and postage prepaid, and addressed to the party to be served at the last address given by that party to the other party under the provisions of this Section.  Notice given by courier, fax, or other form of personal delivery shall be deemed given only upon actual receipt. Any change in address shall be promptly given in writing to the other party pursuant to this notice provision.  The initial addresses for notice are as follows:

> To City:
> Kimberly Bizor Tolbert, Chief of Staff
> Office of the City Manager
> City of Dallas
> 1500 Marilla St., 4EN
> Dallas, TX 75201

> To SMU:
> Brad Cheves, Vice President for Development and External Affairs
> Southern Methodist University
> 6425 Boaz Lane
> Dallas TX 75205

> With copy to Paul Ward, General Counsel
> Southern Methodist University
> 6425 Boaz Lane
> Dallas, TX 75205

## 11.5   Independent Contractor/ No Partnership

Each party's status shall be that of an independent contractor with respect to the other and not an agent, servant, employee, or representative of the other party in each party's

CITY 00110

195396

performance of its obligations herein. Each party shall exercise independent judgment in performing its obligations under this Agreement and is solely responsible for setting working hours, scheduling or prioritizing the work flow and determining how the work is to be performed. No term or provision of this Agreement or act of either party in the performance of this Agreement shall be construed as making such party the agent, servant or employee of the other party, or making either party or any of its employees eligible for the fringe benefits, such as retirement, insurance and worker's compensation, which the other party provides its employees. Nothing in this Agreement shall be deemed to create a partnership, agency, joint venture, or joint enterprise between the Parties.

11.6    Compliance with Laws and Regulations

        This Agreement is entered into subject to and controlled by the Charter and ordinances of the City of Dallas and all applicable laws, rules, and regulations of the State of Texas and the Government of the United States of America. Each party shall, during the course of performance of this Agreement, comply with all applicable City codes and ordinances, as amended, and all applicable state and federal laws, rules, and regulations, as amended.

11.7    Assignment

        This Agreement and all of the parties' respective rights and obligations set forth herein is not assignable without the express written agreement of all parties.

11.8    Non-discrimination

        As a condition of this Agreement, each party covenants that it will take all necessary actions to ensure that, in connection with any operations under this Agreement, such party, its officers, employees and subcontractors, will not discriminate in the treatment or employment of any individual or groups of individuals on the grounds race, age, color, ancestry, national origin, place of birth, religion, sex, sexual orientation, gender identity and expression, military or veteran status, genetic characteristics, or disability unrelated to job performance, either directly, indirectly, or through contractual or other arrangements. Each party shall also comply with all applicable requirements of the Americans with Disabilities Act, 42 U.S.C.A. §§12101-12213, as amended. In this regard, each party shall keep, retain and safeguard all records relating to this Agreement or work performed hereunder for a minimum period of three (3) years from final Agreement completion, with full access allowed to authorized representatives of the other party, upon request, for purposes of evaluating compliance with this and other provisions of the Agreement.

11.9    Governing Law

        The Parties agree that this Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of Texas, (without regard to principles of conflict of laws that would require the application of a law of another jurisdiction).

CITY 00111

195396

## 11.10  Venue

The obligations of the parties to this Agreement shall be performable in Dallas County, Texas and if legal action is necessary in connection with or to enforce rights under this Agreement, exclusive venue shall lie in Dallas County, Texas.

## 11.11  Modification of Agreement

This Agreement may be modified only by written agreement duly signed by persons authorized to sign agreements on behalf of the City and SMU.  Oral modifications are not permitted.

## 11.12  Captions

The captions to the various clauses of this Agreement are for informational purposes only and shall not alter the substance of the terms and conditions of this Agreement.

## 11.13  Binding Nature of this Agreement

It is the intent of the Parties that this Agreement be a binding agreement between them in principle with regard to the provisions set forth herein.  Neither Party shall have any obligation that is inconsistent with the general principles, objectives, and provisions set forth herein, or which increases its costs or expenses beyond what is herein contemplated.

