# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION

| | | |
|---|---|---|
| **CITY OF DALLAS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 3:23-cv-02367-K** |
| | § | |
| **TRIPLE D GEAR, LLC,** | § | |
| *Defendant.* | § | |

## DEFENDANT TRIPLE D GEAR, LLC'S MOTION FOR SUMMARY JUDGMENT and BRIEF INCORPORATED

Defendant Triple D Gear, LLC ("Triple D"), herein moves for summary judgment against Plaintiff City of Dallas's complaint seeking cancelation of three registered trademarks, including:

a) , "Ghost Logo", R/N 6,141,994, Sep. 01, 2020; class 25 (apparel);

b) , "Tilted Star Logo", R/N 4,586,688, Aug. 19, 2014; class 25 (apparel); and

c) , R/N 6,330,048 (Apr. 20, 2021), for classes 25 and 35 (clothing and accessories); together, "Marks".

**Summarizing,** to succeed, the City of Dallas must establish that: 1) it will likely be damaged by the registration; and 2) a valid legal reason to discontinue the registration.

Because the Star Logo ('688) was registered in 2014, far more than five years ago, the City must show that Triple D procured the mark through fraud. Though the newer marks can be challenged based on other grounds, the City cannot show evidence that the Marks were obtained through fraud, or show an error in the TTAB's proceedings, or any other grounds for cancelation.

In this case, the City has attempted to argue that it will be damaged unless the Court cancels the Marks, yet the City has yet to articulate a colorable claim to such damages. Because the City cannot show fraud or damage, the Court should dismiss its cancelation, just as the TTAB did.

## TABLE OF CONTENTS

I.    EVIDENCE AND EXHIBITS ............................................................................. 5

II.   FACTS ............................................................................................................. 6

III.  STANDARD OF REVIEW ................................................................................ 7

IV.   AUTHORITIES ................................................................................................ 8

V.    CLAIMS ........................................................................................................... 9

   Plaintiff's Claim 1 and 2: TTAB properly denied cancelation of the Marks. ........................... 9

      A.    Plaintiff Has Not Sufficiently Demonstrated Priority of Use ......................................... 9

      B.    Plaintiff Has Not Demonstrated Likelihood of Confusion Between the City Logo and
      Defendant's Ghost Logo Mark .................................................................................. 12

   Plaintiff's Claim 3: Plaintiff's request for cancellation of fraudulently obtained trademark
   registrations (15 u.s.c. § 1120) should be denied. ...................................................... 22

VI.   REQUEST FOR ATTORNEY'S FEES .......................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Alzheimer's Disease and Related Disorders Association, Inc. v Alzheimer's New Jersey,*
  2021 WL 6211488 (TTAB Dec. 31, 2021) ......................................................................... 17, 19
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ................................................................. 8
*Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ................................. 8
*Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d at 1371,
  101 USPQ2d 1713,1723 (Fed. Cir. 2012) ........................................................................................ 18
*Dennis Pierce, Inc. v. Pierce*, 735 F. App'x 144, 145 (5th Cir. 2018) ......................................... 22
*Diaz v. Servicios De Franquicia Pardo's S.A.C.,*
  83 USPQ2d 1320, 1322 (TTAB 2007) ............................................................................................ 10
*Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) ..................................... 9
*First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968) ......... 8
*Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986) ............................................ 8
*General Mills Inc. v. Fage Dairy Processing Industry SA*, 100 USPQ2d 1584, 1598 (TTAB 2011) ......... 16
*Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 507 (5th Cir. 2018) ................................... 22
*Hard Rock Café Int'l (USA) Inc. v. Elsea*, 56 USPQ2d 1504, 1512 (TTAB 2000) .................... 17
*In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) ................................................................. 22
*In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) ............... 12
*In re N.A.D., Inc.,* 754 F.2d 996, 999-1000, 224 USPQ 969, 971 (Fed. Cir. 1985) .................. 21
*In re National Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985) ............................................... 13
*In re Thor Tech, Inc.*, 113 USPQ2d 1546, 1551 (TTAB 2015) ..................................................... 21
*Interstate Brands Corporation v. Celestial Seasonings, Inc.,*
  196 USPQ 321, 324 (T.T.A.B. 1977), aff'd. 198 USPQ 151 (C.C.P.A. 1978) ....................... 12
*Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953, 1960 (TTAB 2008) ..................... 10
*Local Trademarks, Inc. v. Handy Boys Inc.,* 16 USPQ2d 1156, 1158 (T.T.A.B. 1990) ............ 18
*Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986) ............ 8
*Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993) .......................................... 22
*Moke America LLC v. Moke USA, LLC*, 2020 USPQ2d 10400 (TTAB 2020) ............................ 10
*Ocean Spray Cranberries, Inc. v. Ocean Garden Prods., Inc.*, 223 USPQ 1027 (TTAB 1984) ................ 13
*Orange Bang, Inc. v. Olé Mexican Foods, Inc.*, 116 USPQ2d 1102, 2015 WL 5675641 (TTAB 2015) .... 16
*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985) .................................... 8
*Paula Payne Prods. Co. v. Johnson's Publ'g Co.,*
  473 F.2d 901, 902, 177 USPQ 76, 77 (C.C.P.A. 1973) ............................................................... 18
*Red Carpet Corp. v. Johnstown Am. Enters.*, 7 USPQ2d 1404 (TTAB 1988) ........................... 14
*Research in Motion Limited v. Defining Presence Marketing Group, Inc. and Axel Ltd. Co.,*
  102 USPQ2d 1187 (TTAB 2012) ....................................................................................................... 17
*Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1244-45, 73 USPQ2d 1350, 1356 (Fed. Cir. 2004) ....... 18
*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 92 USPQ2d 1769, 1782 (2d Cir. 2009) .... 20
*Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 4 USPQ2d 1793, 1798 (Fed. Cir. 1987) ... 19
*Taj Mahal Enterprises Ltd. v. Trump*, 745 F. Supp. 240, 247 (D.N.J. 1990) ............................. 13
*Tektronix, Inc. v. Daktronics, Inc.*, 189 ESPQ 693 (CCPA 1976) ............................................... 14
*Texas Int'l Prop. Assocs. v. Hoerbiger Holding AG,*
  624 F. Supp. 2d 582, 592 (N.D. Tex. 2009)(Kinkeade, J.) ........................................................ 22

*Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 693 n.14 (5th Cir. 1992)...................22
*The Maytag Co. v. Luskin's, Inc.,* 228 U.S.P.Q. 747 (TTAB 1986)............................................20
*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992) .............................................8
*Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.,*
    909 F.2d 839, 842 (5th Cir. 1990) ............................................................................8
*Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 2 U.S.P.Q.2d 1264 (1st Cir. 1987)..............9

## Statutes

15 U.S.C. § 1071(b) ............................................................................................23
15 U.S.C. § 1115(a)............................................................................................9
17 U.S.C. § 505 ................................................................................................23

## Other Authorities

Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 16:5 (4th ed.2006) ..................16

## Rules

FED. R. CIV. P. 56(a)...........................................................................................7

# I.    EVIDENCE AND EXHIBITS

**Exhibit A: Business Declaration of Arturo Sanchez**

A-1: Deposition of Arturo Sanchez (TRIPLE_D_30000-30168)
      from TTAB Pro. 92077406, Petitioner's First Notice of Reliance, Docket No. 13

A-2: Exhibit 1-6 to Sanchez Deposition (TRIPLE_D_30169-30232)
      from TTAB Pro. 92077406, Petitioner's First Notice of Reliance, Docket No. 14

A-3: Exhibit 7-14 to Sanchez Deposition (TRIPLE_D_30233-30273)
      from TTAB Pro. 92077406, Petitioner's First Notice of Reliance, Docket No. 15

A-4: Exhibit 15-20 to Sanchez Deposition (TRIPLE_D_30274-30294)
      from TTAB Pro. 92077406, Petitioner's First Notice of Reliance, Docket No. 16

A-5: Exhibit 21-22 to Sanchez Deposition (TRIPLE_D_30295-30314)
      from TTAB Pro. 92077406, Petitioner's First Notice of Reliance, Docket No. 17

A-6: Exhibit 23-27 to Sanchez Deposition (TRIPLE_D_30315-30344)
      from TTAB Pro. 92077406, Petitioner's First Notice of Reliance, Docket No. 18

A-7: Interrogatory Answers and Admissions (TRIPLE_D_30345-30405)
      from TTAB Pro. 92077406, Petitioner's Second Notice of Reliance, Docket No. 19

A-8: Video and Printed Publications (TRIPLE_D_30406-30417)
      from TTAB Pro. 92077406, Petitioner's Third Notice of Reliance, Docket No. 22

A-9: Trademark Registrations (TRIPLE_D_30418-30429)
      from TTAB Pro. 92077406, Petitioner's Fourth Notice of Reliance, Docket No. 20

A-10: Official Records (TRIPLE_D_30430-30515)
      from TTAB Pro. 92077406, Petitioner's Fifth Notice of Reliance, Docket No. 21

Exhibit B: Declaration of Arturo Sanchez

Exhibit C: TTAB Final Decision, Order Denying Cancelation of R/N 6141994 ("Ghost Logo"),
https://ttabvue.uspto.gov/ttabvue/v?pno=92077406&pty=CAN&eno=28.

