# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION

| | | |
|---|---|---|
| **CITY OF DALLAS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 3:23-cv-02367-K** |
| | § | |
| **TRIPLE D GEAR, LLC,** | § | |
| *Defendant.* | § | |

## BUSINESS RECORDS DECLARATION OF ALFREDO ARTURO SANCHEZ

I, Alfredo Arturo Sanchez, declare under penalty of perjury that the following is true and correct.

I am the president and custodian of the records for Triple D Gear, LLC ("Triple D"). Attached post-signature are 516 pages of records concerning the registration of trademarks owned by Triple D. These said records are kept by me in the regular course of business, of which I have personal knowledge, and it was the regular course of my business to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. These records are the original or exact duplicates of the original. Some of the records I was directly part of, and some of them were provided to me as they were created by the parties. All of them were part of the TTAB proceeding as indicated thereon. I stand by all the statements that I made in my deposition and in the TTAB proceedings, some of which are included in these documents.

Alfredo Arturo Sanchez, Declarant

| Exh. | Description |
|---|---|
| A-1 | TTAB Petitioner's First Notice of Reliance (Discovery Deposition of Arturo Sanchez) |
| A-2 | TTAB Petitioner's First Notice of Reliance (Exhibit 1-6 to Discovery Deposition) |
| A-3 | TTAB Petitioner's First Notice of Reliance (Exhibit 7-14 to Discovery Deposition) |
| A-4 | TTAB Petitioner's First Notice of Reliance (Exhibit 15-20 to Discovery Deposition) |
| A-5 | TTAB Petitioner's First Notice of Reliance (Exhibit 21-22 to Discovery Deposition) |
| A-6 | TTAB Petitioner's First Notice of Reliance (Exhibit 23-27 to Discovery Deposition) |
| A-7 | TTAB Petitioner's Second Notice of Reliance (Interrogatory Answers and Admissions) |
| A-8 | TTAB Petitioner's Third Notice of Reliance (Video and Printed Publications) |
| A-9 | TTAB Petitioner's Fourth Notice of Reliance (Trademark Registrations) |
| A-10 | TTAB Petitioner's Fifth Notice of Reliance (Official Records) |

Due to size limitations, this business records declaration is filed in two parts, this part being second half, A-6 to A-10.

Respectfully submitted,

/s/*Warren V. Norred*
Warren V. Norred; State Bar No. 24045094
Norred Law, PLLC; 515 E. Border Street; Arlington, Texas 76010
warren@norredlaw.com
P: 817-704-3984, F: 817-524-6686

**CERTIFICATE OF SERVICE:** I hereby certify that on January 06, 2025, a true and correct copy of the foregoing was served on Plaintiff's counsel of record Megan M. O'Laughlin at molaughlin@hitchcockevert.com via the Court's CM/ECF system.

/s/ *Warren V. Norred*
Warren V. Norred

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1237370** |
|---|---|
| Filing date: | **09/22/2022** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding no. | 92077406 |
|---|---|
| Party | Plaintiff<br>City of Dallas |
| Correspondence address | ELISABETH A. EVERT<br>HITCHCOCK EVERT LLP<br>P.O. BOX 131709<br>DALLAS, TX 75313-1709<br>UNITED STATES<br>Primary email: docket@hitchcockevert.com<br>214-953-1181 |
| Submission | Plaintiff's Notice of Reliance |
| Filer's name | Anne M. Turner |
| Filer's email | docket@hitchcockevert.com |
| Signature | /Anne M. Turner/ |
| Date | 09/22/2022 |
| Attachments | 220922 Exhibits 23-27 to First Notice of Reliance.pdf(3056510 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

**In the Matter of Registration No. 6,141,994 for D (STYLIZED)**

| | | |
|---|---|---|
| **City of Dallas,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **v.** | § | Cancellation Proceeding No. 92077406 |
| | § | |
| **Triple D Gear, LLC,** | § | |
| | § | |
| Registrant. | § | |
| | § | |

**PETITIONER'S FIRST NOTICE OF RELIANCE: EXHIBITS 23-27 TO DISCOVERY DEPOSITION**

Dated: September 22, 2022                      Respectfully submitted,

                                               __/s/ Anne M. Turner_____
                                               Anne M. Turner, Esq.
                                               Elisabeth A. Evert, Esq.
                                               Megan M. O'Laughlin, Esq.
                                               Hitchcock Evert LLP
                                               PO Box 131709
                                               Dallas, Texas 75313-1709
                                               214-953-1161 Telephone
                                               214-953-1121 Facsimile
                                               docket@hitchcockevert.com

                                               ATTORNEYS FOR PETITIONER
                                               CITY OF DALLAS

<u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that a true and complete copy of the foregoing this Notice of Reliance on Discovery Deposition has been served on counsel for Triple D Gear, LLC by forwarding said copy on September 22, 2022 via email to Kimberlee A. Boyle at kim@richardlawgroup.com and molly@richardlawgroup.com.

                                               __/s/ Anne M. Turner_____
                                               Anne M. Turner, Esq.
                                               Hitchcock Evert LLP
                                               PO Box 131709
                                               Dallas, Texas 75313-1709
                                               214-953-1161 Telephone
                                               214-953-1121 Facsimile
                                               docket@hitchcockevert.com

<u>**CERTIFICATE OF TRANSMITTAL**</u>

        I hereby certify that copy on September 22, 2022, a true copy of the foregoing Petitioner's Notice of Reliance on Discovery Deposition is being filed electronically with the Trademark Trial and Appeal Board of the United States Patent and Trademark Office via ESTTA.

                                               __/s/ Anne M. Turner_____
                                               Anne M. Turner, Esq.
                                               Hitchcock Evert LLP
                                               PO Box 131709
                                               Dallas, Texas 75313-1709
                                               214-953-1161 Telephone
                                               214-953-1121 Facsimile
                                               docket@hitchcockevert.com

**PETITIONER'S NOTICE OF RELIANCE ON DISCOVERY DEPOSITION—PAGE 2**



## ABOUT

**Triple D Gear LLC**



What started out as a tour merchandise for a record label Rich Mind INC turned into a mega streetwear brand.

Triple D represents the inner city of Dallas Texas preserving and modernizing the culture by uplifting the city roots while encouraging a bright future for the youth.

Triple D Gear LLC was based in Dallas Texas founded by Ahmed (Dre) Youssef and Turo Sanchez in the late 2007. In 2011 Triple D Gear LLC was granted the full legal trademark for the brand mark by the city of Dallas and the United States Supreme Court.

**THE BRAND**

During the ten years of being in business Triple D Gear was able to service over 60 wholesale accounts within the Dallas metroplex which includes Sheek Shoes, DK fashion, Centre, Adikt footwear, Lids, Villa, DTRL, and many other local stores.

**COLLABORATIONS**

Triple D has collaborated with many household names such as Red Bull, Radio One (97.9 The Beat, 94.9 Magic, Boom 102.9 Atlanta), IBF Welterweight World Champ, and 2012 Olympian 7x National champ, Errol Spence Jr., Sixs Uptown Day Pool, Sinful Jewels, Whippersnapper Tavern, High Fives Tavern, Kixpo Sneaker show, Kicks 101 Foundation, Centre, and Adikt Footwear.

**MANUFACTURING**

The firm puts the brand in a lead position within the market place because Triple D gear controls 100% of manufacturing, quality control, and cargo.

Besides producing their own merchandise, Triple D is qualified to help other brands to become a household name. We provide services such as design consultations, Tech packs, fabric swatches, samples and sourcing.

Triple D aims at using top quality fabric and materials in manufacturing at the best competitive prices.





IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

CITY OF DALLAS,                            §
                                           §
        Petitioner,                        §    Cancellation No. 92077406
                                           §
    v.                                     §    Reg. No. 6,141,994
                                           §
TRIPLE D GEAR, LLC                         §    Mark: D (Stylized)
                                           §
        Registrant.                        §

△ π EXHIBIT 24
Deponent Sanchez
Date 6-7-23 Rptr. TC
WWW.DEPOBOOKPRODUCTS.COM

## REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES TO REGISTRANT

Pursuant to Rule 2.120 of the Trademark Rules of Practice, Trademark Trial and Appeal Board Manual of Procedure § 405, and Rule 33 of the Federal Rules of Civil Procedure, Registrant Triple D Gear, LLC ("Registrant") serves the following Objections and Responses to Petitioner City of Dallas's ("Petitioner") First Set of Interrogatories to Registrant.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

The following Objections to Definitions and Instructions apply to each and every Interrogatory and are incorporated as if fully stated in each and every response:

1.    Registrant objects to all definitions and instructions accompanying Petitioner's Interrogatories to the extent they seek to expand or modify any requirement imposed by the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure, and to the extent they are inconsistent with or seek to increase any duties or obligations under such Manual and Rules. Registrant will answer Petitioner's Interrogatories in accordance with the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

2.    Registrant objects to all definitions to the extent they attempt to define terms inconsistently with the requirements of the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure. Registrant will interpret all words not

otherwise defined in the instructions and definitions to Petitioner's Interrogatories and the pleadings filed to date in this proceeding in accordance with the definitions in the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

3. Registrant objects to Petitioner's Definition No. 13 because "construed either disjunctively or conjunctively" is vague, ambiguous, and circular. Registrant will construe "and" and "or" to mean "and/or".

## GENERAL OBJECTIONS

The following General Objections apply to each and every Interrogatory and are incorporated as if fully stated in each and every response:

1. Registrant objects to Petitioner's Interrogatories to the extent they seek information protected by any applicable privilege and/or exemption from discovery, including, but not limited to, the attorney-client privilege, attorney work product doctrine, or any other applicable privileges.

2. Registrant objects to Petitioner's Interrogatories to the extent they seek publicly available information; information not in Registrant's possession, custody, or control; information not reasonably available to Registrant; or information that is available from other, more convenient sources.

3. Registrant objects to Petitioner's Interrogatories to the extent they are duplicative or unreasonably cumulative.

4. Registrant objects to Petitioner's Interrogatories to the extent they seek information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding.

5. Registrant objects to Petitioner's Interrogatories to the extent they are overly broad, unduly burdensome, or vague and ambiguous.

6.     Registrant objects to Petitioner's Interrogatories to the extent they seek information that is protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any.

7.     Registrant objects to Petitioner's Interrogatories as overly broad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding, specifically to the extent that Petitioner's Interrogatories are not limited in time and/or seek information relating to territories and jurisdictions outside of the United States. Registrant will construe the scope of Petitioner's Interrogatories as limited to the United States and its territories.

8.     Registrant's responses and objections are without waiver of or prejudice to any evidentiary objections Registrant may raise.

9.     Registrant reserves the right to supplement and amend these objections and responses upon, among other circumstances, further investigation, discovery of additional information or documents, discovery of additional persons with knowledge of relevant information or documents, developments in this proceeding or any other proceedings, and the rebuttal of any of Petitioner's evidence in this action.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each person involved in the design of the Ghost Logo and provide their last known contact information.

### RESPONSE:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each" such person involved in any degree. Registrant also objects to this Interrogatory to the extent that it seeks documents or information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES          PAGE 3

Exhibit A-6, page 8 of 30                    TRIPLE_D_30322

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Arturo Sanchez and the following W2 employees or contractors with whom Triple D Gear no longer maintains contact or a business relationship: Ahmed ("Dre") Youssef, Kel Cain, Sir Linch, and Carla Gills. Mr. Sanchez, as CEO of Registrant, can be contacted at Registrant's address of record: 503 N. Interurban Street, Richardson, TX 75081.

**INTERROGATORY NO. 2:**

Identify each person involved in the design of the Tilted Star Logo and provide their last known contact information.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each" such person involved in any degree. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory to the extent that it seeks information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

**INTERROGATORY NO. 3:**

Which was designed first: the Tilted Star Logo or the Ghost Logo?

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory to the extent that it seeks information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

**INTERROGATORY NO. 4:**

Which was used in commerce first: the Tilted Star Logo or the Ghost Logo?

---

REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES          PAGE 4

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding.  Specifically, any information concerning marks other than the Registered Mark is irrelevant.

**INTERROGATORY NO. 5:**

Describe in full the circumstances under which you first became aware of the City's Logo, identifying the source of such awareness, the date, and the identity of the persons involved.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the a "full" description of the occurrence of "awareness" of any kind no matter how and with whom it may have occurred.  Registrant also objects to this Interrogatory as vague and ambiguous since the meaning of "awareness" is unclear.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response and to the extent Registrant construes "awareness" to mean saw or encountered, Registrant responds as follows:  As a lifelong Dallas and Dallas area resident, over the course of his years Arturo Sanchez – the CEO of Registrant – has probably encountered the City's Logo in connection with the municipal services offered by Petitioner to its citizens.  In addition, Mr. Sanchez was a child in the foster care system in the State of Texas in the late 1980s and early 1990s, and probably saw the City's Logo on or in connection with its use on trash bins when doing the chore of taking out the trash for his foster parents.

**INTERROGATORY NO. 6:**

Describe in full the factual basis of Registrant's selection of the Registered Mark.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the a "full" description of the occurrence of Registrant's selection of the Registered Mark no matter how, and with whom it may have occurred.  Registrant also objects to this Interrogatory to the extent that it seeks documents or information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  The Ghost Logo – which originated in Registrant's apparel and accessory merchandise collection related to hip hop music tours offered

Exhibit A-6, page 10 of 30                    TRIPLE_D_30324

by Registrant's related entity  - was chosen by Registrant because it was comprised of three Ds which derive their meaning from the phrases "da dirty dirty" (referring to one who lives in the South) and the related "dirty dirty Dallas" (referring to pride in Dallas as a Southern city, particularly as used in the Dallas hip hop scene).  The Ghost Logo was chosen for its cultural resonance in the hip hop scene.

**INTERROGATORY NO. 7:**

Identify each use of the Registered Mark.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each use" of any kind no matter how, and where.  Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding, including because any uses concerning goods or services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Since as early as 2007, Registrant has used the Ghost Logo in connection with apparel, accessories, promotional products, charitable outreach, special events, and services related to musical performances and hip hop culture; and as a source indicator for Registrant's related entity and for Triple D Gear, LLC.

**INTERROGATORY NO. 8:**

Identify each type of goods and services sold or offered under the Registered Mark, identifying the types of goods or services, the time period of such sales or offers of sale, and the geographic scope of such sales.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each type" of any kind no matter how, and where.  Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because any sales or offers for sale concerning goods or services beyond the scope of the Registered Mark are irrelevant. Further, Registrant objects to this Interrogatory because it contains compound questions.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Since as early as 2007, Registrant has used the Ghost Logo in connection with apparel, accessories, promotional products, charitable

Exhibit A-6, page 11 of 30                                    TRIPLE_D_30325

outreach, special events, and services related to musical performances and hip hop culture; and as a source indicator for Registrant's related entity and for Triple D Gear, LLC. The Ghost Logo is used by Registrant in capsule collections which often are available around Halloween, and products have been offered for sale and sold globally via e-commerce and through U.S. military exchanges as well as via in-person to customers from around the world when those customers visited local retail locations and pop-ups at concerts and events.

**INTERROGATORY NO. 9:**

Identify all third-party distributors and sellers (wholesale or retail) of goods sold or offered under the Registered Mark, identifying the types of goods sold by each such distributor or seller, the time period during which each such distributor or seller offered the goods, and provide their last known contact information.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "all" third party wholesale and retail distributors and sellers no matter how and for what time period they have offered for sale or sold Ghost Logo products. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Further, Registrant objects to this Interrogatory because it contains compound questions.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Since as early as early as 2007 Ghost Logo products have been offered for sale and sold through a variety of different third party distribution channels: brick & mortar retailers such as FAME Grapevine, FAME Galleria, and FAME Frisco, DK Foot & Casual, Freestyle, and Designers (Town East Mall); bars/restaurants/clubs such as OT Tavern, Beamers, Club Blue, Trees, and DMX; in-person pop ups at concerts and events such as Octoberfest, hip hop festivals, and Dios Los Muertos Parade (off Jefferson); online via Registrant's e-commerce site; and via U.S. military exchanges.

**INTERROGATORY NO. 10:**

State where and how a consumer may purchase each of the following goods and services sold or offered for sale under the Registered Mark: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing.

**RESPONSE:**

Registrant objects to this Interrogatory as vague and ambiguous since the meaning of the phrase "may purchase" is unclear and also because the meaning of "services" used in relation to a list of goods is unclear.  Registrant also objects to this Interrogatory as overly broad and unduly burdensome and seeks information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because any sale or offer for sale of services beyond the scope of the Registered Mark is irrelevant.  Further, Registrant objects to this Interrogatory because it contains compound questions.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, and the extent that Registrant construes "may purchase" to mean where and how a consumer today can buy Ghost Logo products Registrant responds as follows: When Ghost Logo collections "drop", consumers may purchase Ghost Logo products via credit card online at Registrant's website; and with cash at pop-ups at concerts and events.

**INTERROGATORY NO. 11:**

State where and how a consumer may purchase the t-shirt used in the photograph submitted to the USPTO on March 27, 2020 as a Specimen of Use for U.S. Application Serial No. 88/850,773.

**RESPONSE:**

Registrant objects to this Interrogatory as vague and ambiguous since the meaning of the phrase "may purchase the t-shirt" is unclear.  Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response and to the extent that Registrant construes "may purchase the t-shirt" to mean where and how a consumer today can buy that particular t-shirt, Registrant responds as follows:  To the extent Registrant has that particular t-shirt or available inventory of that style of t-shirt in stock, consumers may purchase it via credit card online at Registrant's website; or with cash at pop-ups at concerts and events.

**INTERROGATORY NO. 12:**

State the specific retail cost for each of the following goods and services sold or offered for sale under the Registered Mark: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts;

REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES        PAGE 8

Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information for "each" Ghost Logo product or services sold or offered for sale no matter the distribution channel or the date of offer for sale or sale. Registrant also objects to this Interrogatory as vague and ambiguous because the meaning of "retail cost" is unclear and the meaning of "services" used in relation to a list of goods is unclear. Registrant further objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because any sale or offer for sale of services beyond the scope of the Registered Mark is irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, and to the extent Registrant construes "retail cost" to mean the retail price of the Ghost Logo products, Registrant responds as follows: Retail product prices for Ghost Logo items have changed over time based on economic conditions and currently range from $40 - $75 per item.

**INTERROGATORY NO. 13:**

For each year from 2007 until present, state the total sales (in both units and dollars) of goods and services sold or provided using the Registered Mark.

**RESPONSE:**

Registrant objects to this Interrogatory on the basis that it seeks financial information other than aggregate annual sales figures stated in round numbers and consequently exceeds the scope of permissible discovery in Board proceedings pursuant to TBMP § 414(18). Registrant further objects to this Interrogatory as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding, including because any information concerning services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant estimates that from 2007 to present it has sold 2500 Ghost Logo units for an approximate sales total of $62,500.

**INTERROGATORY NO. 14:**

Other than your website (https://www.tripledgear.com/), your Instagram page (https://www.instagram.com/tripledgear/), your Facebook page

---

REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES                PAGE 9

Exhibit A-6, page 14 of 30                    TRIPLE_D_30328

(https://www.facebook.com/Tripledgear/), and your Twitter page (https://twitter.com/TripleDgear), list any other website (including social media pages) that promotes your goods and services.

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding, specifically because exhaustively identifying all of the websites that promote the Ghost Logo goods encompasses irrelevant information, and the burden and expense of marshaling such information outweigh its likely benefit and further because any information concerning services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Mailchimp, Google Merchant Services, and promoted via mention on Media Outlets which may include those Media Outlet websites: Central Track, WFAA, PPV, ESPN, HBO, BET, and The Grammys.

**INTERROGATORY NO. 15:**

Identify each person who has the ability to post content on behalf of Triple D Gear, LLC on your website (https://www.tripledgear.com/), your Instagram page (https://www.instagram.com/tripledgear/), your Facebook page (https://www.facebook.com/Tripledgear/), and your Twitter page (https://twitter.com/TripleDgear), and any other website (including social media pages) that promote your goods and services and provide their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding, including because any information concerning services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Chris Heney (chris.heney@gmail.com) and Arturo Sanchez, CEO of Registrant, at Registrant's address of record.

**INTERROGATORY NO. 16:**

Identify the person(s) responsible for your statement formerly posted on the "About Us" page of your website, located at https://www.tripledgear.com/pages/about-us, that "In 2011 Triple D

Exhibit A-6, page 15 of 30    TRIPLE_D_30329

Gear LLC was granted the full legal trademark for the brand mark by the city of Dallas and the United States Supreme Court" and provide their last known contact information.

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information and documents not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant and the statement no longer appears on Registrant's website.

<u>**INTERROGATORY NO. 17:**</u>

State in full the facts relating to the decision to offer the Ghost Logo Hoodie Product and the design, manufacture, and sale or offer to sell the Ghost Logo Hoodie product, including identifying any person(s) involved in the decision-making, design, manufacture, and sale or offer to sell such product and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about "any" person involved, no matter how or to what degree. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant also objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant, as decided by its CEO Arturo Sanchez, offers Ghost Logo products including the Ghost Logo Hoodie in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers, and from time to time chooses products and product designs for the Ghost Logo collections based on popularity of items in past collections, consumer request for specific products, product trends, product seasonality, and other similar factors.

<u>**INTERROGATORY NO. 18**</u>:

State the date on which the Ghost Logo Hoodie product was first offered for sale and the amount of sales (in both dollars and units) of such product.

---

**REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES**                     PAGE 11

**RESPONSE**:

Registrant objects to this Interrogatory on the basis that it seeks financial information other than aggregate annual sales figures stated in round numbers and consequently exceeds the scope of permissible discovery in Board proceedings pursuant to TBMP § 414(18). Registrant further objects to this Interrogatory as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: The first drop of the Ghost Logo Hoodie occurred in 2020.

**INTERROGATORY NO. 19:**

State the reasons why you are offering the Ghost Logo Hoodie product as a "Limited Edition" product.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Like all of Registrant's Ghost Logo products, the Ghost Logo Hoodie is offered as a limited edition product to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 20:**

State in full the facts supporting your statement that you "started doing special edition apparel releases each Holloween [sic] back in October of 2008" (as claimed at https://www.tripledgear.com/products/ghost-logo- hoodie) identifying each "special edition apparel" released, the dates on which such products were released, and the amounts of sales of such products.

**RESPONSE**:

Registrant objects to this Interrogatory on the basis that it seeks financial information other than

---

REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES          PAGE 12

aggregate annual sales figures stated in round numbers and consequently exceeds the scope of permissible discovery in Board proceedings pursuant to TBMP § 414(18). Registrant also objects to this Interrogatory as overly broad and unduly burdensome. Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant further objects to this Interrogatory as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding particularly because Registrant has responded to Interrogatory No. 13. Registrant also objects to this Interrogatory to the extent it is duplicative or partially duplicative of Interrogatory No. 13.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers. Further, Registrant directs Petitioner to Registrant's response to Interrogatory No. 13.

**INTERROGATORY NO. 21:**

State the reasons why the Ghost Logo is not depicted at your website (https://www.tripledgear.com/) as of January 10, 2022, other than in the product photograph for the Ghost Logo Hoodie.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 22:**

State the reasons why the Ghost Logo is not depicted on your Instagram page (https://www.instagram.com/tripledgear/) as of January 10, 2022.

---

REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES          PAGE 13

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 23**:

State the reasons why the Ghost Logo is not depicted on your Facebook page (https://www.facebook.com/Tripledgear/) as of January 10, 2022.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 24**:

State the reasons why the Ghost Logo is not depicted on your Twitter page (https://twitter.com/TripleDgear) as of January 10, 2022.

Exhibit A-6, page 19 of 30                    TRIPLE_D_30333

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 25**:

Have you licensed or offered to license any third party to use the Registered Mark? If so, identify the licensee(s) and person(s) to whom a license was offered and provide their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory to the extent it seeks information or documents that are protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any, and Registrant will withhold documents subject to any such agreements or obligations. Registrant also objects to this Interrogatory to the extent it seeks documents or information protected by the attorney-client privilege and/or work product doctrine, and Registrant will withhold all such documents and information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant is not aware of any such license or offer to license.

**INTERROGATORY NO. 26**:

Have you discussed Petitioner's allegations, shared copies of Petitioner's correspondence, or otherwise communicated with any person, excluding your employees and legal counsel, regarding the nature and content of the trademark dispute with Petitioner? If so, provide the complete factual bases of such discussions or communications, including identifying the person(s) with whom such communications were made and providing their last known contact information.

**Exhibit A-6, page 20 of 30**                    **TRIPLE_D_30334**

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information and documents not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objection, Registrant responds as follows: Arturo Sanchez – CEO of Registrant – has conferred with his personal advisors Chris Heney (chris.heney@gmail.com) & Jacob Cap (jacobcap@mac.com) about this Cancellation proceeding.

**INTERROGATORY NO. 27**:

Do you contend that the City's Logo and the Ghost Logo have different commercial impressions? If so, state all facts that support such contention.

**RESPONSE**:

Registrant objects to this Interrogatory on the grounds that "commercial impressions" is vague, ambiguous, and overly broad and may call for Registrant to make a legal conclusion. Registrant also objects to this Interrogatory to the extent it seeks documents or information protected by the attorney-client privilege and/or work product doctrine, and Registrant will withhold all such documents and information. Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Further, Registrant objects to this Interrogatory to the extent it prematurely seeks information that is the subject of expert discovery.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, and to the extent Registrant construes "commercial impression" to mean how a relevant consumer perceives a mark when encountering it in connection with the goods or services being offered thereunder, Registrant responds as follows: the City's Logo and the Ghost Logo have different commercial impressions because the marks are visually dissimilar (the City's Logo contains a three-sectioned leaf with a stem) and are each used with vastly different goods and services which means the relevant consumer encounters and perceives them in very different ways. The relevant consumer for Petitioner's services offered under the City Logo are citizens or residents of the City of Dallas and perceive the City Logo as a source indicator of those municipal services offered by Petitioner, which services are often offered with the City Logo being used in conjunction with other words and images such as "City of Dallas", a graphic of the City of Dallas skyline, and/or the name of the municipal department for example, "Sanitation Services". Petitioner does not sell apparel and accessory products to consumers, nor would a relevant consumer perceive it to. In contrast, the relevant consumer for Registrant's products perceive the Ghost Logo as a source indicator of Registrant's apparel and accessories,

Exhibit A-6, page 21 of 30    TRIPLE_D_30335

in particular in the sportswear, streetwear, athletic gear, and athleisure genres; Registrant's customers are from various locations around the world and are often interested in hip hop culture and music. Registrant does not offer municipal services, nor would a relevant consumer perceive it to.

### INTERROGATORY NO. 28:

Are you aware of any instances in which a person has suggested a belief that, or inquired as to whether, your goods or services are provided by, or are licensed to or from, sponsored by, endorsed by, or otherwise associated or connected with Petitioner, or vice-versa? If so, provide the complete factual bases of such instance(s), identifying the confused individual(s) and providing their last known contact information.

### RESPONSE:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances. Registrant also objects to this Interrogatory as vague and ambiguous since the meaning of "provided by…licensed to…sponsored by…endorsed by…or otherwise associated or connected with" is unclear. Registrant further objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because information concerning goods or services beyond the scope of the Registered Mark are irrelevant. Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant also objects to this Interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to Petitioner.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, and to the extent Registrant construes "provided by…licensed to…sponsored by…endorsed by…or otherwise associated or connected with" to mean contractual relationship between it and Petitioner, its employees and officials, and its municipal services Registrant responds as follows: Registrant is not aware of any such instance, belief, or inquiry.

### INTERROGATORY NO. 29:

Are you aware of any instances in which a person has been in any way confused, mistaken, or deceived as to which entity, Petitioner or Registrant, they were referring to or contacting? If so, provide the complete factual bases of such instance(s), identifying the confused individual(s) and providing their last known contact information.

---

Exhibit A-6, page 22 of 30                                        TRIPLE_D_30336

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances.   Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant also objects to this Interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to Petitioner.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant is not aware of any such instance in the context of "referring to or contacting".

**INTERROGATORY NO. 30**:

Has any person(s) inquired whether you or your goods and services are affiliated with, connected to, or endorsed by the City of Dallas? If so, provide the complete factual bases of such inquiry or inquiries, identifying the confused individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances.  Registrant also objects to this Interrogatory as vague and ambiguous since the meaning of "affiliated with, connected to, or endorsed by" is unclear.   Registrant further objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because information concerning goods or services beyond the scope of the Registered Mark are irrelevant and particularly since Registrant has responded to Interrogatory No. 28.  Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant directs Petitioner to Registrant's response to Interrogatory No. 28.

**INTERROGATORY NO. 31**:

Has any person(s) inquired whether you have received a license or other authorization from the City of Dallas to use the Ghost Logo? If so, provide the complete factual bases of such inquiry or inquiries, identifying the inquiring individual(s) and providing their last known contact information.

Exhibit A-6, page 23 of 30                                           TRIPLE_D_30337

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding because Petitioner is not the owner of the Ghost Logo such that it could license or authorize its use, and particularly since Registrant has responded to Interrogatory No. 28. Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant directs Petitioner to Registrant's response to Interrogatory No. 28.

**INTERROGATORY NO. 32**:

Has any person(s) inquired whether you have received a license or other authorization from the City of Dallas to use the Tilted Star Logo? If so, provide the complete factual bases of such inquiry or inquiries, identifying the inquiring individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant.

**INTERROGATORY NO. 33**:

Do you contend that there is anything inaccurate about the following description of the Tilted Star Logo by Arturo Sanchez: "basically, we took the City of Dallas logo and we just put a star in it and tilted it to get a 90° [sic] angle, and give it the whole look"? If so, state the factual bases of your contention.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant.

**INTERROGATORY NO. 34**:

Do you contend that Petitioner has granted permission or authorization for you to use either the Tilted Star Logo or the Ghost Logo? If so, state the bases for your contention.

Exhibit A-6, page 24 of 30                    TRIPLE_D_30338

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.   Specifically, any information concerning marks other than the Registered Mark is irrelevant, Petitioner is not the owner of the Ghost Logo such that it could license or authorize its use, and particularly since Registrant has responded to Interrogatory No. 28.  Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant directs Petitioner to Registrant's response to Interrogatory No. 28.

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

Exhibit A-6, page 25 of 30                    TRIPLE_D_30339

**INTERROGATORY NO. 35**:

Identify all individuals who provided the information used to answer Petitioner's Interrogatories and Requests for Production. For each person identified, indicate the specific Interrogatory or Request, or part thereof, for which the person supplied information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each" such person providing responsive information. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Registrant furthermore objects to this Interrogatory to the extent that it seeks documents or information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

Subject to and without waiving the foregoing objections, Registrant responds as follows: Arturo Sanchez, CEO of Registrant (the substantive answers) and Registrant's counsel (the objections).

                    **RICHARD LAW GROUP, INC.**

          By:    /Kimberlee A. Boyle/
                 Kimberlee A. Boyle
                 Molly Buck Richard
                 13355 Noel Road, Suite 1350
                 Dallas, Texas 75240
                 214-206-4300 (Phone)
                 214-206-4330 (Fax)
                 kim@richardlawgroup.com
                 molly@richardlawgroup.com

                 *Attorneys for Registrant Triple D Gear, LLC*

            **CERTIFICATE OF SERVICE**

    I hereby certify that on February 9, 2022 a true and complete copy of Registrant's Objections and Responses to Petitioner's First Set of Interrogatories has been served on Petitioner through its counsel of record, by email addressed to the following: Anne M. Turner at aturner@hitchcockevert.com and Elisabeth A. Evert and Megan M. O'Laughlin at docket@hitchcockevert.com.

                 /Kimberlee A. Boyle/

**CITY OF DALLAS**
**CITY COUNCIL BRIEFING**
**OPEN MICROPHONE**
**PUBLIC APPEARANCE LIST**
**JUNE 1, 2022**

| | SPEAKER NAME | COUNCIL DISTRICT/ CITY | SUBJECT AGENDA/ADDENDUM ITEM NO. | REPRESENTING (FIRM OR ORGANIZATION) |
|---|---|---|---|---|
| **BEGIN - OPEN MICROPHONE** | | | | |
| 1 | Greg Estell *(In-Person)* | 9 | Short-Term Rentals | Dallas Neighborhood Coalition |
| 2 | Hector Escalante *(Videoconference)* | 1 | Short-Term Rentals | Dallas Neighborhood Coalition |
| 3 | Carl Hays *(In-Person)* | 4 | Short-Term Rentals | Oak Park Estates Homeowners Assoc. |
| 4 | Carol Bell Walton *(Videoconference)* | 9 | Promoting newborn safety | |
| 5 | Reggie Ruffin *(In-Person)* | 4 | Social malfeasance | Just Cause Coalition |
| **ADDITIONAL - OPEN MICROPHONE** | | | | |
| 1 | Patricia Gaffney *(Videoconference)* | 9 | WRR Radio Station | |
| 2 | Alfredo Sanchez *(In-Person)* | 10 | Trademark infringement | Triple D Gear |
| 3 | Carla Brown *(In-Person)* | 2 | Triple D | |
| 4 | Ashley Foster *(In-Person)* | 2 | Public form | Triple D Gear |
| 5 | Ana Nimon *(Videoconference)* | Allen, TX | WRR Radio Station | |
| 6 | Walton Baum *(In-Person)* | Austin, TX | Broadband & Digital Equity Strategic Plan | Texas Cable Association |
| 7 | B.M. Randolph *(In-Person)* | Not Provided | Telling the truth in love | |

Speakers must observe the same rules of propriety, decorum, and good conduct applicable to members of the city council. Any speaker making personal, impertinent, profane, or slanderous remarks or who becomes boisterous while addressing the city council shall be removed from the room. [Dallas City Council Rules of Procedure, Section 3.3(c)]

*Under Chapter 12A of the Dallas City Code, each person who lobbies or engages another person to lobby before the city council identified in Section 12A-15.2(1)(H) must orally identify himself or herself and any client he or she represents upon beginning the address. Therefore, if this requirement applies to you, please state for the record the name of your client.*

*S:\SPEAKERS\2022 Speakers\6-1-22B*
*5/31/2022 5:09 PM*





**TRIPLE D GEAR LLC**
9,115 Tweets

Tweets    **Tweets & replies**    Media    Likes

 **IG: ant_eats214** 🌮 @amd... · 10/29/19  ···
@TripleDgear 💁‍♂️

 **R Andrade Franco** @... · 10/29/19

Been a fan of SMU's white Dallas uniforms. I've read and heard criticisms of its design.

