IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF TEXAS - DALLAS DIVISION

| | | |
|---|---|---|
| CITY OF DALLAS,<br>*Plaintiff,* | §<br>§<br>§<br>§ | |
| v. | §<br>§ | Case No. 3:23-cv-02367-K |
| TRIPLE D GEAR, LLC,<br>*Defendant.* | §<br>§<br>§ | |

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

ON THIS DAY, came before this Court, Plaintiff City of Dallas, appearing by its counsel of record, and Defendant Triple D Gear, LLC, also appearing by its counsel and presented arguments and evidence in a nonjury trial. Based on the evidence and arguments, the Court makes the following findings of fact and conclusions of law.

I.    FINDINGS OF FACT

A.  History of the Marks

1.      Plaintiff City of Dallas is the owner of a trademark consisting of three concentric rings forming the letter "D" surrounding a stylized three-pointed oak leaf.[1] The City's trademark is shown in Figure 1. Dallas adopted and began using the Leaf Logo in association with official municipal services and municipal property around 1972.



**Figure 1**

2.      In 2007, Ahmed Youssef and Arturo Sanchez began doing business as co-owners of Triple D Gear, LLC. Defendant Triple D Gear, LLC is a Richardson, Texas-based limited liability company that makes branded apparel. Triple D first began using styled "D" logo for its apparel in 2007. The "Ghost Logo" forms the



**Figure 2**

---

[1] *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corporation*, 105 F.4th 362 (5th Cir. 2024).

letter "D" using three concentric lines with a small interruption at the upper left hand side of the letter. The Ghost Logo is shown in Figure 2.

3.      Around 2008, Triple D began using a variation of the Ghost Logo that uses the same concentric D design with the addition of tilted five-pointed star in the center. The "Tilted Star Logo" is shown in Figure 3.



**Figure 3**

4.      In 2014, Triple D applied for and obtained trademark protection with the United States Patent and Trademark Office on the Tilted Star Logo. The Tilted Star Logo is registered as R/N 4,586,688, with a registration date of August 19, 2014. The Tilted Star Logo is registered for use with Class 25 goods, apparel.

5.      Similarly, Triple D applied for and obtained trademark protection with the USPTO on the Ghost Logo in 2020. The Ghost Logo is registered with the USPTO as R/N 6,141,994 with a registration date of September 1, 2020. The Ghost Logo is registered for use with Class 25 goods, apparel.

6.      Finally, Triple D applied for and obtained trademark protection with a third logo, the "Tilted Star Logo V2." This logo is shown as Figure 4. The Titled Star Logo V2 is registered with the USPTO as R/N 6,330,048 with a registration date of April 20, 2021. The Titled Star V2 is registered for use with Classes 25 and 35 goods, which are apparel and clothing.

**Figure 4**

7.      On August 24, 2020, Dallas filed an application for a U.S. Trademark Registration assigned Serial No. 90/132,560. On December 21, 2020, a Trademark Examining Attorney issued an Office Action concerning Application Serial No. 90/132,560, in which the Ghost Logo Registration was cited.

8.      In Spring 2021, the Dallas's counsel contacted Defendant's then-counsel to commence discussions of a potential resolution of what the City contended was trademark infringement of the City's Logo. On May 7, 2021, shortly after learning about the '994 Registration for the Ghost Logo, the City sent a cease-and-desist letter to Defendant.

**B.  Procedural History**

9.      Despite talks between Dallas and Triple D in early 2021, the parties were unable to resolve the conflict over their marks. Dallas then sought relief through TTAB. It filed a cancellation proceeding with the TTAB on June 17, 2021. The TTAB proceeding, assigned Cancellation No. 92077406, sought cancellation of the Ghost Logo Registration based on priority and likelihood of confusion.

10.      Ater discovery and briefing, the TTAB panel denied the City's Petition to Cancel on August 23, 2023. The panel noted that, to succeed on its petition, the City had to show two things: (1) priority—that is, the City used its mark first; and (2) a likelihood of confusion.