## 11.14  Counterparts

This Agreement may be executed, including electronically, in any number of counterparts, each of which shall be deemed an original and constitute one and the same instrument.  If this Agreement is executed in counterparts, then it shall become fully executed only as of the execution of the last such counterpart called for by the terms of this Agreement to be executed.

## 11.15  Successors and Assigns .

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  City and SMU acknowledge that none of the donors or contributors to or affiliates, officers, directors, shareholders, or employees of SMU and City have any personal liability under this Agreement.

## 11.16  Language

The terms used herein, shall be applicable to one or more persons, as the case may be, and the singular shall include the plural, and the neuter shall include the masculine and feminine, and if there be more than one, the obligations hereof shall be joint and several.  The words "persons" and "parties" whenever used shall include individuals, firms, associations, and corporations.  City and SMU have freely negotiated this Agreement and its terms.

CITY 00112

195396

11.17   Authority to Execute and Perform Agreement

The person or persons signing and executing this Agreement on behalf of their respective party, or representing themselves as signing and executing this Agreement on behalf of such party, do hereby warrant and certify that he, she or they have been duly authorized by their respective party to execute this Agreement on behalf of such party and to validly and legally bind the signatory's respective party to all terms, performances and provisions herein set forth.

11.18   No Third-Party Beneficiaries

This Agreement is solely for the benefit of the parties hereto and their successors and assigns permitted under this Agreement, and no provisions of this Agreement shall be deemed to confer upon any other person any remedy, claim, liability, reimbursement, cause of action or other right.

11.19   Governmental Powers

By execution of this Agreement, City does not waive its sovereign or governmental powers or immunities, all of which are expressly reserved.

11.20   Severability

If any provision of this Agreement shall be determined to be unenforceable, void, or otherwise contrary to law, such condition shall in no manner operate to render any other provision of this Agreement unenforceable, void or contrary to law, and this Agreement shall continue in force in accordance with the remaining terms and provisions hereof, unless such condition invalidates the purpose or intent of this Agreement.

11.21   Third Party Rights

The provisions and conditions of this Agreement are solely for the benefit of SMU and City and are not intended to create any rights, contractual or otherwise, for any person or entity.

11.22   Conflict

In the event of any dispute over the meaning or application of any provision of this Agreement, this Agreement shall be interpreted fairly and reasonably, and neither more strongly for or against any Party, regardless of the actual drafter of this Agreement.

11.23   Entire Agreement

This Agreement (with any referenced Exhibits, attachments, and provisions incorporated by reference) embodies the entire agreement of both parties, superseding all oral or written previous and contemporary agreements between the parties relating to matters set forth in this Agreement.   Any alterations, additions, or deletions to the terms of this

CITY 00113

195396

Agreement required by changes in federal, state or local law or regulations will be incorporated into this Agreement upon written amendment, and shall become effective on the effective date of such amendment.

*[Remainder of this page intentionally left blank.  Signature page to follow.]*

CITY 00114

**195396**

EXECUTED as of this, the 8th day of January_____, 2020 by City, signing by and through its City Manager, duly authorized to execute same by Administrative Action No. 19 _ 5396_____, on December 18, 2019 and by SMU acting through its duly authorized official.

APPROVED AS TO FORM:
CHRISTOPHER J. CASO
Interim City Attorney

CITY OF DALLAS
T. C. BROADNAX
City Manager

C.τ   BY _____
Assistant City Attorney

BY _____
City Manager

SOUTHERN METHODIST UNIVERSITY
a Texas nonprofit corporation

BY *Brad Cheves*
Brad Cheves (Jan 6, 2020)
Brad Cheves,
Vice President for Development and External Affairs

BY *Paul J. Ward*
Paul J. Ward (Jan 6, 2020)
Paul Ward,
Vice President for Legal Affairs, General Counsel, and Secretary

CITY 00115

195396

**EXHIBIT A**

**CITY LOGO**



CITY 00116

195396

**EXHIBIT B**

**SMU LOGO**



195396

**EXHIBIT C**

**COMBINED MARK**



CITY 00118