Exhibit D:  Declaration of Warren Norred

## II.    FACTS

1.    This case arises from Plaintiff City of Dallas's appeal of the decisions of the final decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("TTAB"), wherein the City sought to reverse the TTAB's refusal to cancel the Ghost Logo in cancelation proceeding 92077406.



2.    In 1972, the City adopted the "City Logo" as a trademark and service mark for the services rendered by the City and marketing and informational materials (including promotional merchandise such as t-shirts, bags, and other goods) distributed therewith. Exhibit D-1.

3.    The City Logo identifies the City of Dallas for municipal services. ECF 55, Para. 11-14.

4.    In 2007, Ahmed Youssef ("Youssef") and Arturo Sanchez ("Sanchez") began doing business as co-owners of Triple D Gear. Exhibit B.



5.    A comparison of the Ghost Logo and City Logo can be seen below:



6.    A key difference between the Ghost Logo and the City's Logo is the absence of the stylized oak leaf that is an integral component of the City Logo. Both logos contain an interruption near the top of the vertical lines of the concentric "Ds," and contain roughly the same proportion of solid space to white space.

7.    Defendant employs two variants of the Ghost Logo that incorporated a star in the center, the "Titled Star Logos" or "Star Logos":



6,330,048                    4,586,688

8.    The Star Logos differ from the Ghost Logo via incorporation of a star in the center of the Ghost Logos' concentric D's. Similarly, the Star Logo differs from the City Logo because the star sits in the center of the Logo instead of the City's stylized oak leaf and the open ends of the concentric lines that make up the Ds are rounded instead of straight.

9.    Defendant employes the concentric D's in both the Ghost Logo and the Star Logo on its hip-hop apparel to invoke the hip-hop slogan "dirty dirty Dallas." Exhibit B.

10.    The TTAB denied Plaintiff's previous effort to cancel Defendant's Marks under Section 2(d) of the Trademark Act, 15 U.S.C. Sec. 1052(d). Exhibit C.

### III.    STANDARD OF REVIEW

11.    Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[…] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1). Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a

merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

12.     A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").

13.     To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. Anderson, 477 U.S. at 249 (*citing First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

## IV.    AUTHORITIES

14.     The purpose of trademark law is to secure to the owner of the mark the goodwill of its business and to protect the ability of consumers to distinguish among competing producers. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)*; Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985) ("The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.").

15.     Ownership of a trademark is established by use of the trademark and does not need to be registered in order to obtain protection. *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990).

16.    A federal trademark registration is [rebuttable] evidence of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the registration. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citing 15 U.S.C. § 1115(a)).

## V.    CLAIMS

### **Plaintiff's Claim 1 and 2: TTAB properly denied cancelation of the Marks.**

#### A. **Plaintiff Has Not Sufficiently Demonstrated Priority of Use**

17.    Plaintiff claims it has priority of use as to its City Logo. As to Plaintiff's use of the City Logo to provide its municipal services and on uniforms to identify the employees of Plaintiff who provide those municipal services, Defendant has not disputed that use by Plaintiff, and in fact has acknowledged throughout this litigation that Plaintiff does indeed have rights in the City Logo *as to that scope of priority of use*. (City 2nd Notice of Reliance ("NOR"), Exh. 2 at 3, Responses to Request for Admission Nos. 1, 5, 6, 7, 9, 13; City 2nd NOR, Exh 3 at 5, Responses to Interrogatories 5, 27, and 28.)

18.    However, what Plaintiff has *not* sufficiently demonstrated is that its priority of use of its City Logo extends to Plaintiff being an apparel and lifestyle brand, using its City Logo as it engages in the making and selling of apparel and headwear sold in retail channels.

19.    "The right to trademark and service mark rights is based on prior use, or the one who first uses the marks in connection *with a peculiar line of business*." *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 2 U.S.P.Q.2d 1264 (1st Cir. 1987).

20.    Plaintiff's "peculiar line of business" is the provision of municipal services and the identification of employees providing those services, and its priority of use relates to "city publications, on letterheads and envelopes, memos and business cards"; "police cars"; and in things that "emanate from City Hall" to "carry a proper air of bureaucracy". (Petitioner's 3rd NOR,

Exhibits 8 – 10). Plaintiff's "peculiar line of business" is *not* as an apparel and lifestyle brand engaged in the making and selling of apparel and headwear, at retail.

21.    Plaintiff has *not* used the City Logo, and has *not* demonstrated use of the City Logo, as a mark for an apparel and lifestyle brand, or for apparel and headwear, sold in retail channels.

22.    Nor has Plaintiff produced *any* evidence that it had a long-standing promotional or licensing program with use of the City Logo on apparel products, or that it has used the City Logo to generate revenue for or promote tourism in Dallas, Texas.