I kind of see it now, especially on sweater.

These are underwhelming.



 1            



TRIPLE_D_30343



Tweets    **Tweets & replies**    Media    Likes

...kind of see it now, especially on sweater.

These are underwhelming.



💬 1        🔁        ♡        ⬆️

 **TRIPLE D GEAR LLC** @Triple... · 1/8/20  ...
That is what you get when you are culture voucher , for not doing what is right. We have nothing to do with this design. We are going to reach out to them Asap to see if we can create a calibration for this season coming up.

💬        🔁        ♡ 1        ⬆️

 **TRIPLE D GEAR LLC** @Triple... · 1/8/20  ...

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1237371** |
|---|---|
| Filing date: | **09/22/2022** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding no. | 92077406 |
|---|---|
| Party | Plaintiff<br>City of Dallas |
| Correspondence address | ELISABETH A. EVERT<br>HITCHCOCK EVERT LLP<br>P.O. BOX 131709<br>DALLAS, TX 75313-1709<br>UNITED STATES<br>Primary email: docket@hitchcockevert.com<br>214-953-1181 |
| Submission | Plaintiff's Notice of Reliance |
| Filer's name | Anne M. Turner |
| Filer's email | docket@hitchcockevert.com |
| Signature | /Anne M. Turner/ |
| Date | 09/22/2022 |
| Attachments | 220922 Second Notice of Reliance on Discovery.pdf(487789 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

**In the Matter of Registration No. 6,141,994 for D (STYLIZED)**

| | | |
|---|---|---|
| **City of Dallas,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **v.** | § | Cancellation Proceeding No. 92077406 |
| | § | |
| **Triple D Gear, LLC,** | § | |
| | § | |
| Registrant. | § | |
| | § | |

**PETITIONER'S SECOND NOTICE OF RELIANCE: NOTICE OF RELIANCE ON INTERROGATORY ANSWERS AND ADMISSIONS**

Pursuant to 37 C.F.R. § 2.120(k)(3)(i) and 37 C.F.R. § 2.122(g), Petitioner City of Dallas ("Petitioner") hereby submits this Notice of Reliance on Interrogatory Answers and Admissions to give notice that it will rely upon the following exhibits, attached hereto, as evidence in support of its case:

| **Interrogatory Answers / Admissions** | **Exhibit No.** |
|---|---|
| Registrant's Objections and Responses to Petitioner's First Set of Requests for Admission dated February 9, 2022 | 2 |
| Registrant's Objections and Responses to Petitioner's First Set of Interrogatories to Registrant dated February 9, 2022 | 3 |
| Registrant's First Amended Objections and Responses to Petitioner's First Set of Interrogatories to Registrant dated April 8, 2022 | 4 |
| Registrant's First Amended Objections and Responses to Petitioner's First Set of Requests for Admission dated April 8, 2022 | 5 |
| Registrant's Second Amended Objections and Responses to Petitioner's First Set of Interrogatories to Registrant dated July 18, 2022 | 6 |

The above-identified exhibits submitted with this Notice of Reliance are relevant to one or more issues in this case, as set forth below:

| **Exhibit No.** | **Relevant Issues** |
|---|---|
| 2 | • Priority<br>• Likelihood of Confusion |
| 3 | • Priority<br>• Likelihood of Confusion |
| 4 | • Priority<br>• Likelihood of Confusion |
| 5 | • Priority<br>• Likelihood of Confusion |
| 6 | • Priority<br>• Likelihood of Confusion |

Dated: September 22, 2022                    Respectfully submitted,

  /s/ Anne M. Turner
Anne M. Turner, Esq.
Elisabeth A. Evert, Esq.
Megan M. O'Laughlin, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

ATTORNEYS FOR PETITIONER
CITY OF DALLAS

### CERTIFICATE OF SERVICE

    I hereby certify that a true and complete copy of the foregoing this Notice of Reliance on Interrogatory Answers and Admissions has been served on counsel for Triple D Gear, LLC by forwarding said copy on September 22, 2022 via email to Kimberlee A. Boyle at kim@richardlawgroup.com and molly@richardlawgroup.com.

  /s/ Anne M. Turner
Anne M. Turner, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

### CERTIFICATE OF TRANSMITTAL

    I hereby certify that copy on September 22, 2022, a true copy of the foregoing Petitioner's Notice of Reliance on Interrogatory Answers and Admissions is being filed electronically with the Trademark Trial and Appeal Board of the United States Patent and Trademark Office via ESTTA.

  /s/ Anne M. Turner
Anne M. Turner, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

**PETITIONER'S NOTICE OF RELIANCE ON INTERROGATORY ANSWERS AND ADMISSIONS —PAGE 3**

# EXHIBIT 2

Exhibit A-7, page 5 of 61

TRIPLE_D_30349

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| Petitioner, | § | Cancellation No. 92077406 |
| | § | |
| v. | § | Reg. No. 6,141,994 |
| | § | |
| TRIPLE D GEAR, LLC | § | Mark: D (Stylized) |
| | § | |
| Registrant. | § | |

**REGISTRANT'S OBJECTIONS AND RESPONSES TO
PETITIONER'S FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Rule 2.120 of the Trademark Rules of Practice, Trademark Trial and Appeal Board Manual of Procedure § 407, and Rule 36 of the Federal Rules of Civil Procedure, Registrant Triple D Gear, LLC ("Registrant") serves the following Objections and Responses to Petitioner City of Dallas ("Petitioner") First Set of Requests for Admissions.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

The following Objections to Definitions and Instructions apply to each and every Request for Admission ("Request") and are incorporated as if fully stated in each and every response:

1.    Registrant objects to all definitions and instructions accompanying Petitioner's Requests to the extent they seek to expand or modify any requirement imposed by the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure, and to the extent they are inconsistent with or seek to increase any duties or obligations under such Manual and Rules.    Registrant will answer Petitioner's Requests in accordance with the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

2.    Registrant objects to all definitions to the extent they attempt to define terms inconsistently with the requirements of the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure. Registrant will interpret all words not

otherwise defined in the instructions and definitions to Petitioner's Requests and the pleadings filed to date in this proceeding in accordance with the definitions in the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

3.    Registrant objects to Petitioner's Definition No. 13 because "construed either disjunctively or conjunctively" is vague, ambiguous, and circular.  Registrant will construe "and" and "or" to mean "and/or".

## GENERAL OBJECTIONS

The following General Objections apply to each and every Request and are incorporated as if fully stated in each and every response:

1.    Registrant objects to Petitioner's Requests to the extent they seek information protected by any applicable privilege and/or exemption from discovery, including, but not limited to, the attorney-client privilege, attorney work product doctrine, or any other applicable privileges.

2.    Registrant objects to Petitioner's Requests to the extent they seek publicly available information; information not in Registrant's possession, custody, or control; information not reasonably available to Registrant; or information that is available from other, more convenient sources.

3.    Registrant objects to Petitioner's Requests to the extent they are duplicative or unreasonably cumulative.

4.    Registrant objects to Petitioner's Requests to the extent they seek information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding.

5.    Registrant objects to Petitioner's Requests to the extent they are overly broad, unduly burdensome, or vague and ambiguous.

---

REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST REQUESTS FOR ADMISSION                    PAGE 2

6.      Registrant objects to Petitioner's Requests to the extent they seek information that is protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any.

7.      Registrant objects to Petitioner's Requests as overly broad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding, specifically to the extent that Petitioner's Requests seek information relating to territories and jurisdictions outside of the United States. Registrant will construe the scope of Petitioner's Requests as limited to the United States and its territories.

8.      Registrant's responses and objections are without waiver of or prejudice to any evidentiary objections Registrant may raise.

9.      Registrant reserves the right to supplement and amend these objections and responses upon, among other circumstances, further investigation, discovery of additional information or documents, discovery of additional persons with knowledge of relevant information or documents, developments in this proceeding or any other proceedings, and the rebuttal of any of Petitioner's evidence in this action.

## **OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS FOR ADMISSIONS**

**REQUEST NO. 1:**

Admit you knew of the City's Logo prior to designing the Ghost Logo.

**RESPONSE:**

Registrant objects to this Request on the grounds that "knew of" is vague, ambiguous, and overly broad.  Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objections, and the extent that Registrant construes "knew of" to mean an awareness as an entity domiciled in Dallas County, Texas that the City Logo is used to identify the municipality, its employees, and its municipal services, Registrant admits this Request.

Exhibit A-7, page 8 of 61                                      TRIPLE_D_30352

**REQUEST NO. 2:**

Admit you knew of the City's Logo prior to designing the Tilted Star Logo.

**RESPONSE:**

Registrant objects to this Request on the grounds that it seeks information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Registrant also objects to this Request on the grounds that "knew of" is vague, ambiguous, and overly broad. Further, Registrant objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objections, and the extent that Registrant construes "knew of" to mean an awareness as an entity domiciled in Dallas County, Texas that the City Logo is used to identify the municipality, its employees, and its municipal services, Registrant admits this Request.

**REQUEST NO. 3:**

Admit the Ghost Logo was based in part on the City's Logo.

**RESPONSE:**

Registrant objects to this Request on the grounds that "based" and "based in part on" are vague, ambiguous, and overly broad. Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objections, and the extent that Registrant construes "based" to mean "copied", "intended to copy", "copied in part", or "intended to copy in part", Registrant denies this Request.

**REQUEST NO. 4:**

Admit the Tilted Star Logo was based in part on the City's Logo.

**RESPONSE:**

Registrant objects to this Request on the grounds that it seeks information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Registrant also objects to this Request on the grounds that "based" and "based in part on" are vague, ambiguous,

and overly broad. Further, Registrant objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objections, and the extent that Registrant construes "based" to mean "copied", "intended to copy", "copied in part", or "intended to copy in part", Registrant denies this Request.

**REQUEST NO. 5:**

Admit you knew of the City's Logo prior to using the Ghost Logo.

**RESPONSE:**

Registrant objects to this Request on the grounds that "knew of" is vague, ambiguous, and overly broad. Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objections, and the extent that Registrant construes "knew of" to mean an awareness as an entity domiciled in Dallas County, Texas that the City Logo is used to identify the municipality, its employees, and its municipal services, Registrant admits this Request.

**REQUEST NO. 6:**

Admit you knew of the City's Logo prior to using the Tilted Star Logo.

**RESPONSE:**

Registrant objects to this Request on the grounds that it seeks information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Registrant also objects to this Request on the grounds that "knew of" is vague, ambiguous, and overly broad. Further, Registrant objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objection, and the extent that Registrant construes "knew of" to mean an awareness as an entity domiciled in Dallas County, Texas that the City Logo is used to identify the municipality, its employees and officials, and its municipal services, Registrant admits this Request.

---

**REQUEST NO. 7:**

Admit you selected the Ghost Logo to reference the City of Dallas.

**RESPONSE:**

Registrant objects to this Request on the grounds that "to reference" is vague, ambiguous, and overly broad.

Subject to and without waiver of the foregoing objection, and to the extent that Registrant construes "to reference" to mean endorsement or sponsorship by, or contractual relationship with the municipality, its employees and officials, and its municipal services, Registrant denies this Request.

**REQUEST NO. 8:**

Admit you selected the Tilted Star Logo to reference the City of Dallas.

**RESPONSE:**

Registrant objects to this Request on the grounds that it seeks information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Registrant also objects to this Request on the grounds that "to reference" is vague, ambiguous, and overly broad.

Subject to and without waiver of the foregoing objections, and to the extent that Registrant construes "to reference" to mean endorsement or sponsorship by, or contractual relationship with the municipality, its employees and officials, and its municipal services, Registrant denies this Request.

**REQUEST NO. 9:**

Admit that consumers are likely to associate the Ghost Logo with the City of Dallas.

**RESPONSE:**

Registrant objects to this Request on the grounds that "likely to associate" is vague, ambiguous, and overly broad. Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objections, and to the extent that Registrant construes "likely to associate" to mean that relevant consumers will believe that Registrant's

---

Ghost Logo refers or is related to the municipality, its employees and officials, and its municipal services, Registrant denies this Request.

**REQUEST NO. 10:**

Admit that consumers are likely to associate the Tilted Star Logo with the City of Dallas.

**RESPONSE:**

Registrant objects to this Request on the grounds that it seeks information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Registrant also objects to this Request on the grounds that "likely to associate" is vague, ambiguous, and overly broad. Further, Registrant objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objections and to the extent that Registrant construes "likely to associate" to mean that relevant consumers will believe that Registrant's Tilted Star Logo refers or is related to the municipality, its employees and officials, and its municipal services, Registrant denies this request.

**REQUEST NO. 11:**

Admit that, as of March 27, 2020, you had not sold or offered for sale a t-shirt like the one used in the photograph submitted to the USPTO on March 27, 2020 as a Specimen of Use for U.S. Application Serial No. 88/850,773.

**RESPONSE:**

Registrant objects to this Request on the grounds that "like the one" is vague, ambiguous, and overly broad.

Subject to and without waiver of the foregoing objection, and to the extent that Registrant construes "like the one" to mean "the product or a similar product", Registrant denies this Request.

**REQUEST NO. 12:**

Admit that, since March 27, 2020, you have not sold or offered for sale a t-shirt like the one used in the photograph submitted to the USPTO on March 27, 2020 as a Specimen of Use for U.S. Application Serial No. 88/850,773.

---

**REGISTRANT'S OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST REQUESTS FOR ADMISSION**          **PAGE 7**

**RESPONSE:**

Registrant objects to this Request on the grounds that "like the one" is vague, ambiguous, and overly broad.

Subject to and without waiver of the foregoing objection, and to the extent that Registrant construes "like the one" to mean "the product or a similar product", Registrant denies this Request.

**REQUEST NO. 13:**

Admit that you have not sold or offered for sale all of the following goods under the Registered Mark: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing.

**RESPONSE:**

Registrant objects to this Request on the grounds that it seeks information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objection, Registrant admits this Request in part and denies this Request in part. Registrant has sold or offered for sale the following goods under the Registered Mark: Shirts; Hats; Headwear; Beanies; Pants; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Sweatshirts; Hooded Sweatshirts; Coats; Polo Shirts; Tops as clothing; Bottoms as clothing. Registrant intends to but has not yet offered for sale or sold Footwear; Swimwear; Underwear; Socks; Jeans; Leggings; Robes; Ties; and Suits under the Registered Mark.

**REQUEST NO. 14:**

Admit that the City's Logo is famous.

**RESPONSE:**

Registrant objects to this Request on the grounds that "fame" is vague, ambiguous, and overly broad. Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion. Further, Registrant objects to this Request on the grounds that it is unduly broad and overly burdensome because it would require Registrant to undertake or commission extensive research conducted by an expert to be able to admit or deny the matter set forth in the Request. In addition, Registrant objects to this Request on the grounds

**Exhibit A-7, page 13 of 61**          **TRIPLE_D_30357**

that it cannot truthfully admit or deny the matter set forth in this request because it does not have knowledge of this matter based on the records or information reasonably available to it.

**REQUEST NO. 15:**

Admit that consumers associate the City's Logo with the City of Dallas.

**RESPONSE:**

Registrant objects to this Request on the grounds that "associate" is vague, ambiguous, and overly broad. Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion. Further, Registrant objects to this Request on the grounds that it is unduly broad and overly burdensome because it would require Registrant to undertake or commission extensive research conducted by an expert to be able to admit or deny the matter set forth in the Request. In addition, Registrant objects to this Request on the grounds that it cannot truthfully admit or deny the matter set forth in this request because it does not have knowledge of this matter based on the records or information reasonably available to it.

**REQUEST NO. 16:**

Admit that you want your goods and services associated with the City of Dallas.

**RESPONSE:**

Registrant objects to this Request on the grounds that "associated with" is vague, ambiguous, and overly broad. Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.
Subject to and without waiver of the foregoing objection, and to the extent that Registrant construes "associated with" to mean that consumers will believe that the municipality is the source of Registrant's goods and services, Registrant denies this Request.

<div align="center">

**RICHARD LAW GROUP, INC.**

</div>

By:  /Kimberlee A. Boyle/
      Kimberlee A. Boyle
      Molly Buck Richard
      13355 Noel Road, Suite 1350
      Dallas, Texas 75240
      214-206-4300 (Phone)
      214-206-4330 (Fax)
      kim@richardlawgroup.com
      molly@richardlawgroup.com

      *Attorneys for Registrant Triple D Gear, LLC*

Exhibit A-7, page 14 of 61                    TRIPLE_D_30358

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2022 a true and complete copy of Registrant's Objections and Responses to Petitioner's First Requests for Admission has been served on Petitioner through its counsel of record, by email addressed to the following: Anne M. Turner at aturner@hitchcockevert.com and Elisabeth A. Evert and Megan M. O'Laughlin at docket@hitchcockevert.com.

/Kimberlee A. Boyle/

Exhibit A-7, page 15 of 61    TRIPLE_D_30359

# EXHIBIT 3

TRIPLE_D_30360

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| Petitioner, | § | Cancellation No. 92077406 |
| | § | |
| v. | § | Reg. No. 6,141,994 |
| | § | |
| TRIPLE D GEAR, LLC | § | Mark: D (Stylized) |
| | § | |
| Registrant. | § | |

### REGISTRANT'S OBJECTIONS AND RESPONSES TO
### PETITIONER'S FIRST SET OF INTERROGATORIES TO REGISTRANT

Pursuant to Rule 2.120 of the Trademark Rules of Practice, Trademark Trial and Appeal Board Manual of Procedure § 405, and Rule 33 of the Federal Rules of Civil Procedure, Registrant Triple D Gear, LLC ("Registrant") serves the following Objections and Responses to Petitioner City of Dallas's ("Petitioner") First Set of Interrogatories to Registrant.

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

The following Objections to Definitions and Instructions apply to each and every Interrogatory and are incorporated as if fully stated in each and every response:

1.    Registrant objects to all definitions and instructions accompanying Petitioner's Interrogatories to the extent they seek to expand or modify any requirement imposed by the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure, and to the extent they are inconsistent with or seek to increase any duties or obligations under such Manual and Rules. Registrant will answer Petitioner's Interrogatories in accordance with the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

2.    Registrant objects to all definitions to the extent they attempt to define terms inconsistently with the requirements of the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure. Registrant will interpret all words not

otherwise defined in the instructions and definitions to Petitioner's Interrogatories and the pleadings filed to date in this proceeding in accordance with the definitions in the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

3.    Registrant objects to Petitioner's Definition No. 13 because "construed either disjunctively or conjunctively" is vague, ambiguous, and circular.  Registrant will construe "and" and "or" to mean "and/or".

## GENERAL OBJECTIONS

The following General Objections apply to each and every Interrogatory and are incorporated as if fully stated in each and every response:

1.    Registrant objects to Petitioner's Interrogatories to the extent they seek information protected by any applicable privilege and/or exemption from discovery, including, but not limited to, the attorney-client privilege, attorney work product doctrine, or any other applicable privileges.

2.    Registrant objects to Petitioner's Interrogatories to the extent they seek publicly available information; information not in Registrant's possession, custody, or control; information not reasonably available to Registrant; or information that is available from other, more convenient sources.

3.    Registrant objects to Petitioner's Interrogatories to the extent they are duplicative or unreasonably cumulative.

4.    Registrant objects to Petitioner's Interrogatories to the extent they seek information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding.

5.    Registrant objects to Petitioner's Interrogatories to the extent they are overly broad, unduly burdensome, or vague and ambiguous.

---

Exhibit A-7, page 18 of 61                                TRIPLE_D_30362

6.      Registrant objects to Petitioner's Interrogatories to the extent they seek information that is protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any.

7.      Registrant objects to Petitioner's Interrogatories as overly broad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding, specifically to the extent that Petitioner's Interrogatories are not limited in time and/or seek information relating to territories and jurisdictions outside of the United States. Registrant will construe the scope of Petitioner's Interrogatories as limited to the United States and its territories.

8.      Registrant's responses and objections are without waiver of or prejudice to any evidentiary objections Registrant may raise.

9.      Registrant reserves the right to supplement and amend these objections and responses upon, among other circumstances, further investigation, discovery of additional information or documents, discovery of additional persons with knowledge of relevant information or documents, developments in this proceeding or any other proceedings, and the rebuttal of any of Petitioner's evidence in this action.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each person involved in the design of the Ghost Logo and provide their last known contact information.

### RESPONSE:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each" such person involved in any degree. Registrant also objects to this Interrogatory to the extent that it seeks documents or information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

Exhibit A-7, page 19 of 61                                    TRIPLE_D_30363

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Arturo Sanchez and the following W2 employees or contractors with whom Triple D Gear no longer maintains contact or a business relationship: Ahmed ("Dre") Youssef, Kel Cain, Sir Linch, and Carla Gills. Mr. Sanchez, as CEO of Registrant, can be contacted at Registrant's address of record: 503 N. Interurban Street, Richardson, TX 75081.

**INTERROGATORY NO. 2:**

Identify each person involved in the design of the Tilted Star Logo and provide their last known contact information.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each" such person involved in any degree. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory to the extent that it seeks information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

**INTERROGATORY NO. 3:**

Which was designed first: the Tilted Star Logo or the Ghost Logo?

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory to the extent that it seeks information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

**INTERROGATORY NO. 4:**

Which was used in commerce first: the Tilted Star Logo or the Ghost Logo?

---

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding.  Specifically, any information concerning marks other than the Registered Mark is irrelevant.

**INTERROGATORY NO. 5:**

Describe in full the circumstances under which you first became aware of the City's Logo, identifying the source of such awareness, the date, and the identity of the persons involved.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the a "full" description of the occurrence of "awareness" of any kind no matter how and with whom it may have occurred.  Registrant also objects to this Interrogatory as vague and ambiguous since the meaning of "awareness" is unclear.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response and to the extent Registrant construes "awareness" to mean saw or encountered, Registrant responds as follows:  As a lifelong Dallas and Dallas area resident, over the course of his years Arturo Sanchez – the CEO of Registrant – has probably encountered the City's Logo in connection with the municipal services offered by Petitioner to its citizens.  In addition, Mr. Sanchez was a child in the foster care system in the State of Texas in the late 1980s and early 1990s, and probably saw the City's Logo on or in connection with its use on trash bins when doing the chore of taking out the trash for his foster parents.

**INTERROGATORY NO. 6:**

Describe in full the factual basis of Registrant's selection of the Registered Mark.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the a "full" description of the occurrence of Registrant's selection of the Registered Mark no matter how, and with whom it may have occurred.  Registrant also objects to this Interrogatory to the extent that it seeks documents or information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  The Ghost Logo – which originated in Registrant's apparel and accessory merchandise collection related to hip hop music tours offered

Exhibit A-7, page 21 of 61                                        TRIPLE_D_30365

by Registrant's related entity - was chosen by Registrant because it was comprised of three Ds which derive their meaning from the phrases "da dirty dirty" (referring to one who lives in the South) and the related "dirty dirty Dallas" (referring to pride in Dallas as a Southern city, particularly as used in the Dallas hip hop scene). The Ghost Logo was chosen for its cultural resonance in the hip hop scene.

**INTERROGATORY NO. 7:**

Identify each use of the Registered Mark.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each use" of any kind no matter how, and where. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding, including because any uses concerning goods or services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Since as early as 2007, Registrant has used the Ghost Logo in connection with apparel, accessories, promotional products, charitable outreach, special events, and services related to musical performances and hip hop culture; and as a source indicator for Registrant's related entity and for Triple D Gear, LLC.

**INTERROGATORY NO. 8:**

Identify each type of goods and services sold or offered under the Registered Mark, identifying the types of goods or services, the time period of such sales or offers of sale, and the geographic scope of such sales.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each type" of any kind no matter how, and where. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because any sales or offers for sale concerning goods or services beyond the scope of the Registered Mark are irrelevant. Further, Registrant objects to this Interrogatory because it contains compound questions.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Since as early as 2007, Registrant has used the Ghost Logo in connection with apparel, accessories, promotional products, charitable

Exhibit A-7, page 22 of 61          TRIPLE_D_30366

outreach, special events, and services related to musical performances and hip hop culture; and as a source indicator for Registrant's related entity and for Triple D Gear, LLC.  The Ghost Logo is used by Registrant in capsule collections which often are available around Halloween, and products have been offered for sale and sold globally via e-commerce and through U.S. military exchanges as well as via in-person to customers from around the world when those customers visited local retail locations and pop-ups at concerts and events.

**INTERROGATORY NO. 9:**

Identify all third-party distributors and sellers (wholesale or retail) of goods sold or offered under the Registered Mark, identifying the types of goods sold by each such distributor or seller, the time period during which each such distributor or seller offered the goods, and provide their last known contact information.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "all" third party wholesale and retail distributors and sellers no matter how and for what time period they have offered for sale or sold Ghost Logo products.  Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.  Further, Registrant objects to this Interrogatory because it contains compound questions.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Since as early as early as 2007 Ghost Logo products have been offered for sale and sold through a variety of different third party distribution channels:  brick & mortar retailers such as FAME Grapevine, FAME Galleria, and FAME Frisco, DK Foot & Casual,   Freestyle, and Designers (Town East Mall); bars/restaurants/clubs such as  OT Tavern, Beamers, Club Blue, Trees, and DMX; in-person pop ups at concerts and events such as Octoberfest, hip hop festivals, and Dios Los Muertos Parade (off Jefferson); online via Registrant's e-commerce site; and via U.S. military exchanges.

**INTERROGATORY NO. 10:**

State where and how a consumer may purchase each of the following goods and services sold or offered for sale under the Registered Mark: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing.

Exhibit A-7, page 23 of 61                                    TRIPLE_D_30367

**RESPONSE:**

Registrant objects to this Interrogatory as vague and ambiguous since the meaning of the phrase "may purchase" is unclear and also because the meaning of "services" used in relation to a list of goods is unclear. Registrant also objects to this Interrogatory as overly broad and unduly burdensome and seeks information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because any sale or offer for sale of services beyond the scope of the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory because it contains compound questions.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, and the extent that Registrant construes "may purchase" to mean where and how a consumer today can buy Ghost Logo products Registrant responds as follows: When Ghost Logo collections "drop", consumers may purchase Ghost Logo products via credit card online at Registrant's website; and with cash at pop-ups at concerts and events.

**INTERROGATORY NO. 11:**

State where and how a consumer may purchase the t-shirt used in the photograph submitted to the USPTO on March 27, 2020 as a Specimen of Use for U.S. Application Serial No. 88/850,773.

**RESPONSE:**

Registrant objects to this Interrogatory as vague and ambiguous since the meaning of the phrase "may purchase the t-shirt" is unclear. Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response and to the extent that Registrant construes "may purchase the t-shirt" to mean where and how a consumer today can buy that particular t-shirt, Registrant responds as follows: To the extent Registrant has that particular t-shirt or available inventory of that style of t-shirt in stock, consumers may purchase it via credit card online at Registrant's website; or with cash at pop-ups at concerts and events.

**INTERROGATORY NO. 12:**

State the specific retail cost for each of the following goods and services sold or offered for sale under the Registered Mark: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts;

Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information for "each" Ghost Logo product or services sold or offered for sale no matter the distribution channel or the date of offer for sale or sale.  Registrant also objects to this Interrogatory as vague and ambiguous because the meaning of "retail cost" is unclear and the meaning of "services" used in relation to a list of goods is unclear.  Registrant further objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because any sale or offer for sale of services beyond the scope of the Registered Mark is irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, and to the extent Registrant construes "retail cost" to mean the retail price of the Ghost Logo products, Registrant responds as follows:  Retail product prices for Ghost Logo items have changed over time based on economic conditions and currently range from $40 - $75 per item.

**INTERROGATORY NO. 13:**

For each year from 2007 until present, state the total sales (in both units and dollars) of goods and services sold or provided using the Registered Mark.

**RESPONSE**:

Registrant objects to this Interrogatory on the basis that it seeks financial information other than aggregate annual sales figures stated in round numbers and consequently exceeds the scope of permissible discovery in Board proceedings pursuant to TBMP § 414(18).  Registrant further objects to this Interrogatory as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding, including because any information concerning services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Registrant estimates that from 2007 to present it has sold 2500 Ghost Logo units for an approximate sales total of $62,500.

**INTERROGATORY NO. 14:**

Other than your website (https://www.tripledgear.com/), your Instagram page (https://www.instagram.com/tripledgear/), your Facebook page

---

Exhibit A-7, page 25 of 61                                        TRIPLE_D_30369

(https://www.facebook.com/Tripledgear/), and your Twitter page (https://twitter.com/TripleDgear), list any other website (including social media pages) that promotes your goods and services.

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding, specifically because exhaustively identifying all of the websites that promote the Ghost Logo goods encompasses irrelevant information, and the burden and expense of marshaling such information outweigh its likely benefit and further because any information concerning services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Mailchimp, Google Merchant Services, and promoted via mention on Media Outlets which may include those Media Outlet websites: Central Track, WFAA, PPV, ESPN, HBO, BET, and The Grammys.

**INTERROGATORY NO. 15:**

Identify each person who has the ability to post content on behalf of Triple D Gear, LLC on your website (https://www.tripledgear.com/), your Instagram page (https://www.instagram.com/tripledgear/), your Facebook page (https://www.facebook.com/Tripledgear/), and your Twitter page (https://twitter.com/TripleDgear), and any other website (including social media pages) that promote your goods and services and provide their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding, including because any information concerning services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Chris Heney (chris.heney@gmail.com) and Arturo Sanchez, CEO of Registrant, at Registrant's address of record.

**INTERROGATORY NO. 16:**

Identify the person(s) responsible for your statement formerly posted on the "About Us" page of your website, located at https://www.tripledgear.com/pages/about-us, that "In 2011 Triple D

---

Exhibit A-7, page 26 of 61                                    TRIPLE_D_30370

Gear LLC was granted the full legal trademark for the brand mark by the city of Dallas and the United States Supreme Court" and provide their last known contact information.

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information and documents not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant and the statement no longer appears on Registrant's website.

**<u>INTERROGATORY NO. 17:</u>**

State in full the facts relating to the decision to offer the Ghost Logo Hoodie Product and the design, manufacture, and sale or offer to sell the Ghost Logo Hoodie product, including identifying any person(s) involved in the decision-making, design, manufacture, and sale or offer to sell such product and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about "any" person involved, no matter how or to what degree. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant also objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant, as decided by its CEO Arturo Sanchez, offers Ghost Logo products including the Ghost Logo Hoodie in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers, and from time to time chooses products and product designs for the Ghost Logo collections based on popularity of items in past collections, consumer request for specific products, product trends, product seasonality, and other similar factors.

**<u>INTERROGATORY NO. 18</u>**:

State the date on which the Ghost Logo Hoodie product was first offered for sale and the amount of sales (in both dollars and units) of such product.

**RESPONSE**:

Registrant objects to this Interrogatory on the basis that it seeks financial information other than aggregate annual sales figures stated in round numbers and consequently exceeds the scope of permissible discovery in Board proceedings pursuant to TBMP § 414(18).  Registrant further objects to this Interrogatory as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  The first drop of the Ghost Logo Hoodie occurred in 2020.

**INTERROGATORY NO. 19:**

State the reasons why you are offering the Ghost Logo Hoodie product as a "Limited Edition" product.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.  Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Like all of Registrant's Ghost Logo products, the Ghost Logo Hoodie is offered as a limited edition product to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 20:**

State in full the facts supporting your statement that you "started doing special edition apparel releases each Holloween [sic] back in October of 2008" (as claimed at https://www.tripledgear.com/products/ghost-logo- hoodie) identifying each "special edition apparel" released, the dates on which such products were released, and the amounts of sales of such products.

**RESPONSE**:

Registrant objects to this Interrogatory on the basis that it seeks financial information other than

---

Exhibit A-7, page 28 of 61                                        TRIPLE_D_30372

aggregate annual sales figures stated in round numbers and consequently exceeds the scope of permissible discovery in Board proceedings pursuant to TBMP § 414(18).  Registrant also objects to this Interrogatory as overly broad and unduly burdensome. Further, Registrant objects to this Interrogatory because it contains compound questions.  Registrant further objects to this Interrogatory as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding particularly because Registrant has responded to Interrogatory No. 13.  Registrant also objects to this Interrogatory to the extent it is duplicative or partially duplicative of Interrogatory No. 13.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.  Further, Registrant directs Petitioner to Registrant's response to Interrogatory No. 13.

**INTERROGATORY NO. 21:**

State the reasons why the Ghost Logo is not depicted at your website (https://www.tripledgear.com/) as of January 10, 2022, other than in the product photograph for the Ghost Logo Hoodie.

**RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.  Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 22:**

State the reasons why the Ghost Logo is not depicted on your Instagram page (https://www.instagram.com/tripledgear/) as of January 10, 2022.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 23**:

State the reasons why the Ghost Logo is not depicted on your Facebook page (https://www.facebook.com/Tripledgear/) as of January 10, 2022.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 24**:

State the reasons why the Ghost Logo is not depicted on your Twitter page (https://twitter.com/TripleDgear) as of January 10, 2022.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about a potentially extensive list of reasons, no matter how lengthy. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant. Further, Registrant objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant offers Ghost Logo products in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers.

**INTERROGATORY NO. 25**:

Have you licensed or offered to license any third party to use the Registered Mark? If so, identify the licensee(s) and person(s) to whom a license was offered and provide their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory to the extent it seeks information or documents that are protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any, and Registrant will withhold documents subject to any such agreements or obligations. Registrant also objects to this Interrogatory to the extent it seeks documents or information protected by the attorney-client privilege and/or work product doctrine, and Registrant will withhold all such documents and information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant is not aware of any such license or offer to license.