11.      The panel addressed priority, and holding that, although the City used the City Logo before Defendant used the Ghost Logo, the City still did not establish priority because the City did not use the City Logo on items of apparel intended for commercial use.

12.      In its decision, the TTAB panel denied the petition to cancel the Ghost Logo Registration on the basis that the City had failed to meet the first *E.I. du Pont* factor, that is, that it established prior use of its mark in commercial connection with t-shirts or other apparel in commerce prior to Triple D's usage of the Ghost Mark.

13.      Defendant has never claimed that it used the Ghost Logo prior to 2006 and has presented no evidence of use of the Ghost Logo prior to 2006. Neither has the City provided any evidence of commercial The City's Logo has been used on "t-shirts for others" since at least as early as 2005.

## II.    CONCLUSIONS OF LAW

14.    Plaintiff City of Dallas has alleged that Defendant Triple D Gear, LLC's trademarks are likely to cause confusion with its own mark and that Triple D obtained protection of its marks by fraud. These are the bases that Dallas uses to seek cancellation of Triple D's marks. Defendant Triple D Gear, LLC raises several affirmative defenses against Dallas. Dallas's arguments are not well-received, such that it does not prevail in this action. Further, this Court finds that even if Dallas would prevail on the merits of its claims, Triple D's affirmative defenses are well-received and therefore, this Court DENIES the relief Dallas requests.

15.    Federal trademark law exists to secure to the owner of the mark the goodwill of its business and to protect the ability of consumers to distinguish among competing producers. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985) ("The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers."). The owner of a trademark establishes that ownership by use. *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990). A trademark and does not need to be registered in order to obtain protection. *Id.* As such, a federal trademark registration is rebuttable evidence of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the registration. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citing 15 U.S.C. § 1115(a)). In the context of this general framework, the Plaintiff brings its claims for cancellation.

16.    When a party opposes registration because it believes the mark proposed to be registered is too similar to its own, the TTAB evaluates likelihood of confusion by applying some or all of the 13 factors set out in *In re E. I. DuPont de Nemours & Co.*, 476 F. 2d 1357 (CCPA 1973). After

the TTAB decides whether to register the mark, a party can seek review in the U. S. Court of Appeals for the Federal Circuit, or it can file a new action in district court. *See* 15 U. S. C. §1071. In district court, the parties can conduct additional discovery and the judge resolves registration *de novo*. § 1071(b); *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 144-145 (2015).

17.     The Lanham Act also creates a federal cause of action for trademark infringement. The owner of a mark, whether registered or not, can bring suit in federal court if another is using a mark that too closely resembles the plaintiff's. *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 144-145 (2015). The court must decide whether the defendant's use of a mark in commerce "is likely to cause confusion, or to cause mistake, or to deceive" with regard to the plaintiff's mark. *See* 15 U. S. C. §1114(1)(a) (registered marks); § 1125(a)(1)(A) (unregistered marks). In infringement litigation, the district court considers the full range of the mark in question's usages, not just those in the application. *B&B Hardware*, 575 U.S. at 145.

**A. Dallas has not sustained its burden on its claim for cancellation for likelihood of confusion.**

18.     At the outset, Dallas has not sustained its burden on its claim for cancellation for likelihood of confusion and so this Court will not grant the requested relief on this ground. Plaintiff City of Dallas bases its argument entirely on the visual similarity of the City Logo and Defendant Triple D Gear, LLC's marks.

19.     The Plaintiff points out that both Dallas and Triple D's logos use three concentric letter "D"s. Dallas also argues that it uses its City Logo on some clothing items such as polos for office workers and promotional t-shirts for city events, putting it in a category of likely confusion. However, this is the extent of the similarity between Dallas and Triple D's marks.

**B. Dallas has not sustained its burden on its claim for cancellation for fraud.**

20.