23.    When a Plaintiff has not proven its priority rights, as a matter of law it cannot prevail on a likelihood of confusion claim, either. *See, e.g., Diaz v. Servicios De Franquicia Pardo's S.A.C.*, 83 USPQ2d 1320, 1322 (TTAB 2007) (in view of decision in applicant's favor on issue of priority, opposer cannot as a matter of law prevail on likelihood of confusion claim); *Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953, 1960 (TTAB 2008) (failure to prove priority by preponderance of the evidence); and *Moke America LLC v. Moke USA, LLC*, 2020 USPQ2d 10400 (TTAB 2020) (likelihood of confusion claim dismissed for failure to prove priority of use), appeal filed, No. 3:20-CV-0040 (E.D. Va, June 5, 2020).

24.    Plaintiff's argument for priority of use hinges on an interview from 2018 in which Plaintiff acknowledges taking inspiration from the City Logo in creating the Star Logos. The relevant portions of the interview are transcribed as follows:

Interviewer: You started as a recording Engineer?

Sanchez: Definitely.

Interviewer: But now we are in clothes. So how did you get that?

Sanchez: Well basically we were in the recording/engineering…we were recording music in the hip-hop industry in Dallas. And we just started doing gear and the fashion sort of grabbed us. And we started representing.

Interviewer: It called you.

Sanchez: Yeah.

Interviewer: It called you home.

Interviewer: Ok, now it's Triple D gear. So what does the D stand for?

Sanchez: So basically, we're from the third coast and the dirty south, so it's called dirty Dallas. Not to say that the city is dirty…

Interviewer: No,

Sanchez:…but we're just in the dirty dirty.

Interviewer: No.  It's a clean city.

Sanchez: Yes, Definitely.

Later in the interview at 2:01,

Interviewer: The Logo is the "D", it is the Dallas D and it looks very familiar, it looks like the city D.

Sanchez: Yes.

Interviewer: But Ya'll have your own twist on it because inside is a star.

Sanchez: Yes.

Interviewer: I'll stop moving so you can see it. But, but how did you make your own print on the D.

Sanchez: Basically, we took the City of Dallas Logo and we just put a star in it and tilted it, gave it a 90-degree angle. Gave it the whole look.

Interviewer: That way you won't get sued by the City too, huh.

25.    This alleged admission cannot do the buttressing the City needs for its claims. As the conversation makes explicit, Defendant designed his logos, including the Ghost and both Star Logos, to reference Dallas the city and community, rather than the municipality.

26.    The City has historically used its Leaf Logo for municipal services. The fact that Plaintiff has created both a minimalist interpretation of the logo that represents Dallas as a community does not indicate prior use on the part of Dallas.

27.    Because Plaintiff has not met its burden of proof on the priority claim, Defendant respectfully submits that Plaintiff's likelihood of confusion claim should be dismissed.

### B.    Plaintiff Has Not Demonstrated Likelihood of Confusion Between the City Logo and Defendant's Ghost Logo Mark

28.    Although Plaintiff has not sufficiently demonstrated its priority of use and thus its likelihood of confusion claim should be dismissed, in the event the Court has not dismissed Plaintiff's likelihood of confusion claim, Defendant herewith shows that Plaintiff has also not demonstrated likelihood of confusion between the City Logo and Defendant's Ghost Logo mark.

### i.    *Legal Standard*

29.    There is no one "mechanical test" to determine a likelihood of confusion, and there is no per se rule in determining likelihood of confusion between two marks. *Interstate Brands Corporation v. Celestial Seasonings, Inc.,* 196 USPQ 321, 324 (T.T.A.B. 1977), aff'd. 198 USPQ 151 (C.C.P.A. 1978) ("[T]rademark law must necessarily be flexible responding to particular circumstances disclosed by particular fact situations thereby making a hard and fast rule in these cases anathema to its concept and application.")

30.    The evidentiary factors a court considers in determining likelihood of confusion are set out in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). TBMP § 309.03(c)(2)B.

31.    Here, an examination of the relevant factors makes it clear that no confusion is likely between the City Logo and the Ghost Logo.

*ii.*     ***The Marks Are Not Confusingly Similar***

32.     Design marks – such as the City Logo and the Ghost Logo here – are perceived visually and graphically and are not spoken or read. The City Logo is specifically described as "a blue capital letter D with a green stylized tree inside it," "the Big D symbol…with a green leaf cluster in the center," a "stylized blue D," and the center element of "a stylized drawing of a leaf with three sections and a stem." (Petitioner's 3rd NOR, Exhibits 8 -10) (TTABVUE 22); Description of Mark as in Plaintiff's U.S. trademark application SN 90132560 which was cited in Petition for Cancellation, Paragraph 5 (TTABVUE 1)).