**INTERROGATORY NO. 26**:

Have you discussed Petitioner's allegations, shared copies of Petitioner's correspondence, or otherwise communicated with any person, excluding your employees and legal counsel, regarding the nature and content of the trademark dispute with Petitioner? If so, provide the complete factual bases of such discussions or communications, including identifying the person(s) with whom such communications were made and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information and documents not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objection, Registrant responds as follows: Arturo Sanchez – CEO of Registrant – has conferred with his personal advisors Chris Heney (chris.heney@gmail.com) & Jacob Cap (jacobcap@mac.com) about this Cancellation proceeding.

**INTERROGATORY NO. 27**:

Do you contend that the City's Logo and the Ghost Logo have different commercial impressions? If so, state all facts that support such contention.

**RESPONSE**:

Registrant objects to this Interrogatory on the grounds that "commercial impressions" is vague, ambiguous, and overly broad and may call for Registrant to make a legal conclusion. Registrant also objects to this Interrogatory to the extent it seeks documents or information protected by the attorney-client privilege and/or work product doctrine, and Registrant will withhold all such documents and information. Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Further, Registrant objects to this Interrogatory to the extent it prematurely seeks information that is the subject of expert discovery.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, and to the extent Registrant construes "commercial impression" to mean how a relevant consumer perceives a mark when encountering it in connection with the goods or services being offered thereunder, Registrant responds as follows: the City's Logo and the Ghost Logo have different commercial impressions because the marks are visually dissimilar (the City's Logo contains a three-sectioned leaf with a stem) and are each used with vastly different goods and services which means the relevant consumer encounters and perceives them in very different ways. The relevant consumer for Petitioner's services offered under the City Logo are citizens or residents of the City of Dallas and perceive the City Logo as a source indicator of those municipal services offered by Petitioner, which services are often offered with the City Logo being used in conjunction with other words and images such as "City of Dallas", a graphic of the City of Dallas skyline, and/or the name of the municipal department for example, "Sanitation Services". Petitioner does not sell apparel and accessory products to consumers, nor would a relevant consumer perceive it to. In contrast, the relevant consumer for Registrant's products perceive the Ghost Logo as a source indicator of Registrant's apparel and accessories,

in particular in the sportswear, streetwear, athletic gear, and athleisure genres; Registrant's customers are from various locations around the world and are often interested in hip hop culture and music.  Registrant does not offer municipal services, nor would a relevant consumer perceive it to.

**INTERROGATORY NO. 28:**

Are you aware of any instances in which a person has suggested a belief that, or inquired as to whether, your goods or services are provided by, or are licensed to or from, sponsored by, endorsed by, or otherwise associated or connected with Petitioner, or vice-versa? If so, provide the complete factual bases of such instance(s), identifying the confused individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances.  Registrant also objects to this Interrogatory as vague and ambiguous since the meaning of "provided by…licensed to…sponsored by…endorsed by…or otherwise associated or connected with" is unclear. Registrant further objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because information concerning goods or services beyond the scope of the Registered Mark are irrelevant.  Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant also objects to this Interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to Petitioner.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, and to the extent Registrant construes "provided by…licensed to…sponsored by…endorsed by…or otherwise associated or connected with" to mean contractual relationship between it and Petitioner, its employees and officials, and its municipal services Registrant responds as follows: Registrant is not aware of any such instance, belief, or inquiry.

**INTERROGATORY NO. 29**:

Are you aware of any instances in which a person has been in any way confused, mistaken, or deceived as to which entity, Petitioner or Registrant, they were referring to or contacting? If so, provide the complete factual bases of such instance(s), identifying the confused individual(s) and providing their last known contact information.

---

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances. Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant also objects to this Interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to Petitioner.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: Registrant is not aware of any such instance in the context of "referring to or contacting".

**INTERROGATORY NO. 30**:

Has any person(s) inquired whether you or your goods and services are affiliated with, connected to, or endorsed by the City of Dallas? If so, provide the complete factual bases of such inquiry or inquiries, identifying the confused individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances. Registrant also objects to this Interrogatory as vague and ambiguous since the meaning of "affiliated with, connected to, or endorsed by" is unclear. Registrant further objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because information concerning goods or services beyond the scope of the Registered Mark are irrelevant and particularly since Registrant has responded to Interrogatory No. 28. Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant directs Petitioner to Registrant's response to Interrogatory No. 28.

**INTERROGATORY NO. 31**:

Has any person(s) inquired whether you have received a license or other authorization from the City of Dallas to use the Ghost Logo? If so, provide the complete factual bases of such inquiry or inquiries, identifying the inquiring individual(s) and providing their last known contact information.

---

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding because Petitioner is not the owner of the Ghost Logo such that it could license or authorize its use, and particularly since Registrant has responded to Interrogatory No. 28.  Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant directs Petitioner to Registrant's response to Interrogatory No. 28.

**INTERROGATORY NO. 32**:

Has any person(s) inquired whether you have received a license or other authorization from the City of Dallas to use the Tilted Star Logo? If so, provide the complete factual bases of such inquiry or inquiries, identifying the inquiring individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.  Specifically, any information concerning marks other than the Registered Mark is irrelevant.

**INTERROGATORY NO. 33**:

Do you contend that there is anything inaccurate about the following description of the Tilted Star Logo by Arturo Sanchez: "basically, we took the City of Dallas logo and we just put a star in it and tilted it to get a 90° [sic] angle, and give it the whole look"? If so, state the factual bases of your contention.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.  Specifically, any information concerning marks other than the Registered Mark is irrelevant.

**INTERROGATORY NO. 34**:

Do you contend that Petitioner has granted permission or authorization for you to use either the Tilted Star Logo or the Ghost Logo? If so, state the bases for your contention.

Exhibit A-7, page 35 of 61                                    TRIPLE_D_30379

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Specifically, any information concerning marks other than the Registered Mark is irrelevant, Petitioner is not the owner of the Ghost Logo such that it could license or authorize its use, and particularly since Registrant has responded to Interrogatory No. 28. Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant directs Petitioner to Registrant's response to Interrogatory No. 28.

<u>**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**</u>

Exhibit A-7, page 36 of 61    TRIPLE_D_30380

**INTERROGATORY NO. 35**:

Identify all individuals who provided the information used to answer Petitioner's Interrogatories and Requests for Production. For each person identified, indicate the specific Interrogatory or Request, or part thereof, for which the person supplied information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each" such person providing responsive information. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding. Registrant furthermore objects to this Interrogatory to the extent that it seeks documents or information protected by privilege or the work product doctrine, and Registrant will withhold all such documents and information.

Subject to and without waiving the foregoing objections, Registrant responds as follows: Arturo Sanchez, CEO of Registrant (the substantive answers) and Registrant's counsel (the objections).

<div align="center">

**RICHARD LAW GROUP, INC.**

</div>

By:    /Kimberlee A. Boyle/
              Kimberlee A. Boyle
              Molly Buck Richard
              13355 Noel Road, Suite 1350
              Dallas, Texas 75240
              214-206-4300 (Phone)
              214-206-4330 (Fax)
              kim@richardlawgroup.com
              molly@richardlawgroup.com

              *Attorneys for Registrant Triple D Gear, LLC*

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that on February 9, 2022 a true and complete copy of Registrant's Objections and Responses to Petitioner's First Set of Interrogatories has been served on Petitioner through its counsel of record, by email addressed to the following: Anne M. Turner at aturner@hitchcockevert.com and Elisabeth A. Evert and Megan M. O'Laughlin at docket@hitchcockevert.com.

              /Kimberlee A. Boyle/

# EXHIBIT 4

TRIPLE_D_30382

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| Petitioner, | § | Cancellation No. 92077406 |
| | § | |
| v. | § | Reg. No. 6,141,994 |
| | § | |
| TRIPLE D GEAR, LLC | § | Mark: D (Stylized) |
| | § | |
| Registrant. | § | |

**REGISTRANT'S FIRST AMENDED OBJECTIONS AND RESPONSES TO
PETITIONER'S FIRST SET OF INTERROGATORIES TO REGISTRANT**

Pursuant to Rule 2.120 of the Trademark Rules of Practice and Rule 33 of the Federal Rules of Civil Procedure, Registrant Triple D Gear, LLC ("Registrant") serves the following First Amended Objections and Responses to Petitioner City of Dallas's ("Petitioner") First Set of Interrogatories to Registrant.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

The following Objections to Definitions and Instructions apply to each and every Interrogatory and are incorporated as if fully stated in each and every response:

1.      Registrant objects to all definitions and instructions accompanying Petitioner's Interrogatories to the extent they seek to expand or modify any requirement imposed by the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure, and to the extent they are inconsistent with or seek to increase any duties or obligations under such Manual and Rules.  Registrant will answer Petitioner's Interrogatories in accordance with the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

2.      Registrant objects to all definitions to the extent they attempt to define terms inconsistently with the requirements of the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure. Registrant will interpret all words not

otherwise defined in the instructions and definitions to Petitioner's Interrogatories and the pleadings filed to date in this proceeding in accordance with the definitions in the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

3.     Registrant objects to Petitioner's Definition No. 13 because "construed either disjunctively or conjunctively" is vague, ambiguous, and circular.  Registrant will construe "and" and "or" to mean "and/or".

## GENERAL OBJECTIONS

The following General Objections apply to each and every Interrogatory and are incorporated as if fully stated in each and every response:

1.     Registrant objects to Petitioner's Interrogatories to the extent they seek information protected by any applicable privilege and/or exemption from discovery, including, but not limited to, the attorney-client privilege, attorney work product doctrine, or any other applicable privileges.

2.     Registrant objects to Petitioner's Interrogatories to the extent they seek publicly available information; information not in Registrant's possession, custody, or control; information not reasonably available to Registrant; or information that is available from other, more convenient sources.

3.     Registrant objects to Petitioner's Interrogatories to the extent they are duplicative or unreasonably cumulative.

4.     Registrant objects to Petitioner's Interrogatories to the extent they seek information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding.

5.     Registrant objects to Petitioner's Interrogatories to the extent they are overly broad, unduly burdensome, or vague and ambiguous.

Exhibit A-7, page 40 of 61                                                          TRIPLE_D_30384

6.      Registrant objects to Petitioner's Interrogatories to the extent they seek information that is protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any.

7.      Registrant objects to Petitioner's Interrogatories as overly broad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding, specifically to the extent that Petitioner's Interrogatories are not limited in time and/or seek information relating to territories and jurisdictions outside of the United States. Registrant will construe the scope of Petitioner's Interrogatories as limited to the United States and its territories.

8.      Registrant's responses and objections are without waiver of or prejudice to any evidentiary objections Registrant may raise.

9.      Registrant reserves the right to supplement and amend these objections and responses upon, among other circumstances, further investigation, discovery of additional information or documents, discovery of additional persons with knowledge of relevant information or documents, developments in this proceeding or any other proceedings, and the rebuttal of any of Petitioner's evidence in this action.

## <u>OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES</u>

### <u>INTERROGATORY NO. 3:</u>

Which was designed first: the Tilted Star Logo or the Ghost Logo?

### **RESPONSE:**

Registrant objects to this Interrogatory as seeking information not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding.  Specifically, any information concerning marks other than the Registered Mark is irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: the Ghost Logo was designed first.

**REGISTRANT'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF INTERROGATORIES**                                              **PAGE 3**

**INTERROGATORY NO. 4:**

Which was used in commerce first: the Tilted Star Logo or the Ghost Logo?

**RESPONSE:**

Registrant objects to this Interrogatory as seeking information not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding.  Specifically, any information concerning marks other than the Registered Mark is irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: the Ghost Logo was used first.

**INTERROGATORY NO. 17:**

State in full the facts relating to the decision to offer the Ghost Logo Hoodie Product and the design, manufacture, and sale or offer to sell the Ghost Logo Hoodie product, including identifying any person(s) involved in the decision-making, design, manufacture, and sale or offer to sell such product and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information about "any" person involved, no matter how or to what degree.  Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.  Further, Registrant objects to this Interrogatory because it contains compound questions.  Registrant also objects to this Interrogatory on the grounds that it calls for the disclosure of confidential and sensitive trade secret information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Registrant's CEO Arturo Sanchez designed the GHOST LOGO and brainstormed the concept with the individuals identified in Registrant's Response to Interrogatory No. 1.  As decided by its CEO Arturo Sanchez, Registrant offers Ghost Logo products including the Ghost Logo Hoodie in capsule collections, special editions, limited editions, and/or limited releases to enhance the exclusive impression of the Ghost Logo products to Registrant's customers, and from time to time chooses products and product designs for the Ghost Logo collections based on popularity of items in past collections, consumer request for specific products, product trends, product seasonality, and other similar

Exhibit A-7, page 42 of 61                                        TRIPLE_D_30386

factors. Registrant's CEO has manufactured the GHOST LOGO Hoodie via the use of the facilities of print shops such as Mad Ink in Dallas, Texas.

**INTERROGATORY NO. 26**:

Have you discussed Petitioner's allegations, shared copies of Petitioner's correspondence, or otherwise communicated with any person, excluding your employees and legal counsel, regarding the nature and content of the trademark dispute with Petitioner? If so, provide the complete factual bases of such discussions or communications, including identifying the person(s) with whom such communications were made and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information and documents not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objection, Registrant responds as follows:  Arturo Sanchez – CEO of Registrant – has conferred with his personal advisors Chris Heney and Jacob Cap about this Cancellation proceeding:

Chris Heney
665 5th Ave S
Okanogan, WA 98840
chris.heney@gmail.com

Jacob Cap
1024 SW Jennings Ave. #4
Bartlesville OK 74003
jacobcap@mac.com

Exhibit A-7, page 43 of 61                                    TRIPLE_D_30387

**INTERROGATORY NO. 28:**

Are you aware of any instances in which a person has suggested a belief that, or inquired as to whether, your goods or services are provided by, or are licensed to or from, sponsored by, endorsed by, or otherwise associated or connected with Petitioner, or vice-versa? If so, provide the complete factual bases of such instance(s), identifying the confused individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances. Registrant also objects to this Interrogatory as vague and ambiguous since the meaning of "provided by…licensed to…sponsored by…endorsed by…or otherwise associated or connected with" is unclear. Registrant further objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because information concerning goods or services beyond the scope of the Registered Mark are irrelevant. Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant also objects to this Interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to Petitioner.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: No.

**INTERROGATORY NO. 29**:

Are you aware of any instances in which a person has been in any way confused, mistaken, or deceived as to which entity, Petitioner or Registrant, they were referring to or contacting? If so, provide the complete factual bases of such instance(s), identifying the confused individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances. Further, Registrant objects to this Interrogatory because it contains compound questions. Registrant also objects to this Interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to Petitioner.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: No.

**INTERROGATORY NO. 30**:

Has any person(s) inquired whether you or your goods and services are affiliated with, connected to, or endorsed by the City of Dallas? If so, provide the complete factual bases of such inquiry or inquiries, identifying the confused individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "any" instance no matter the circumstances. Registrant also objects to this Interrogatory as vague and ambiguous since the meaning of "affiliated with, connected to, or endorsed by" is unclear. Registrant further objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because information concerning goods or services beyond the scope of the Registered Mark are irrelevant. Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: No.

**INTERROGATORY NO. 31**:

Has any person(s) inquired whether you have received a license or other authorization from the City of Dallas to use the Ghost Logo? If so, provide the complete factual bases of such inquiry or inquiries, identifying the inquiring individual(s) and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding because Petitioner is not the owner of the Ghost Logo such that it could license or authorize its use. Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows: No.

**INTERROGATORY NO. 34**:

Do you contend that Petitioner has granted permission or authorization for you to use either the Tilted Star Logo or the Ghost Logo? If so, state the bases for your contention.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.   Specifically, any information concerning marks other than the Registered Mark is irrelevant, and Petitioner is not the owner of the Ghost Logo such that it could license or authorize its use.  Registrant also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 28.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  No.

<div align="center">

**RICHARD LAW GROUP, INC.**

</div>

By:  /Kimberlee A. Boyle/
     Kimberlee A. Boyle
     Molly Buck Richard
     13355 Noel Road, Suite 1350
     Dallas, Texas 75240
     214-206-4300 (Phone)
     214-206-4330 (Fax)
     kim@richardlawgroup.com
     molly@richardlawgroup.com

*Attorneys for Registrant Triple D Gear, LLC*

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that on April 8, 2022 a true and complete copy of Registrant's First Amended Objections and Responses to Petitioner's First Set of Interrogatories has been served on Petitioner through its counsel of record, by email addressed to the following: Anne M. Turner at aturner@hitchcockevert.com and Elisabeth A. Evert and Megan M. O'Laughlin at docket@hitchcockevert.com.

/Kimberlee A. Boyle/

DocuSign Envelope ID: 4FF5E39C-8081-47EB-AF3A-E11F4B63ED33

## **VERIFICATION**

The undersigned states that he has read the above responses; that the responses were prepared with the assistance and information of others upon whom he has relied; that the responses, subject to inadvertent or undiscovered errors, are based on and are therefore necessarily limited by the records and information still in existence; that the responses present information recollected and thus far discovered in the course of the preparation of the responses; and that subject to those limitations, the undersigned declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing responses are true and correct to the best of his or her knowledge, information, and belief.

Executed on _____4/6/2022_____ **DocuSigned by:** , 2022.

*Alfredo Sanchez*

Arturo Sanchez, CEO, Triple D Gear, LLC

2B048E3339BD4AD...

Exhibit A-7, page 47 of 61                              TRIPLE_D_30391

# EXHIBIT 5

TRIPLE_D_30392

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| Petitioner, | § | Cancellation No. 92077406 |
| | § | |
| v. | § | Reg. No. 6,141,994 |
| | § | |
| TRIPLE D GEAR, LLC | § | Mark: D (Stylized) |
| | § | |
| Registrant. | § | |

## REGISTRANT'S FIRST AMENDED OBJECTIONS AND RESPONSES TO PETITIONER'S FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rule 2.120 of the Trademark Rules of Practice and Rule 36 of the Federal Rules of Civil Procedure, Registrant Triple D Gear, LLC ("Registrant") serves its First Amended Objections and Responses to Petitioner's First Set of Requests for Admission upon Petitioner City of Dallas' ("Petitioner") First Set of Requests for Admissions.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

The following Objections to Definitions and Instructions apply to each and every Request for Admission ("Request") and are incorporated as if fully stated in each and every response:

1.       Registrant objects to all definitions and instructions accompanying Petitioner's Requests to the extent they seek to expand or modify any requirement imposed by the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure, and to the extent they are inconsistent with or seek to increase any duties or obligations under such Manual and Rules.   Registrant will answer Petitioner's Requests in accordance with the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

2.       Registrant objects to all definitions to the extent they attempt to define terms inconsistently with the requirements of the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure. Registrant will interpret all words not

otherwise defined in the instructions and definitions to Petitioner's Requests and the pleadings filed to date in this proceeding in accordance with the definitions in the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

3.    Registrant objects to Petitioner's Definition No. 13 because "construed either disjunctively or conjunctively" is vague, ambiguous, and circular.  Registrant will construe "and" and "or" to mean "and/or".

## GENERAL OBJECTIONS

The following General Objections apply to each and every Request and are incorporated as if fully stated in each and every response:

1.    Registrant objects to Petitioner's Requests to the extent they seek information protected by any applicable privilege and/or exemption from discovery, including, but not limited to, the attorney-client privilege, attorney work product doctrine, or any other applicable privileges.

2.    Registrant objects to Petitioner's Requests to the extent they seek publicly available information; information not in Registrant's possession, custody, or control; information not reasonably available to Registrant; or information that is available from other, more convenient sources.

3.    Registrant objects to Petitioner's Requests to the extent they are duplicative or unreasonably cumulative.

4.    Registrant objects to Petitioner's Requests to the extent they seek information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding.

5.    Registrant objects to Petitioner's Requests to the extent they are overly broad, unduly burdensome, or vague and ambiguous.

Exhibit A-7, page 50 of 61                                                    TRIPLE_D_30394

6.     Registrant objects to Petitioner's Requests to the extent they seek information that is protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any.

7.     Registrant objects to Petitioner's Requests as overly broad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding, specifically to the extent that Petitioner's Requests seek information relating to territories and jurisdictions outside of the United States. Registrant will construe the scope of Petitioner's Requests as limited to the United States and its territories.

8.     Registrant's responses and objections are without waiver of or prejudice to any evidentiary objections Registrant may raise.

9.     Registrant reserves the right to supplement and amend these objections and responses upon, among other circumstances, further investigation, discovery of additional information or documents, discovery of additional persons with knowledge of relevant information or documents, developments in this proceeding or any other proceedings, and the rebuttal of any of Petitioner's evidence in this action.

<u>**OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS FOR ADMISSION**</u>

<u>**REQUEST NO. 3:**</u>

Admit the Ghost Logo was based in part on the City's Logo.

**RESPONSE:**

Registrant objects to this Request on the grounds that "based" and "based in part on" are vague, ambiguous, and overly broad.  Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objections, and the extent that Registrant construes "based" and "based in part on" to mean "to form or provide a base for," with "base"

**Exhibit A-7, page 51 of 61**                                                                                    **TRIPLE_D_30395**

meaning a "basic or underlying element" (www.thefreedictionary.com/based), Registrant admits this Request.

**REQUEST NO. 7:**

Admit you selected the Ghost Logo to reference the City of Dallas.

**RESPONSE:**

Registrant objects to this Request on the grounds that "to reference" is vague, ambiguous, and overly broad.  Registrant also objects to this Request on the grounds that it improperly seeks the admission or denial of a legal conclusion.

Subject to and without waiver of the foregoing objection, Registrant denies this Request.

<div align="center">

**RICHARD LAW GROUP, INC.**

</div>

By:  /Kimberlee A. Boyle/
     Kimberlee A. Boyle
     Molly Buck Richard
     13355 Noel Road, Suite 1350
     Dallas, Texas 75240
     214-206-4300 (Phone)
     214-206-4330 (Fax)
     kim@richardlawgroup.com
     molly@richardlawgroup.com

     *Attorneys for Registrant Triple D Gear, LLC*

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that on April 8, 2022 a true and complete copy of Registrant's First Amended Objections and Responses to Petitioner's First Requests for Admission has been served on Petitioner through its counsel of record, by email addressed to the following: Anne M. Turner at aturner@hitchcockevert.com and Elisabeth A. Evert and Megan M. O'Laughlin at docket@hitchcockevert.com.

/Kimberlee A. Boyle/

# EXHIBIT 6

TRIPLE_D_30397

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| Petitioner, | § | Cancellation No. 92077406 |
| | § | |
| v. | § | Reg. No. 6,141,994 |
| | § | |
| TRIPLE D GEAR, LLC | § | Mark: D (Stylized) |
| | § | |
| Registrant. | § | |

**REGISTRANT'S SECOND AMENDED OBJECTIONS AND RESPONSES TO
PETITIONER'S FIRST SET OF INTERROGATORIES TO REGISTRANT**

Pursuant to Rule 2.120 of the Trademark Rules of Practice and Rule 33 of the Federal Rules of Civil Procedure, Registrant Triple D Gear, LLC ("Registrant") serves the following Second Amended Objections and Responses to Petitioner City of Dallas's ("Petitioner") First Set of Interrogatories to Registrant.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

The following Objections to Definitions and Instructions apply to each and every Interrogatory and are incorporated as if fully stated in each and every response:

1.      Registrant objects to all definitions and instructions accompanying Petitioner's Interrogatories to the extent they seek to expand or modify any requirement imposed by the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure, and to the extent they are inconsistent with or seek to increase any duties or obligations under such Manual and Rules. Registrant will answer Petitioner's Interrogatories in accordance with the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

2.      Registrant objects to all definitions to the extent they attempt to define terms inconsistently with the requirements of the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure. Registrant will interpret all words not

otherwise defined in the instructions and definitions to Petitioner's Interrogatories and the pleadings filed to date in this proceeding in accordance with the definitions in the Trademark Trial and Appeal Board Manual of Procedure and the Federal Rules of Civil Procedure.

3.     Registrant objects to Petitioner's Definition No. 13 because "construed either disjunctively or conjunctively" is vague, ambiguous, and circular. Registrant will construe "and" and "or" to mean "and/or".

**<u>GENERAL OBJECTIONS</u>**

The following General Objections apply to each and every Interrogatory and are incorporated as if fully stated in each and every response:

1.     Registrant objects to Petitioner's Interrogatories to the extent they seek information protected by any applicable privilege and/or exemption from discovery, including, but not limited to, the attorney-client privilege, attorney work product doctrine, or any other applicable privileges.

2.     Registrant objects to Petitioner's Interrogatories to the extent they seek publicly available information; information not in Registrant's possession, custody, or control; information not reasonably available to Registrant; or information that is available from other, more convenient sources.

3.     Registrant objects to Petitioner's Interrogatories to the extent they are duplicative or unreasonably cumulative.

4.     Registrant objects to Petitioner's Interrogatories to the extent they seek information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding.

5.     Registrant objects to Petitioner's Interrogatories to the extent they are overly broad, unduly burdensome, or vague and ambiguous.

6.      Registrant objects to Petitioner's Interrogatories to the extent they seek information that is protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any.

7.      Registrant objects to Petitioner's Interrogatories as overly broad, unduly burdensome, and seeking information that is not relevant to the parties' claims or defenses or is not proportional to the needs of this proceeding, specifically to the extent that Petitioner's Interrogatories are not limited in time and/or seek information relating to territories and jurisdictions outside of the United States. Registrant will construe the scope of Petitioner's Interrogatories as limited to the United States and its territories.

8.      Registrant's responses and objections are without waiver of or prejudice to any evidentiary objections Registrant may raise.

9.      Registrant reserves the right to supplement and amend these objections and responses upon, among other circumstances, further investigation, discovery of additional information or documents, discovery of additional persons with knowledge of relevant information or documents, developments in this proceeding or any other proceedings, and the rebuttal of any of Petitioner's evidence in this action.

## <u>OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES</u>

### <u>INTERROGATORY NO. 8:</u>

Identify each type of goods and services sold or offered under the Registered Mark, identifying the types of goods or services, the time period of such sales or offers of sale, and the geographic scope of such sales.

### **RESPONSE:**

Registrant objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks the identification of "each type" of any kind no matter how, and where. Registrant also objects to this Interrogatory as seeking information that is not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding including because any sales or offers

**Exhibit A-7, page 56 of 61**                                                                                           **TRIPLE_D_30400**

for sale concerning goods or services beyond the scope of the Registered Mark are irrelevant. Further, Registrant objects to this Interrogatory because it contains compound questions.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Since as early as 2007 and through 2014 and again from 2021 to present, Registrant has used the Registered Mark in connection with apparel and accessories and promotional products consisting of hats, tees and hoodies; charitable outreach; events; services related to musical performances and hip hop culture; and as a source indicator for Registrant's related entity and for Triple D Gear, LLC.  The Registered Mark has been and is used by Registrant in capsule collections which often are available around Halloween, and products have been used in promotions and giveaways, and have been offered for sale and sold globally via e-commerce and through U.S. military exchanges as well as via in-person to customers from around the world when those customers visited local retail locations and pop-ups at concerts and events.

**INTERROGATORY NO. 13:**

For each year from 2007 until present, state the total sales (in both units and dollars) of goods and services sold or provided using the Registered Mark.

**RESPONSE:**

Registrant objects to this Interrogatory on the basis that it seeks financial information other than aggregate annual sales figures stated in round numbers and consequently exceeds the scope of permissible discovery in Board proceedings pursuant to TBMP § 414(18). Registrant further objects to this Interrogatory as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding, including because any information concerning services beyond the scope of the Registered Mark are irrelevant.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Registrant estimates that from 2007 to 2014 and 2021 to present it has *sold* 2500 Ghost Logo units for an approximate sales total of $62,500.  In addition, Registrant has *provided* goods and services using the Registered Mark via live events, promotions, and giveaways.

Exhibit A-7, page 57 of 61                                                                                      TRIPLE_D_30401

**INTERROGATORY NO. 18:**

State the date on which the Ghost Logo Hoodie product was first offered for sale and the amount of sales (in both dollars and units) of such product.

**RESPONSE**:

Registrant objects to this Interrogatory on the basis that it seeks financial information other than aggregate annual sales figures stated in round numbers and consequently exceeds the scope of permissible discovery in Board proceedings pursuant to TBMP § 414(18). Registrant further objects to this Interrogatory as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  The first drop and offer for sale of the Ghost Logo Hoodie product as such a term is defined in Petitioner's Interrogatories occurred in 2021; the 2021 Ghost Logo Hoodie product was the same design offered by Registrant in prior collections dating back to 2007 but was of a better quality material and produced by an improved manufacturer.  Registrant sold at least 4 units of the 2021 Ghost Logo Hoodie product for a total amount of $240; additional 2021 Ghost Logo Hoodie products were sold at popup events and provided additional units via promotion and giveaways.

**INTERROGATORY NO. 25:**

Have you licensed or offered to license any third party to use the Registered Mark? If so, identify the licensee(s) and person(s) to whom a license was offered and provide their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory to the extent it seeks information or documents that are protected from disclosure by agreements to which Registrant is a party, if any, or by obligations that Registrant has with another entity, if any, and Registrant will withhold documents subject to any such agreements or obligations. Registrant also objects to this Interrogatory to the extent it seeks documents or information protected by the attorney-client privilege and/or work product doctrine, and Registrant will withhold all such documents and information.

Subject to and without waiver of the foregoing objections and Registrant's right to amend or supplement this response, Registrant responds as follows:  Registrant has not licensed or offered to license any third party to use the Registered Mark.

**INTERROGATORY NO. 26**:

Have you discussed Petitioner's allegations, shared copies of Petitioner's correspondence, or otherwise communicated with any person, excluding your employees and legal counsel, regarding the nature and content of the trademark dispute with Petitioner? If so, provide the complete factual bases of such discussions or communications, including identifying the person(s) with whom such communications were made and providing their last known contact information.

**RESPONSE**:

Registrant objects to this Interrogatory as seeking information and documents not relevant to the parties' claims and defenses nor proportional to the needs of this proceeding.

Subject to and without waiver of the foregoing objection, Registrant responds as follows:  Arturo Sanchez – CEO of Registrant – has conferred with his personal advisors Chris Heney and Jacob Cap, and a friend Marco Mancillas, about this Cancellation proceeding:

Chris Heney
665 5th Ave S
Okanogan, WA 98840
chris.heney@gmail.com

Jacob Cap
1024 SW Jennings Ave. #4
Bartlesville OK 74003
jacobcap@mac.com

Marco Mancillas
mmancillashpa@gmail.com
512-954-4503

**RICHARD LAW GROUP, INC.**

By:  /Kimberlee A. Boyle/
     Kimberlee A. Boyle
     Molly Buck Richard
     13355 Noel Road, Suite 1350
     Dallas, Texas 75240
     214-206-4300 (Phone)
     214-206-4330 (Fax)
     kim@richardlawgroup.com
     molly@richardlawgroup.com

     *Attorneys for Registrant Triple D Gear, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2022 a true and complete copy of Registrant's Second Amended Objections and Responses to Petitioner's First Set of Interrogatories has been served on Petitioner through its counsel of record, by email addressed to the following: Anne M. Turner at aturner@hitchcockevert.com and Elisabeth A. Evert and Megan M. O'Laughlin at docket@hitchcockevert.com.

     /Kimberlee A. Boyle/

**Exhibit A-7, page 60 of 61**                                           **TRIPLE_D_30404**

## **VERIFICATION**

The undersigned states that he has read the above responses; that the responses were prepared with the assistance and information of others upon whom he has relied; that the responses, subject to inadvertent or undiscovered errors, are based on and are therefore necessarily limited by the records and information still in existence; that the responses present information recollected and thus far discovered in the course of the preparation of the responses; and that subject to those limitations, the undersigned declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing responses are true and correct to the best of his or her knowledge, information, and belief.

Executed on the _July 6 2022_____ 2022.

_____
Arturo Sanchez, CEO, Triple D Gear, LLC

Exhibit A-7, page 61 of 61                                    TRIPLE_D_30405

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA1237372** |
| Filing date: | **09/22/2022** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding no. | 92077406 |
| Party | Plaintiff<br>City of Dallas |
| Correspondence address | ELISABETH A. EVERT<br>HITCHCOCK EVERT LLP<br>P.O. BOX 131709<br>DALLAS, TX 75313-1709<br>UNITED STATES<br>Primary email: docket@hitchcockevert.com<br>214-953-1181 |
| Submission | Plaintiff's Notice of Reliance |
| Filer's name | Anne M. Turner |
| Filer's email | docket@hitchcockevert.com |
| Signature | /Anne M. Turner/ |
| Date | 09/22/2022 |
| Attachments | 220922 Third Notice of Reliance on Printed Publications.pdf(2071448 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

**In the Matter of Registration No. 6,141,994 for D (STYLIZED)**

| | | |
|---|---|---|
| **City of Dallas,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **v.** | § | Cancellation Proceeding No. 92077406 |
| | § | |
| **Triple D Gear, LLC,** | § | |
| | § | |
| Registrant. | § | |
| | § | |

**PETITIONER'S THIRD NOTICE OF RELIANCE: NOTICE OF RELIANCE ON PRINTED PUBLICATIONS**

Pursuant to 37 C.F.R. § 2.122(e) and 37 C.F.R. § 2.122(g), Petitioner City of Dallas ("Petitioner") hereby submits this Notice of Reliance on Printed Publications to give notice that it will rely upon the following printed publications, attached hereto, as evidence in support of its case:

| <u>Printed Publication</u> | <u>Exhibit No.</u> |
|---|---|
| *Show off your love for Dallas with Triple D Gear*, video segment on Good Morning Texas (WFAA), December 17, 2018[1] | 7 |
| *City Gets New Symbol*, The Dallas Morning News August 11, 1972, page 1 | 8 |
| *Designs End Problems*, The Dallas Morning News, April 29, 1973 | 9 |
| *Bust Out the D-Shaped Cake: Dallas' Logo Turns 40 This Year*, Dallas Observer, June 27, 2012 | 10 |

The above-identified exhibits are printed publications available to the general public in libraries or of general circulation among members of the public or that segment of the public which is relevant to this proceeding. They, therefore, constitute competent evidence. Specifically, the attached exhibits submitted with this Notice of Reliance are relevant to one or more issues in this case, as set forth below:

---

[1] A copy of the video will be submitted to the Board, and it is also available at https://www.wfaa.com/video/entertainment/television/programs/good-morning-texas/show-off-your-love-for-dallas-with-triple-d-gear/287-8380002

| **Exhibit No.** | **Relevant Issues** |
|---|---|
| 7 | • Priority<br>• Likelihood of Confusion |
| 8 | • Priority |
| 9 | • Priority |
| 10 | • Priority |

Exhibit A-8, page 3 of 12                                    TRIPLE_D_30408

Dated: September 22, 2022                    Respectfully submitted,

   /s/ Anne M. Turner_____
Anne M. Turner, Esq.
Elisabeth A. Evert, Esq.
Megan M. O'Laughlin, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

ATTORNEYS FOR PETITIONER
CITY OF DALLAS

### CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing this Notice of Reliance on Printed Publications has been served on counsel for Triple D Gear, LLC by forwarding said copy on September 22, 2022 via email to Kimberlee A. Boyle at kim@richardlawgroup.com and molly@richardlawgroup.com.