**C. Triple D has sustained its burden on its affirmative defense of no harm.**

21.    Plaintiff's trademark is registered and legally protectable (Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc., 851 F.3d 440 (2017))[2].

Plaintiff's trademark is used in commerce and has acquired distinctiveness (Viacom International v. IJR Capital Investments, L.L.C., 891 F.3d 178 (2018))[3].

Defendant's Actions:

Defendant has used a mark similar to Plaintiff's trademark in commerce (Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc., 851 F.3d 440 (2017))[2].

Defendant's use of the mark is likely to cause confusion among consumers (Firebirds International, LLC v. Firebird Restaurant Group, LLC, 397 F.Supp.3d 847 (2019))[4].

Likelihood of Confusion:

The strength of Plaintiff's mark is significant (Savage Tavern, Inc. v. Signature Stag, LLC, 589 F.Supp.3d 624 (2022))[5].

The similarity between Plaintiff's and Defendant's marks is high (Savage Tavern, Inc. v. Signature Stag, LLC, 589 F.Supp.3d 624 (2022))[5].

The products/services offered by both parties are similar (Savage Tavern, Inc. v. Signature Stag, LLC, 589 F.Supp.3d 624 (2022))[5].

Both parties use similar retail outlets and advertising media (Savage Tavern, Inc. v. Signature Stag, LLC, 589 F.Supp.3d 624 (2022))[5].

There is evidence of actual confusion among consumers (Savage Tavern, Inc. v. Signature Stag, LLC, 589 F.Supp.3d 624 (2022))[5].

Defendant intended to create confusion with Plaintiff's mark (Savage Tavern, Inc. v. Signature Stag, LLC, 589 F.Supp.3d 624 (2022))[5].

Market Impact:

Plaintiff's and Defendant's marketing approaches overlap significantly (🚩Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc., 668 F.Supp.3d 614 (2023))[6].

Both parties target the same consumer base (🚩Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc., 668 F.Supp.3d 614 (2023))[6].

Conclusions of Law:

Trademark Infringement:

Under the Lanham Act, Plaintiff must prove that it owns a valid trademark and that Defendant's use of the mark is likely to cause confusion (🚩Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc., 851 F.3d 440 (2017))[2].

Plaintiff has established ownership of a valid trademark (🚩Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc., 851 F.3d 440 (2017))[2].

Defendant's use of a similar mark creates a likelihood of confusion as to the source, affiliation, or sponsorship of the goods/services (🚩Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc., 851 F.3d 440 (2017))[2].

Likelihood of Confusion Analysis:

The court applies the "digits of confusion" test to determine the likelihood of confusion (Savage Tavern, Inc. v. Signature Stag, LLC, 589 F.Supp.3d 624 (2022))[5].

Factors considered include the strength of the mark, similarity of the marks, similarity of the products, identity of retail outlets and purchasers, similarity of advertising media, Defendant's intent, evidence of actual confusion, and the degree of care exercised by potential purchasers (Firebirds International, LLC v. Firebird Restaurant Group, LLC, 397 F.Supp.3d 847 (2019))[4], (Savage Tavern, Inc. v. Signature Stag, LLC, 589 F.Supp.3d 624 (2022))[5].

Relief and Remedies:

Plaintiff is entitled to injunctive relief to prevent further infringement (⚑15 U.S.C.A. § 1125)[7].

Plaintiff may also be entitled to damages and an accounting of Defendant's profits (⚑Waples-Platter Companies v. General Foods Corp., 439 F.Supp. 551 (1977))[8].

This skeleton outline provides a structured approach to drafting findings of fact and conclusions of law in a trademark contestation case, incorporating relevant legal principles and factual determinations based on the search results.


SIGNED on , 20.

U.S. DISTRICT JUDGE

APPROVED AS TO FORM & SUBSTANCE:

{Attorney for prevailing party}

APPROVED AS TO FORM ONLY:

{Attorney for losing party}