33.     Distinctly, the Ghost Logo does not have any design element in the center. Instead, the Ghost Logo is simply comprised of "three Ds which derive their meaning from the phrases "da dirty dirty" (referring to one who lives in the South) and the related "dirty dirty Dallas" (referring to pride in Dallas as a Southern city, particularly as used in the Dallas hip hop scene). Defendant chose the Ghost Logo "for its meaning and how well it resonated in the hip hop scene." (Registrant's NOR, Declaration of Alfredo Arturo Sanchez) (TTABVUE 23).

34.     Comparison of marks "cannot be predicated on dissection of mark." *In re National Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985), and the analysis of marks must be "taken as a whole." *See Taj Mahal Enterprises Ltd. v. Trump*, 745 F. Supp. 240, 247 (D.N.J. 1990) ("In making such a comparison, the relevant factor is 'the overall impression created by the mark as a whole rather than simply comparing individual features of the marks.'").

35.     There are, therefore, obvious differences in appearance between the City Logo and the Ghost Logo. Each logo is an abstract design and presents different connotations and is perceived by relevant consumers in different ways, especially because they are used with vastly different goods and services. *See, Ocean Spray Cranberries, Inc. v. Ocean Garden Prods., Inc.*, 223 USPQ 1027 (TTAB 1984) (mark consisting of a circle containing three curved lines with rounded ends,

for seafood, and mark consisting of a stylized breaking wave within an oval, for various food items including juices and fruits, not likely to cause confusion).

36.     And, although Plaintiff tries to argue that the capital or "Big D" of its mark is the same as the Ghost Logo, the fact is that even when two design marks might include a somewhat similar element, that alone is not enough support on which to base a likelihood of confusion finding. *Red Carpet Corp. v. Johnstown Am. Enters.*, 7 USPQ2d 1404 (TTAB 1988) (*citing Tektronix, Inc. v. Daktronics, Inc.*, 189 ESPQ 693 (CCPA 1976) and holding mark consisting of a highly stylized house design for use in connection with real estate property management, and mark consisting of a highly stylized house design for use in connection with real estate brokerage services, not likely to cause confusion).

37.     Plaintiff has also not produced any evidence that the City has ever referred to the City Logo or itself as "triple D", or that the relevant consumer does, either. Though the City may crow about the suit between Sanchez and Yousef, but in that case between two non-attorney players in the urban, hip-hop music scene, "triple D" was only a reference to the geographic location of Dallas, and specific to urban pop culture and hip-hop music – not to the City of Dallas as a municipality.

38.     At no point has Plaintiff shown that "triple D" refers to the City Logo, or that the Plaintiff intended for the City Logo to carry that connotation. Very differently, the Plaintiff has presented evidence that the City Logo is referred to as the "Big D" symbol and is "…meant to symbolize the quality of living in Dallas, and also projects a feeling of greenery, growth, and concern for the environment," and "growth and a good place to live." Given Plaintiff's intent for the City Logo to represent those qualities, the inclusion of the "green stylized tree" or "green leaf cluster" is a critical element that distinguishes the City Logo and makes the difference clear between it and the Ghost Logo. (Petitioner's 3rd NOR, Exhibits 8 -10) (TTABVUE 22).

39. The City Logo and Ghost Logo are not similar, and the notable distinctions in appearance, meaning, and commercial impression negate a likelihood of confusion.

### iii.    The Goods and Services Are Vastly Different

40. The differences between the marks are quite clear, and the differences in the goods and services of Plaintiff and Defendant are even more apparent.

41. Defendant is not a municipality and does not offer municipal services. It is an apparel and lifestyle brand. Defendant uses its Ghost Logo as one of the marks offered by its brand, which started out offering tour merchandise related to hip hop music tours offered by a related entity and was expanded it into a streetwear and athletic apparel brand with cultural relevance even beyond the music industry. For over fifteen years, Defendant has offered various products such as shirts, hats, beanies, pants, jackets, jerseys, sweatshirts, and hoodies, and the Ghost Logo products are usually offered in special edition, limited edition and/or limited release capsule collections to enhance the exclusive impression of the Ghost Logo products to Defendant's customers. Over time, Defendant's products have been offered for sale in brick and mortar apparel and accessory retailers in the Dallas, Texas are, online at Defendant's website, through pop-ups at concerts and events, and through U.S. military exchanges. (Registrant's NOR, Dec. of Sanchez, TTABVUE 23).

42. Plaintiff has not used the City Logo, and has not demonstrated use of the City Logo, as a mark for an apparel and lifestyle brand, or for apparel and headwear, sold in retail channels. Nor would it have reason to do so, since its use of the City Logo for employee uniforms and intended by Plaintiff to be worn while providing municipal services, is very different. Use of a mark on employee uniforms is intended to officially identify a municipality's employees who are performing services for its residents; it is improbable that Plaintiff would create and sell an apparel line with the City Logo for non-employees to purchase and wear. Even if on one occasion for a

limited run of promotional tee shirts – *if* that even happened, given Plaintiff's positioning it more as a hypothetical and never providing any evidence of it – would also be very different.