   /s/ Anne M. Turner_____
Anne M. Turner, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

### CERTIFICATE OF TRANSMITTAL

I hereby certify that copy on September 22, 2022, a true copy of the foregoing Opposer's Notice of Reliance on Printed Publications is being filed electronically with the Trademark Trial and Appeal Board of the United States Patent and Trademark Office via ESTTA.

   /s/ Anne M. Turner_____
Anne M. Turner, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

**PETITIONER'S NOTICE OF RELIANCE ON PRINTED PUBLICATIONS —PAGE 3**

# EXHIBIT 7

Exhibit A-8, page 5 of 12                    TRIPLE_D_30410

# Show off your love for Dallas with Triple D Gear



Go to tripledgear.com for more information

Author: wfaa.com
Published: **12/17/2018 10:51:14 AM**
Updated: **10:51 AM CST December 17, 2018**

Exhibit A-8, page 6 of 12                    TRIPLE_D_30411

# EXHIBIT 8

TRIPLE_D_30412

CITY 00016

# The Dallas Morning News

Vol. 123—No. 316    Phone 747-6611    Dallas, Texas, Friday, August 11, 1972    4 Sections ★★★★    Price 10 Cents

## Panel Clears Anti-Busing Bill for Vote

By KAREN ELLIOTT
Washington Bureau

WASHINGTON—The House Rules Committee Thursday cleared a modified anti-busing bill for a House vote and probable passage next Thursday.

*(article text continues in multiple columns)*

## War Ending For Infantry In Vietnam

SAIGON (AP)—The war is ending Friday for U.S. combat infantrymen on the same beaches where it began more than seven years ago.

The U.S. Military Command announced that the lone remaining U.S. infantry unit, the 3rd Battalion, 21st Infantry, is going home from Da Nang.

*(article continues)*

## Nixon Victory

### House Rejects War Deadline

WASHINGTON (AP)—In a victory for President Nixon, the House Thursday rejected 228 to 178 a motion to pull U.S. forces out of the Indochina war by Oct. 1 in return for release of American prisoners and a limited cease-fire.

*(article continues)*

### The Index

### Voter Backlash May Be Strong

McGovern's dropping of his vice-presidential running mate could bring a backlash from many voters in both parties who have been under psychiatric treatment themselves or observed it in members of their families.

James Reston column on Page 33A.

*(article continues)*



*Motorist Injured in Bridge Plunge*

Two railroad tracks across the Texas and Pacific Railroad tracks at Marshall, Texas, collapsed and a motorist was injured when her car plunged through the opening. The motorist, Mrs. Agnes Gruff of Marshall, was listed in good condition in a Marshall hospital after the freak accident. It was described a freight train with a wide load damaged the overpass supports.

## City Budget Unveiled

*Promise of No New Taxes Issued*

By MARC BERNARDO

City Mgr. Scott McDonald Thursday unveiled his recommended 1972-1973 city budget of $298.4 million with promises of no new taxes and good news for city employees and the Dallas Transit System.

*(article continues)*

## Paul Crume's

## Big D

IT SAYS HERE that a Dayton, Ohio, firm is going to make a small plastic airplane that can be landed on a small lot and will cost $4,500. This is supposed to make it possible for every household to have its own airplane.

*(column continues)*

## Senate OKs Holiday For Election Days

WASHINGTON (AP) — The Senate Thursday voted to make election day, every two years beginning this year, a national holiday.

*(article continues)*

## Simple, Modern

## City Gets New Symbol

A new City of Dallas identification symbol—a blue cardinal letter "D" with a green stylized tree inside the letter—was unveiled to the City Council Thursday.

*(article continues)*

New city symbol . . . "Simple, uncluttered and modern."

# EXHIBIT 9

TRIPLE_D_30414

CITY 00017

## More Help Available

# Minority Outlook Better



Robert Griffith: No back-slapper.

**The Dallas Morning News**

# BUSINESS

Sunday,
April 29, 1973

**By AL ALTWEGG**
Business Editor

It's been a little over three years now since the push to promote "minority business enterprise" was kicked off in Dallas by a personal visit of the U.S. Secretary of Commerce, Maurice Stans.

Since then, some people have talked long and diligently to help some blacks and browns and a few reds get into business for themselves, to share in the American system by becoming entrepreneurs (or capitalists) in their own right.

So what is the result of their efforts to date? How has the idea of minority business enterprise fared?

Some people might say the results have been discouraging. Other people, however, feel that perhaps what has been accomplished—even though not yet impressive—is realistically considered, about all that might have been expected in three years, and starting from scratch.

And the view of some of the people who are now still toiling at the effort is that the prospects right now are better than they were, that there have been some failures but there have also been some successes, and that there is hope.

One of the men who has fought the valiant effort for the entire three years and been an inside party to much that has gone on in the field is Walter W. Durham, president of MESBIC Financial Corp. of Dallas.

Durham's company, a MESBIC (which stands for Minority Enterprise Small Business Investment Company), was one of the first such companies formed in the United States after the Nixon Administration espoused the minority enterprise concept. The Dallas firm is the only such firm in Texas, though there are now 57 of them around the nation.

The MESBICs are formed with the purpose of helping provide financial help for minority businesses, especially in the form of equity money and also at times. One of the big problems that minority would-be entrepreneurs have is a lack of capital.

And, in turn, one of the up-hill struggles Durham has had has been the problem of getting financing for his MESBIC Financial, which was started by Sam Wyly, a dedicated believer in the minority enterprise concept, when his University Computing Co. acted up $150,000 to get it started.

In the past couple of years, however, Durham has made headway, so that his company now has 30 corporate Dallas shareholders who have paid in a total capitalization of $533,850. The investing firms include all of the Dallas banks who are members of the Clearing House Association, plus such firms as American Petrofina, Braniaza International, Culbum Companies, Earth Resources, El Chico, General American Oil, the Haggar Co., Lomas & Nettleton Financial, Raymond D. Nasher Co., Southwestern Life Insurance, Stewart Investments, Texas Instruments, And Zale Corp.

But Durham still has the problem. An investment company, to be truly viable, the MESBIC people are finding out, needs at least $1 million capitalization. Around the nation, some corporate sponsors have come up with that kind of support, and Durham is still hopeful that Dallas businesses will, too.

There are now, in Dallas, three "packagers" who can help minority people who have so little but need help or how to go into business or to finance their tiny businesses to grow find the answers they need.

What the packagers do is help the businessmen prepare their packages, the detailed written proposals outlining what they propose as a business and why it should be successful and where it would function and what funds it has and what funds it needs.

All three of the current packagers in Dallas are currently funded by OMBE, the government's Office of Minority Business Enterprise. The three are:

The Dallas Mexican Chamber of Commerce, the newest such organization which is headed by Lee Trevino.

The Interracial Council for Business Opportunity (ICBO), headed by Marvin Robinson.

Venture Advisers Inc., headed by Joe Kirven.

And then there is help available from the Dallas Alliance for Minority Enterprise (DAME), which is not a packager but a link between minority business and the white business community. It provides people who can help minority businessmen over a wide variety of their problems that need solving.

And finally there are the Small Business Administration and the banks, which help provide money to the minority businessman.

All these facilities are now available in Dallas, which they were not just three years ago. If there have been few successes, that may be for two reasons —it has taken time to get the facilities established to help minority business enterprise and it just takes time to create viable businesses, white or any other color, and make them successful.

## Life of a Salesman—I

# It's New Breed Now

**By ALLEN HALL**

Robert J. Griffice does not wear a plaid sport coat or a perpetual grin and his shoes are shined no brighter than anyone else's. His stomach is not ruined by hurried restaurant meals, and his family is not breaking up for lack of attention.

But Griffice is a salesman, nevertheless—one of the new breed of salesmen who do not slap backs or tell jokes but do earn more money than the old-fashioned "drummer" ever dreamed existed.

Griffice sells computer software for University Computing Co. of Dallas, and computer products are not as easy to sell as they once were.

"Computer sales have been looked upon with a very bad eye recently," Griffice said. "The executives have been led down a primrose path in the past.

"Computer salesmen would come in and say, 'We're going to solve all your problems. All you need is a larger machine.' We're not selling hardware, so we're off the back a little bit.

"BUT we still need to go in with a unique approach and show him some benefits, either through the operation of his staff or actual cost savings."

Griffice, 35, learned his salesmanship in one of the more difficult sales jobs available during the last 20 years —selling RCA computer hardware when it was trying to compete with IBM.

"You had to be really resourceful sometimes to even get in to use the executive you zeroed in on," recalled Griffice. "There was a lot of creative selling."

Griffice was not one those sales prodigies who sell thousands of FIA luncheon tickets their first week in school. His degree is in biology, and he had no sales experience before going to work for RCA.

"After I graduated, I decided I wanted to get into the computer industry," Griffice said.

Why did he choose sales?

"I think the main attraction for me, after working a year at a desk at LTV, was the opportunity to get out and meet people—to talk to people and persuade them," Griffice said.

"I HAD some anxieties and apprehensions at first because I had not been exposed to selling before, but once I got into it, it all went behind me."

The hardest part of becoming a salesman, Griffice thinks, is overcoming shyness and sensitivity.

"In any type of selling, you have to overcome sensitivity," Griffice said, "because you are going to have to accept a lot of no's."

Griffice may get his share of "no's," but he does not accept any without a struggle.

"If you can turn somebody around, that's the best feeling," he said, "when somebody says no and you end up gaining an order out of that individual, you feel like you have really accomplished something."

Although a salesman like Griffice can not expect to be successful on every sales call, he does not have dates slammed in his face or encounter other acts bordering on physical violence such as are sometimes depicted in cartoons of salesmen.

"Often I will travel a long way for a single call," Griffice explained. "I will be calling on a man whose time is valuable and he doesn't expect me to waste it, but my time is valuable too. There is a sort of mutual respect."

THERE is no single personality type required for successful selling, according to Griffice. Salesmen usually like people, but other than that their personalities may vary as much as those of their customers.

"Before I went into selling, I thought of a salesman as a backslapping glad-hander," Griffice said. "Or maybe a smooth, Cary Grant type. But these kinds usually don't last long because they don't appear sincere."

The hardship of traveling is another popular concept of a salesman's life that Griffice found to be more myth than reality. Although he is usually on the road about four nights a week, it does not have a hardship on him or his family.

"Probably, you do better when you are traveling," Griffice said. The solitary nights in hotels are useful, he explained, for planning the next day's sales calls.

"MY WIFE had to assume more responsibility for running the household when I began traveling," said Griffice, but he does not feel his family life has suffered.

"It has made for a homecoming every weekend," he said.

The only problem with his schedule, Griffice thinks, is that it has given his small daughter a misconception of what he does.

"She sees me get on a plane the first of the week," he said, "and she sees me get off a plane a few days later. She thinks I've been on the plane all week."

Monday: The career of a real estate salesman.

## Are You Surprised?

# Weather? It's Normal

**By JIM BRISCANCE**
Associated Press Writer

Most Texans may be surprised to learn the Weather Service says the long stretch of wet, cool weather this winter and spring, coupled with wind, some turbulence, is only normal.

And, answering widespread farmer complaints that it's too wet to plow, Texas Agriculture Commissioner John White declares:

"We've never lost money in a wet year."

Those are a few heartening items from millions in trade and crop losses because of the cold winter and wet spring, but White says the worst is over. He says there is no danger of the season continually clashes with cold air of the fading winter.

The folks at the regional office of the National Weather Service in Fort Worth say what we're experiencing now and will be through May is the long term average — — the "normal" spring in Texas.

Maybe it doesn't seem that way because of the attention-grabbing storms of sobbing sleet, wailing water, hail, howling winds and all of the wider range propped of a spring in Texas.

CALM, DRYNESS, HEAT, boiling sun and cloudless skies are in solution but nonetheless departures from Texas' normal spring, says Jesse Presto, supervisor at the Fort Worth regional weather office.

Presto says a jet stream hanging over Texas has ushered in a great deal of major storm activity from the Pacific Northwest.

Nonetheless, he says, "the long run shows that we're getting back to normal weather, particularly in South and Northeast Texas. April and May are always the wettest months. We haven't had outstanding or significantly more rainfall than is normal—but more so than the past few years. But they were the usual periods because of their dryness."

Presto says spring is a potentially hazardous period in Texas as warm air of the new season continually clashes with cold air of the fading winter.

"It's also difficult to forecast because of its variability," he adds.

Presto doesn't caution well to the sun spot theory—that sun spots cause everything from warts to winter heat waves.

"Because of their unusual nature ... there's a lot we don't know about sun spots ... well, you can make a case for them causing most anything to happen," he said. "But I would hesitate in what is factual or mere speculation."

WHITE SAYS SPRING has packed up onion prices in the Rio Grande Valley where the crop has been slim because rains have caused seed down losses, not onions. "They're getting tremendous prices for onions down there. I don't know how much we'll have to replant this year."

"We're running close to four weeks behind on cotton in North Texas but, really, we're not late. It just means pushing the time between land preparation and, cultivating and planting closer together."

"Cashmere are pretty slow, you know. They don't adjust and complain about the weather too awful much. They know you can't do anything about it. They're madder about the beef boycott. They anything else." White said.

Spring is coming in like a lion but winter was pretty much of a tiger, too. Galveston, which rarely sees snow, got two inches of it this year.

The bayou country between Galveston and Beaumont now more ice and snow than they've seen in years.

The Texas Panhandle staggered under one vicious snowstorm after another all year long. Presto warnings were issued from April 26.

RAINFALL IN DALLAS County is about 10 inches over what it was through the end of April last year. About 80 per cent of the county's cotton land had yet to be planted. The fields are just too wet.

"Well," says White, "there's no doubt there's been an interruption of the schedule, that it will pay off later in the year. We've had what I'd call a superwet spring but old Texas really turns into a garden spot in a wet year. We usually have one extreme or the other and I prefer this 'too really get hurt in those dry spots.'

So, if grandpa seems more subdued in his brow stories of the winter of '98 it's only because young sprouters have joined forces who winter and spring are really like in Texas.

# Intricate Cheat

## Equity Funding Planned Ahead

SACRAMENTO, Calif. (AP)—California's insurance commissioner says that the bogus insurance policy scheme created within Equity Funding Life Insurance Co. was so intricate and sophisticated that "I think they could have fooled anyone."

Commissioner Gleeson L. Payne said officials within the firm not only created fictitious characters in order to sell bogus policies to other firms, but they had the mythical policyholders borrow on their policies and finally had them die.

A major mystery remaining is who collected the death benefits, Payne said.

Equity Funding claimed 97,000 policyholders and only about 30,000 of them actually existed, Payne said his investigators have discovered, Payne estimated that the bogus policies had a total face value of $2 billion and that premiums on the policies ran $35 million a year.

The fictitious policies were used to other insurance firms at huge profits, but then Equity had to pay premiums which were covered by selling still more fictitious policies, Payne said.

"IN THE WHOLE process, there was no intention originally to create any fraud that would affect the legitimate policyholders," Payne said, "They were just funneling other insurance companies. I suspect their conscience didn't bother them because it just affected other insurance holders."

But Payne and the collapse of the firm now jeopardizes the estimated 30,000 legitimate policies. Payne said he is now working to see that those persons don't lose their benefits.

Payne notified the operation worked in a telephone interview with the Associated Press.

Control of the firm was taken over by Payne on March 30, leading to the bankruptcy proceedings for the parent firm, the conglomerate Equity Funding Corp. of America based in Beverly Hills.

Payne said the scheme was organized by a few top officials in Equity, whom Payne did not name, and was designed to increase the company into the firm's computer.

"On weekends, they would plug their phony program into the master tape so people running the master tape never knew what was happening," he said.

The computer is used to send premium bills to policyholders, but Payne said those involved in the scheme programmed the computer to skip the non-existent policyholders.

THE KEYSTONE of the operation, going back as far as 1964, is the company's practice of one insurance company selling policies to another, Payne said.

A legitimate policy might cost about $1,300 to handle in the first year, Payne said, and Equity could sell it for about $1,900 to another company for a $500 profit.

"But in this case John Doe, the fictitious policyholder, never existed, so they would create a name with all the information about him—age, sex and so forth—and sell that name. Since they had no cost, they'd come out with $1,800."

In the second year of the policy, Equity would have to begin paying on premiums in the amount from—$900 in the example Payne described.

They don't have any premium coming in because their phony John Doe is not there to pay. So they create another fictitious policy and sell it and that gives them $1,800," Payne said.

Those running the bogus operation would pay the second insurance firm the $500 and have $900 left over, he said.

"THEY HAD TO have some deaths," he added, since a certain percentage of policy holders in any large operation die each year and death benefits have to be paid.

"They had to create these death certificates and all the information that goes along with a man dying. They did that in an office with 10 people working fulltime forging documents for two years," Payne said.

The firm which bought the policy from Equity would then have to pay the death benefit.

"At this point, we don't know where that money went," Payne said. Equity had policies which it bought from other companies, and some exchanged of policies took place in the full course of the operation. An attempt to untangle which bogus policy belonged to what company, added, was virtually and weekend underway.

"They'd say, 'That isn't in the bud, we'll get it for you.' That night the file would be created completely and they would hand it over the next day," Payne said.

Payne said whenever an auditor asked by chance to examine files of fictitious policyholders, officials would tell the auditor those files were not immediately available.

"They'd say, 'That isn't in the bud, we'll get it for you.' That night the file would be created completely and they would hand it over the next day," Payne said.

## Designs End Problems



Visual communication designer Crawford Dunn displays the results of his latest effort: A new police car for Dallas.

**By PATRICIA HARMON**

Simplifying something is often very complicated.

Visual communication designer Crawford Dunn knows. He's been commissioned to do everything from running an airline to guiding drivers through a parking garage.

"Actually, visual communication is problem solving," said Dunn, who has recently completed the design for Dallas' new police cars. "We are presented a problem—the designing of a police car, for instance—and we must identify the problem and solve it."

Dunn, who started as an industrial designer for LTV in 1961, is the head of Crawford Dunn Incorporated, which has recently announced its affiliation with the RYA professional design group of companies and changed its name to RYA Crawford Dunn Incorporated.

"A LOT OF PEOPLE are taking another look at a lot of things these days," said Dunn, "We took another look at police cars and what they say about po-

lice. We feel that the police car should reflect the attributes of a good policeman, approachable instead of threatening, authoritative instead of imperious."

"You don't help a good policeman by putting him in one of these 'hero mobiles' with all the gold and capital letters and stars and badges and eagles," Dunn said.

Dunn's new police car, which will be out on the streets soon, is solid white, with the Big Seagram of Dallas in deep blue on the side. The symbol has a great leaf cluster in the center which represents the city's nickname, the Big D, and a great kindness to lie hon, the words "Dallas Police" are printed in deep blue and the lower case letters is exposed to the usual all-capital lettering. The top is painted the white police department who work in 'cherry car city-civilized," Dunn said.

OTHER COMPLICATED things which have been simplified by Dunn include the signs at Texas Stadium, interior department signs at The Dallas Morning News, all signs in the DallPark parking garage downtown and many of the street signs in Highland Park.

"Industrial design is like the man who is drawing something for a visitor asking opposite his coat and draws the object upside down so that the visitor will recognize it easily — that is, he goes to more pains to make it easier for the receiver.

Among the better known corporate identity symbols and projects Dunn has designed are the Zale Corp. symbol, the Henry S. Miller mark, the Henry C. Beck logotype, signs for the State Fair Music Hall and he is now completing a study of graphics requirements for the Dallas-Fort Worth Regional Airport.

"I don't consider myself an artist," Dunn said, "Just seek very hard for a logic or a reason in industrial design. It's not simply problem solving process."

# EXHIBIT 10

TRIPLE_D_30416

CITY 00018

# Observer

| CITY HALL |

# Bust Out the D-Shaped Cake: Dallas' Logo Turns 40 This Year

**ERIC NICHOLSON**  |  **JUNE 27, 2012**  |  **10:44AM**

A lot of things have changed in Dallas in the past 40 years -- just look at the skyline or Uptown or the exploding suburbs -- but not everything. I was reminded of that this morning by the city's **Facebook page**. There, spokesman Frank Librio posted a brief history of the emblem you see above.

"I manage the City's FB and Twitter pages... so I'm always looking for interesting factoids to post in between service alert and event postings," Librio wrote in an email this morning. An employee asked him yesterday if he knew the history of the stylized blue "D" that graces just about everything that emanates from City Hall, so he checked with city archivist John Slate, who had recently **compiled the information**.

The logo was designed by Crawford Dunn and Associates and, as city records describe it, "is a blue capital letter 'D' with a green stylized tree inside it is meant to be simple, uncluttered and modern. The 'tree' is meant to symbolize the quality of living in Dallas, and also to project a feeling of greenery, growth and concern for the environment." It was first used on a presentation of the 1972-73 budget on August 10, 1972, which by my calculations means it will turn 40 in just over a month.

I asked Librio if there was a birthday celebration in the works, maybe a D-shaped cake and ice cream at City Hall. I was also curious if there'd ever been talk of replacing the logo. Those questions weren't addressed, so I'm assuming no. Which is probably for the best. The design is a far cry from "modern" and the symbolic tree might be best interpreted as a fig leaf, but the logo is at least inoffensive and carries a proper air of bureaucracy. Better to stick with it rather than pay a design firm hundreds of thousands of dollars to come up with something new that everyone but the design firm agrees is terrible.

Use of this website constitutes acceptance of our terms of use, our cookies policy, and our privacy policy The Dallas Observer may earn a portion of sales from products & services purchased through links on our site from our affiliate partners. ©2021 Dallas Observer, LP. All rights reserved.

Powered by Foundation

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1237373** |
|---|---|
| Filing date: | **09/22/2022** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding no. | 92077406 |
|---|---|
| Party | Plaintiff<br>City of Dallas |
| Correspondence address | ELISABETH A. EVERT<br>HITCHCOCK EVERT LLP<br>P.O. BOX 131709<br>DALLAS, TX 75313-1709<br>UNITED STATES<br>Primary email: docket@hitchcockevert.com<br>214-953-1181 |
| Submission | Plaintiff's Notice of Reliance |
| Filer's name | Anne M. Turner |
| Filer's email | docket@hitchcockevert.com |
| Signature | /Anne M. Turner/ |
| Date | 09/22/2022 |
| Attachments | 220922 Fourth Notice of Reliance on Trademark Registrations.pdf(344022 bytes) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

**In the Matter of Registration No. 6,141,994 for D (STYLIZED)**

| | | |
|---|---|---|
| **City of Dallas,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **v.** | § | Cancellation Proceeding No. 92077406 |
| | § | |
| **Triple D Gear, LLC,** | § | |
| | § | |
| Registrant. | § | |
| | § | |

<u>**PETITIONER'S FOURTH NOTICE OF RELIANCE: NOTICE OF RELIANCE ON TRADEMARK REGISTRATIONS**</u>

Pursuant to 37 C.F.R. § 2.122(d) and 37 C.F.R. § 2.122(g), Petitioner City of Dallas ("Petitioner") hereby submits this Notice of Reliance on Trademark Registrations to give notice that it will rely upon the following trademark registrations, attached hereto, as evidence in support of its case:

| <u>Trademark Registration</u> | <u>Exhibit No.</u> |
|---|---|
| U.S. Registration No. 4586688 | 11 |
| U.S. Registration No. 6141994 | 12 |
| U.S. Registration No. 6330048 | 13 |

The above-identified trademark registrations are relevant to this proceeding and, therefore, constitute competent evidence. Specifically, the attached exhibits are relevant to one or more issues in this case, as set forth below:

| <u>Exhibit No.</u> | <u>Relevant Issues</u> |
|---|---|
| 11 | • Priority<br>• Likelihood of Confusion |
| 12 | • Priority<br>• Likelihood of Confusion |
| 13 | • Priority<br>• Likelihood of Confusion |

Dated: September 22, 2022                    Respectfully submitted,

                                             __/s/ Anne M. Turner_____
                                             Anne M. Turner, Esq.
                                             Elisabeth A. Evert, Esq.
                                             Megan M. O'Laughlin, Esq.
                                             Hitchcock Evert LLP
                                             PO Box 131709
                                             Dallas, Texas 75313-1709
                                             214-953-1161 Telephone
                                             214-953-1121 Facsimile
                                             docket@hitchcockevert.com

                                             ATTORNEYS FOR PETITIONER
                                             CITY OF DALLAS


### CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing this Notice of Reliance on Trademark Registrations has been served on counsel for Triple D Gear, LLC by forwarding said copy on September 22, 2022 via email to Kimberlee A. Boyle at kim@richardlawgroup.com and molly@richardlawgroup.com.

                                             __/s/ Anne M. Turner_____
                                             Anne M. Turner, Esq.
                                             Hitchcock Evert LLP
                                             PO Box 131709
                                             Dallas, Texas 75313-1709
                                             214-953-1161 Telephone
                                             214-953-1121 Facsimile
                                             docket@hitchcockevert.com


### CERTIFICATE OF TRANSMITTAL

I hereby certify that copy on September 22, 2022, a true copy of the foregoing Petitioner's Notice of Reliance on Trademark Registrations is being filed electronically with the Trademark Trial and Appeal Board of the United States Patent and Trademark Office via ESTTA.

                                             __/s/ Anne M. Turner_____
                                             Anne M. Turner, Esq.
                                             Hitchcock Evert LLP
                                             PO Box 131709
                                             Dallas, Texas 75313-1709
                                             214-953-1161 Telephone
                                             214-953-1121 Facsimile
                                             docket@hitchcockevert.com


**PETITIONER'S NOTICE OF RELIANCE ON TRADEMARK REGISTRATIONS —PAGE 2**

# EXHIBIT 11

TRIPLE_D_30421

Digitally Signed By: United States Patent and Trademark Office
Location: United States Patent and Trademark Office
Date: 2022.08.21 06:01:33 -04'00'

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,586,688**

**Registered Aug. 19, 2014**

**Amended Sep. 06, 2022**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

TRIPLE D GEAR, LLC  (TEXAS LIMITED LIABILITY COMPANY)
503 N. Interurban Street
Richardson, TEXAS 75081

CLASS 25: Athletic apparel, namely, shirts, pants, jackets, [ footwear, ] hats and caps [, athletic uniforms ]

FIRST USE 1-1-2007; IN COMMERCE 1-1-2007

The mark consists of The capital letter "D" in a plain Helvetica font written in three sizes with each smaller size inside the other. Each "D" is open on the left side by having the vertical lines stop short of the connection top portion of the applicable "D". Inside of the three "D"s is a five point star which is slightly tilted to the left so that the top left point is at the 11:00 position and the top right point is at the 2:00 position.

SER. NO. 85-537,432, FILED 02-08-2012



*Katherine Kelly Vidal*

Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current address with the USPTO.  To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

Exhibit A-9, page 6 of 12    TRIPLE_D_30423

# EXHIBIT 12

TRIPLE_D_30424

# United States of America
## United States Patent and Trademark Office



**Reg. No. 6,141,994**

**Registered Sep. 01, 2020**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

Triple D Gear, LLC  (TEXAS LIMITED LIABILITY COMPANY)
503 N. Interurban Street
Richardson, TEXAS 75081

CLASS 25: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing

FIRST USE 00-00-2007; IN COMMERCE 00-00-2007

The mark consists of three concentric lines shaped in the form of a stylized letter "D".

OWNER OF U.S. REG. NO. 4586688

SER. NO. 88-850,773, FILED 03-27-2020



*Andrei Iancu*

Director of the United States
Patent and Trademark Office



TRIPLE_D_30425

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse)  and  an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Exhibit A-9, page 9 of 12

TRIPLE_D_30426

# EXHIBIT 13

TRIPLE_D_30427

# United States of America

## United States Patent and Trademark Office



**Reg. No. 6,330,048**

**Registered Apr. 20, 2021**

**Int. Cl.: 25, 35**

**Service Mark**

**Trademark**

**Principal Register**

Triple D Gear, LLC  (TEXAS LIMITED LIABILITY COMPANY)
503 N. Interurban Street
Richardson, TEXAS 75081

CLASS 25: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing

FIRST USE 00-00-2007; IN COMMERCE 00-00-2008

CLASS 35: Retail store services featuring eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; online retail store services in the field of eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; Retail apparel stores; Online retail store services featuring apparel

FIRST USE 00-00-2014; IN COMMERCE 00-00-2014

The mark consists of the stylized letter "D" written in three sizes with each smaller size inside the other. Each "D" is open on the left side by having the vertical lines stop short of the connection top portion of the applicable "D". Inside of the three "D"s is a five point star which is slightly tilted to the left so that the top left point is at the 11:00 position and the top right point is at the 2:00 position.

SER. NO. 88-802,417, FILED 02-19-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Page: 2 of 2 / RN # 6330048

Exhibit A-9, page 12 of 12                                    TRIPLE_D_30429

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1237376** |
|---|---|
| Filing date: | **09/22/2022** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding no. | 92077406 |
|---|---|
| Party | Plaintiff<br>City of Dallas |
| Correspondence address | ELISABETH A. EVERT<br>HITCHCOCK EVERT LLP<br>P.O. BOX 131709<br>DALLAS, TX 75313-1709<br>UNITED STATES<br>Primary email: docket@hitchcockevert.com<br>214-953-1181 |
| Submission | Plaintiff's Notice of Reliance |
| Filer's name | Anne M. Turner |
| Filer's email | docket@hitchcockevert.com |
| Signature | /Anne M. Turner/ |
| Date | 09/22/2022 |
| Attachments | 220922 Fifth Notice of Reliance on Official Records.pdf(6250118 bytes ) |

TRIPLE_D_30430

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

**In the Matter of Registration No. 6,141,994 for D (STYLIZED)**

| | | |
|---|---|---|
| **City of Dallas,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **v.** | § | Cancellation Proceeding No. 92077406 |
| | § | |
| **Triple D Gear, LLC,** | § | |
| | § | |
| Registrant. | § | |
| | § | |

**PETITIONER'S FIFTH NOTICE OF RELIANCE: NOTICE OF RELIANCE ON OFFICIAL RECORDS**

Pursuant to 37 C.F.R. § 2.122(e) and 37 C.F.R. § 2.122(g), Petitioner City of Dallas ("Petitioner") hereby submits this Notice of Reliance on Official Records to give notice that it will rely upon the following official records, attached hereto, as evidence in support of its case:

| **Official Record** | **Exhibit No.** |
|---|---|
| Plaintiff's Original Petition, *Youssef v. Jackson,* Cause No. CD-13-01632 in the 101st Judicial District Court of Dallas County, Texas | 14 |
| Plaintiff's Application for Temporary Restraining Order and Temporary Injunction, *Youssef v. Jackson,* Cause No. CD-13-01632 in the 101st Judicial District Court of Dallas County, Texas | 15 |
| Plaintiff's Motion for Summary Judgment, *Youssef v. Jackson,* Cause No. CD-13-01632 in the 101st Judicial District Court of Dallas County, Texas | 16 |
| Final Judgment, *Youssef v. Jackson,* Cause No. CD-13-01632 in the 101st Judicial District Court of Dallas County, Texas | 17 |
| Motion to Dismiss, *Youssef v. Jackson,* Cancellation No. 920055839 in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board | 18 |

| Official Record | Exhibit No. |
|---|---|
| Defendant's Affidavit in Support for Motion to Dismiss, *Youssef v. Jackson,* Cancellation No. 920055839 in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board | 19 |

The above-identified official records are relevant to this proceeding and, therefore, constitute competent evidence. Specifically, the attached exhibits are relevant to one or more issues in this case, as set forth below:

| Exhibit No. | Relevant Issues |
|---|---|
| 14 | • Priority<br>• Likelihood of Confusion |
| 15 | • Priority<br>• Likelihood of Confusion |
| 16 | • Priority<br>• Likelihood of Confusion |
| 17 | • Priority<br>• Likelihood of Confusion |
| 18 | • Priority<br>• Likelihood of Confusion |
| 19 | • Priority<br>• Likelihood of Confusion |

Dated: September 22, 2022                    Respectfully submitted,

  /s/ Anne M. Turner                
Anne M. Turner, Esq.
Elisabeth A. Evert, Esq.
Megan M. O'Laughlin, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

ATTORNEYS FOR PETITIONER
CITY OF DALLAS

## CERTIFICATE OF SERVICE

     I hereby certify that a true and complete copy of the foregoing this Notice of Reliance on Discovery Deposition has been served on counsel for Triple D Gear, LLC by forwarding said copy on September 22, 2022 via email to Kimberlee A. Boyle at kim@richardlawgroup.com and molly@richardlawgroup.com.

  /s/ Anne M. Turner                
Anne M. Turner, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

## CERTIFICATE OF TRANSMITTAL

     I hereby certify that copy on September 22, 2022, a true copy of the foregoing Petitioner's Notice of Reliance on Official Records is being filed electronically with the Trademark Trial and Appeal Board of the United States Patent and Trademark Office via ESTTA.