43.    Importantly, Plaintiff has also not illustrated that the making and selling of apparel and headwear, in retail channels, is within a "natural expansion zone" of use of the City Logo beyond the provision of municipal services. A common law trademark provides a senior user with priority when compared to a junior user who is using a confusingly similar mark *in connection with the same or similar goods or services or within the natural zone of expansion*. Under the "natural zone of expansion" doctrine, when the "senior user of a mark on product line A expands later into product line B and finds an intervening user, priority in product line B is determined by whether the expansion is 'natural' in that customers would have been confused as to source or affiliation at the time of the intervening user's appearance." 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 16:5 (4th ed.2006).

44.    The doctrine of natural expansion is used in *inter partes* matters like this Cancellation proceeding in connection with priority. "Under this doctrine the first user of a mark in connection with particular goods or services possesses superior rights in the mark as against subsequent users of the same or similar mark for any goods or services which purchasers might reasonably expect to emanate from it in the normal expansion of its business under the mark." *Orange Bang, Inc. v. Olé Mexican Foods, Inc.*, 116 USPQ2d 1102, 2015 WL 5675641 (TTAB 2015), *citing General Mills Inc. v. Fage Dairy Processing Industry SA*, 100 USPQ2d 1584, 1598 (TTAB 2011), judgment set aside on other grounds, 110 USPQ2d 1679 (TTAB 2014).

45.    Here, Plaintiff cannot effectively claim priority of use of the City Logo for "t-shirts and other items of apparel." (Petitioner's Trial Brief, at 1) (TTABVUE 24).

46.     The record does not show that Plaintiff's municipal services and Defendant's retail sales of apparel and headwear are related. Rather, the services of Plaintiff and goods of Defendant are not colorably related. "[T]his *du Pont* factor does not support the position of [Petitioner]." *Research in Motion Limited v. Defining Presence Marketing Group, Inc. and Axel Ltd. Co.,* 102 USPQ2d 1187 (TTAB 2012).

   *iv.    The Channels of Trade are Not the Same*

47.     Because Plaintiff asserts only common law rights, the likelihood of confusion analysis can only be based on the channels of trade and classes of consumers that Plaintiff has shown on the record. Plaintiff's consumers are its "constituents", e.g., residents of Dallas, Texas. Municipal services are those delivered by a city to its residents, in a channel of trade specific to the delivery of municipal services. Residents do not "shop" at retail for municipal services; rather, when a person takes residence in Dallas, Texas, certain municipal services are provided to them and in many cases those are the only services of that type of which they can avail themselves within the city (for example, trash collection, water and sewer services, police and fire services, and the like).

48.     Plaintiff's common law rights in its City Logo for its municipal services "are limited to the actual . . . channels of trade for which it uses its mark." *Alzheimer's Disease and Related Disorders Association, Inc. v Alzheimer's New Jersey*, 2021 WL 6211488 (TTAB Dec. 31, 2021). *See also Hard Rock Café Int'l (USA) Inc. v. Elsea*, 56 USPQ2d 1504, 1512 (TTAB 2000) (noting that opposer's channels of trade were limited to its common law uses).

49.     In contrast to how Defendant offers its products, Plaintiff does not deliver its municipal services in retail apparel stores, on an apparel and lifestyle brand ecommerce website, or via U.S. military exchanges. Nor does Defendant sell its products in municipal buildings or offer services to Dallas residents. The channels of trade for Plaintiff's services and Defendant's goods are nowhere near the same.

50.    If the goods are not related or marketed in such a way that they would be encountered by the same consumers in situations that would create the incorrect assumption that they originate from the same source, then, even if the marks are identical - which is *not* the case here - confusion is not likely. TMEP § 1207(a)(i) (emphasis added). *See, e.g., Local Trademarks, Inc. v. Handy Boys Inc.,* 16 USPQ2d 1156, 1158 (T.T.A.B. 1990) (finding liquid drain opener and advertising services in the plumbing field to be such different goods and services that confusion as to their source is unlikely even if they are offered under the same marks); *Paula Payne Prods. Co. v. Johnson's Publ'g Co., 473 F.2d 901, 902, 177 USPQ 76, 77 (C.C.P.A. 1973)* ("[T]he question is not whether people will confuse the marks, but rather whether the marks will confuse people into believing that the goods they identify emanate from the same source").