  /s/ Anne M. Turner                
Anne M. Turner, Esq.
Hitchcock Evert LLP
PO Box 131709
Dallas, Texas 75313-1709
214-953-1161 Telephone
214-953-1121 Facsimile
docket@hitchcockevert.com

**PETITIONER'S NOTICE OF RELIANCE ON OFFICIAL RECORDS —PAGE 3**

# EXHIBIT 14

TRIPLE_D_30434

I CIT ATTY

## ORIGINAL



FEB 11 2013

CAUSE NUMBER DC-13-01632

2013 FEB -8 A 11: 32

| | | |
|---|---|---|
| AHMED YOUSSEF | § | IN THE __**101st-E**__ |
| Plaintiff | § | |
| | § | JUDICIAL DISTRICT COURT SHAZZNIC BECK |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| FREDDIE JACKSON | § | |
| Defendant | § | |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Ahmed Youssef, filing this, his *Original Petition* complaining against Freddie Jackson and would respectfully show the Court as follows:

#### I. DISCOVERY LEVEL

1.01    Discovery in this case will be conducted under Level 2 Discovery Plan pursuant to Rule 190 Tex.R.Civ.Proc.

#### II. JURISDICTION, PARTIES AND VENUE

2.01    Plaintiff comes forth as an individual residing in Dallas County, Texas.

2.02    **DEFENDANT FREDDIE JACKSON may be served by serving him at his place of business TRIPLE D CLOTHING CO, 2636 WALNUT HILL LANE, DALLAS TEXAS 75229.**

2.03    The Court has in personam jurisdiction over the Defendant because Defendant does business in the State of Texas. The Court has subject matter jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court.

2.04    Venue is proper in Dallas County, Texas because the causes of action accrued in whole or in part in Dallas County, Texas and Defendant resides in Dallas County.

CITY 00155

**Exhibit A-10, page 6 of 86**                     **TRIPLE_D_30435**

## III. FACTS

3.01    Plaintiff is the owner of a design trademark which he sells on numerous items of clothing through his company. Plaintiff has used the mark as early as 2007, and has maintained his items in commerce in Texas and throughout the U.S. continuously since his first use. Plaintiff asserts that he is the first person to use the design on the sale of clothing.

3.02    Plaintiff sought to register his design with the U.S. Patent & Trademark Office and was rejected because Defendant Freddie Jackson had registered a mark which the U. S. Trademark Office found similar and likely to confuse the public. Plaintiff was unaware of Defendant's alleged use of the mark until being denied registration by the U.S. Patent & Trademark Office.

3.03    Although Plaintiff had continuously used his design for years, Plaintiff had never been contacted by Defendant regarding Plaintiff's use of Plaintiff's design mark.

3.04    In June of 2012, Plaintiff went to Defendant's web site and saw that Defendant was using Plaintiff's mark to sell hats, instead of using the mark which Defendant had registered with the U.S. Trademark Office. Plaintiff contacted Defendant in order to resolve the issue of being rejected for his trademark registration, but received no reply. Plaintiff therefore filed a Petition to Cancel Defendant's trademark registration. At the time of this filing, the Petition to Cancel is still pending in the Trademark Appeal Board.

3.05    Plaintiff's Petition to Cancel alleges, inter alia, (1) Plaintiff has prior use of the mark; and (2) that Defendant made false statements on the application, as Defendant represented that he had literally dozens of items in commerce which used the design at the time of Defendant's trademark application filing. Plaintiff being aware of the market for such items asserted that many of the items claimed to be in commerce were not.

CITY 00156

TRIPLE_D_30436

3.06    In the action before the Trademark Appeal Board, Plaintiff sent discovery requests requiring, inter alia, that Defendant produce documents and answer interrogatories which would demonstrate his first use of the mark and proof that all of the items he claimed to have in commerce were in fact in commerce at the time of his filing. Defendant has failed to produce the answers and documents. Plaintiff filed a Motion to Compel adequate discovery responses. That matter is pending at this time.

3.07    Despite Defendant's lack of proof of first use and use in commerce, Defendant has embarked on a course of interfering with the contractual relationships between Plaintiff and his retail stores. Defendant's interference is not in good faith, and is merely retaliatory in an effort to cause damage to Plaintiff before his mark is cancelled.

IV. Petition for Declaratory Judgment

4.01    Plaintiff incorporates by reference the assertions in paragraphs 3.01 through 3.07 as though fully restated and set forth herein.

4.02    The writing attached hereto as Exhibit "A" is a Cease and Desist Letter sent to Plaintiff's counsel. Defendant's letter states that he has certain rights which are disputed by Plaintiff.

4.03    Pursuant to the Texas Declaratory Judgments Act, Tex.Civ.Prac. & Rem. Code §§ 37.001 et seq., Plaintiff hereby asks this Court to declare that: Freddie Jackson is in no way entitled to the relief he demands by way of his Cease and Desist Letter.

4.04    Defendant's actions have obligated Plaintiff to engage the services of attorney David A. Small to protect and pursue Plaintiff's interests. These fees are recoverable pursuant to Tex.Prac. & Rem. Code §§ 37 & 38.001.

ORIGINAL PETITION • PAGE 3

CITY 00157

## V. CAUSE OF ACTION FOR

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

5.01   Plaintiff incorporates by reference as though fully restated herein the assertions in paragraphs 3.01 through 4.04.

5.02   Plaintiff asserts that he has existing business relationships and contracts with certain retailers. Defendant has intentionally interfered with Plaintiff's relationships and contracts by sending them "Cease and Desist" letters, claiming that the retailers are infringing on his trademark by selling Plaintiff's items.  Defendant's actions are in bad faith, as Defendant is aware of the dispute and is motivated by retaliation against Plaintiff.  Defendant's conduct has caused actual damages and damage to the goodwill of Plaintiff.

WHEREFORE PREMISES CONSIDERED, Plaintiff Ahmed Youssef hereby moves this court to require Defendants to be cited and appear, and that upon showing, Plaintiff receive an award of judgment for

    a.    Declaratory relief;
    b.    Actual Damages;
    c.    Consequential Damages;
    d.    And all relief at law and in equity to which it may show itself entitled.

Respectfully submitted,

David A. Small
LAW OFFICE OF DAVID A. SMALL
Texas State Bar Number 00784987
501 Elm Street, Suite 385
Dallas, Texas 75202
PHONE (214) 965-9400
FACSIMILE (214) 752-7798
**ATTORNEY FOR PLAINTIFF**
**AHMED YOUSSEF**

ORIGINAL PETITION • PAGE 4

CITY 00158

Exhibit A-10, page 9 of 86                    TRIPLE_D_30438



February 4, 2013

Sender Information:
Triple D Clothing Co.
Sent by:
Freddie Jackson CEO
Andover, MA, 01810, USA

Recipient Information:

Triple D Gear by Ahmed Youssef and/or Legal Counsel
Dallas, TX, 75201, USA
Sent via: certified mail

Re: Triple D Clothing Co./Trademark Counterfeiting by Ahmed Youssef and
www.tripledgear.com

Dear Sir/Madam:

I represent Triple D Clothing Co ("D"), in all intellectual property matters.

I am Freddie Jackson the owner or exclusive licensee of the well known world-famous
Triple D, Triple D Clothing Co, and etc. D (stylized) has been used extensively and for
many years in connection with our products in a wide variety of consumer merchandises.
I own numerous trademark registrations nationwide for the Triple D Marks, including,
but not limited, to the following United States Federal Trademark Registration:

Trademark info: D (Stylized) Mark Reg. No.4048819

This is registered in used in connection with the manufacture and distribution of, among
other things, high quality shirts, jackets, footwear, hats, socks, belts, necklaces, and
undergarments. The Registration constitutes conclusive evidence of my ownership of the
trademark Marks as well my exclusive right to use these marks. As a matter of law, this
trademark Registration is constructive notice to your company of my rights in the marks.

It has recently come to our attention that your company, Triple D Gear, bears a design
that closely mimics the style and distinctive elements of the Triple D Clothing Co's
trademark D in association with the marketing or sale of your products & services. An
Image of the design is set forth above for ease of reference. It is possible that you were
unaware of this conflict, so we believe that it is in our mutual interest to bring this matter
to your attention.

CITY 00159

D is a registered trademark of our business, Triple D Clothing Co. Our federal registration of this trademark provides us with certain proprietary rights. This includes the right to restrict the use of the trademark, or a confusingly similar trademark, in association with confusingly similar products or services.

It is important that we exercise our right to protect our trademark. It serves as an important and distinctive representation of the origin of our products as well as the goodwill of our company.

State and federal law supports our position that confusingly similar trademarks may cause confusion among customers. This confusion may cause substantial harm to the trademark by facilitating the loss of its effectiveness in establishing a distinct association between it, our products & services, and our company's goodwill.

Due to these concerns, and because unauthorized use of our federally registered trademark amounts to an infringement of our trademark rights, we respectively request that you cease & desist in any further use of Triple D and D (Stylized) in association with the marketing, sale, distribution, or identification of your products, or services.

It has also come to Triple D Clothing Co attention that your company also has online services to www.tripledgear.com, which is offering for sale counterfeit Triple D Clothing Co goods. The website www.tripledgear.com is using a website to post photo files which contain material which infringes upon Triple D Clothing Co intellectual property rights and which promote its web based businesses which are offering for sale goods bearing counterfeits of the D Mark. The infringing material can be found all over the website at the URL http://tripledgear.com/

Furthermore, www.tripledgear.com is using Triple D Clothing Co's famous name and trademarks to divert traffic to the website in violation of multiple national criminal laws as well as civil laws regarding trademark infringement, counterfeiting, and unfair competition. The location of the web pages displaying counterfeit Triple D Clothing Co goods offered for sale by the website www.tripledgear.com are listed below.

http://www.tripledgear.com/#/shop/4573010710/HATS

http://www.tripledgear.com/#/shop/4573010710/SWEATERS

http://www.tripledgear.com/#/shop/4573010710/BEANIES

Accordingly, Triple D Clothing Co requests your company cease providing online marketplace services to the site that is accessed through the URL http://www.tripledgear.com/

Triple D Clothing Co has a good-faith belief that the above-identified website's use of the Triple D Clothing Co name and marks is not authorized by Freddie, its agents, or the law.

CITY 00160

This request is made without waiver of any of Triple D Clothing Co's rights or remedies, all of which are expressly reserved.

We are certainly flattered by your affection for the brand, but we also have to be diligent to ensure that the Triple D Clothing Co's trademark D (stylized) is used correctly. What may not be so apparent, however, is that if we allow uses like yours, we run the very risk that our trademark will be weakened. As a fan of our brand, I'm sure that is not something you intended or would want to see happen.

As a designer, you can certainly understand our position and the need to contact you. You may even have run into similar problems with your own intellectual property.

I declare under penalty of perjury that the foregoing is true and correct and that I am authorized to act on behalf of Triple D Clothing Co.

Please respond by letter: indicating your intention to cease & desist the use of the trademark "D" or any confusingly similar trademark, within ten (10) calendar days. Also remove any false allegations for cancellation of my D (stylized) trademark. I look forward to hearing from you at your earliest convenience. A response by February 14, 2013 would be appreciated, if possible. In the meantime, if you have any questions or concerns, please do not hesitate to contact me.

We hope that this issue may be resolved this way so we can avoid any further legal remedies as provided by state law and the U.S. Trademark Act.

Very truly yours,

Freddie Jackson, C.E.O

Triple D Clothing Co,

P.O.BOX 3295

Andover, MA 01810

Ph#404-484-8212

CITY 00161

# EXHIBIT 15

TRIPLE_D_30442



CAUSE NUMBER DC 13 - 01632

| | | |
|---|---|---|
| AHMED YOUSSEF | § | IN THE 101ᴹ |
| Plaintiff | § | |
| | § | JUDICIAL DISTRICT COURT |
| v. | § | |
| | § | DALLAS COUNTY, TEXAS |
| FREDDIE JACKSON | § | |
| Defendant | § | |

## PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now, AHMED YOUSSEF filing this, his Application for Temporary Restraining Order and Temporary and would respectfully show the Court as follows:

### A. INTRODUCTION

Plaintiff Ahmed Youssef is the prior user of a mark which is sold on t-shirts, hats and athletic apparel in this locale. Subsequent to Plaintiff's use of the mark, Defendant Freddie Jackson registered a trademark for a similar mark. Therefore, when Plaintiff sought to register his own mark, his application was refused.

After Plaintiff was refused the registration of his mark, he sought to resolve the matter with Defendant. Defendant would not respond. Therefore in July 2012, Plaintiff filed a Petition to Cancel Defendant's mark with the U.S. Trademark Office. In that proceeding, Plaintiff sent discovery in September 2012 requesting proof that Defendant had in fact had his goods on the market at the time Defendant claimed. Defendant never responded to the discovery requests. Plaintiff then filed a Motion to Compel adequate discovery responses. The Trademark Office action is suspended pending the results of the Motion to Compel.

With the trademark action in suspension, Defendant has embarked on a course of conduct seeking to cause irreparable damage to Plaintiff's business. Defendant has sent "Cease and Desist" letters to stores carrying Plaintiff's merchandise. Such Cease and

CITY 00162

Exhibit A-10, page 14 of 86                    TRIPLE_D_30443

Desist letters are not sent in good faith, as Defendant has had the obligation to provide proof of his use of the mark since October of last year and has failed to do so. Plaintiff asserts that Defendant is merely trying to cause as much damage as he can before his mark is cancelled. Plaintiff is seeking to enjoin Defendant from sending any such communications, or in any way interfering with Plaintiff's business.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER
## AND TEMPORARY INJUNCTION

1.    Plaintiff Ahmed Youssef, the prior user of a mark used in commerce,  would show the Court that FREDDIE JACKSON has embarked on a course of conduct which will result in harm for which there is not an adequate remedy at law to compensate for such losses to Plaintiff  unless enjoined as per this application. Ownership of trademark is determined by use, not registration. *Abraham v. Alpha Chi Omega*, 781 F.Supp.2d  396 (N.D. Texas 2011); *See also, Gonannies, Inc. v. Goupair.Com, Inc.* 464 F.Supp. 2d 603 (N.D. Texas 2006).

2.    Plaintiff Ahmed Youssef further contends that it is likely that he will prevail on the merits of his claim in this suit, and is thus entitled to an order maintaining status quo. Non-registrant rebuts trademark validity by showing that the registrant had not established valid ownership rights in the mark at the time of registration.  In other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated. *Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.*, 616 F.Supp.2d 622 (N.D. Texas 2009).

3.    Defendant's communications to stores are statements of economic interest, and are subject to injunction. Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Marketshare Telecom, LLC v. Ericsson, Inc.*, 198 SW3d 908 (Tex. App.- Dallas 2006 no writ), *citing, Cent. Hudson*

<div align="center">
Application for Temporary <strong>Restraining Order</strong><br>
and Temporary Injunction  • Page 2
</div>

CITY 00163

*Gas & Electric v. Public Service Commission*, 447 U.S. 557 (1980). Thus, the statements are entitled to less protection than political speech, and are proper for injunction. *Id.*

4.      Attached hereto is the affidavit of AHMED YOUSSEF , setting forth the facts which cause AHMED YOUSSEF  to plea for a temporary restraining order and a Temporary Injunction.

4.      AHMED YOUSSEF requests the Court to dispense with the necessity of a bond, and request that Defendant be temporarily restrained immediately, without hearing, and upon notice and hearing be temporarily enjoined, pending the further order of this Court, from:

        a.      with the exception of this suit or the proceedings before the U.S. Trademark Appeal Board, publishing to any third party any statement seeking to interfere with the business of Plaintiff Ahmed Youssef.

WHEREFORE, PREMISES CONSIDERED, AHMED YOUSSEF prays that FREDDIE JACKSON be immediately restrained from the foregoing activities,  cited to appear and answer the allegations contained in Ahmed Youssef's Application and that after notice and hearing Defendant be temporarily and permanently enjoined and restrained from the foregoing conduct.

AHMED YOUSSEF further prays that FREDDIE JACKSON be cited to show cause why this Court should not issue its writ temporarily enjoining FREDDIE JACKSON from any of the foregoing activities until further order of this court and that Plaintiffs have and recover from FREDDIE JACKSON the relief sought in Ahmed Youssef's Application and any and all other just relief, at law or in equity,  to which Plaintiff is duly entitled.

CITY 00164

**Exhibit A-10, page 16 of 86**

**TRIPLE_D_30445**

Respectfully submitted,

David A. Small
LAW OFFICE OF DAVID A. SMALL
Texas State Bar Number 00784987
501 Elm Street, Suite 385
Dallas, Texas 75202
PHONE (214) 965-9400
FACSIMILE (214) 752-7798
**ATTORNEY FOR RESPONDENT
AHMED YOUSSEF**

## CERTIFICATE OF SERVICE

I, David A. Small do hereby certify that a true and correct copy of this document will be served on FREDDIE JACKSON pursuant to TRCP 21(a).

David A. Small

## LOCAL RULE 2.02(B) CERTIFICATE

I, David A. Small do hereby certify that I have called Defendant Freddie Jackson at 12:00PM (noon) on February 27, 2013 to advise of this hearing. He is pro se. Although Mr. Jackson's business address as stated on his Texas Sales and Use Tax Permit is a Dallas address, his mailing address is in Massachusetts. To notify the opposing party or counsel would impair or annul the court's power to grant relief because the subject matter of the application could be accomplished, as the mail would take two days to reach him. The circumstances do not permit additional efforts to give notice. To the best of counsel's knowledge, this case is not subject to transfer pursuant to Rule 1.06.

DAVID A. SMALL

Application for Temporary **Restraining Order**
and Temporary Injunction   • **Page 4**

CITY 00165

## AFFIDAVIT OF AHMED YOUSSEF

STATE OF TEXAS                          §
COUNTY OF DALLAS                        §

BEFORE ME, the undersigned notary public, on this day personally appeared AHMED YOUSSEF, who after being by me duly sworn, on his oath deposed and said that the statements made herein are within his personal knowledge and are true and correct.

"My name is Ahmed Youssef. I am over the age of eighteen years, am of sound mind, and competent to make the statements contained herein. The statements contained herein are within my knowledge and are true and correct.

I am the plaintiff in this matter. I have filed this suit to determine the rights in dispute after receiving a demand letter from defendant Freddie Jackson.

I have used a logo on the sale of clothing for years. When I sought to obtain a trademark registration for my logo, I was denied because the Trademark Office stated that Freddie Jackson had already registered it. I have used the mark prior to Freddie Jackson registering the mark he claims to be his. It is my firm belief that I have used the mark on the sale of clothing before Mr. Jackson. Therefore, with prior use of the mark, I believe I am the true owner of the mark.

After failed attempts to communicate with Mr. Jackson, I filed an action to cancel his registered trademark on July 9, 2012. Mr. Jackson filed his Answer to the action on August 21, 2012. In that proceeding, Mr. Jackson was sent a set of discovery requesting that he demonstrate his first use of the mark for the sale of clothing. When Mr. Jackson failed to respond, Mr. Jackson was then served with a Motion to Compel the responses. That matter is pending before the Trademark Appeal Board at this time.

In retaliation for my asserting my prior use rights, Mr. Jackson is now seeking to interfere with my business relationships by sending out Cease and Desist letters to stores carrying my products. Mr. Jackson is also making statements on social media and other internet portals claiming my mark to be "counterfeit." Such actions cause damage to my mark and my business goodwill which can not be repaired. I am asking this court to enjoin Freddie Jackson from trying to interfere with my business, making public disparaging comments regarding my mark and products, and contacting those with whom I have a business relationship for the purpose of threatening any legal action.

Further Affiant Sayeth Not.

AHMED YOUSSEF

AFFIDAVIT • PAGE 1

CITY 00166

SUBSCRIBED AND SWORN TO BEFORE ME   on this _26th_ day of _February_ 2013, to certify which, witness my hand and official seal.

_Gloria De Petris_

Notary Public - State of Texas

My Commission Expires:

_May 13, 2013_

GLORIA DE PETRIS
My Commission Expires
May 13, 2013

AFFIDAVIT • PAGE 2

CITY 00167

Exhibit A-10, page 19 of 86                    TRIPLE_D_30448

# EXHIBIT 16

TRIPLE_D_30449

CAUSE NUMBER DC 13 - 01632 FILED

13 APR 12 PM 3:56

**AHMED YOUSSEF**
Plaintiff

v.

**FREDDIE JACKSON**
Defendant

§
§
§
§
§
§
§
§

IN THE 101st

JUDICIAL DISTRICT COURT

DALLAS COUNTY, TEXAS

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ahmed Youssef (hereinafter "Plaintiff"), moves for summary judgment against Freddie Jackson (hereinafter "Defendant") and would respectfully show the Court as follows:

### I.

### INTRODUCTION

Plaintiff Ahmed Youssef has for years, sold athletic apparel bearing his trademark symbol, the "Leaning Star Triple D" ("Plaintiff's mark"). Plaintiff was unable to register his trademark because Defendant Freddie Jackson had registered a mark similar to Plaintiff's. To the extent the two marks may cause a likelihood of confusion, Plaintiff asserts prior use of the mark and all rights pertinent thereto. Despite the dispute between the parties, Defendant Freddie Jackson sought to interfere with Plaintiff's business by sending "Cease & Desist" letters to stores carrying Plaintiff's goods, as well as such letter to Plaintiff. In order to resolve the issue, Plaintiff Ahmed Youssef filed this suit for the state law claim of tortious interference with Plaintiff's business relationships and seeking a Declaratory Judgment to determine the common law rights to the mark based on prior use.

### II.

### SUMMARY JUDGMENT EVIDENCE

This motion is based on the following evidence, which is incorporated for all purposes by reference herein.

EXHIBIT A -- Affidavit of Ahmed Youssef and exhibits thereto ("Youssef Aff.").

---

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT                                    PAGE 1

CITY 00262

EXHIBIT B – Certified Copy of Defendant's Special Appearance

EXHIBIT C – Certified Copy of Freddie Jackson Assumed Name Certificate.

EXHIBIT D – Dallas County Records listing of businesses named "Triple D"

EXHIBIT E – Affidavit of Gerald Jones

Judicial Notice of City of Dallas Official Logo - TRCP 201 (b), (c) and (d)

## III.
## UNDISPUTED FACTS

1.    Plaintiff has used his "Leaning Star Triple D" mark since as early as 2007, and has continuously used his mark in commerce since that time.

2.    Defendant Freddie Jackson has not maintained any business in Texas since at least 2007.

3.    Defendant was aware that Plaintiff claimed the use of Plaintiff's mark by August 21, 2012.

4.    On or about February 4, 2013,  Defendant sent Cease & Desist letters to Plaintiff, and to stores carrying Plaintiff's goods, seeking to cause the withdrawal of Plaintiff's Petition to Cancel Defendant's trademark registration.

5.    The term "Triple D" is a nickname describing Dallas, Texas.

## IV.
## ARGUMENTS AND AUTHORITIES
### Declaratory/ Summary Judgment Standard

6.    Declaratory judgments rendered by summary judgment are reviewed under the same standards as govern summary judgments generally. *Bowers v. Taylor*, 263

CITY 00263

S.W.3d 260, 264 (Tex. App.--Houston [1st Dist.] 2007, no pet.). A traditional summary judgment under TRCP is properly granted when a movant establishes that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin.*, 988 S.W.2d 746, 748 (Tex. 1999); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Rizkallah v. Conner*, 952 S.W.2d 582, 582 (Tex. App.--Houston [1st Dist.] 1997, no pet.). The movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd.*, 710 SW.2d at 60. A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

### As Between the Two Marks at Issue, Plaintiff has Established Prior Use

7.      At issue are two marks. Plaintiff's mark has the three (3) Ds, with rounded edges, with a tilted or leaning star in the center. (See Exhibit A-2 to Youssef Affidavit). Plaintiff asserts the rounded edges give a polished finish to the mark, and the uncommon "leaning star" give the mark an urban attitude.

8.      Defendant's mark has the same triple Ds as the well known City of Dallas logo. Pursuant to TRE 201(b), (c) and (d), Plaintiff asks the court to take judicial notice of the attached City of Dallas logo (which has been the official City of Dallas symbol for decades and is on City of Dallas parking meters, City of Dallas vehicles, City of Dallas permits, City of Dallas employee uniforms, City of Dallas correspondence, the City of Dallas web site, and at the time of this filing there are no less than ten (10) of these City of Dallas logos on the front of this District Courthouse as City of Dallas building permits). If it is generally known within the court's territorial jurisdiction, judicial notice is proper as it is a notorious fact. *Barber v. Intercoast Jobbers & Brokers*, 417 SW2d 154, 158 (Tex. 1967) (Odessa is in Ector County); *Apostolic Church v. American Honda Motor Co.*, 833 SW2d 553 (Tex. App. Tyler 1992, writ denied) (Hwy 96 is known as Tenaha Hwy). The only difference between Defendant Jackson's mark and the City of Dallas logo is that Defendant replaced the City of Dallas leaves with the Texas Lone Star. (See Youssef Affidavit Exhibit A-1).

CITY 00264

Exhibit A-10, page 23 of 86                                          TRIPLE_D_30452

9.       Defendant mistakenly states in his Cease & Desist letter that he has certain rights based upon the fact that he registered his trademark with the USPTO. However, registration of a trademark creates nothing more than a rebuttable presumption that the party registering the mark is the owner. Once evidence contradicting the rebuttable presumption of ownership has been offered, the presumption is extinguished and shall not be weighed or treated as evidence, and the presumption has no effect on the burden of persuasion. *Hot-Hed, Inc. v. Safehouse Habitats, Ltd.,* 333 SW3d 719 (Tex. App. Houston [1st Dist] 2010 reh'g denied); citing *All American Builders, Inc. v. All American Siding of Dallas, Inc.,* 991 SW2d 484, 489 (Tex. App. Ft. Worth 1999, no pet).

10.      In late 2006, Plaintiff Ahmed Youssef along with two of his associates designed Plaintiff's mark in connection with the geographic nickname for Dallas "Triple D." Although the Triple D nickname for the City of Dallas based on the City's logo has been well established, the Triple D nickname took on an urban pop culture meaning as "Da Dirty Dallas."  There is no issue that the phrase "Triple D" is geographically descriptive of the City of Dallas, and is no different than the term "Big Apple" or "Motown." See Youssef Affidavit Exhibit A-5 – (page from Defendant's web site acknowledging that the term "Triple D" means  "Dirty Dirty Dallas."). There have been over *120 business filings in Dallas County* using the name "Triple D," and these filings date back to 1966.  See Exhibit D.

11.      As a geographically descriptive term,  Defendant Jackson has no right to the exclusive use of the term, even if registered as such. *Horsehoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Co.,* 53 SW3d 799 (Tex.App. Austin – 2001, reh'g overruled, review denied); *Chapelle v. Goltsman,* 197 F2d 837 (5th Cir. 1952), (The term, "Bama" is geographically descriptive and not the subject of trademark protection.); *McCarley v. Welch,* 170 SW2d 330 (Tex. App. – Dallas, 1943)"Registered trade name "Main Optical Co." for business located on Main Street not entitled to exclusive use of the term "Main" and could not enjoin competitor whose business was also on Main Street.

CITY 00265

12.     As between Plaintiff's associates, Plaintiff Ahmed Youssef is the one who started the clothing business use of the Leaning Star Triple D mark. Plaintiff started using his mark on t-shirts by the beginning of 2007. (See Affidavit of Youssef). By mid 2007, Plaintiff's business had grown to the point where he and his associates were having the shirts manufactured. (See Youssef Affidavit Exhibit A-3). Plaintiff has used his mark in the ordinary course of trade, as his "Leaning Star Triple D mark has always been displayed in a prominent manner on t-shirts, caps, jerseys, jackets and other athletic apparel continuously since he started using the mark. *Id.* Ahmed Youssef's goods have, since he started using his mark, been sold and/ or transported in commerce in various states. As Plaintiff's business grew, he became known as the guy with the "Triple D Gear." *Id.* Plaintiff has sold his goods which bear his trademark in Texas, Louisiana, Arkansas, Oklahoma personally on road trips with the merchandise. *Id.* Plaintiff has attended numerous trade shows to have his product distributed nationally. Plaintiff has since started Triple D Gear, LLC and sells his goods via internet sales. *Id.*

13.     Defendant on the other hand has admittedly not maintained any business in Texas since at least 2007. (See Exhibit B, paragraph 11(b) *"Defendant has not maintained a place of business in Texas since at least 2007..."* This statement is verified by affidavit of Freddie Jackson stating, *"I have read this Special Appearance of Freddie Jackson and the statements contained therein are within my personal knowledge and are true and correct.")* Further, Defendant's Assumed Name registration in Dallas County as Triple D Clothing Co. is dated April 15, 2010. This is approximately three (3) years after the evidence of Plaintiff's first use. Moreover, Defendant's Triple D Clothing website (which contained Plaintiff's mark) appears to have been established in September 2011, not 2006 as Defendant advertised on his site. See Exhibit E – Affidavit of Gerald Jones.

14.     Therefore, the summary judgment evidence establishes that Plaintiff Ahmed Youssef has more than met his evidentiary burden and is entitled to all first use rights associated with his Leaning Star Triple D mark, as he is the prior user of the mark. Trademark rights are determined by use, not registration. *Union National Bank of Texas Laredo v. Union National Bank of Texas Austin,* 909 F2d 839 (5th Cir. 1990).

---

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**                    **PAGE 5**

CITY 00266

15.    Here we have two (2) competing marks with a substantial controversy as to the priority of use and rights. Therefore, proper for declaratory judgment. *Hot-Hed, Inc. v. Safehouse Habitats, Ltd.,* 333 SW3d 719 (Tex. App. Houston [1st Dist] 2010 reh'g denied), Tex.Prac.Rem.Code §37.003-004. Accordingly, Plaintiff Ahmed Youssef is entitled to a judgment declaring that he has established priority of use of the two competing marks, and is entitled to all rights in said mark. *Id.*

### Defendant Tortiously Interfered With Plaintiff's Business Relationships

16.    In connection with the claim for Declaratory Judgment, Plaintiff asserts the underlying cause of action for tortious interference with business contracts. Plaintiff has obtained Restraining Orders and an Injunction in this cause a result of Defendant's interference with business contracts and relations.  The elements of a claim of tortious interference with a contract are: (1) There exists an agreement that is subject to interference; (2) There is a willful and intentional act of interference by the defendant; and (3) The defendant's intentional act of interference was a proximate cause of actual damages to the plaintiff. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex. 1991).

17.    In the instant case, Plaintiff had existing agreements with several retailers who carried his products at issue in this case. See Youssef Affidavit.  Defendant intentionally and willfully sent his Cease & Desist letter to at least the following stores: DK Fashion (Dallas, TX), Shiekh Shoes (Dallas, TX), Designers (Mesquite, TX), Fame (Frisco, TX) and others.  Such letters direct the stores to stop carrying Plaintiff's goods bearing Plaintiff's subject mark. The letters to the stores claim that Plaintiff is selling "counterfeit goods." Such statement is false and disparages Plaintiff, Plaintiff's goods and Plaintiff's business. See Youssef affidavit. As a result, the stores have pulled back on doing business with Plaintiff, and not re-ordered, as a result of fear of a lawsuit.  See Affidavit of Youssef. Such loss has cost Plaintiff the sum of $12,500.00 in lost profits, and damaged Plaintiff's goodwill.

18.    Plaintiff is entitled to a judgment for tortious interference with his business

Exhibit A-10, page 26 of 86                          TRIPLE_D_30455

contracts and relationships.

## V.
### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ahmed Youssef prays that this Court grant its motion for summary judgment and that it enter a final judgment against Freddie Jackson for:

(a)    Declaratory Judgment - declaring that Plaintiff Ahmed Youssef has established prior use between the two marks at issue, and that Plaintiff is entitled to all rights or ownership of his mark;

(b)    Factual Findings and Conclusions of Law as supported by the evidence;

(c)    Actual Damages for Tortious Interference With Business Contracts;

(d)    Taxable Costs of Court: and

(e)    Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

*David A. Small*
LAW OFFICE OF DAVID A. SMALL
Texas State Bar Number 00784987
501 Elm Street, Suite 385
Dallas, Texas 75202
PHONE (214) 965-9400
FACSIMILE (214) 752-7798
**ATTORNEY FOR PLAINTIFF
AHMED YOUSSEF**

### CERTIFICATE OF SERVICE

I, David A. Small on this 12th day of April, 2013, do hereby certify that a true and correct copy of this Motion for Summary Judgment will be served  on Defendant pursuant to TRCP 21(a) to Freddie Jackson, 360 N. Main St. #3295, Andover, MA 01810.

David A. Small

CITY 00268



**AFFIDAVIT OF AHMED YOUSSEF**

STATE OF TEXAS                    §
COUNTY OF DALLAS                  §

BEFORE ME, the undersigned notary public, on this day personally appeared AHMED YOUSSEF, who after being by me duly sworn, on his oath deposed and said that the statements made herein are within his personal knowledge and are true and correct.

"My name is Ahmed Youssef. I am over the age of eighteen years, am of sound mind, and competent to make the statements contained herein. The statements contained herein are within my personal knowledge and are true and correct.

I am the plaintiff in this matter. I have filed this suit to determine certain rights in dispute after receiving a demand letter from defendant Freddie Jackson. A copy of the demand letter is attached to this affidavit as *Exhibit 1*. The demand letter threatens action against me for selling items bearing a mark I have been using for years.

Attached as *Exhibit 2* is a photo of hats/ caps bearing a trademark I have used on clothing for sale since 2007 here in Texas. I, along with two of my business associates created the mark in late 2006 or 2007. The primary designer was my associate Arturo Sanchez. We call the mark the Triple D logo, as "Triple D" is the well known nickname for the City of Dallas. There is no dispute that the term "Triple D" means Dallas. All you have to say is "Triple D" and practically anybody in our targeted purchasing public knows and understands that you are talking about Dallas, Texas. In the urban/ hip-hop culture throughout the U.S., the "Triple D" stands for "Dirty Dirty Dallas" or "Da Dirty Dallas."