51.    No one is going to mistake Plaintiff as a retail apparel and lifestyle brand. Neither would any rational person look to Defendant for municipal services. Consumers will not be confused when encountering the City Logo and the Ghost Logo in the unique channels of trade the services of Plaintiff and the goods of Defendant occupy. *See, e.g., Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d at 1371, 101 USPQ2d 1713,1723 (Fed. Cir. 2012) (affirming the Board's dismissal of opposer's likelihood-of-confusion claim, noting "there is nothing in the record to suggest that a purchaser of test preparation materials who also purchases a luxury handbag would consider the goods to emanate from the same source" though both were offered under the COACH mark); and *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1244-45, 73 USPQ2d 1350, 1356 (Fed. Cir. 2004) (reversing TTAB's holding that contemporaneous use of RITZ for cooking and wine selection classes and RITZ for kitchen textiles is likely to cause confusion, because the relatedness of the respective goods and services was not supported by substantial evidence).

**v.    *Defendant Adopted its Ghost Logo in Good Faith***

52.    The CEO of Defendant, who was born and raised in Dallas, in the foster care system, "grew up knowing Dallas as "Big D," has a deep love for Dallas, Texas and "take(s) pride in owning a Dallas-rooted business." (Registrant's NOR, Declaration of Alfredo Arturo Sanchez, Paragraph 2) (TTABVUE 23). Mr. Sanchez, as a youth, "probably saw the City's Logo on or in connection with its use on trash bins when doing the chore of taking out the trash for his foster parents." (Petitioner's 2nd NOR, Exhibit 3 at 5, Response to Interrogatory No. 5).

53.    Plaintiff tries to tie this familiarity with the City Logo to Defendant's intent in developing and adopting its Ghost Logo. Bad faith, however, requires much more. As noted by the Trial and Appeal Board in *Alzheimer's Disease and Related Disorders Association, Inc. v Alzheimer's New Jersey*, 2021 WL 6211488 (TTAB Dec. 31, 2021), "an inference of 'bad faith' requires something *more than mere knowledge* of a prior similar mark." (emphasis added). *See also Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 4 USPQ2d 1793, 1798 (Fed. Cir. 1987).

54.    Plaintiff has not provided any evidence that Defendant intended to confuse consumers about the source of its urban, hip hop apparel products, and Defendant has made it clear that it never intended to make such a connection, because it would be "uncool" for people to wear apparel that could be confused with uniforms worn by employees who were providing municipal services:

>    *Q: And you have stated that somehow the ghost logo was not inspired by the City's logo, it's not based on the City's logo, and it's not similar to the City's logo*

>    *A: Correct.*

>    *Q: Because the City's logo's not cool.*

>    *A: Correct.*

>    *Q: Is it the oak leaf that makes it uncool?*

*A: The whole thing is uncool because, when you look at it, the first thing you think of is municipal services.*

(Petitioner's 1st NOR, Exhibit 1 at 138:13 -139:3).

55.    Defendant had absolutely no intent to confuse the logos and it is nonsensical to assert that it did. Defendant did not build a successful urban hip hop apparel and lifestyle brand by creating products that would be confused with the uniforms of municipal workers. A finding of bad faith must be supported by evidence of an intent to confuse, rather than mere knowledge of another's mark or even an intent to copy. *See, e.g., Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 92 USPQ2d 1769, 1782 (2d Cir. 2009) ("[T]he only relevant intent is intent to confuse. There is a considerable difference between an intent to copy and an intent to deceive.") (quotation omitted). And, *even if* Defendant's development of the Ghost Logo had been inspired by its founder's familiarity with a brand that had been in his subconscious since childhood, "…there is nothing sinister about this derivation in view of the wide difference" in the parties' respective goods and services. *The Maytag Co. v. Luskin's, Inc.,* 228 U.S.P.Q. 747 (TTAB 1986).

56.    To show that Defendant adopted its Ghost Logo in bad faith, Plaintiff would have to show that Defendant intentionally took steps to confuse and trade on Plaintiff's mark. Plaintiff has presented no such evidence.

### vi.    *The Customers of Each Party Can Clearly Distinguish the Marks and the Sources of the Respective Goods and Services*

57.    Plaintiff takes a very dim and narrow view of Defendant's customers, inferring that because they are purchasing a relatively affordable article of apparel or headwear from Defendant, they are incapable of distinguishing between Plaintiff's City Logo for municipal services and Defendant's Ghost Logo for a brand of apparel and lifestyle products that are rooted in an identity with urban hip-hop culture.