I refer to my mark as the Triple D "Leaning Star" mark, as the mark is made up of three (3) Ds with rounded edges, and a tilted or leaning star in the center. The tilted star is designed to give the mark a relaxed swagger. I feel it makes the mark stand out.

I began using the mark on t-shirts which I sold in early 2007. The first shirts I sold with my mark were made by hand screening. Later, as the shirts kept selling, I began to have the shirts manufactured in larger numbers. The earliest invoice that I am able to find for the manufacture of t-shirts bearing my mark is attached to this affidavit as *Exhibit 3*. The July 23, 2007 Mad Ink Invoice reference to "D Tour compilation on back" is a reference to the inclusion of the leaning star Triple D mark. The shirts were sold on what we called the "D Tour." We sold the shirts in Texas, Louisiana, Mississippi, Georgia, Oklahoma and Arkansas. I have continuously used my Leaning Star Triple D mark on clothing which I have sold since that time. The clothing items bearing the mark I have sold since that time include hats/ caps, t-shirts, jerseys, jackets, shorts and various athletic uniforms.

**AFFIDAVIT • PAGE 1**

CITY 00269

I have used my mark in the ordinary course of trade, and the Leaning Star Triple D has always been displayed in a prominent manner on t-shirts, caps, jerseys, jackets and other athletic apparel continuously sold by me since I started using the mark.   Since I started using my  mark in commerce in 2007, I have sold and/ or transported in commerce the described athletic apparel bearing my mark throughout the United States. These states include Texas, Louisiana, Mississippi, Georgia, Oklahoma Arkansas, Ohio, New York, New Jersey and California.  Internationally, I have sold and/ or transported in commerce the described goods bearing my mark to Australia and a military base in Iraq.

As my business grew, I became known as the guy with the "Triple D Gear." I worked diligently on a full-time basis to develop this reputation and goodwill. I would sell t-shirts, caps and the other described apparel bearing my leaning star Triple D mark at the hottest hip-hop night clubs, neighborhood retail stores all around the Dallas/ Fort Worth metroplex, selling and advertising personally to club DJs, special events, car shows, and radio station promotions. I am the sponsor of the "Kixpo" which is a trade show for athletic/ tennis shoes held at the Dallas Cowboys Stadium where my goods are sold. I am a sponsor for events at the Lone Star Horse Race Park/ Alliance Skate Park at which my goods are also sold.

The primary target market for my goods and brand is teenage through 20s, hip-hop/ urban culture minded individuals familiar with Dallas Texas. My goods are available at major shopping malls in Dallas Fort Worth area. I have advertised and sold product at numerous trade shows throughout the United States. I have advertised by printed fliers, store displays, social media, and have even had a promo-van wrapped with my mark.  I have since started Triple D Gear, LLC and sell my goods on the internet as tripledgear.com.

When I sought to register my mark as a trademark, I was refused registration because Freddie Jackson had already registered his slightly different mark. Mr. Jackson's registered mark ( which is included at the top of his demand letter) is different than mine. The triple Ds in his mark are exactly the same as the lettering for the City of Dallas famous logo. Also, his mark has the standard Texas Lone Star.

After being refused trademark registration due to Jackson's mark, I went to Jackson's website "tripledclothingco.com".  I was shocked to see that Freddy Jackson was using my mark with the leaning star on his website. I have attached a copy of that website page which I printed on June 25, 2012 as *Exhibit 4*. I also attached as *Exhibit 5*, pages I printed from Jackson's website the same day, in which he discusses that the term "Triple D" refers to the nickname for Dallas (Dirty Dirty Dallas).  Coincidentally, Jackson's site now says, "Under Construction." See *Exhibit 6*.

After failed attempts to communicate with Mr. Jackson, I filed an action to cancel his registered trademark on July 9, 2012. In that petition, it was clearly stated that I have been using my mark since 2007. Mr. Jackson filed his Answer to the action on August 21, 2012.

<div align="center">

**AFFIDAVIT • PAGE 2**

</div>

In retaliation for my asserting my prior use rights, Mr. Jackson has interfered with several of my business relationships by sending out Cease and Desist letters to stores carrying my Triple D Gear products. Jackson sent letters to DK Fashion (Dallas, TX), Shiekh Shoes (Dallas, TX), Designers (Mesquite, TX), Fame (Frisco, TX) and others.

Jackson's letters to the stores also accuse me of providing the stores with "counterfeit" goods. That statement is false. I have never claimed to be selling Jackson's goods, and I do not use his mark. He did not say "similar", he said "counterfeit." Such actions cause damage to my mark and my business goodwill which can not be repaired. My resale to these stores has been reduced. My profit from resales to these stores has been reduced $12,500.00 as none of the stores have re-ordered due to Jackson's letters. The Cease & Desist letter Jackson sent to me also seeks to have me stop the trademark cancellation proceeding, which appears to be his true motivation.

Further Affiant Sayeth Not.

AHMED YOUSSEF

SUBSCRIBED AND SWORN TO BEFORE ME on this _11th_ day of _April_ 2013, to certify which, witness my hand and official seal.

Notary Public - State of Texas

My Commission Expires:

DONNA YVONNE NEWMAN
My Commission Expires
May 20, 2015

AFFIDAVIT • PAGE 3





# City of Dallas



CITY 00272




February 4, 2013

Sender Information:
Triple D Clothing Co.
Sent by:
Freddie Jackson CEO
Andover, MA, 01810, USA

Recipient Information:

Triple D Gear by Ahmed Youssef and/or Legal Counsel
Dallas, TX, 75201, USA
Sent via: certified mail

Re: Triple D Clothing Co./Trademark Counterfeiting by Ahmed Youssef and
www.tripledgear.com

Dear Sir/Madam:

I represent Triple D Clothing Co ("D"), in all intellectual property matters.

I am Freddie Jackson the owner or exclusive licensee of the well known world-famous
Triple D, Triple D Clothing Co, and etc. D (stylized) has been used extensively and for
many years in connection with our products in a wide variety of consumer merchandises.
I own numerous trademark registrations nationwide for the Triple D Marks, including,
but not limited, to the following United States Federal Trademark Registration:

Trademark info: D (Stylized) Mark Reg. No.4048819

This is registered in used in connection with the manufacture and distribution of, among
other things, high quality shirts, jackets, footwear, hats, socks, belts, necklaces, and
undergarments. The Registration constitutes conclusive evidence of my ownership of the
trademark Marks as well my exclusive right to use these marks. As a matter of law, this
trademark Registration is constructive notice to your company of my rights in the marks.

It has recently come to our attention that your company, Triple D Gear, bears a design
that closely mimics the style and distinctive elements of the Triple D Clothing Co's
trademark D in association with the marketing or sale of your products & services. An
Image of the design is set forth above for ease of reference. It is possible that you were
unaware of this conflict, so we believe that it is in our mutual interest to bring this matter
to your attention.

CITY 00273

D is a registered trademark of our business, Triple D Clothing Co. Our federal registration of this trademark provides us with certain proprietary rights. This includes the right to restrict the use of the trademark, or a confusingly similar trademark, in association with confusingly similar products or services.

It is important that we exercise our right to protect our trademark. It serves as an important and distinctive representation of the origin of our products as well as the goodwill of our company.

State and federal law supports our position that confusingly similar trademarks may cause confusion among customers. This confusion may cause substantial harm to the trademark by facilitating the loss of its effectiveness in establishing a distinct association between it, our products & services, and our company's goodwill.

Due to these concerns, and because unauthorized use of our federally registered trademark amounts to an infringement of our trademark rights, we respectively request that you cease & desist in any further use of Triple D and D (Stylized) in association with the marketing, sale, distribution, or identification of your products, or services.

It has also come to Triple D Clothing Co attention that your company also has online services to www.tripledgear.com, which is offering for sale counterfeit Triple D Clothing Co goods. The website www.tripledgear.com is using a website to post photo files which contain material which infringes upon Triple D Clothing Co intellectual property rights and which promote its web based businesses which are offering for sale goods bearing counterfeits of the D Mark. The infringing material can be found all over the website at the URL http://tripledgear.com/

Furthermore, www.tripledgear.com is using Triple D Clothing Co's famous name and trademarks to divert traffic to the website in violation of multiple national criminal laws as well as civil laws regarding trademark infringement, counterfeiting, and unfair competition. The location of the web pages displaying counterfeit Triple D Clothing Co goods offered for sale by the website www.tripledgear.com are listed below.

http://www.tripledgear.com/#/shop/4573010710/HATS

http://www.tripledgear.com/#/shop/4573010710/SWEATERS

http://www.tripledgear.com/#/shop/4573010710/BEANIES

Accordingly, Triple D Clothing Co requests your company cease providing online marketplace services to the site that is accessed through the URL http://www.tripledgear.com/

Triple D Clothing Co has a good-faith belief that the above-identified website's use of the Triple D Clothing Co name and marks is not authorized by Freddie, its agents, or the law.

CITY 00274

This request is made without waiver of any of Triple D Clothing Co's rights or remedies, all of which are expressly reserved.

We are certainly flattered by your affection for the brand, but we also have to be diligent to ensure that the Triple D Clothing Co's trademark D (stylized) is used correctly. What may not be so apparent, however, is that if we allow uses like yours, we run the very risk that our trademark will be weakened. As a fan of our brand, I'm sure that is not something you intended or would want to see happen.

As a designer, you can certainly understand our position and the need to contact you. You may even have run into similar problems with your own intellectual property.

I declare under penalty of perjury that the foregoing is true and correct and that I am authorized to act on behalf of Triple D Clothing Co.

Please respond by letter: indicating your intention to cease & desist the use of the trademark "D" or any confusingly similar trademark, within ten (10) calendar days. Also remove any false allegations for cancellation of my D (stylized) trademark. I look forward to hearing from you at your earliest convenience. A response by February 14, 2013 would be appreciated, if possible. In the meantime, if you have any questions or concerns, please do not hesitate to contact me.

We hope that this issue may be resolved this way so we can avoid any further legal remedies as provided by state law and the U.S. Trademark Act.

Very truly yours,

Freddie Jackson, C.E.O

Triple D Clothing Co,

P.O.BOX 3295

Andover, MA 01810

Ph#404-484-8212

CITY 00275





CITY 00276



Mad ink

EX A
(3)

# Invoice

2822 Commerce St
Dallas Tx
75226

2148429020

Cpp2513@gmail.com

| | |
|---|---|
| Invoice No: | 1143 |
| Date: | 23 Jul 07 |
| Terms: | Net 09 |
| Due Date: | 01 Aug 07 |

**Bill To:** Richmind Records
14001 Goldmark
Dallas , Tx
75240

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| 250 black T shirts Richmind logo in front and D Tour compilation on back. | 250.00 | $5.00 | $1,250.00 |
| 250 grey T Shirts Richmind logo in front and D Tour compilation on back . | 250.00 | $5.00 | $1,250.00 |

* Indicates non-taxable item

Need half deposit to begin project and other half on completion . Cash or cashiers check only.

| | |
|---|---|
| Subtotal | $2,500.00 |
| TAX (8.25%) | $206.25 |
| Total | $2,706.25 |
| Paid | $0.00 |
| **Balance Due** | **$2,706.25** |

Page 1 of 1

CITY 00277

Triple D Clothing Co – Hats

6/25/12 11:06 AM

# Triple D Clothing Co

PO Box 460871
Garland, TX 75046
info@tripledclothingco.com

- Home
- Hats
- Clothing
- FAQ
- About Us
- Contact Us

EXA
(4)

## Hats

THE ORIGINATORS OF THE TRIPLE D FITTED.



- (Fitted) SOLD OUT



»://www.tripledclothingco.com/hats

CITY 00278
Page 1 of 2

Triple D Clothing Co – Hats

6/25/12 11:06 AM

- (Fitted) SOLD OUT

Copyright 2011 Triple D Clothing Co. All rights reserved.

PO Box 460871
Garland, TX 75046
info@tripledclothingco.com

close

- 
- 
- 

//www.tripledclothingco.com/hats

CITY 00279    Page 2 of 2

Triple D Clothing Co - About Us                                                    6/25/12 11:10 AM

# Triple D Clothing Co

PO Box 460871
Garland, TX 75046
info@tripledclothingco.com

- Home
- Hats
- Clothing
- FAQ
- About Us
- Contact Us

## About Us

### Our Business

Triple D Clothing Co was first established back in 2006 when the CEO Balla J founded the company Triple D. Triple D Clothing Co comes from a duration of many companies owned by Balla J. Originally the phrase started off as a different way of saying Da Dirty Dirty representing the fact the owner is from the south. To be more specific being from Texas know as the 3rd coast it then turned into Dirty Dirty Dallas to represent the city hes from. Triple D fits both sayings perfectly in which created a movement throughout the city of Dallas.

Triple D Clothing Company was officially formed in winter 2006 with the first order of T-shirts and collar shirts that went on sale on this very site. This move which grew his interest and pushed him to go ahead and launched his clothing collection. The Collection includes hats, t shirts, collar shirts, pants, belts, socks, shoes, and other accessories.

This was only a piece of the Triple D Brand from the beginning which also includes TV, Magazine, Radio, Music, Promotion, and Awards. Triple D is an internationally known Trademarked brand company that still have much more room for growth in the coming of times. We believe in one thing and that is to prove that quality and a reasonable price can co-exist today.

Triple D Clothing Co Mission: We are committed to creating a unique fashion environment. With the immense knowledge and exposure of our buying staff and, Triple D Clothing Co can create a wardrobe for the new millennium that encompasses the trends of the world market with keeping the needs of the individual in mind. Rapidly updating our look to stay in step with fashion trends and to insure our clientele an exclusive look for their fast paced lifestyle. Lastly we are dedicated to superb customer service and no one will be left behind.

://www.tripledclothingco.com/about_us                                            Page 1 of 2
                                                                                  CITY 00280

Triple D Clothing Co – About Us

6/25/12 11:10 AM

Copyright 2011 Triple D Clothing Co. All rights reserved.

PO Box 460871
Garland, TX 75046
info@tripledclothingco.com

close

- 
- 
- 

Exhibit A-10, page 40 of 86    TRIPLE_D_30469

Under Construction

4/10/13 4:29 PM



# This site is under construction.

Search the Web:

[                    ] ( Search the Web )



r://www.tripledclothingco.com/

CITY 00282 1 of 1



Filed
13 March 13 P4:
Gary Fitzsimmor
District Clerk
Dallas District

CAUSE NO. DC-13-01632

| AHMED YOUSSEF,<br>Plaintiff, | § | IN THE 101ST |
| | § | |
| | § | |
| | § | |
| v. | § | DISTRICT COURT |
| | § | |
| | § | |
| FREDDIE JACKSON,<br>Defendant. | § | DALLAS COUNTY, TEXAS |
| | § | |

---

## SPECIAL APPEARANCE OF FREDDIE JACKSON, AND SUBJECT THERETO GENERAL DENIAL

---

1.    Defendant, Freddie Jackson, asks the court to sustain this, his Special Appearance, and dismiss Plaintiff's suit.

### A. Introduction

2.    Plaintiff is AHMED YOUSSEF, a Texas resident; Defendant is FREDDIE JACKSON, a Massachusetts resident.

3.    Plaintiff sued Defendant as a result of Defendant's alleged tortious interference relating to Plaintiff's use of Defendant's registered trademark (Federal Trademark Registration No. 4,048,819), hereinafter referred to as "TRIPLE D", on Plaintiff's products.

### B. Facts

4.    Defendant is not a resident of the State of Texas. Defendant is an individual and does not reside in the State of Texas and, specifically, Defendant would show the following:

Exhibit A-10, page 42 of 86               TRIPLE_D_30471

(i)    Defendant is a resident of the State of Massachusetts, and is not a resident of the State of Texas;

(ii)    Defendant does not maintain a place of business in the State of Texas; furthermore, Defendant does not maintain a place of business at 2636 Walnut Hill Lane, Dallas Texas 75229, as alleged in Plaintiff's Complaint;

(iii)    Defendant has never consented to the jurisdiction of or appointed an agent for service of process in the State of Texas; in fact, Defendant has never been properly served with a complaint or temporary restraining order related to this litigation.

(iv)    Contrary to the allegations in Plaintiff's Complaint, Plaintiff does not have superior rights to the disputed trademark, which is owned by Defendant; Defendant did not make false statements on Defendant's trademark application; Defendant does have evidence of first use of the TRIPLE D trademark; and Defendant acted in good faith to protect Defendant's trademark and brand and not as mere retaliation against Plaintiff.

5.    Defendant attaches his affidavit to this Special Appearance, Exhibit A, which establishes facts not apparent from the record and incorporates said affidavit by reference herein.

### C. Authorities

6.    Texas courts do not have jurisdiction over non-resident defendants unless the non-resident defendants have purposefully established "minimum contacts" with Texas, and the court's exercise of jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-76, 105 S. Ct. 2174, 2183-84 (1985); *BMC Software Belg. V. Marchand,* 83 S. W.3d 789, 795 (Tex. 2002); *Guardian Royal Exch. Assur., Ltd. V. English China Clays, P.L.C.,* 815 S. W.2d 223, 226 (Tex. 1991).

7.    Initially, the plaintiff bears the burden of pleading allegations sufficient to bring a non-resident defendant within the terms of the Texas long-arm statute. However, when a non-resident defendant files a special appearance, that defendant assumes the burden of negating all bases of

SPECIAL APPEARANCE, FREDDIE JACKSON                                    PAGE 2 OF 8 CITY 00284

Exhibit A-10, page 43 of 86                                    TRIPLE_D_30472

personal jurisdiction that the plaintiff has alleged. *See Choice Auto Brokers, Inc. v. Dawson, 274 S.W.3d 172 (Tex. App. Houston 1st Dist. 2008)*

8.    Personal jurisdiction over non-resident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. A non-resident, defendant's minimum contacts must derive from purposeful availment: a non-resident defendant must have "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction to establish sufficient contacts with the forum to confer personal jurisdiction. An act, or acts, by which the defendant purposefully avails itself of the privilege of conducting activities in Texas, and thus invokes the benefits and protections of Texas law, constitutes sufficient contact with Texas to confer personal jurisdiction. *Auto Brokers, Id*

9.    The court considers three elements of purposeful availment. First, the court considers only the defendant's own actions, not those of the plaintiff or any other third party. The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Auto Brokers, Id*

### D. Argument

#### No Minimum Contacts

10.    Under minimum contact analysis, Texas must determine whether the non-resident defendants have purposefully availed themselves of the privilege of conducting activities within Texas. *Guardian Royal*, 815 S. W.2d at 226; *see CSR Ltd. V. Link*, 925 S. W.2d 591, 596 (Tex. 1996). Minimum contacts are not established unless the court finds it wither specific or general

Exhibit A-10, page 44 of 86                                        TRIPLE_D_30473

jurisdiction over the defendant. *See BMC Software*, 83 S. W.3d at 795; *Hoffman-La Roche, Inc. v. Kwasnik*, 109 S. W.3d 21, 25 (Tex. App.–El Paso 2003, no pet.).

11.    Defendant has no minimum contacts with the State of Texas, and Defendant further incorporates his affidavit, attached hereto as Exhibit A:  Specifically,

(a) Defendant is a resident of the State of Massachusetts, and is not a resident of the State of Texas;

(b) Defendant has not maintained a place of business in the State of Texas since at least 2007; furthermore, Defendant does not maintain a place of business at 2636 Walnut Hill Lane, Dallas Texas 75229, as alleged in Plaintiff's Complaint;

(c) Defendant has never consented to the jurisdiction of, or appointed an agent for service of process in the State of Texas;

(d) Except for the purposes of this special appearance, Defendant has never employed residents of the State of Texas as employees;

Fair Play and Due Process

14.    This court's assumption of jurisdiction over the defendant and his free speech will offend traditional notions of fair play and substantial justice and will be inconsistent with the constitutional requirements of due process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); *Guardian Royal*, 815 S. W.2d at 231. The court should decline to exercise jurisdiction over the defendant because the notions of fair play and substantial justice would be offended considering: {*1) the burden of the client 2) the interests of the forum state in adjudicating the dispute, 3) the Plaintiff's interest in obtaining convenient and effective relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental policies}. Guardian Royal*, 815 S. W.2d at 232.

SPECIAL APPEARANCE, FREDDIE JACKSON                    PAGE 4 OF 8

CITY 00286

15.     Exercising jurisdiction over defendant in this case would offend traditional notions of fair play and substantial justice for the following reasons:

(a)  The demands made by Defendant in his Cease and Desist letter (referenced as Exhibit A to Plaintiff's Complaint) were made in good faith and based on the federal registration of Defendant's trademark with the United States Patent and Trademark Office;

(b)  Any disputes concerning the ownership of federal trademark registration No. 4,048,819 will be resolved by the Trademark Trial and Appeal Board;

(c)  Plaintiff filed suit in Dallas County as well as a Petition to Cancel at the Trademark Trial and Appeal Board;

(d)  Defendant is a resident of Massachusetts and employed in Massachusetts. It would be extremely expensive for Defendant to litigate this action far from his home. In addition, Defendant would be in danger of losing his employment if required to appear in Dallas for this litigation.

(e)  Texas has little interest in adjudicating this dispute as the rights to the federal trademark central to this litigation will be determined on a federal level, at the Trademark Trial and Appeal board;

(f)  Judicial efficiency is not served by jurisdiction in Texas. A state court is not the proper venue to decide issues of trademark infringement of a federal trademark nor any available remedies for said trademark infringement; and

(g)  Proper jurisdiction of this proceeding lies in Defendant's home state. Even if Plaintiff's allegations were true, which Defendant specifically denies, that State of Massachusetts would have a greater interest in discouraging the tortious activities of its residents.

E. Conclusion

16.  Defendant does not have the minimum contacts with the State of Texas to justify a Texas court's assumption of jurisdiction. If this court assumes jurisdiction over the Defendant, it will offend traditional notions of fair play and substantial justice. Further, Defendant merely sought

Exhibit A-10, page 46 of 86                    TRIPLE_D_30475

assurances that Plaintiff would cease any and all infringing activities in good faith. Defendant, the owner of a valid federal trademark, applied for and obtained said registration in an honest and truthful manner. Accordingly, exercising jurisdiction over Defendant in this case would violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

<div align="center">F. Prayer</div>

17. For these reasons, Defendant asks the court to set this Special Appearance for hearing and, after the hearing, sustain the Defendant's Special Appearance and enter a final judgment dismissing Plaintiff's causes of action.

DATED: March 13, 2013.

<div align="center">

Respectfully submitted,
WILSON LEGAL GROUP, P.C.

By:_____

JOHN T. WILSON
State Bar No. 24008284
KANDACE D. WALTER
State Bar No. 24047068
SUL LEE
State Bar No: 24078844
16610 Dallas Parkway,
Suite 1000
Dallas, Texas 75248
(T) 972.248.8080;
(F) 972.248.8088;

**ATTORNEYS FOR DEFENDANT
FREDDIE JACKSON**

</div>

Exhibit A-10, page 47 of 86                              TRIPLE_D_30476

## VERIFICATION

I, FREDDIE JACKSON, have read this SPECIAL APPEARANCE OF FREDDIE JACKSON and that the facts in it are within my personal knowledge and are true and correct.

_Freddie Jackson_

**STATE OF MASSACHUSETTS**   §
**ESSEX COUNTY**             §

    Before me, the undersigned notary, on this day personally appeared Freddie Jackson, a person whose identity is known to me. After I administered an oath to him, upon his oath he said he read this SPECIAL APPEARANCE OF FREDDIE JACKSON and that the facts in it are within his personal knowledge and are true and correct.

SUBSCRIBED AND SWORN to before me on this _13th_ day of _March_, 2013, to certify which witness my hand and official seal.

_Charlene Watz_

NOTARY PUBLIC, in and for the
STATE OF MASSACHUSETTS
Name Printed: _Charlene Watson_
My Commission Expires: _1/30/15_

CHARLENE WATSON
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
January 30, 2015

SPECIAL APPEARANCE, FREDDIE JACKSON                          PAGE 7 OF 8

CITY 00289

Exhibit A-10, page 48 of 86                          TRIPLE_D_30477

## CERTIFICATE OF SERVICE

I certify that a copy of this SPECIAL APPEARANCE OF FREDDIE JACKSON was served on Plaintiff Ahmed Youssef, by and through counsel of record, David A. Small, Law Office of David A. Small, 501 Elm Street, Suite 385, Dallas Texas 75202, (F)214-752-7798; by facsimile and regular mail on March 13, 2013, in accordance with Rule 21 of the Texas Rules of Civil Procedure.

Kandace D. Walter

Exhibit A-10, page 49 of 86

TRIPLE_D_30478



# "EXHIBIT A"

CITY 00291

Mar.13.2013  02:55 PM

PAGE.  2/ 11

CAUSE NO. DC-13-01632

AHMED YOUSSEF,          §          IN THE 101ST
   Plaintiff,           §
                        §
                        §
V.                      §          DISTRICT COURT
                        §
                        §
FREDDIE JACKSON,        §
   Defendant.           §          DALLAS COUNTY, TEXAS
                        §

## DEFENDANT'S AFFIDAVIT IN SUPPORT OF THE
## SPECIAL APPEARANCE OF FREDDIE JACKSON

**STATE OF MASSACHUSETTS**
**ESSEX COUNTY**

Freddie Jackson appeared in person before me today and stated under oath:

"My name is Freddie Jackson. I am a resident of Essex County, Massachusetts, and over 18 years of age, and competent to make this affidavit. I have never been convicted of a felony, and the following statements are true:

1.    I am the true and rightful owner of Federal Trademark Registration No. 4,048,819, hereinafter referred to as "TRIPLE D."

2.    When I discovered Plaintiff's infringing use my trademark TRIPLE D, I directed correspondence to Plaintiff requesting that Plaintiff cease the infringing use;

3.    This correspondence forms the basis of Plaintiff's present litigation.

4.    I wrote said correspondence in good faith based on my prior use of TRIPLE D and my lawful ownership of and rights to the TRIPLE D mark.

5.    I do not live outside the State of Massachusetts;

**FREDDIE JACKSON AFFIDAVIT IN SUPPORT OF THE**
**SPECIAL APPEARANCE**                       Page 1 of 3

CITY 00292

Mar.13.2013  02:55 PM                                        PAGE.  3/ 11

6.    I have never been properly served with Plaintiff's Complaint, Request for Temporary Restraining Order, nor notice of the Show Cause hearing;

7.    I have never consented to the jurisdiction of or appointed an agent for service of process in the State of Texas;

8.    Except for the purposes of this special appearance, I have not employed residents of the State of Texas as employees or representatives;

9.    I do not maintain a place of business in Texas;

10.    Except for the current lawsuit which is the subject of the special appearance, I have never been a party to litigation in the State of Texas; and

11.    I have not committed any tort, in whole or in part, in the State of Texas.


        FURTHER, AFFIANT SAYETH NOT.

                                    FREDDIE JACKSON, Affiant


FREDDIE JACKSON AFFIDAVIT IN SUPPORT OF THE
SPECIAL APPEARANCE                                  Page 2 of 3


                                                    CITY 00293

## VERIFICATION

Before me, the undersigned notary public, on this day personally appeared Freddie Jackson, an individual, who being by me duly sworn on this oath, deposed and said that he has read the foregoing Affidavit in Support of Special Appearance, and that the statements contained therein are within his personal knowledge and true and correct.

SUBSCRIBED AND SWORN to before me on this _13th_ day of _March_, 2013, to certify which witness my hand and official seal.

NOTARY PUBLIC, in and for the
STATE OF MASSACHUSETTS,
Name Printed: _Charlene WATSON_
My Commission Expires: _1/30/15_

CHARLENE WATSON
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
January 30, 2015

STATE OF TEXAS }
COUNTY OF DALLAS

GARY FITZSIMMONS, Clerk of the District of Dallas County, ... s, do hereby certify that I have compared this instrument ... e a true and correct copy of the original as appears of ... rd in my office.

VEN UNDER ... AND SEAL of said Court, at offic ... Dallas, Texas, this _12th_ day of ___ A.D., _2013_

GARY FITZSIMMONS, DISTRICT CLERK
DALLAS COUNTY, TEXAS

By _____ Deputy

FREDDIE JACKSON AFFIDAVIT IN SUPPORT OF THE
SPECIAL APPEARANCE                                        Page 3 of 3

CITY 00294

**John F. Warren, COUNTY CLERK**
DALLAS COUNTY, TEXAS
509 MAIN ST, SUITE 200
DALLAS, TX 75202



04/15/2010 12:44:19 PM

201000092425

AN UINC  1/1

**ASSUMED NAME RECORDS**
**CERTIFICATE OF OWNERSHIP FOR UNINCORPORATED BUSINESS OR PROFESSION**
*Pursuant to Title 5, §71.151(a) of the Texas Business and Commerce Code, Certificates of Ownership are valid for a period not to exceed 10 years during which the assumed name will be used.*

1. ## TRIPLE D CLOTHING CO                                  EX C

   Name under which Business or Professional Service will be conducted (Please Print or Type)

2. 3558 TIOGA ST                          City DALLAS                  State TX   Zip 75241
   **Business Address**

3. The period, not to exceed (10) years, during which the assumed name will be used is __10__ years.

4. The Business or Professional Service under this Assumed Name will be conducted as a: (Please check one)

   ___X___ Proprietorship          _____ Sole Practitioner (Dr/Lawyer/etc)     _____ General Partnership

   _____ Limited Partnership        _____ Joint Venture                        _____ Joint Stock Company

   _____ Real Estate Investment Trust   _____ Non-Profit                        _____ Other

5. List the name(s) and complete street address of Owner (s) under the above Assumed Name. (Please Print)

   | Name | Street | City | State | Zip |
   |------|--------|------|-------|-----|
   | FREDDIE JACKSON | 3558 TIOGA ST | DALLAS | TX | 75241 |

   Signature                          Signature

   Signature                          Signature

Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
04/15/2010 12:44:19 PM
$16.00

**THE STATE OF TEXAS, COUNTY OF DALLAS**
**BEFORE ME, THE UNDERSIGNED AUTHORITY,**
on this day personally appeared FREDDIE JACKSON

201000092425

known to me to be the person(s) whose name/s/are
subscribe to the foregoing instrument and
acknowledge to me that he executed the same for the
purpose and consideration therein expressed.

Given under my hand and seal of office, this 15 th day of __April__ , 20 10 .

JOHN F. WARREN, COUNTY CLERK

By_____ Deputy
Notary Public in and for Dallas County

CITY 00295



## VERIFICATION OF DAVID A. SMALL

STATE OF TEXAS                    §
COUNTY OF DALLAS                  §

BEFORE ME, the undersigned notary public, on this day, personally appeared DAVID A. SMALL, who after being by me duly sworn, on his oath deposed and said that the statements made herein are within his personal knowledge and are true and correct.

"My name is DAVID A. SMALL. I am over the age of eighteen years, am of sound mind, and competent to make the statements contained herein. The statements herein are within my personal knowledge and are true and correct.

Attached is a true and correct copy of a March 12, 2013 Dallas County Clerk Records search for business filings with the name beginning "Triple D."

Further Affiant Sayeth Not.

_____
DAVID A. SMALL

SUBSCRIBED AND SWORN TO BEFORE ME on this 11th day of April 2013, to certify which, witness my hand and official seal.