58.     It is that consumer awareness of the "Triple D" brand – and its Ghost Logo products –
meaning "da dirty dirty" (referring to one who lives in the South) and the related "dirty dirty
Dallas" (referring to pride in Dallas as a Southern city, particularly as used in the Dallas hip hop
scene), that makes Defendant's consumers seek it out specifically as the source of such products.
That alignment of consumers with a lifestyle or culture underscores a level of care and attention
in purchasing, which minimizes the likelihood of confusion. *See, e.g., In re N.A.D., Inc.,* 754 F.2d
996, 999-1000, 224 USPQ 969, 971 (Fed. Cir. 1985) (concluding that, because only sophisticated
purchasers exercising great care would purchase the relevant goods, there would be no likelihood
of confusion merely because of the similarity between the marks NARCO and NARKOMED; and
*In re Thor Tech, Inc.*, 113 USPQ2d 1546, 1551 (TTAB 2015) (holding use of identical marks for
towable trailers and trucks not likely to cause confusion given the difference in the nature of the
goods and their channels of trade and the high degree of consumer care likely to be exercised by
the relevant consumers).

59.     The level of care Defendant's customers exercise is much deeper than what one of
Plaintiff's "constituents" exercises inasmuch as Plaintiff's services are put upon its residents by
virtue of their Dallas, Texas address; residents simply avail themselves of the services because
they are what Plaintiff offers and they have no other provider for services like sanitation/trash,
water/sewer, and police/fire services.

60.     This is yet another factor which favors Defendant and a finding of no likelihood of
confusion, even if that factor was relevant.

**Plaintiff's Claim 3: Plaintiff's request for cancellation of fraudulently obtained trademark registrations (15 u.s.c. § 1120) should be denied.**

61.    The City's Complaint seeks cancellation of three Triple D trademarks the City alleges Triple D fraudulently obtained, including U.S. Reg. Nos. 6,141,994, 4,586,688 and 6,330,048.

62.    A claim of fraud against the Patent and Trademark Office ("PTO") in connection with a trademark registration requires proof of: (1) a false representation of a material fact; (2) knowledge or belief that the representation was false; (3) an intent to induce the PTO to act in reliance on the misrepresentation; (4) reasonable reliance by the PTO on the misrepresentation; and (5) damage from such reliance. *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 693 n.14 (5th Cir. 1992); *see also Texas Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 592 (N.D. Tex. 2009) (Kinkeade, J.).

63.    To prove fraudulent registration, the challenging party must prove by clear and convincing evidence that the applicant made false statements with the intent to deceive the PTO. *Hoerbiger Holding*, 624 F. Supp. 2d at 592 (citing *Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993)); *see also Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 507 (5th Cir. 2018); *Dennis Pierce, Inc. v. Pierce*, 735 F. App'x 144, 145 (5th Cir. 2018).  "[A]bsent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).

64.    Plaintiff cannot succeed on the third element of intent. Plaintiff has failed to allege any intentional misstatement to the trademark office. Irrespective of whether Triple D or Sanchez were mistaken as to the facts regarding Ahmed Yousef's ownership interest in 2012, none of those facts indicate intent to mislead. Even if this court finds that Plaintiff materially misrepresented the year in which he acquired ownership via confusion regarding who held which marks, there is no evidence to suggest that Plaintiff intended to procure the mark fraudulently; being mistaken on

such facts implies no fraudulent intent, or cannot be considered facts supporting allegations of deliberate deceit that is required to find fraud.

## VI.    REQUEST FOR ATTORNEY'S FEES

65.    Plaintiff seeks reasonable attorney's fees under 17 U.S.C. § 505, in accordance with the Declaration of Warren Norred, filed concurrently in Exhibit D.

### PRAYER

Wherefore, TRIPLE D respectfully requests that this Court rule as follows:

a.    That this Court sustain the August 23, 2023 decision in Cancellation No. 92077406 pursuant to 15 U.S.C. § 1071(b);

b.    That this Court dismiss Plaintiff's claim to cancel Registration No. 6,141,994;

c.    That this Court dismiss Plaintiff's claim to cancel Registration No. 4,586,688;

d.    That this Court dismiss Plaintiff's claim to cancel Registration No. 6,330,048;

e.    That the Court award Triple D its reasonable attorneys' fees, expenses, and costs in this action; and

f.    That this Court grant the City such other relief to which the City is entitled.

For an award of such other relief to Triple D as this Court deems just and proper.

Respectfully submitted,

/s/*Warren V. Norred*
Warren V. Norred; State Bar No. 24045094
Norred Law, PLLC; 515 E. Border Street; Arlington, Texas 76010
warren@norredlaw.com
P: 817-704-3984, F: 817-524-6686

**CERTIFICATE OF SERVICE:** I hereby certify that on January 06, 2025, a true and correct copy of the foregoing was served on Plaintiff's counsel of record Megan M. O'Laughlin at molaughlin@hitchcockevert.com via the Court's CM/ECF system.

/s/ *Warren V. Norred*
Warren V. Norred