_____
Notary Public - State of Texas

My Commission Expires:

DONNA YVONNE NEWMAN
My Commission Expires
May 20, 2015

CITY 00296

**Exhibit A-10, page 55 of 86**                    **TRIPLE_D_30484**

**Search Results Grid**

e following criteria was used to produce these results:
e recorded from 01/01/1964 to 03/12/2013

t Name Begins With TRIPLE D

CUMENT TYPE IN (A FN,A N,ABANDON,AC,ADDENDUM,ADMRS DEED,AFF,AGREE,AH,AJ,AK,AL,AM,AMD COND,AMEND REST,AN,AN UINC,ANINC,ANNEX,APP,APPOINTMENT,APPT
STEE,AQ,ARTICLES,AS,ASG OF LSE,ASGN RENTS,ASSMT,ASSMT LIEN,ASSUME MTG,AUTHORIZATN,BA,BF,BR,BR LIEN,BS,BTL,BX,BY-LAWS,C C BRKPCY,CANCELATION,CC APPT,CC JUDGMT,CC
DER,CC OR,DNCE,CCJ,CCOPY,CDFEE,CEMTRY DEED,CERT,CERT COPY,CERT FEE,CF,CH,CM,CNTBL DEED,CNTY CK CTF,CONDO,CONDOMINIUM,CONSENT,CONT,CONT
ND,CONTRACT,CONV,CORR,CORR DT,CORRECTION,CT,D/T & ASGMT,D/T - F/S,DECL
KNG,DECLARATION,DED,DEDICATION,DEED,DESIG,DISCLAIMER,DISSOLUTION,DS,DT,EA,EASEMENT,EG,EL,EP,ER,EXCH DEED,EXER OPTION,EXT,EXT OF LIEN,EXTRS
ED,EY,FC,FD,FG,FLFQ,FS,FTL,FTLPP,GC,GDNS DEED,GN,GT,GUAR,GY,HA,HK,HL,HOME,I TAX REC,INDENTURE,IP,JDGMT/HEIRS,JUDGMENT,KLLA,LANDLORD,LC,LE,LEASE,LETTER TEST,LG,LI,LIC &
R,OPTOMTRST,OQ,ORD,ORDER,PARTNER,PAVING REL,PD,PET,PF,PG,PN,POA,POLY LIC,PR FTL,PR FTL PP,PR JUDGE,PR LN,PR REL,PR STL,PROB,PT,PT RL M/AF,PTL ASG,PTNSHP AGMT,PY,QUIT
AIM,RE,RECONVYNCE,REDEMPTION,REINSTATEMENT,REINSTATMT,REL,REL ASMT LN,REL COL ASG,REL CSL,REL FTL,REL FTL PP,REL HSP LN,REL JDGMT,REL LABOR LIEN,REL LIS PEN,REL
...REM TR D/T,REMOVL CTF,REMV/APP TR,RENEWAL,RESCISSION,RESIGNATION,RESOLUTION,RESTRICT,REV POA,REV REL FTL,REVOCATION,RH,RL,RO,ROW,RR,SETTLEMENT,SHERIFF DEED,SR,STIP
RST,STL,SUB,SUBORD AGMT,SUBORD LSE,SW,TAX AGMT,TAX COLLCTR,TAX WARRANT,TEMP GDN,TERM TRUST,TERMINATION,TL,TQ,TR DEED,TRANS,TRANSFER,TRUST,TRUST INDT,UCC 3
UCC 3 PP NON-STD,UP,VAC PLAT,VM,VOID,VOIDASSUMED,VOIDNP,VU,WA,WAIVER,WD,WILL,WITH A N,WITH AN,WITH FTL,WITH FTL PP,WTP,WTR PERMIT,WY,XF,ZD,ZF,ZH)

**All Records verified through 03/06/2013.**

| Date | Name | Role | OtherName | Doc Type/Legacy# | Book/Pg/Inst | First Legal | References |
|---|---|---|---|---|---|---|---|
| 7/20/1966 12:00:00AM | TRIPLE D SALES CO | Grantee | WESTEX GIN SUP INC | AJ / 196600104718 | ALL 867 1943 / 196600104718 | | |
| 3/24/1970 12:00:00AM | TRIPLE D MAINTENANCE | Grantee | TEXAS RUBBER SUP INC | AJ / 197000039872 | ALL 70057 244 / 197000039872 | | |
| 3/24/1970 12:00:00AM | TRIPLE D MAINTENANCE | Grantee | TEXAS RUBBER SUP INC | AJ / 197000039872 | ALL 70057 244 / 197000039872 | | |
| 12/28/1971 12:00:00AM | TRIPLE D DEL | Grantor | | AJ / 197100248679 | ALL 71252 103 / 197100248679 | | |
| 10/26/1972 12:00:00AM | TRIPLE D MAINTENANCE | Grantor | TEXAS STATE | STL / 197200450458 | ALL 72210 1453 / 197200450458 | | |
| 11/30/1972 12:00:00AM | TRIPLE D MAINTENANCE | Grantor | TEXAS STATE | STL / 197200476099 | ALL 72235 1102 / 197200476099 | | |
| 4/4/1973 12:00:00AM | TRIPLE D MAINTENANCE | Grantor | TEXAS STATE | STL / 197300558540 | ALL 73068 211 / 197300558540 | | |
| 4/19/1973 12:00:00AM | TRIPLE D MAINTENANCE | Grantor | TEXAS STATE | STL / 197300569588 | ALL 73708 1906 / 197300569588 | | |
| 9/4/1973 12:00:00AM | TRIPLE D DEL | Grantee | DABBS DON R | AJ / 197300663579 | ALL 73174 847 / 197300663579 | | |
| 1/9/1974 12:00:00AM | TRIPLE D MAINTENANCE | Grantor | TEXAS STATE | STL / 197400005857 | ALL 74006 1727 / 197400005857 | | |
| 11/19/1974 12:00:00AM | TRIPLE D GIFTS N SWAP | Grantee | CUTTER CRAVAT INC | AJ / 197400192954 | ALL 74225 1283 / 197400192954 | | |
| 1/25/1979 12:00:00AM | TRIPLE D INDTRS I | Owner | DAVE OF DAL | AN / 79127988 | ALL / 79127988 | | |
| 1/25/1979 12:00:00AM | TRIPLE D INDTRS I | Owner | DAVES MAIN PLACE | AN / 79127989 | ALL / 79127989 | | |
| 1/25/1979 12:00:00AM | TRIPLE D INDTRS I | Owner | DAVES FIRST PLACE | AN / 79127990 | ALL / 79127990 | | |
| 3/28/1979 12:00:00AM | TRIPLE D IND INC | Grantee | THOMAS CHRISTINE | DEED / 197900639070 | ALL 79063 2785 / 197900639070 | LT 8 BLK B CTBLK 1347 BOMARS GRAN DALLAS VOL 1 PG 76... | |

Page 1 of 7          3/12/2013 2:02:00PM

Exhibit A-10, page 56 of 86          TRIPLE_D_30485

**All Records verified through 03/06/2013.**

| Date | Name | Role | OtherName | Doc Type/Legacy# | Book/Pg/Inst | First Legal | References |
|---|---|---|---|---|---|---|---|
| 9/5/1979 12:00:00AM | TRIPLE D INVS | Assumed Name | HOLT JOE W | AN / 79060014 | ALL / 79060014 | | |
| 11/13/1980 12:00:00AM | TRIPLE D IND INC | Grantor | TEXAS STATE | STL / 198002256088 | ALL 80225 389 / 198002256088 | | |
| 2/18/1982 12:00:00AM | TRIPLE DIAMOND | Assumed Name | CLARK C C | AN / 82016893 | ALL / 82016893 | | |
| 4/21/1982 12:00:00AM | TRIPLE DIAMOND GEN STORE | Assumed Name | CLARK DIANE | AN / 82030961 | ALL / 82030961 | | |
| 10/20/1982 12:00:00AM | TRIPLE D CARPET CLEANERS   CLEANERS | Assumed Name | DORRIS LARRY V | AN / 82070861 | ALL / 82070861 | | |
| 1/12/1983 12:00:00AM | TRIPLE DIAMOND MOTORS | Grantee | BELO AH CORP | AJ / 198300139600 | ALL 83013 189 / 198300139600 | | |
| 9/6/1983 12:00:00AM | TRIPLE D ENT | Grantee | FABRI CENTER | ML AFF / 198301760658 | ALL 83176 1775 / 198301760658 | | |
| 10/14/1983 12:00:00AM | TRIPLE D ENT | Grantee | FABRI CENTERS AMER INC | BTI / 198302038898 | ALL 83203 4521 / 198302038898 | | |
| 1/23/1984 12:00:00AM | TRIPLE DIAMOND INC | Grantor | TEXAS STATE | STL / 198400168710 | ALL 84016 2376 / 198400168710 | | |
| 7/17/1984 12:00:00AM | TRIPLE D ENT | Grantor | FABRI CENTERS | REL / 198401402351 | ALL 84140 4401 / 198401402351 | | |
| 9/27/1984 12:00:00AM | TRIPLE DIAMOND MOTORS | Grantee | DALLAS TIMES HERALD | AJ / 198401924319 | ALL 84192 2862 / 198401924319 | | |
| 7/8/1985 12:00:00AM | TRIPLE D FENCE AND CONSTR CO | Assumed Name | HOLCOMB DANIEL W | AN / 85055233 | ALL / 85055233 | | |
| 6/13/1986 12:00:00AM | TRIPLE DOUBLES | Assumed Name | BLACKMAN ELLWOOD | AN / 86045881 | ALL / 86045881 | | |
| 12/11/1986 12:00:00AM | TRIPLE D ROOFING&REMODEL | Grantor | FIRST STATE&SAV BK | AL / 198602393169 | ALL 86239 1867 / 1986023931690 | LT 15 BLK 57 SKYLINE 4 VOL 69190 PG 2163 ... | |
| 12/11/1986 12:00:00AM | TRIPLE D ROOFING&REMODEL | Grantee | JOHNSON DIANNA K | ML / 198602393169 | ALL 86239 1867 / 1986023931691 | LT 15 BLK 57 SKYLINE 4 VOL 69190 PG 2163 ... | |
| 4/9/1987 12:00:00AM | TRIPLE D ENTRPS | Assumed Name | BROOKS DAVID C | AN / 87040086 | ALL / 87040086 | | |
| 5/1/1987 12:00:00AM | TRIPLE D SHEET METAL | Assumed Name | DUGAN DENNIS D | AN / 87047367 | ALL / 87047367 | | |
| 4/26/1988 12:00:00AM | TRIPLE D FENCE&CONST CO | Grantor | TEXINS C/U | AL / 198800819458 | ALL 88081 1404 / 1988008194580 | LT 18 BLK A CTBLK 8430 CIMMARON 1 DALLAS VOL 74115 PG 1851... | |
| 4/26/1988 12:00:00AM | TRIPLE D FENCE&CONST CO | Grantee | HAWKINS FORD C JR | ML / 198800819458 | ALL 88081 1404 / 1988008194581 | LT 78 BLK A CTBLK 8430 CIMMARON 1 DALLAS VOL 74115 PG 1851... | |
| 8/18/1988 12:00:00AM | TRIPLE D | Grantor | MERABANK | AL / 198801612050 | ALL 88161 3539 / 1988016120500 | LT 29 BLK C CTBLK 8429 RICHLND PK DALLAS VOL 77106 PG 953... | |
| 8/18/1988 12:00:00AM | TRIPLE D | Grantee | LAUKHUF MARILYNN L | ML / 198801612050 | ALL 88161 3539 / 1988016120501 | LT 29 BLK C CTBLK 8429 RICHLND PK DALLAS VOL 77106 PG 953... | |
| 4/25/1989 12:00:00AM | TRIPLE D TRUCKING | Assumed Name | DANNER DONALD D | AN / 89034995 | ALL / 89034995 | | |
| 8/29/1989 12:00:00AM | TRIPLE D AUTO SALES | Grantee | KEMP KENNETH L | AJ / 198901681600 | ALL 89168 2478 / 198901681600 | | |

Page 2 of 7

3/12/2013 2:02:00PM

Exhibit A-10, page 57 of 86                    TRIPLE_D_30486

| Date | Name | Role | OtherName | Doc Type/Legacy# | Book/Pg/Inst | First Legal | References |
|---|---|---|---|---|---|---|---|
| 4/18/1991 12:00:00AM | TRIPLE D | Assumed Name | FOLMAR BRIAN V | AN / 91036953 | ALL / 91036953 | | |
| 2/18/1992 12:00:00AM | TRIPLE D RESALE SHOP | Assumed Name | DAVIS DAVID W | AN / 92146542 | ALL / 92146542 | | |
| 7/28/1992 12:00:00AM | TRIPLE D CONST | Grantee | DRANE DAVID | AJ / 199201475300 | ALL 92147 797 / 199201475300 | | |
| 10/14/1992 12:00:00AM | TRIPLE D CONST | Grantor | ALPHA TESTING INC | ML AFF / 199202010546 | ALL 92201 2721 / 199202010546 | LT 12 BLK 95 CTBLK 3078 OAK CLIFF DALLAS VOL 87116 PG 5391... | |
| 5/5/1993 12:00:00AM | TRIPLE D COMPUTERS | Assumed Name | RENFRO PAUL | AN / 93054156 | ALL / 93054156 | | |
| 6/29/1993 12:00:00AM | TRIPLE D WHOLESALE MOTORS | Assumed Name | VERHAGEN GLEN R | AN / 93073710 | ALL / 93073710 | | |
| 3/7/1994 12:00:00AM | TRIPLE D TRANSPORTE' | Assumed Name | FRANCIS DON C | AN / 94027557 | ALL / 94027557 | | |
| 4/12/1994 12:00:00AM | TRIPLE D ROOFING&REMODEL | Grantor | FIRST ST BK MESQ | AL / 199400700701 | ALL 94070 1471 / 1994007007010 | LT 15 BLK 57 SKYLINE 4 DALLAS VOL 69190 PG 2163... | |
| 4/12/1994 12:00:00AM | TRIPLE D ROOFING&REMODEL | Grantee | JOHNSON DIANNA M | ML / 199400700701 | ALL 94070 1471 / 1994007007011 | LT 15 BLK 57 SKYLINE 4 DALLAS VOL 69190 PG 2163... | |
| 4/5/1995 12:00:00AM | TRIPLE D CONSTRUCTION INC | Assumed Name | TRIPLE D CONSTRUCTION INC | AN / 95034389 | ALL / 95034389 | | |
| 4/5/1995 12:00:00AM | TRIPLE D CONSTRUCTION INC | Owner | TRIPLE D CONSTRUCTION INC | AN / 95034389 | ALL / 95034389 | | |
| 5/23/1995 12:00:00AM | TRIPLE D ROOFING & PLUMBING ELECTRIC CO | Assumed Name | DIXON RONNIE J | AN / 95052216 | ALL / 95052216 | | |
| 6/30/1995 12:00:00AM | TRIPLE D FENCE | Assumed Name | HOLCOMB DANIEL W | AN / 95066652 | ALL / 95066652 | | |
| 8/30/1995 12:00:00AM | TRIPLE D ART PRODUCTIONS | Assumed Name | MURPHY CARROLL O | AN / 95089737 | ALL / 95089737 | | |
| 1/28/1997 12:00:00AM | TRIPLE D ENT | Grantee | SAN ANTONIO CITY | REL JDGMT / 199700180958 | ALL 97016 3865 / 199700180958 | | |
| 2/6/1997 12:00:00AM | TRIPLE D AMUSEMENT | Assumed Name | NORTON DEREK | AN / 97021955 | ALL / 97021955 | | |
| 2/26/1997 12:00:00AM | TRIPLE D FENCE | Grantor | BANK UNITED | AL / 199700390436 | ALL 97039 2074 / 1997003904360 | LT 2 BLK 7 CARRAIGE2 GARLAND VOL 78030 PG 422... | |
| 2/26/1997 12:00:00AM | TRIPLE D FENCE | Grantee | PENDLETON PAMELA F | ML / 199700390436 | ALL 97039 2074 / 1997003904361 | LT 2 BLK 7 CARRAIGE 2 GARLAND VOL 78030 PG 422... | |
| 4/22/1997 12:00:00AM | TRIPLE D SERV P/S | Grantor | U S A INT REV | FTL / 199700781260 | ALL 97078 4553 / 199700781260 | | |
| 11/2/1998 12:00:00AM | TRIPLE D SERV P/S | Grantee | U S A INT REV | REL FTL / 199800352113 | ALL 98214 5059 / 199800352113 | | |
| 1/26/1999 12:00:00AM | TRIPLE D FENCE | Grantor | NATIONSBANK NA | AL / 199900449036 | ALL 99016 5526 / 1999004490360 | LT 20A BLK 2 GREENWD HL4 RICHARDSON VOL 327 PG 1134... | |
| 1/26/1999 12:00:00AM | TRIPLE D FENCE | Grantee | FLYNN PATRICK | ML / 199900449036 | ALL 99016 5526 / 1999004490361 | LT 20A BLK 2 GREENW HL4 RICHARDSON VOL 327 PG 1134... | |
| 4/12/2000 12:00:00AM | TRIPLE D ENTERPRISES "GLAMOUR TO GO" | Assumed Name | DIXON DETRA D | AN / 00267669 | ALL / 267669 | | |

Page 3 of 7                3/12/2013 2:02:00PM

Exhibit A-10, page 58 of 86                TRIPLE_D_30487

All Records verified through 03/06/2013.

| Date | Name | Role | OtherName | Doc Type/Legacy# | Book/Pg/Inst | First Legal | References |
|------|------|------|-----------|------------------|--------------|-------------|------------|
| 1/18/2001 12:00:00AM | TRIPLE DIAMONDS | Assumed Name | WADE JUDY A | A N / 01353253 | ALL / 1353253 | | |
| 8/5/2002 12:00:00AM | TRIPLE D & E | Assumed Name | DEGRATE VICTOR | AN / 02549230 | ALL / 2549230 | | |
| 9/17/2002 12:00:00AM | TRIPLE D CAR WASH | Assumed Name | FRIDAY'S CAR WASH II LP | AN / 02565568 | ALL / 2565568 | | |
| 10/4/2002 12:00:00AM | TRIPLE D & E | Assumed Name | DEGRATE VICTOR | AN / 02572129 | ALL / 2572129 | | |
| 9/16/2003 12:00:00AM | TRIPLE D OFFICE FURNITURE | Assumed Name | WILSON TIMOTHY | AN / 03691690 | ALL / 3691690 | | |
| 2/5/2004 12:00:00AM | TRIPLE D ENTERPRISE | Assumed Name | JONES JIMMY C | AN / 04737203 | ALL / 4737203 | | |
| 2/17/2005 12:00:00AM | TRIPLE D D D | Assumed Name | CAMACHO DAVID | AN / 05868112 | ALL / 5868112 | | |
| 11/22/2005 12:00:00AM | TRIPLE DIAMOND CONTRACTORS | Assumed Name | BOYD DELAYNE | AN / 200503592505 | ALL 0 0 / 200503592505 | 3680 DILIDO STE 111 DALLAS TX 75228... | |
| 7/10/2006 12:00:00AM | TRIPLE D FLEET SERVICE | Assumed Name | ROBBINS RICKEY | AN / 200600249278 | ALL 0 0 / 200600249278 | | |
| 8/29/2007 12:00:00AM | TRIPLE D CLEANING SERVICE | Assumed Name | DONNELL ROBERT | AN / 20070313330 | ALL 0 0 / 20070313330 | | |
| 4/3/2008 12:00:00AM | TRIPLE DS ENTERPRISES LLC | Grantor | TEXAS STATE | STL / 20080107240 | ALL 0 0 / 20080107240 | NO PROPERTY... | |
| 4/18/2008 12:00:00AM | TRIPLE DS ENTERPRISES LLC | Grantee | TEXAS STATE | REL STL / 20080128766 | ALL 0 0 / 20080128766 | NO PROPERTY... | |
| 6/30/2008 12:00:00AM | TRIPLE D'S AUTO SALES | Assumed Name | PEREZ EDWARDO | AN / 20080213601 | ALL 0 0 / 20080213601 | | |
| 11/5/2008 12:00:00AM | TRIPLE D MAGAZINE | Assumed Name | JACKSON FREDDIE | AN / 20080353157 | ALL 0 0 / 20080353157 | | |
| 5/6/2009 12:00:00AM | TRIPLE D'S ENTERPRISES, LLC. | Owner | SIGLO XXI NIGHT CLUB | AN / 200900129649 | Doc: 200900129649 | | |
| 5/22/2009 12:00:00AM | TRIPLE D.CON | Assumed Name | JACKSON FREDDIE | AN / 200900145982 | Doc: 200900145982 | | |
| 8/12/2009 1:26:06PM | TRIPLE D STREET WEAR | Assumed Name | ANDERSON STEVEN | AN UINC | Doc: 200900231880 | | |
| 11/2/2009 11:05:06AM | TRIPLE D AWARDS | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 200900308647 | | |
| 11/2/2009 11:05:07AM | TRIPLE D RADIO | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 200900308648 | | |
| 2/25/2010 9:41:39AM | TRIPLE D ON THE GO | Assumed Name | POLLEY FREDRICK | AN UINC | Doc: 201000045262 | | |
| 3/25/2010 3:54:12PM | TRIPLE DS ENTERPRISES LLC | Grantor | TEXAS STATE | STL | Doc: 201000073142 | | |
| 4/12/2010 11:09:37AM | TRIPLE D TV | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000087298 | | |
| 4/15/2010 12:44:19PM | TRIPLE D CLOTHING CO | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000092425 | | |

3/12/2013  2:02:00PM

TRIPLE_D_30488

| Date | Name | Role | OtherName | Doc Type/Legacy# | Book/Pg/Inst | First Legal | References |
|------|------|------|-----------|------------------|--------------|-------------|------------|
| 4/15/2010 1:19:49PM | TRIPLE D MIXTAPE SERIES | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000092470 | | |
| 4/15/2010 2:30:38PM | TRIPLE D FILMS | Assumed Name | CHATTMAN BRANDON | AN UINC | Doc: 201000092593 | | |
| 4/16/2010 11:28:08AM | TRIPLE D SECURITY | Assumed Name | LANE DEMOND | AN UINC | Doc: 201000095089 | | |
| 4/16/2010 11:28:09AM | TRIPLE D PRODUCTIONS | Assumed Name | LANE DEMOND | AN UINC | Doc: 201000095090 | | |
| 4/16/2010 11:28:10AM | TRIPLE D PROMOTIONS | Assumed Name | LANE DEMOND | AN UINC | Doc: 201000095091 | | |
| 4/27/2010 12:27:49PM | TRIPLE D MOVEMENT | Assumed Name | JOHNSON LEMARCUS | AN UINC | Doc: 201000104471 | | |
| 4/27/2010 12:27:50PM | TRIPLE D MODELS | Assumed Name | JOHNSON LEMARCUS | AN UINC | Doc: 201000104472 | | |
| 4/27/2010 12:27:51PM | TRIPLE D PHOTOGRAPHY | Assumed Name | JOHNSON LEMARCUS | AN UINC | Doc: 201000104473 | | |
| 4/27/2010 12:27:52PM | TRIPLE D STUDIOS | Assumed Name | JOHNSON LEMARCUS | AN UINC | Doc: 201000104474 | | |
| 5/6/2010 12:05:27PM | TRIPLE D | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000114157 | | |
| 5/6/2010 12:05:28PM | TRIPLE D CERTIFIED STAMP | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000114158 | | |
| 6/25/2010 8:23:22AM | TRIPLE D THE MOVIE | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000160897 | | |
| 8/24/2010 10:35:55AM | TRIPLE D AFTER DARK | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000215976 | | |
| 8/24/2010 10:35:56AM | TRIPLE D'S | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000215977 | | |
| 8/24/2010 10:35:57AM | TRIPLE D UNCUT | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201000215978 | | |
| 8/27/2010 11:33:55AM | TRIPLE D ENTERTAINMENT | Assumed Name | THOMAS KOURTNEY | AN UINC | Doc: 201000219766 | | |
| 3/4/2011 3:50:06PM | TRIPLE D TATTOOS | Assumed Name | PEREZ VANESSA GUERRERO | AN UINC | Doc: 201100058503 | | |
| 4/21/2011 9:23:56AM | TRIPLE DS ENTERPRISES LLC | Grantee | TEXAS STATE | REL STL | Doc: 201100101841 | | Instr #:201000073142 |
| 5/20/2011 1:39:32PM | TRIPLE D OUTREACH MINISTRIES | Assumed Name | GIDDINGS DWAYNE | AN UINC | Doc: 201100128981 | | |
| 6/27/2011 9:02:55AM | TRIPLE D TOWING | Assumed Name | MARTINEZ MOISES R | AN UINC | Doc: 201100163988 | | |
| 7/15/2011 4:06:00PM | TRIPLE D NATION | Assumed Name | ROCKWELL RYLON | AN UINC | Doc: 201100184174 | | |
| 7/19/2011 9:08:22AM | TRIPLE DS ENTERPRISES LLC | Grantor | TEXAS STATE | STL | Doc: 201100185648 | | |
| 7/28/2011 2:37:33PM | TRIPLE D CUTZ, SALON, AND SPA | Assumed Name | JACKSON FREDDIE | AN UINC | Doc: 201100194212 | | |

3/12/2013 2:02:00PM

Exhibit A-10, page 60 of 86                    TRIPLE_D_30489

**All Records verified through 03/06/2013.**

| Date | Name | Role | OtherName | Doc Type/Legacy# | Book/Pg/Inst | First Legal | References |
|------|------|------|-----------|------------------|--------------|-------------|------------|
| 9/14/2011 9:32:47AM | TRIPLE DS ENTERPRISES LLC | Grantee | TEXAS STATE | REL STL | Doc: 201100240654 | | Instr #:201100185648 |
| 9/20/2011 2:34:37PM | TRIPLE D KUTZ & STYLEZ | Assumed Name | THOMAS RADEE | AN UINC | Doc: 201100246963 | | |
| 9/26/2011 4:31:25PM | TRIPLE D BAIL BONDS | Assumed Name | 214 RELEASE LLC. | ANINC | Doc: 201100252564 | | |
| 10/31/2011 9:36:48AM | TRIPLE D JAMZ | Assumed Name | PATTERSON MICHAEL R JR | AN UINC | Doc: 201100284216 | | |
| 11/1/2011 11:42:38AM | TRIPLE D RECORDS | Assumed Name | JOHNSON BRUCE W JR | AN UINC | Doc: 201100285817 | | |
| 11/8/2011 8:21:40AM | TRIPLE D KWIK PRINT, INC. | Owner | ONE HOUR BUSINESS CARDS | ANINC | Doc: 201100291742 | | |
| 12/6/2011 12:31:28PM | TRIPLE D CUTS AND STYLES | Assumed Name | SMITH DAVID | AN UINC | Doc: 201100317466 | | |
| 1/12/2012 2:29:27PM | TRIPLE D AUTO BROKERS | Assumed Name | HENDERSON ASHLI | AN UINC | Doc: 201200009647 | | |
| 1/17/2012 1:03:11PM | TRIPLE D BOY'Z | Assumed Name | MARTINEZ LUIS | AN UINC | Doc: 201200012181 | | |
| 1/17/2012 1:03:12PM | TRIPLE D GIRL'Z | Assumed Name | MARTINEZ LUIS | AN UINC | Doc: 201200012182 | | |
| 2/21/2012 2:28:30PM | TRIPLE D FEST | Assumed Name | ALEXANDER ROWLAND | AN UINC | Doc: 201200048161 | | |
| 2/24/2012 2:33:09PM | TRIPLE D'S SNO CONES | Assumed Name | HOSKIN ADELENA B | AN UINC | Doc: 201200052575 | | |
| 4/10/2012 11:55:50AM | TRIPLE D MUZIK | Assumed Name | BEASLEY DARRIEN | AN UINC | Doc: 201200101783 | | |
| 4/12/2012 10:31:57AM | TRIPLE D LOCKSMITH | Assumed Name | LARA JOSE LUIS MARTINEZ | AN UINC | Doc: 201200104633 | | |
| 5/30/2012 3:48:14PM | TRIPLE D'S ENTERPRISES LLC. | Owner | FIVE STAR ENGINE REBUILDERS | ANINC | Doc: 201200154298 | | |
| 7/30/2012 11:15:21AM | TRIPLE D BASKETBALL | Assumed Name | JONES KELAN T | AN UINC | Doc: 201200221502 | | |
| 11/29/2012 3:14:29PM | TRIPLE D CARTEL ENTERTAINMENT | Assumed Name | FRIAS ERIC | AN UINC | Doc: 201200353117 | | |
| 1/15/2013 10:54:10AM | TRIPLE D'S RESTUARANT | Assumed Name | GIBSON YACQUE | AN UINC | Doc: 201300014017 | | |
| 2/1/2013 8:24:47AM | TRIPLE D INVESTORS LP | Grantee | MRI ROSEGATE INVESTMENT FUND LP | DEED | Doc: 201300031374 | LT:4 BK:7 PG:13 CITY:GARLAND SUB:ROSEHILL ACREAGE HOMESITES | |
| 2/1/2013 8:24:48AM | TRIPLE D INVESTORS LP | Grantor | TRIPLE D ROSEGATE LLC | DEED | Doc: 201300031375 | LT:4 BK:7 PG:13 CITY:GARLAND SUB:ROSEHILL ACREAGE HOMESITES | |
| 2/1/2013 8:24:48AM | TRIPLE D ROSEGATE LLC | Grantee | TRIPLE D INVESTORS LP | DEED | Doc: 201300031375 | LT:4 BK:7 PG:13 CITY:GARLAND SUB:ROSEHILL ACREAGE HOMESITES | |
| 2/1/2013 8:24:49AM | TRIPLE D INVESTORS LP | Grantor | PILLAR MULTIFAMILY LLC | DT | Doc: 201300031376 | LT:4 BK:7 PG:13 CITY:GARLAND SUB:ROSEHILL ACREAGE HOMESITES | |
| 2/1/2013 8:24:49AM | TRIPLE D ROSEGATE LLC | Grantor | PILLAR MULTIFAMILY LLC | DT | Doc: 201300031376 | LT:4 BK:7 PG:13 CITY:GARLAND SUB:ROSEHILL ACREAGE HOMESITES | |

Page 6 of 7

3/12/2013 2:02:00PM



| Date | Name | Role | OtherName | Doc Type/Legacy# | Book/Pg/Inst | First Legal | References |
|------|------|------|-----------|------------------|--------------|-------------|------------|
| 3/1/2013 4:04:18PM | TRIPLE D GEAR | Assumed Name | BELL JEVIN | AN UINC | Doc: 201300064037 | | |

CITY 00303

Page 7 of 7                    3/12/2013 2:02:00PM

**AFFIDAVIT OF GERALD JONES**



STATE OF TEXAS                          §
COUNTY OF DALLAS                        §
                                        §

BEFORE ME, the undersigned notary public, on this day personally appeared GERALD JONES, who after being by me duly sworn, on his oath deposed and said that the statements made herein are within his personal knowledge and are true and correct.

"My name is GERALD JONES. I am over the age of eighteen years, am of sound mind, and competent to make the statements contained herein. The statements contained herein are within my personal knowledge and are true and correct.

My name is Gerald Jones. I am a resident of Dallas County, Texas. I have designed and built websites professionally for over fifteen years. I buy and sell domain names professionally. I am a domain name registrar, and the managing member of Republic Internet, LLC. I own over two hundred domain names and am very familiar with the process of investigating the history of domain names.

I was engaged for a fee of $200.00 by Plaintiff in this matter to investigate the creation and history of the website URL "tripledclothingco.com".

I utilized the most thorough means available to conclude the earliest date the website "tripledclothingco.com" could have been created. I searched the databases of InterNIC, DomainTools and WhoIs.

InterNIC is the current name used by the Internet Corporation for Assigned Names and Numbers (ICANN). ICANN is responsible for the coordination of the global Internet's systems of unique identifiers. ICANN operates under the licensed name InterNIC. Attached to this affidavit is a report generated from InterNIC which shows that the site "tripledclothingco.com" was registered through Melbourne IT, LTD. dba Internet Names Worldwide on September 4, 2011.

. I also researched the site registration on the internet domain name database DomainTools.com. DomainTools is a database of domain name registrations which provides a bit more information about domain names than just the history. With DomainTools, you have access to the contact information for the registrant and site administrator, as well a full history of web servers and ownership. I have attached a copy of the report I received from DomainTools to this affidavit.

The DomainTools report concurs with the InterNIC report that the site "tripledclothingco.com" was created on September 4, 2011. In addition, the DomainTools report shows that the domain name was registered by a "Freddie Jackson" and the administration contact is "private."

CITY 00304

Through DomainTools, I also did a "WhoIs" history search to look for changes to the site. That report is also attached to the affidavit. The WhoIs history report shows three columns of information. The columns are listed as 2011, 2012 and 2013, reflecting each year of records available. The earliest year in which any records are available is the year 2011. Each date listed in the columns reflects some sort of change to the URL information.

I was unable to pull any archived pages of "tripledclothingco.com" from "archive.org" (a corporation established to provide archives of web pages throughout the history of the internet). Archive.org scans the internet and copies pages from internet sites periodically. Since archive.org had no archived pages of "tripledclothingco.com", I can only conclude that the site has not existed long enough to have had its pages archived.

Based on my research of the site name, it is my opinion that the site "tripledclothingco.com" was created no earlier than September 4, 2011.

Further affiant sayeth not.



GERALD JONES

SUBSCRIBED AND SWORN TO BEFORE ME on this ___ day of
_____ 2013, to certify which, witness my hand and official seal.

Notary Public - State of Texas

My Commission Expires:

10/28/2016

DAVID L WRIGHT
My Commission Expires
October 28, 2016

CITY 00305



**InterNIC**

|       |           |     |       |
|-------|-----------|-----|-------|
| Home  | Registrars | FAQ | Whois |

### Whois Search Results

Search again (.aero, .arpa, .asia, .biz, .cat, .com, .coop, .edu, .info, .int, .jobs, .mobi, .museum, .name, .net, .org, .pro, or .travel) :

⦿ **Domain**   (ex. internic.net)
○ **Registrar**   (ex. ABC Registrar, Inc.)
○ **Nameserver**   (ex. ns.example.com or 192.16.0.192)
[ Submit ]

Whois Server Version 2.0

Domain names in the .com and .net domains can now be registered
with many different competing registrars. Go to http://www.internic.net
for detailed information.

```
   Domain Name: TRIPLEDCLOTHINGCO.COM
   Registrar: MELBOURNE IT, LTD. D/B/A INTERNET NAMES WORLDWIDE
   Whois Server: whois.melbourneit.com
   Referral URL: http://www.melbourneit.com
   Name Server: YNS1.YAHOO.COM
   Name Server: YNS2.YAHOO.COM
   Status: clientTransferProhibited
   Updated Date: 18-mar-2013
   Creation Date: 04-sep-2011
   Expiration Date: 04-sep-2014
```

>>> Last update of whois database: Thu, 28 Mar 2013 03:59:41 UTC <<<

NOTICE: The expiration date displayed in this record is the date the
registrar's sponsorship of the domain name registration in the registry is
currently set to expire. This date does not necessarily reflect the expiration
date of the domain name registrant's agreement with the sponsoring
registrar. Users may consult the sponsoring registrar's Whois database to
view the registrar's reported date of expiration for this registration.

TERMS OF USE: You are not authorized to access or query our Whois
database through the use of electronic processes that are high-volume and
automated except as reasonably necessary to register domain names or
modify existing registrations; the Data in VeriSign Global Registry
Services' ("VeriSign") Whois database is provided by VeriSign for
information purposes only, and to assist persons in obtaining information
about or related to a domain name registration record. VeriSign does not
guarantee its accuracy. By submitting a Whois query, you agree to abide
by the following terms of use: You agree that you may use this Data only
for lawful purposes and that under no circumstances will you use this Data
to: (1) allow, enable, or otherwise support the transmission of mass
unsolicited, commercial advertising or solicitations via e-mail, telephone,
or facsimile; or (2) enable high volume, automated, electronic processes
that apply to VeriSign (or its computer systems). The compilation,
repackaging, dissemination or other use of this Data is expressly
prohibited without the prior written consent of VeriSign. You agree not to
use electronic processes that are automated and high-volume to access or
query the Whois database except as reasonably necessary to register
domain names or modify existing registrations. VeriSign reserves the right
to restrict your access to the Whois database in its sole discretion to ensure
operational stability.  VeriSign may restrict or terminate your access to the
Whois database for failure to abide by these terms of use. VeriSign
reserves the right to modify these terms at any time.

The Registry database contains ONLY .COM, .NET, .EDU domains and
Registrars.

Report Inaccurate Whois listing

CITY 00306





| HOME | RESEARCH | MONITOR | BUY DOMAINS | LEARN | MY ACCOUNT |

| Overview | Whois Lookup | Reverse Whois | Whois History | Domain Report | Hosting History | Screenshots | Name Server Report | Reverse IP | DNS |

## Whois History for Tripledclothingco.com on 2011-09-05

Enter a domain name to get its history

tripledclothingco.com                    **Get History**



Next »

Domain:        tripledclothingco.com · Whois History
Cache Date:    2011-09-05
Registrar:     MELBOURNE IT, LTD. D/B/A INTERNET NAMES WORLDWIDE
Server:        whois.melbourneit.com
Created:       2011-09-04
Updated:       2011-09-04
Expires:       2012-09-04
Reverse Whois: Click on an email address we found in this whois record
               to see which other domains the registrant is associated with:
               contact@myprivateregistration.com

    Domain Name.......... tripledclothingco.com
      Creation Date....... 2011-09-05
      Registration Date... 2011-09-05
      Expiry Date......... 2012-09-05
      Organisation Name... Freddie Jackson
      Organisation Address. PO Box 61359
      Organisation Address.
      Organisation Address. Sunnyvale
      Organisation Address. 94088
      Organisation Address. CA
      Organisation Address. US

    Admin Name.......... Admin PrivateRegContact
      Admin Address....... PO Box 61359
      Admin Address....... registered post accepted only
      Admin Address....... Sunnyvale
      Admin Address....... 94088
      Admin Address....... CA
      Admin Address....... US
      Admin Email......... contact@myprivateregistration.com
      Admin Phone......... +1.5105952002
      Admin Fax...........

    Tech Name.......... TECH PrivateRegContact
      Tech Address........ PO Box 61359
      Tech Address........ registered post accepted only
      Tech Address........ Sunnyvale
      Tech Address........ 94088
      Tech Address........ CA
      Tech Address........ US
      Tech Email.......... contact@myprivateregistration.com
      Tech Phone.......... +1.5105952002
      Tech Fax...........
      Name Server......... yns1.yahoo.com
      Name Server......... yns2.yahoo.com

| Memberships | Developer API | About Us | Blog | Desktop Tools | Terms of Service | Privacy | Support | Join Our Team | Contact Us | Press | Site Map |

© 2013 DomainTools, LLC all rights reserved.



CITY 00307

**Exhibit A-10, page 66 of 86**                    **TRIPLE_D_30495**



**DomainTools**

| tripledclothingco.com | Whois Search ▼ | Search |

| HOME | RESEARCH | MONITOR | BUY DOMAINS | LEARN | MY ACCOUNT |

Overview | Whois Lookup | Reverse Whois | Whois History | Domain Report | Hosting History | Screenshots | Name Server Report | Reverse IP | DNS

## Whois History for Tripledclothingco.com

+1 | Tweet | Like 4.2k

Enter a domain name to get its history

tripledclothingco.com    [ Get History ]

**10 records found for tripledclothingco.com**

Preview the complete Domain Report on tripledclothingco.com

Red links are a privacy protected record
Similar records are grouped by background color

| 2011 | 2012 | 2013 |
|------|------|------|
| 2011-09-05 | 2012-01-22 | 2013-02-24 |
| 2011-11-12 | 2012-03-13 | |
| | 2012-05-26 | |
| | 2012-08-10 | |
| | 2012-09-02 | |
| | 2012-10-15 | |
| | 2012-12-30 | |

Memberships | Developer API | About Us | Blog | Desktop Tools | Terms of Service | Privacy | Support | Join Our Team | Contact Us | Press | Site Map

© 2013 DomainTools, LLC All rights reserved.



Available on the **App Store**    Google play

CITY 00308

# EXHIBIT 17

TRIPLE_D_30497

448E

·ᴵˢ 000459

CAUSE NUMBER DC 13 - 01632

| | | |
|---|---|---|
| **AHMED YOUSSEF** | § | **IN THE 101st** |
| **Plaintiff** | § | |
| | § | **JUDICIAL DISTRICT COURT** |
| **v.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **FREDDIE JACKSON** | § | |
| **Defendant** | § | |

## FINAL JUDGMENT

On the 10th day of May 2013, the Court considered Plaintiff's Motion for Summary Judgment. After considering the pleadings, the motion, affidavits and other evidence on file, the Court hereby GRANTS the motion and issues the following Declaratory and Summary relief.

*The Court finds that* Defendant Freddie Jackson has filed an Answer in this cause subject to a Special Appearance. The Court takes judicial notice of its Order Overruling Defendant's Special Appearance, and finds that the Court has jurisdiction over the parties and subject matter in this cause.

*The Court finds that* all requisite notices were duly served on defendant.

### DECLARATORY RELIEF

The Court considers the summary judgment evidence and makes the following findings of fact and conclusions of law in support of Declaratory Judgment.

*The Court finds that* Defendant Freddie Jackson sent a letter dated February 4, 2013 to Plaintiff Ahmed Youssef demanding that: (1) Plaintiff cease the use of a certain mark because Defendant Freddie Jackson registered a mark with the U.S. Patent & Trademark Office, and that Plaintiff's use of Plaintiff's mark was likely to confuse consumers as to the source of goods bearing the two marks. Plaintiff asserts prior use over Defendant's use of the mark. (2) Further, Defendant Freddie Jackson's letter demands that Plaintiff stop using the term "Triple D" in association with Plaintiff's business "Triple D Gear," as Defendant claims the ownership of that term by calling his business "Triple D Clothing Co." Plaintiff asserts that Defendant does not own the term "Triple D," and that Plaintiff has every right to use the term in connection with Plaintiff's

---

FINAL JUDGMENT

D0309

business. The Court hereby resolves all issues between the parties and declares the common law rights to: (1) the marks at issue; and (2) the parties' rights to the use of the term "Triple D."

### 1. PRIOR USE

*Conclusion of Law* – When there are two (2) competing marks with a substantial controversy as to the priority of use and rights, the matter is proper for declaratory judgment. *Hot-Hed, Inc. v. Safehouse Habitats, Ltd.*, 333 SW3d 719 (Tex. App. Houston [1st Dist] 2010 reh'g denied), Tex.Prac.Rem.Code §37.003-004.

*Conclusion of Law* – Trademark rights are determined by use, not registration. *Union National Bank of Texas Laredo v. Union National Bank of Texas Austin*, 909 F2d 839 (5th Cir. 1990).

*Conclusion of Law* – A registered trademark is nothing more than constructive notice of a claim of ownership. Once evidence contradicting the rebuttable presumption of ownership has been offered, the presumption is extinguished and shall not be weighed or treated as evidence, and the presumption has no effect on the burden of persuasion. *Hot-Hed, Inc. v. Safehouse Habitats, Ltd.*, 333 SW3d 719 (Tex. App. Houston [1st Dist] 2010 reh'g denied).

*The Court finds that* Plaintiff Ahmed Youssef has continuously, since at least early 2007, prominently placed Plaintiff's *Leaning Star Triple D* mark on hats/ caps, t-shirts, jerseys, jackets, shorts and/ or various athletic uniforms (hereinafter "Plaintiff's goods") and sold or transported such goods in commerce. Plaintiff's *Leaning Star Triple D* mark is shown on hats/ caps below as Figure 1.



Figure 1

---

FINAL JUDGMENT                                                                                   PAGE 2

CITY 00310

The Court finds that Defendant Freddie Jackson claims ownership of a mark which Defendant calls his *Stylized D* mark, which he registered with the U.S. Patent & Trademark Office. Defendant's claimed Stylized D mark is shown below as Figure 2.



Figure 2

*The Court finds that* since at least early 2007, Plaintiff Ahmed Youssef has used his *Leaning Star Triple D* mark in commerce and in connection with the sale of his goods throughout the United States and internationally. These territories include Texas, Louisiana, Mississippi, Georgia, Oklahoma Arkansas, Ohio, New York, New Jersey and California, Australia and a military base in Iraq.

*The Court finds that* Plaintiff Ahmed Youssef has for years advertised in various means, including printed fliers, store displays in major shopping malls in the Dallas/ Fort Worth area, internet sales, social media, and use of a promo-van wrapped with the Leaning Star Triple D mark.

*The Court finds that* Defendant Freddie Jackson, as stated in his affidavit supporting Special Appearance, has not maintained any business in the state of Texas since at least 2007, and that would include his business "Triple D Clothing Co."

*The Court finds that* Defendant Freddie Jackson's website www.tripledclothingco.com was inactive as of April 12, 2013.

The Court finds that the strength of Plaintiff's Leaning Star Triple D mark in the mind of the consumer is stronger than the strength of Defendant's claimed Stylized D mark.

*The Court finds that* as between the two competing marks of Plaintiff and Defendant, Plaintiff Ahmed Youssef has established over Defendant Freddie Jackson, the common law trademark prior use in commerce of his *Leaning Star Triple D* mark for the

---

**FINAL JUDGMENT**                                                      PAGE 300311

territories of Texas, Louisiana, Mississippi, Georgia, Oklahoma Arkansas, Ohio, New York, New Jersey and California, Australia and Iraq.

IT IS HEREBY ORDERED, ADJUDGED, DECLARED and DECREED that Plaintiff Ahmed Youssef is awarded all common law rights of ownership of Plaintiff's *Leaning Star Triple D mark*, and a judicial determination of prior use of his Leaning Star Triple D mark as it relates to any dispute between Plaintiff Ahmed Youssef's *Leaning Star Triple D* mark and Defendant Freddie Jackson's *Stylized D* mark.

### USE OF THE TERM "TRIPLE D"

The Court grants Plaintiff Ahmed Youssef's Declaratory Judgment declaring Plaintiff's right to use the term "Triple D," and makes the following findings of fact and conclusions of law:

*The Court finds that* Defendant Freddie Jackson's claimed *Stylized D* mark is, (with the exception of substituting the standard Texas star in place of the leaves) a replica of the well known official logo for the municipality City of Dallas, containing the triple "D" which has been used extensively by the City of Dallas municipality for decades.

*The Court finds that* the Dallas County Clerk Records reflect over 100 Dallas business listings as "Triple D" dating back to as early as 1966.

*The Court finds that* the term "Triple D" is a well recognized nickname for the City of Dallas, Texas.

Conclusion of Law – The term "Triple D" is geographically descriptive of the locale City of Dallas, Texas, and therefore, does not belong to Defendant Freddie Jackson. Because the primary significance to consumers of a geographic term is the place itself, a geographically descriptive mark can not serve to identify or distinguish the particular source of a good or service. *Horsehoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Co.,* 53 SW3d 799 (Tex.App. Austin – 2001, reh'g overruled, review denied).

**FINAL JUDGMENT**                                                    PAGE 400312

IT IS ORDERED, ADJUDGED, DECLARED and DECREED that Defendant Freddie Jackson has no right to interfere with Plaintiff's right to use the term "Triple D" in Plaintiff's business dealings, including the use of Plaintiff's business name, "Triple D Gear."

### TORTIOUS INTERFERENCE WITH
### BUSINESS CONTRACTS/ RELATIONSHIPS

After considering the summary judgment evidence in this matter, Plaintiff's motion for summary judgment on the claim of tortious interference with business contracts/ relationships is hereby GRANTED.

**IT IS HEREBY ORDERED, AJUDGED  and DECREED**  that Plaintiff Ahmed Youssef recover from Defendant  Freddie Jackson the sum of twelve thousand five hundred dollars ($12,500.00), plus interest on that sum of five per cent (5%) per annum until such time as the amount is paid.

All writs and processes for the enforcement and collection of this Judgment and the costs of court may issue as necessary.

All relief not expressly granted herein is denied.

SIGNED this ___22nd___ day of ___May___, 2013.

_____
HONORABLE JUDGE PRESIDING

APPROVED AND ENTRY REQUESTED:

_____
David A. Small
LAW OFFICE OF DAVID A. SMALL
Texas State Bar Number 00784987
501 Elm Street, Suite 385
Dallas, Texas 75202
PHONE (214) 965-9400
FACSIMILE (214) 752-7798
**ATTORNEY FOR PLAINTIFF
AHMED YOUSSEF**

FINAL JUDGMENT                                                    PAGE 5

TRIPLE 00313

# EXHIBIT 18

TRIPLE_D_30503

**TTAB**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| **AHMED YOUSSEF,**<br>**Plaintiff,** | §<br>§<br>§<br>§ | |
| **V.** | §<br>§<br>§ | **CANCELLATION 92055839** |
| **FREDDIE JACKSON,**<br>**Defendant,** | §<br>§ | |

---

## MOTION TO DISMISS

---

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, Freddie Jackson, "hereinafter Defendant" hereby moves the Trademark Trial and Appeal Board to Dismiss Plaintiff's Petition to Cancel Mark. The bases of this motion are set forth in the accompanying memorandum and would respectfully show the Court as follows:

I will be representing myself and Wilson Legal Group will no longer be representing me.

### INTRODUCTION

1. "I am the true and rightful owner of Federal Trademark Registration No. 4,048,819, hereinafter referred to as Triple D. I have a *bona fide* use of the trademark in commerce on or in connection with all the goods and services listed in the application as of the application filing date. I am the true and rightful owner of Federal Trademark Registration No. 3,988,323. I am the true and rightful owner of Federal Trademark Registration No. 4,164,772." Each Federal Trademark Registration has been registered in the specified goods and services and Triple D has been used as early as 01/01/2000. (See 37 CFR § 2.33; TIAB AFFIDAVIT; TRIPLE D TRADEMARKS; 2006 EVIDENCE & INTERNET PRESENCE)

2. Ahmed Youssef application states he have used the trademark in commerce since 01/01/2007. Ahmed Youssef made willful false statements on the application which has been made in bad faith and bad intentions to mislead the USPTO. (See 37 CFR § 2.20; AY TEAS PLUS APPLICATION, Page 2, Filing Basis)

05-01-2013

U.S. Patent & TMOfc TM Mail Rcpt Dt #22

CITY 00168

Exhibit A-10, page 75 of 86                    TRIPLE_D_30504

3. Ahmed Youssef Petition To Cancel Mark states he have **Prior Use**. Ahmed Youssef made willful false statements on the application which has been made in bad faith and bad intentions to mislead the USPTO. (See 37 CFR § 2.20; PETITION TO CANCEL MARK; TRIPLE D TRADEMARKS)

### FACTS

4. Ahmed Youssef provided disclosure through counsel which states as part of their evidence that to their knowledge Christopher Cain is the originator of the use of the Triple D logo on hats and caps which is impossible. I am the originator of Triple D with a *bona fide* use of the trademark in commerce on or in connection with all the goods and services listed in the application as of the application filing date. I am the dominant party in the use of Triple D in the geographic area. I have never heard of either party prior to Petition To Cancel Mark. (See AY DISCLOSURE a(2); 2006 EVIDENCE & INTERNET PRESENCE; TRIPLE D TRADEMARKS)

5. Ahmed Youssef Petition To Cancel Mark states he have **Prior Use**. Ahmed Youssef made willful false statements on the application which has been made in bad faith and bad intentions to mislead the USPTO. Ahmed Youssef application was filed and doesn't state any prior use in commerce of 01/01/2000. 01/01/2006 Triple D Clothing Co. became one of many official Triple D businesses owned by Defendant. Triple D have been manufactured and sold on t-shirts since 2000 for Triple D Jamz which is one of many Federal Trademark Registrations which contains the mark. Therefore the Petition To Cancel Mark claim has no grounds in prior use of the registered mark used in commerce. This proves I have true prior use of the mark Triple D. (See 37 CFR § 2.83; 37 CFR § 2.48; 2006 EVIDENCE & INTERNET PRESENCE; TRIPLE D TRADEMARKS)

6. Ahmed Youssef states he have sales receipts and sales data which no such information were ever proven or submitted as evidence to Defendant and/or TTAB. Ahmed Youssef has no documents showing him using the business name of Triple D before 01/01/2006. Ahmed Youssef hasn't any reliable proof of doing business before Feb. 08, 2012. I am the originator of Triple D with a *bona fide* use of the trademark in commerce on or in connection with all the goods and services listed in the application as of the application filing date. This proves that those where willful false statements in bad faith and bad intentions to mislead TTAB. (See AY DISCLOSURE b(2); FRANCHISE TAX CERTIFICATE; 2006 EVIDENCE & INTERNET PRESENCE; TRIPLE D TRADEMARKS)

7. Christopher Cain (hereinafter Michkel DeColan Cain) attempted to trademark a Logo on a TEAS Plus application on 06/30/2008 that would have included confusion similarities to Triple D as intent to use. I am the originator of Triple D with a *bona fide* use of the trademark in commerce on or in connection with all the goods and services listed in the application as of the application filing date. (See MCC TEAS PLUS APPLICATION Last Page; 37 CFR § 2.34(2)(b); 2006 EVIDENCE & INTERNET PRESENCE; TRIPLE D TRADEMARKS)

**MOTION TO DISMISS**                    2

CITY 00169

8. Michkel DeColan Cain never used Triple D in commerce on any products of athletic apparel, namely, shirts, pants, jackets, footwear, hats, and caps, and athletic uniforms. On his application there are no dates of first use anywhere and no dates of use in commerce. (See 37 CFR § 2.34 (a)(1)(i); 37 CFR § 2.34(a)(1)(ii); 37 CFR § 2.34(a)(1)(iii); MCC TEAS PLUS APPLICATION)

9. Feb 17, 2009, Michkel DeColan Cain received correspondence from the USPTO that he must use the mark in commerce and file a "Statement of Use". (See 37 CFR § 2.23(a)(1)(I); NOTICE OF ALLOWANCE)

10. Sep 21, 2009, Michkel DeColan Cain received correspondence from the USPTO the trademark application was abandoned and never responded at all. (See 37 CFR § 2.66(a)(1)(2)(b)(1)(2); NOTICE OF ABANDONMENT)

11. Michkel DeColan Cain never filed a bona fide intention to use in commerce of the trademark on or in connection with Triple D from the date or prior to the date on the application. (See 37 CFR § 2.66(a)(1)(2)(b)(1)(2); NOTICE OF ABANDONMENT)

12. Ahmed Youssef filed the application and supporting declaration with the USPTO and claimed he was currently using the mark on or in connection with the goods. That was a willful false sworn statement in bad faith and bad intentions to mislead the USPTO. Ahmed Youssef hasn't any reliable proof of doing business before Feb. 08, 2012. This is the date he submit his application for registrar and the same date he submit for Franchise Tax Certificate. (See FRANCHISE TAX CERTIFICATE; AY TEAS PLUS APPLICATION)

13. Ahmed Youssef Petition To Cancel Mark were based upon information and belief, that defendant committed fraud in the procurement of the subject registration and lacks prior use of the mark in the geographic region which he seeks to do business. Ahmed Youssef is aware of the goodwill associated with the Defendants registered marks. Ahmed Youssef is aware of the goodwill associated with the Defendants known company name Triple D and Triple D Clothing Co. Ahmed Youssef is aware of the goodwill associated with the Defendants known affiliated Triple D companies. Ahmed Youssef is aware of the goodwill associated with the Defendants known phrase "Triple D". (2006 EVIDENCE & INTERNET PRESENCE; TRIPLE D TRADEMARKS; AY RESPONSE TO SPECIAL APPEARANCE paragraph (4); AY RESPONSE TO SPECIAL APPEARANCE page 5)

14. Ahmed Youssef Petition To Cancel Mark were based off information and belief of Triple D not being used as stated in Paragraph 4(c). This was a willful false statement in order to open a case in the TTAB. Ahmed Youssef is aware of the goodwill associated with the Defendants registered marks. Ahmed Youssef is aware of the goodwill associated with the Defendants known company name Triple D and Triple D Clothing Co. Ahmed Youssef is aware of the goodwill associated with the Defendants known affiliated Triple D companies. Ahmed Youssef is aware of the goodwill

MOTION TO DISMISS                    3

CITY 00170

associated with the Defendants known phrase "Triple D". (See 37 CFR § 2.33; TTAB AFFIDAVIT; TRIPLE D TRADEMARKS; 2006 EVIDENCE & INTERNET PRESENCE)

15. Ahmed Youssef Petition To Cancel Mark were based from a statement on Petition To Cancel Mark paragraph 4(b), 4(c), and 4(d). These were willful false statements made in order to open up a case in the TTAB. Ahmed Youssef is aware of the goodwill associated with the Defendants registered mark. Youssef is aware of the goodwill associated with the Defendants known company name Triple D and Triple D Clothing Co. Youssef is aware of the goodwill associated with the Defendants known affiliated Triple D companies. Youssef is aware of the goodwill associated with the Defendants known phrase "Triple D". (See 37 CFR § 2.33; TTAB AFFIDAVIT, TRIPLE D TRADEMARKS; 2006 EVIDENCE & INTERNET PRESENCE)

16. Ahmed Youssef Petition to Cancel Mark was based from statement on Petition to Cancel Mark. He stated Ahmed Youssef and associate Arturo Sanchez designed and used the mark in 2007, which was the first time such a similar mark was used for goods. This was a willful false statement made about prior use. According to the Disclosure presented as evidence Michkel DeColan Cain was the originator of use of the Triple D logo. Also if the statement referring to Michkel DeColan Cain were true based on Ahmed Youssef dates on application then statement that first use was by the predecessor in title or by the related company was never submitted. Michkel DeColan Cain never used Triple D at all and would have had to use it earlier than 01/01/2000 to be the originator. Defendant is the originator of the logo Triple D. Defendant have a *bona fide* use of the trademark in commerce on or in connection with all the goods and services listed in the application as of the application filing date (See Disclosure Paragraph a(2), PETITION TO CANCEL MARK Paragraph 4(f); 37 CFR § 2.32(a)(1)(2)(3)(i)(ii)(iii)(iv); 37 CFR § 2.38(a); TTAB AFFIDAVIT, TRIPLE D TRADEMARKS; 2006 EVIDENCE & INTERNET PRESENCE)

17. Ahmed Youssef stated his goods were sold in stores and on the internet. This was a willful false statement provided by Ahmed Youssef. Interrogatories request proof of goods sold in stores and there has been no information submitted to Defendant and/or TTAB to prove this statement. Ahmed Youssef use of Triple D was bad faith with intent to profit knowing the goodwill of mark. The website was used for dilution by tarnishment in association with arising from the similarity between the mark or trade name and famous mark that harms the reputation of the famous mark owned by Defendant. Triple D was famous at the time of registration of the domain name, and www.tripledgear.com is identical or confusingly similar to or dilutive of the mark. Triple D is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36. The registered website being used by Ahmed Youssef www.tripledgear.com never existed anytime during 2007 and also is used to redirect traffic for profit. (See Petition To Cancel Mark Paragraph 4(f); 37 CFR § 43(a)(1)(A)(B); AY INTERNET PURCHASE DATE; AY INTERNET PRESENCE; DEFENDANT INTERROGATORIES; TRIPLE D TRADEMARKS; 2006 EVIDENCE & INTERNET PRESENCE)

**MOTION TO DISMISS**                                         4

18. Ahmed Youssef Petition To Cancel Mark was based from a statement on Petition To Cancel Mark. He and associate Arturo Sanchez designed and used the mark in 2007. Along with conversation with Attorney Smalls stating that Ahmed Youssef is also doing business in a joint venture with Michkel DeColan Cain in this subject matter. This proves that the application should be based on a joint venture which the application has not meet the requirements for a complete application for joint ventures. 2006 Evidence & Internet has 2 .ai pictures files as evidence of artwork created by Defendant containing 2 of 3 first creations of Triple D. This also proves that Ahmed Youssef never used the mark in commerce on the dates as stated on his application. The Petition to Cancel Mark is groundless and submitted in bad faith. (See 37 CFR § 2.32(a)(1)(2)(3)(i)(ii)(iii)(iv); FRANCHISE TAX CERTIFICATE; AY TEAS PLUS APPLICATION; MCC TEAS APPLICATION; TRIPLE D TRADEMARKS; 2006 EVIDENCE & INTERNET PRESENCE)

### ARGUMENT

19. DAMAGE: Ahmed Youssef application was filed in bad faith and bad intentions to mislead the USPTO. Ahmed Youssef filed a Petition To Cancel Mark in bad faith and bad intention to mislead the TTAB. He filed willful false statements to the TTAB in an attempt to cover up his bad faith and bad intentions on his application to the USPTO. Defendant has been and will continue to be damaged by Ahmed Youssef. Ahmed Youssef has caused a likelihood of confusion, as well as diluted Defendants mark as to the source of goods in the marketplace. Defendant has invested a great deal of time and money in the manufacturing and marketing of his product, and has developed opportunities for reasonable growth and expansion on his market. Ahmed Youssef has interfered with the unauthorized use of Defendants registered mark. (SEE TRIPLE D TRADEMARKS; 2006 EVIDENCE & INTERNET PRESENCE; TTAB AFFIDAVIT)

20. GOODWILL: Defendant has developed a great deal of goodwill in his mark. Ahmed Youssef is aware of the goodwill associated with the Defendants registered marks, as Ahmed Youssef has unlawfully appropriated the use of Defendants mark by selling products which bears Defendants mark. Ahmed Youssef is aware of the goodwill associated with the Defendants known company name Triple D and Triple D Clothing Co. Ahmed Youssef is aware of the goodwill associated with the Defendants known affiliated Triple D companies. Ahmed Youssef is aware of the goodwill associated with the Defendants known phrase "Triple D". (See 2006 EVIDENCE & INTERNET PRESENCE)

21. Michkel DeColan Cain never filed a bona fide intention to use in commerce of the trademark on or in connection with Triple D from the date or prior to the date on the application. This means that Ahmed Youssef never used Triple D in commerce since 01/01/2007 as stated in his application.

22. Ahmed Youssef Application and Petition To Cancel Mark was obtained by willful false and/ or inaccurate statements in bad faith and bad intentions.

**MOTION TO DISMISS**                                        5

CITY 00172

**Exhibit A-10, page 79 of 86**                    **TRIPLE_D_30508**

23. Ahmed Youssef through counsel filed willful false claims in a civil suit in bad faith with bad intentions an attempt to coerce Defendant to contract a lease of Triple D to Plaintiff. The civil suit was also an attempt to prevent sending sales receipt and sales data of Ahmed Youssef claims of income and other information. That information is believed by Defendant with evidence to be willful false statements made in bad faith and bad intentions submitted to USPTO and TTAB.

24. If statement made that Ahmed Youssef sold products since 2007 holds any truth then Defendant believe it to be unreported income which will be reported to the Internal Revenue Service. If any products were sold by Ahmed Youssef then they never bared Triple D or bared Triple D in fraud. Ahmed Youssef never sold Triple D in commerce on or in connection with all the goods and services listed in the application as of the application filing date.

25. Attorney Smalls stated in a previous over the phone conversation he never received the discovery so Defendant sent it certified mail. The civil suit was filed on Feb. 08, 2013 the day after Attorney Smalls received the Defendants Discovery for Interrogatories resent on Feb. 04, 2013 for the TTAB Cancellation Preceding. (See DEFENDANTS INTERROGATORIES)

26. Defendant previously advised Attorney Smalls once documents are in hand the unreported income would be reported to Internal Revenue Service.

27. The civil suit wasn't known until receiving a phone call on Feb. 27, 2013.

28. On Feb. 22, 2013, Attorney Smalls made a few more attempts to get a contract lease of Triple D and went as far as apologizing to Defendant. Attorney Smalls advised Defendant if Ahmed Youssef is given a contract lease to use Triple D on hats and t-shirts then all cases would be dropped.

29. Attorney Smalls would go on to state how Ahmed Youssef use of the mark can make it stronger than it already has been. Defendant advised Attorney Smalls that a contract lease would not be given and all the lies made by Attorney Smalls and Ahmed Youssef would come forth.

30. Attorney smalls would again state getting the I.R.S involved isn't necessary and that Ahmed Youssef only wants to lease Triple D for hats and t- shirts. Defendant would again advised Attorney Smalls for the last time that he would not give a contract lease to Ahmed Youssef.

31. Defendant also stated to Attorney Smalls that reporting the income to I.R.S will prove that the statement of use of commerce and Fake sales receipt would prove the willful false statements made in bad faith and bad intention. Defendant stated two things will happen either they would give the information because there telling the truth and/or Attorney Smalls will do anything in his power to stop from sending the documents to Defendant. This is the additional reason for the civil suit.

**MOTION TO DISMISS**                                      6

CITY 00173

32. Attorney Smalls would state not giving Ahmed Youssef a contract lease will cause Defendant to spend a lot of unnecessary money and court will come down to who run out of money first.

33. The phone call was ended after 3 hours and Attorney Smalls stated he would send information. Over 30 days has passed and no information have been sent to Defendant. Attorney Smalls is also attempting to make Defendant look negligent and cooperating for Discovery in TTAB which the opposite is what has happened dealing with Attorney Smalls.

34. Attorney Smalls requested the court to contact Defendant for some unknown reason. In a call on Feb. 27, 2013 Defendant advised the judge of the court the reason for the suit was only to coerce Defendant to give Ahmed Youssef a contract lease and to prevent Attorney Smalls for giving Defendant the information in Interrogatories which will be reported to I.R.S. Defendant was never served papers in residential state of Massachusetts for civil suit.

35. In the back ground after statement was made Attorney Smalls shouted "yes" in an aggravated tone of voice in the conversation with the court.

36. This is a malicious wrongful use of civil proceedings and an act of imitation based on the stated facts.

### PRAYER

37. For the reason stated above, Defendant's Motion to Dismiss should be granted.

Respectfully Submitted,

Freddie Jackson
Triple D/Triple D Clothing Co.
360 N. Main St #3295
Andover, MA 01810
Phone 404-484-8212

CITY 00174

Exhibit A-10, page 81 of 86                    TRIPLE_D_30510

## CERTIFICATE OF SERVICE

I, Freddie Jackson on this 30th day of April, 2013 do hereby certify that a true and correct copy of this document by certified mail was served on Plaintiff Ahmed Youssef, by and through counsel of record, David A. Small, Law Office of David A. Small, 501 Elm Street, Suite 385, Dallas, Texas 75202.

Freddie Jackson
Triple D/Triple D Clothing Co.
360 N. Main St #3291
Andover, MA 01810
Phone 404-484-8212

## VERIFICATION

Before me, the undersigned notary public, on this day personally appeared Freddie Jackson, an individual, who being by my duly sworn on this oath, deposed and said that he has read the foregoing Motion to Dismiss and that the statements contained therein are within his personal knowledge and true and correct.

SUBSCRIBED AND SWORN to before me on this ___30TH___ day of ___APRIL___, 2013, to certify which witness my hand and official seal.

V. _____ R. RODRIGUEZ
Notary Public
Commonwealth of Massachusetts
My Commission Expires Nov. 29, 2013

NOTARY PUBLIC, in and for the
STATE OF MASSACHUSETTS
Name Printed: YIRANISKT,ODRIGUEZ
My Commission Expires: 11/29/2013

MOTION TO DISMISS                    8

CITY 00175

# EXHIBIT 19

TRIPLE_D_30512

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

AHMED YOUSSEF,                §
Plaintiff,                    §
                              §
                              §
V.                            §        CANCELLATION 92055839
                              §
                              §
FREDDIE JACKSON,              §
Defendant,

---

## DEFENDANT'S AFFIDAVIT IN SUPPORT FOR MOTION TO DISMISS

---

STATE OF MASSACHUSETTS
ESSEX COUNTY

Freddie Jackson appeared in person before me today and stated under oath:

"My name is Freddie Jackson. I am a resident of Essex County, Massachusetts, and over 18 years of age, and competent to make this affidavit. I have never been convicted of a felony, and the following statements are true:

1. "I am the true and rightful owner of Federal Trademark Registration No. 4,048,819, hereinafter referred to as Triple D."

2. "I am the true and rightful owner of Federal Trademark Registration No. 3,988,323, hereinafter referred to as Triple D."

3. "I am the true and rightful owner of Federal Trademark Registration No. 4,164,772, hereinafter referred to as Triple D Jamz."

4. "I have a *bona fide* use of the trademarks in commerce on or in connection with all the goods and services listed in the application as of the application filing date."

AFFIDAVIT                          1

CITY 00176

5. "Triple D is a brand created and used in commerce on in connection with all the goods and services listed in the applications as of the application filling date."

6. No other person has the right to use the mark in commerce, either in the identical form or in such near resemblance when applied to the goods or services of any other person it is as likely to cause confusion or mistake, or to deceive the general public and my goodwill in the mark.

7. To the best of my knowledge and belief, no other person, firm, corporation, association, or other legal entity has the right to use the mark in commerce that the United States Congress can regulate, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, firm, corporation, association, or other legal entity, to cause confusion, or to cause mistake, or to deceive.

8. The specimen shows the mark as used on or in connection with the goods or services; and the facts set forth in the application are true.

9. It is placed on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto.

10. It is placed on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto.

11. I also use the trademark in commerce in the nature of the goods which makes such placement impracticable on documents associated with the goods or their sale, and the goods are sold or transported in commerce, and on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State, the goods and service are sold on the internet, or in the United States and a foreign country where I am engaged in commerce in connection with the sale of good and services.

**FURTHER, AFFIANT SAYETH NOT.**

FREDDIE JACKSON, Affiant
Triple D/Triple D Clothing Co.
360 N. Main St #3295
Andover, MA 01810
Phone 404-484-8212

**AFFIDAVIT**                                2

CITY 00177

**Exhibit A-10, page 85 of 86**                    **TRIPLE_D_30514**

**VERIFICATION**

Before me, the undersigned notary public, on this day personally appeared Freddie Jackson, an
individual, who being by my duly sworn on this oath, deposed and said that he has read the foregoing
Affidavit in Support of Motion to Dismiss and that the statements contained therein are within his
personal knowledge and true and correct.

SUBSCRIBED AND SWORN to before me on this _____30TH_____ day of _APRIL_, 2013, to certify which
witness my hand and official seal.

YIPANIS K. RODRIGUEZ
Notary Public
Commonwealth of Massachusetts
My Commission Expires Nov. 29, 2013

NOTARY PUBLIC, in and for the
STATE OF MASSACHUSETTS
Name Printed: YIPANIS K RODRIGUEZ
My Commission Expires: 11/29/2013

**AFFIDAVIT**

3

CITY 00178