### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **City of Dallas,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 3:23-cv-02367-K** |
| | § | |
| **Triple D Gear, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

### ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff City of Dallas (the "City") respectfully files its Annotated Proposed Findings of Fact and Conclusions of Law pursuant to the Court's Order [Doc. No. 102].

## I.    Proposed Findings of Fact

### A.  The Parties.

#### a) The City of Dallas

1. Dallas, Texas is a municipality with a population of over one million residents.[1]

2. In 1972, the City adopted the following logo as a trademark and service mark for the services rendered by the City[2] and marketing and informational materials (including promotional merchandise such as t-shirts, bags, and other goods[3]) distributed therewith:



---

[1] Plaintiff's Exhibits 82 & 83
[2] Plaintiff's Exhibit 51; Trial Transcript at 22:7-11.
[3] Trial Transcript at 23:4-14.

(the "City's Logo")[4].

3.    For more than fifty years, the City Logo graces just about everything that emanates from City Hall. Most residents of Dallas likely see the City Logo several times per day, and almost every Dallas visitor encounters it as well.[5] There are literally millions and millions of commercial impressions of the City Logo each year, and those impressions have compounded for more than five decades.[6]

4.    Due in part to the use of three concentric "Ds" in the City Logo, Defendant's predecessor in interest alleged – and obtained a Texas state district court judgment finding – that, "'Triple D' is a well recognized nickname for the City of Dallas, Texas."[7]

5.    The City Logo identifies the City of Dallas.[8] A Texas state district court has held that the Triple D nickname also identifies the City of Dallas.[9] This Court agrees with that Texas state district court.

6.    The City's Logo has been used for myriad goods and services, including on t-shirts for others, to indicate the City's sponsorship.[10] The evidence conclusively shows that the City's Logo has been used on t-shirts for others since at least as early as 2005.[11]

7.    On August 24, 2020, the City filed two applications with the Trademark Office to obtain federal trademark registrations for the City's Logo[12].

---

[4] Plaintiff's Exhibit 1.
[5] Trial Transcript at 32:7-22.
[6] Plaintiff's Exhibit 64.
[7] Plaintiff's Exhibit 69 at 4.
[8] Trial Transcript at 24:10-13.
[9] Plaintiff's Exhibit 69 at 4.
[10] Trial Transcript at 23:4-14; Plaintiff's Exhibits 49-50.
[11] Plaintiff's Exhibit 50 at 16-17.
[12] Plaintiff's Exhibit 79.

    a. One application, assigned U.S. Application Serial No. 90/132,764, was a use-based application claiming various services that matured into U.S. Registration No. 6,932,964.[13]

    b. The other application, assigned U.S. Application Serial No. 90/132,560, was an intent-to-use application claiming various goods that remains pending.[14]

8. On December 21, 2020, the Trademark Office issued an Office Action partially refusing U.S. Application Serial No. 90/132,560 to the extent it claimed "clothing, namely, shirts, sweaters, pants, shorts, socks, pajamas, scarves and gloves; headwear, namely, hats, caps and visors" in Class 25.[15] The reason for this initial refusal was that a registration for the foregoing claimed goods may cause confusion vis-à-vis Defendant's U.S. Registration Nos. 6,141,994 (for the Ghost Logo) and 4,586,688 (for the Tilted Star Logo) and Defendant's then-pending U.S. Application Serial No. 88/802,417 (for the Tilted Star Logo), which has since issued as U.S. Registration No. 6,330,048.[16]

### b) Defendant and its principal(s)

9. Defendant has claimed that, in or around 2007, Ahmed Youssef ("Youssef") and Alfredo Arturo Sanchez ("Sanchez") began doing business as co-owners of "Triple D Gear."[17]

10. Defendant Triple D Gear, LLC was formed as a Texas limited liability company on February 8, 2012.[18]

---

[13] Plaintiff's Exhibit 79 at 1-2
[14] Amended Joint Pretrial Order [Doc. No. 91] at 12-13 (paragraphs 2-3 and 5 of "Additional stipulated facts."); Plaintiff's Exhibit 79 at 358-59.
[15] Amended Joint Pretrial Order [Doc. No. 91] at 13 (paragraph 4 of "Additional stipulated facts."); Plaintiff's Exhibit 79 at 434-53.
[16] Plaintiff's Exhibit 79 at 435-37.
[17] Amended Joint Pretrial Order [Doc. No. 91] at 15 (paragraph 3 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[18] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 20 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 3**

11. Sanchez is and was at all relative times the CEO of Defendant.[19] Sanchez is also the CEO of nonparty Rich Mind Records, Inc. ("Rich Mind Records").[20]

12. Youssef was the co-owner of Defendant until Sanchez purchased Youssef's ownership interest in Defendant on or about December 13, 2019.[21]

13. Defendant is the registrant of the following trademarks[22]:



U.S. Reg. No. 6,141,994          U.S. Reg. No. 4,586,688          U.S. Reg. No. 6,330,048

          

("Ghost Logo")              ("Tilted Star Logo")

14. Defendant had seen the City's Logo prior to designing and using either of the Tilted Star Logo and the Ghost Logo.[23]

15. On or about on or about December 17, 2018, during a television appearance on *Good Morning Texas* on local Dallas channel WFAA, Sanchez said of the Tilted Star Logo: "Basically, we just took the City of Dallas Logo and we just put a star in it and tilted it."[24]

16. Even without this admission, the Tilted Star Logo is visually extremely similar to the City's Logo. The one and only difference between the Tilted Star Logo and the City's Logo is that Defendant replaced the stylized oak leaf that is part of the City's Logo with a tilted star.[25] Both logos contain the same interruption near the top of the vertical lines of the concentric "Ds," creating

---

[19] Amended Joint Pretrial Order [Doc. No. 91] at 13 (paragraph 6 of ""Additional stipulated facts.").
[20] Amended Joint Pretrial Order [Doc. No. 91] at 13 (paragraph 7 of "Additional stipulated facts.").
[21] Amended Joint Pretrial Order [Doc. No. 91] at 13 (paragraph 8 of "Additional stipulated facts.").
[22] Amended Joint Pretrial Order [Doc. No. 91] at 12 (paragraph 1 of "Additional stipulated facts.").
[23] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraphs 1-4 of "Defendant admitted the following facts in its response to Requests for Admission.").
[24] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 17 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[25] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 3.

the same proportion of solid space to white space.[26] Both logos have a subtle angle between the top and bottom edges of the "Ds" and the rounded right side, rather than a smooth elliptical shape.[27]

17. The Ghost Logo is even more similar to the City's Logo than the admittedly copied Tilted Star Logo is.[28] The one and only difference between the Ghost Logo and the City's Logo is the absence of the stylized oak leaf that is part of the City's Logo.[29] Both logos contain the same interruption near the top of the vertical lines of the concentric "Ds," creating the same proportion of solid space to white space.[30] Both logos have a subtle angle between the top and bottom edges of the "Ds" and the rounded right side, rather than a smooth elliptical shape.[31]

**B. The Ghost Logo Registration (Application SN 88/850,773; U.S. Registration No. 6,141,994)**

18. On March 27, 2020, attorney Adam R. Villanueva filed in the name of Defendant an Application for a U.S. Trademark Registration assigned Serial No. 88/850,773.[32]

19. On September 1, 2020, U.S. Registration No. 6,141,994 (the "Ghost Logo Registration") issued to Defendant.[33]

20. Application Serial No. 88/850,773 sought registration of the following trademark[34]:



---

[26] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 3.
[27] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 3.
[28] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 2; *compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 3.
[29] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 2.
[30] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 2.
[31] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 2.
[32] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 22 of "Defendant admitted the following facts in its Answer to the First Amended Complaint."); Defendant's Exhibit 29 at 28-36.
[33] Amended Joint Pretrial Order [Doc. No. 91] at 8 (paragraph 24 of "Defendant admitted the following facts in its Answer to the First Amended Complaint."); Defendant's Exhibit 29 at 19.
[34] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 22 of "Defendant admitted the following facts in its Answer to the First Amended Complaint."); Defendant's Exhibit 29 at 28-36.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 5**

21. Application Serial No. 88/850,773 named Defendant as the owner of the mark claimed in the application.[35]

22. The Court finds that Sanchez as an individual was the actual the owner of the mark claimed in the application on the date the application was filed, and Defendant merely "managed" the Ghost Logo.[36]

23. Application Serial No. 88/850,773 stated that the Ghost Logo was first used in commerce at least as early as 2007.[37]

24. Defendant has failed to corroborate this claimed date of first use in commerce with any reliable evidence. Accordingly, for the purposes of determining the issue of priority, the Court will rely on the filing date of Application Serial No. 88/850,773, which is March 27, 2020.[38]

25. Application Serial No. 88/850,773 claimed the following goods: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing.[39]

26. Defendant has admitted that it had not, in fact, offered all of the goods claimed in Application Serial No. 88/850,773 as of March 27, 2020.[40]

27. In connection with Application Serial No. 88/850,773, Sanchez declared under oath:

---

[35] Defendant's Exhibit 29 at 28-30.
[36] Plaintiff's Exhibit 68 at 11 (answer to Interrogatory No. 23).
[37] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 22 of "Defendant admitted the following facts in its Answer to the First Amended Complaint."); Defendant's Exhibit 29 at 28-30.
[38] Defendant's Exhibit 13 at 16.
[39] Amended Joint Pretrial Order [Doc. No. 91] at 7-8 (paragraph 22 of "Defendant admitted the following facts in its Answer to the First Amended Complaint."); Defendant's Exhibit 29 at 28-30.
[40] Trial Transcript at 47:22-48:20 (admitting offered deposition testimony without having it read into the record); Oral Deposition of Arturo Sanchez as the Corporate Representative of Triple D Gear, LLC taken June 7, 2022 in Cancellation No. 92077406 (the "TTAB Deposition") at 68:10- 23.

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;

- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;

- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and

- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.[41]

28. In connection with Application Serial No. 88/850,773, Sanchez further declared under oath:

- To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

- To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

- The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or

---

[41] Defendant's Exhibit 29 at 32.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 7**

any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.[42]

29. The facts show that Sanchez made multiple material misrepresentations to the Trademark Office in connection with Application Serial No. 88/850,773, including but not limited to the following misrepresentations:

- Applicant—that is, Defendant—was not the owner of the mark because Sanchez was the sole owner of the mark[43];

- The mark was not in use in commerce and was not in use in commerce as of the filing date of the application on or in connection with all of the goods claimed in the application[44];

- Sanchez knew the facts recited in the application were not accurate and/or acted with reckless disregard for the truth; and

- Sanchez knew of the City's rights in the City's Logo[45].

30. The City has been harmed by Defendant's fraud in obtaining Registration No. 6,141,994 for the Ghost Logo, as it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with the City, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by the City.

---

[42] Defendant's Exhibit 29 at 32.
[43] Plaintiff's Exhibit 68 at 11 (answer to Interrogatory No. 23).
[44] TTAB Deposition at 68:10-23.
[45] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraphs 1-4 of "Defendant admitted the following facts in its response to Requests for Admission.").

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 8**

### C.  The First Tilted Star Logo Registration (Application SN 85/537,432; U.S. Registration No. 4,586,688)

31. On February 8, 2012, attorney David A. Small represented both Youssef and Sanchez, as well as Defendant.[46]

32. On February 8, 2012—the same day as the formation of Defendant as a limited liability company[47]—attorney David A. Small filed in the name of Youssef individually an Application for a U.S. Trademark Registration assigned Serial No. 85/537,432.[48]

33. On August 19, 2014, U.S. Registration No. 4,586,688 (the "First Tilted Star Logo Registration") issued to Youssef for the Tilted Star Logo.[49]

34. Application Serial No. 85/537,432 sought registration of the following trademark[50]:



35. Application Serial No. 85/537,432 named Youssef as the sole owner of the mark.

36. Youssef was not the sole owner of the mark on February 8, 2012.[51]

---

[46] Oral and Videotaped Deposition of Alfredo Arturo Sanchez, Individually, and as Corporate Representative of Triple D Gear, LLC taken July 12, 2024 in this Action (the "July Deposition") at 57:12-58:4.
[47] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 20 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[48] Defendant's Exhibit at 104-112.
[49] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 19 of "Defendant admitted the following facts in its Answer to the First Amended Complaint."); Defendant's Exhibit 28 at 65.
[50] Defendant's Exhibit 28 at 104-112.
[51] Amended Joint Pretrial Order [Doc. No. 91] at 11 (paragraph 15 of "Defendant admitted the following facts in its response to Requests for Admission.").

37. Sanchez and Defendant have variously identified the owner of the mark on February 8, 2012 as (1) Defendant, (2) Sanchez and Youssef as co-owners, and (3) nonparty Rich Mind Records—but never Youssef as the sole owner.[52]

38. The Court finds that Rich Mind Records actually owned the mark claimed in Application Serial No. 85/537,432 on February 8, 2012.[53]

39. Application Serial No. 85/537,432 stated that the Tilted Star Logo was first used in commerce at least as early as 01/01/2007.[54]

40. Defendant has failed to corroborate this claimed date of first use in commerce with any reliable evidence.

41. Application Serial No. 85/537,432 claimed the following goods: Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms.[55]

42. Defendant has admitted that it had not, in fact, offered all of the goods claimed in Application Serial No. 85/537,432 as of February 8, 2012.[56]

43. In connection with Application Serial No. 85/537,432, attorney David Small declared under oath:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in

---

[52] July Deposition at 52:6-24, 100:18-102-1, 104:14-23, 111-112; TTAB Deposition at 57:4-11.
[53] July Deposition at 112:9-13.
[54] Defendant's Exhibit 28 at 104-106.
[55] Defendant's Exhibit 28 at 104-106.
[56] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraph 6 of "Defendant admitted the following facts in its response to Requests for Admission.").

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 10**

such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.[57]

44. The facts show that David Small made multiple material misrepresentations to the Trademark Office in connection with Application Serial No. 85/537,432, including but not limited to representing that no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive.[58]

45. David Small, Defendant, Youssef, and Sanchez all knew of the City's rights at the time Application Serial No. 85/537,432 was filed.[59]

46. On September 17, 2014, Youssef assigned "one hundred percent (100%) interest in Assignor's share of trademark in the registered Word Mark 'D' to [Defendant]."[60]

47. The assignment was recorded with the Assignment Branch of the USPTO on November 17, 2014.[61]

48. While Youssef assigned "one hundred percent (100%) interest in Assignor's share of trademark in the registered Word Mark 'D' to [Defendant]," Youssef's share was not one hundred percent (100%) of the trademark rights in the Tilted Star Logo.[62]

---

[57] Defendant's Exhibit 28 at 108.
[58] Defendant's Exhibit 28 at 104-106; Plaintiff's Exhibit 48.
[59] Plaintiff's Exhibit 48.
[60] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 21 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[61] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 21 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[62] July Deposition at 112:9-19; Amended Joint Pretrial Order [Doc. No. 91] at 11 (paragraphs 15-16 of "Defendant admitted the following facts in its response to Requests for Admission.").

49. No evidence was presented showing that Rich Mind Records and/or Sanchez assigned their ownership interests to Defendant.[63] Accordingly, Defendant never acquired a one hundred percent (100%) interest in the Tilted Star Logo.

### D. The Second Tilted Star Logo Registration (Application SN 88/802,417; U.S. Registration No. 6,330,048)

50. On February 19, 2020, attorney Adam R. Villanueva filed in the name of Defendant an Application for a U.S. Trademark Registration assigned Serial No. 88/802,417.[64]

51. On April 20, 2021, U.S. Registration No. 6,330,048 (the "Second Tilted Star Logo Registration") issued to Defendant.[65]

52. Application Serial No. 88/802,417 sought registration of the following trademark[66]:



53. Application Serial No. 88/802,417 named Defendant as the owner of the mark.[67]

54. Defendant was not the sole owner of the mark on February 19, 2020.[68]

55. Rich Mind Records did not assign its trademark rights in the Tilted Star Logo to Defendant on or before February 19, 2020.[69]

---

[63] Amended Joint Pretrial Order [Doc. No. 91] at 6 (paragraph 9 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").

[64] Amended Joint Pretrial Order [Doc. No. 91] at 8 (paragraph 25 of "Defendant admitted the following facts in its Answer to the First Amended Complaint."); Defendant's Exhibit 30 at 111-120.

[65] Amended Joint Pretrial Order [Doc. No. 91] at 8 (paragraph 25 of "Defendant admitted the following facts in its Answer to the First Amended Complaint."); Defendant's Exhibit 30 at 74.

[66] Defendant's Exhibit 30 at 111-120.

[67] Defendant's Exhibit 30 at 111.

[68] July Deposition at 112:9-19; Amended Joint Pretrial Order [Doc. No. 91] at 11 (paragraphs 15-16 of "Defendant admitted the following facts in its response to Requests for Admission.").

[69] July Deposition at 112:9-19; Amended Joint Pretrial Order [Doc. No. 91] at 6 (paragraph 9 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").

56. Defendant was at most the co-owner of the Tilted Star Logo on February 19, 2020 because Defendant had never acquired Rich Mind Records' ownership interest in the Tilted Star Logo.[70]

57. Application Serial No. 88/802,417 stated that the Tilted Star Logo was first used in commerce at least as early as 00/00/2007 in connection with the claimed goods.[71] According to United States Patent and Trademark Office practices relating to indefinite dates of use, "When only a year is given, the date presumed for purposes of examination is the last day of the year."[72] As such, the date claimed in the application is deemed to be December 31, 2007.

58. Defendant has failed to corroborate this claimed date of first use in commerce with any reliable evidence.

59. Application Serial No. 88/802,417 claimed the following goods: Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing.[73]

60. Defendant has admitted that it had not, in fact, offered all of the goods claimed in Application Serial No. 88/802,417 as of February 19, 2020.[74]

61. In connection with Application Serial No. 88/802,417, Sanchez declared under oath:

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;

---

[70] July Deposition at 112:9-19; Amended Joint Pretrial Order [Doc. No. 91] at 6 (paragraph 9 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[71] Defendant's Exhibit 30 at 112.
[72] Trademark Manual of Examining Procedure (rev. November 2024) § 903.06.
[73] Defendant's Exhibit 30 at 112.
[74] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraph 7 of "Defendant admitted the following facts in its response to Requests for Admission.").

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 13**

- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;

- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and

- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.[75]

62. In connection with Application Serial No. 88/850,773, Sanchez further declared under oath:

- To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

- To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

- The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own

---

[75] Defendant's Exhibit 30 at 118.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 14**

knowledge are true and all statements made on information and belief are believed to be true.[76]

63. The facts show that Sanchez made multiple material misrepresentations to the Trademark Office in connection with Application Serial No. 88/802,417, including but not limited to the following misrepresentations:

- Applicant—that is, Defendant—was not the owner of the mark because Defendant had not been assigned Rich Mind Records' and/or Sanchez's ownership rights in the Tilted Star Logo[77];

- The mark was not in use in commerce and was not in use in commerce as of the filing date of the application on or in connection with all of the goods claimed in the application[78];

- Sanchez knew the facts recited in the application were not accurate and/or acted with reckless disregard for the truth; and

- Sanchez knew of the City's rights in the City's Logo.[79]

64. Application Serial No. 88/802,417 also alleged that Defendant had a bona fide intention to use the Tilted Star Logo in commerce in connection with the claimed services.[80]

65. On February 11, 2021, Defendant filed a Trademark/Service Mark Statement of Use in connection with Application Serial No. 88/802,417 alleging that the Tilted Star Logo was first

---

[76] Defendant's Exhibit 30 at 118.
[77] Amended Joint Pretrial Order [Doc. No. 91] at 6 (paragraph 9 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[78] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraph 7 of "Defendant admitted the following facts in its response to Requests for Admission.").
[79] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraphs 1-4 of "Defendant admitted the following facts in its response to Requests for Admission.").
[80] Defendant's Exhibit 30 at 118.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 15**

used in commerce at least as early as 00/00/2014 in connection with the claimed services.[81] As such, the date claimed in the application is deemed to be December 31, 2014.[82]

66. Defendant has failed to corroborate this claimed date of first use in commerce with any reliable evidence.

67. Application Serial No. 88/802,417 claimed the following services: Retail store services featuring eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; online retail store services in the field of eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear, and footwear; Retail apparel stores; Online retail store services featuring apparel.[83]

68. Defendant has admitted that it had not, in fact, offered all of the services claimed in Application Serial No. 88/802,417 as of February 11, 2021 when it filed its Statement of Use.[84]

69. In connection with the Trademark/Service Mark Statement of Use, Sanchez declared under oath:

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;

- The mark is in use in commerce on or in connection with all the goods/services in the application or notice of allowance, or as subsequently modified;

---

[81] Defendant's Exhibit 30 at 91-98.
[82] Trademark Manual of Examining Procedure (rev. November 2024) § 903.06
[83] Defendant's Exhibit 30 at 112.
[84] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraph 7 of "Defendant admitted the following facts in its response to Requests for Admission.").

- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and

- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.[85]

70. In connection with the Trademark/Service Mark Statement of Use, Sanchez further declared under oath:

- To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

- To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

- The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.[86]

---

[85] Defendant's Exhibit 30 at 91-98.
[86] Defendant's Exhibit 30 at 96-97.

71. The facts show that Sanchez made multiple material misrepresentations to the Trademark Office in connection with the Trademark/Service Mark Statement of Use for Application Serial No. 88/802,417, including but not limited to the following misrepresentations:

- Applicant—that is, Defendant—was not the owner of the mark because Defendant had not been assigned Rich Mind Records' and/or Sanchez's ownership rights in the Tilted Star Logo;[87]

- The mark was not in use in commerce and was not in use in commerce as of the filing date of the Trademark/Service Mark Statement of Use on or in connection with all of the services claimed in the application[88];

- Sanchez knew the facts recited in the application were not accurate and/or acted with reckless disregard for the truth; and

- Sanchez knew of the City's rights in the City's Logo[89].

72. The City has been harmed by Defendant's fraud in obtaining Registration No. 6,330,048 for the Tilted Star Logo, as it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with the City, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by the City.[90]

---

[87] July Deposition at 52:6-24, 100:18-102:1, 104:14-23, 111-112; TTAB Deposition at 57:4-11; Amended Joint Pretrial Order [Doc. No. 91] at 6 (paragraph 9 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").

[88] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraph 7 of "Defendant admitted the following facts in its response to Requests for Admission.").

[89] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraphs 1-4 of "Defendant admitted the following facts in its response to Requests for Admission.").

[90] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 17 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").

### E.  Facts related to a finding of likelihood of confusion between the City's Logo and the Tilted Star Logo.

Likelihood of confusion is an issue for Count One (Request for Judicial Review of the TTAB Decision [15 U.S.C. § 1071(b)(1) and 37 CFR § 2.145(c)]) and for Count Two (Request for Cancellation of Trademark Registrations to Rectify the Register [15 U.S.C. § 1119]) to the extent Count Two seeks cancellation of the Second Tilted Star Logo Registration (U.S. Registration No. 6,330,048).

#### a)  The type of mark infringed.

73. The City's Logo has had millions of commercial impressions over the course of more than half a century.[91]

74. The City's Logo is an inherently distinctive, strong mark.[92]

#### b)  The similarity between the two marks.

75. The City's Logo and the Ghost Logo look extremely similar.[93] The Ghost Logo is the entirety of the City's Logo with only the stylized oak leaf removed.[94]

76. The City's Logo and the Tilted Star Logo look extremely similar.[95] The Tilted Logo is the entirety of the City's Logo with only the stylized oak leaf removed and replaced with a star.[96]

#### c)  The similarity of the products or services.

77. The City's Logo, the Ghost Logo, and the Tilted Star Logo are all used on t-shirts and caps for others.[97]

---

[91] Plaintiff's Exhibit 64.
[92] Plaintiff's Exhibit 1.
[93] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 2.
[94] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 2.
[95] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 3.
[96] *Compare* Plaintiff's Exhibit 1 *with* Plaintiff's Exhibit 3.
[97] Trial Transcript at 23:4-14; Defendant's Exhibits 28-30.

78. The City's Logo as used on t-shirts for others indicates the City's sponsorship and approval.[98]

79. It is common for governmental entities to own and license use of trademarks for apparel and other types of consumers goods. For example, the New York State Department of Economic Development owns U.S. Registration No. 1,555,836 for the "I [heart] NY" trademark and licenses its use.[99] As another example, the Texas Department of Transportation owns U.S. Registration No. 3,872,108 for "Don't Mess with Texas" and licenses its use.[100]

80. Consumers would expect that if an item of apparel bears the City's Logo, that indicates the City's sponsorship or approval.[101]

### d) The identity of the purchasers.

81. Consumers of Defendant's goods (for which the Ghost Logo and Tilted Star Logo are used) and the City's goods and services (for which the City's Logo is used) include:

    a.   residents of the City of Dallas, Texas;

    b.   residents of Dallas County, Texas;

    c.   residents of other cities and counties in Texas;

    d.   residents of other states; and

    e.   residents of other countries.[102]

### e) Defendant's intent.

82. Defendant chose the name TRIPLE D to reference Dallas, Texas.[103]

---

[98] Trial Transcript at 24:10-13 and 25:22-26:2.
[99] Plaintiff's Exhibit 70.
[100] Plaintiff's Exhibit 72.
[101] Trial Transcript at 24:10-13, 25:22-26:2, and 43:3-6.
[102] Amended Joint Pretrial Order [Doc. No. 91] at 12-13 (paragraphs 2-3 and 5 of "Additional stipulated facts.").
[103] Plaintiff's Exhibit 5.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 20**

83. Defendant chose to take the City's Logo as a starting point for the Ghost Logo and for the Tilted Star Logo knowing that the City's Logo indicates an affiliation with Defendant.[104]

84. The use of the City Logo and the City's judicially recognized nickname was not the only way Defendant sought to associate itself with the City.[105] In addition, Defendant placed the following statement on its website: "In 2011 Triple D Gear LLC was granted the full legal trademark for the brand mark by the city of Dallas and the United States Supreme Court."[106]

85. Defendant considered no other designs but the same three concentric Ds used in the same manner as used in the City's Logo.[107]

86. This is part of a pattern of Defendant taking others' trademarks for use on Defendant's goods. For example, Defendant offered for sale and sold a cap called the "Skyline Victory Green Cap" that bears the image of a stylized Stanley Cup, which is a slavish copy of the design mark owned by the National Hockey League (U.S. Trademark Registration No. 3,961,015)[108]:




---

[104] Plaintiff's Exhibit 5.
[105] Amended Joint Pretrial Order [Doc. No. 91] at 7 (paragraph 18 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[106] Plaintiff's Exhibit 23.
[107] TTAB Deposition at 17:19-20:20.
[108] Plaintiff's Exhibits 27, 59, 60, and 61.

As another example, Defendant used a design mark owned by Dallas Basketball Limited (U.S. Trademark Registration No. 1,537,463) for use with the Dallas Mavericks professional basketball team in combination with the Tilted Star Logo on Defendant's goods[109]:

 

87. It is clear to this Court that Defendant wished for its consumers to identify Defendant's logos with the City's Logo and trade on the City's goodwill in the City's Logo.

### f) *The degree of care exercised by potential purchasers.*

88. Defendant's goods are sold at a relatively low price point, with apparel items offered for no more than $80.[110]

89. Many of the City's goods and services are free to residents (such as library services) and/or free to any visitor (such as park services).[111] With regard to apparel bearing the City's Logo, it is often given to consumers at no additional cost when they participate in a City-sponsored event.[112]

---

[109] Plaintiff's Exhibits 58 and 91.
[110] Plaintiff's Exhibits 42 and 78.
[111] Trial Transcript at 27:16-28:3.
[112] Trial Transcript at 23:12-18.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 22**

### g) *The balance of the digits of confusion compels a finding of a likelihood of confusion.*

90. As demonstrated above, the balance of the digits of confusion compels the conclusion that the City has met its burden of proof that there is a likelihood of confusion.

### F. Facts related to fraud on the USPTO.

91. Defendant implicitly admitted that each application for its three trademark applications and certain maintenance documents all contained false representations of material facts.

92. Defendant and its CEO Sanchez have repeatedly acted with reckless disregard for the truth.

93. During the TTAB proceeding, Defendant produced PDFs of photocopies of handwritten receipts.[113] During the combined 30(b)(6) and individual deposition of Defendant and Sanchez during the TTAB proceeding, Sanchez and Defendant testified under oath that those receipts—dated as early as March 2008—reflected sales of merchandise bearing the Ghost Logo.[114]

94. Those same receipts were produced again in this Action and, during the first combined 30(b)(6) and individual deposition of Defendant and Sanchez during this Action, Sanchez and Defendant testified under oath that the receipts were authentic.[115]

95. Sanchez and Defendant further testified that the book itself was in a box labeled "City of Dallas's Fight" and could be produced.[116]

96. After the City's counsel made several requests post-deposition to inspect the receipt book, counsel for Defendant finally emailed counsel for the City to admit that the receipts were forgeries that were meant to recreate tax records lost in a fire in 2011.[117] Counsel for Defendant also stated that the receipt book itself could not be inspected because it had been stolen and that there was a

---

[113] Plaintiff's Exhibit 16
[114] Plaintiff's Exhibit 16; TTAB Deposition at 75:4-22 and 74:6-11.
[115] Plaintiff's Exhibit 16 and July Deposition at 178:16-197:25.
[116] Plaintiff's Exhibit 16 and July Deposition at 189:24-190; 196:14-25.
[117] Plaintiff's Exhibit 52.

police report to verify this theft.[118] The police report Defendant produced does not indicate that any documents were allegedly stolen, but instead identifies hats & caps, t-shirts, socks, sweaters, and chains as the allegedly stolen property.[119]

97. During the second combined 30(b)(6) and individual deposition of Defendant and Sanchez during this Action:

    a.  Defendant and Sanchez could not explain why the fact that the receipts were "recreations" for "tax records" was a fact that had somehow been forgotten until sometime after the conclusion of both the TTAB proceeding and the first combined 30(b)(6) and individual deposition of Defendant and Sanchez.[120]

    b.  Defendant and Sanchez could not remember the name of the person who instructed the recreation or when or if tax returns were even filed in the year they were recreated.[121]

    c.  Although Defendant and Sanchez claimed they had all the information to "recreate" the receipts from "damaged" receipts Sanchez could still read at the time of the recreation, Defendant and Sanchez had no credible reason why those damaged receipts with their allegedly readable information could not be saved or at least photographed.[122]

    d.  Defendant and Sanchez did not have a credible reason for why Sanchez forged the signatures of the purported customers on the "recreated" receipts.[123]

    e.  Defendant and Sanchez did not have a credible reason for why they did not remember the theft of the box of documents until sometime after the conclusion of both the TTAB

---

[118] Plaintiff's Exhibit 52.
[119] Plaintiff's Exhibit 90.
[120] Video-recorded Deposition of Alfredo Arturo Sanchez, Volume II taken November 15, 2024 in this Action (the "November Deposition") at 231:16 through 252:9.
[121] November Deposition at 238:19 through 239:18.
[122] November Deposition at 237:9 through 249:3.
[123] November Deposition at 241:20 through 242:17.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 24**

proceeding and the first combined 30(b)(6) and individual deposition of Defendant and Sanchez.[124] The fact that Defendant and Sanchez claimed the box labeled "City of Dallas Fight" also held approximately $80,000 worth of jewelry makes it even less credible that Defendant and Sanchez somehow forgot the theft of the box.[125] And the fact that Defendant's jewelry was sold for $50 per necklace makes the story even less credible.[126]

98. Defendant and Sanchez do not have a credible reason for why only a portion of the cover of the receipt book was produced.[127] The Court finds as a matter of fact that Defendant and Sanchez purposefully only produced a portion of the cover of the receipt book because they knew the copyright notice on the cover of the receipt book belied the false claim that the receipts were from as early as 2008.[128]

99. As the decider of fact, this Court finds that Defendant and Sanchez realized they had no documents reflecting any sales of items bearing the Ghost Logo prior to March 2020, simply made up receipts after the fact, successfully concealed their fraud during the TTAB proceeding, and believed they would successfully conceal their fraud again in this Action. Indeed, Defendant intended for the City to rely on the forged receipts.[129] Only after being repeatedly asked to produce the original receipt book for inspection did they make up a story about recreating tax records in 2014.[130]

100.    Further evidence that Defendant acts with reckless disregard for the truth can be found in the numerous misstatements made under penalty of perjury. For just one example, Sanchez submitted a sworn declaration to this Court when Defendant attempted to file a

---

[124] November Deposition at 231:16 through 252:9.
[125] November Deposition at 251:1 through 252:9.
[126] Plaintiff's Exhibit 78.
[127] *Compare* Plaintiff's Exhibit 16 and Plaintiff's Exhibit 45.
[128] *Compare* Plaintiff's Exhibit 16 and Plaintiff's Exhibit 45
[129] Trial Transcript at 72:3-21.
[130] Plaintiff's Exhibit 52.

counterclaim based on (false) allegations that the City had adopted a new skull-shaped design element for its Logo on City employee uniforms.[131] Sanchez's subsequent deposition testimony contradicted that one-page declaration on simple matters of fact, such as who took the photograph included in the declaration.[132] The Court finds that Sanchez's failure to check the accuracy of the facts stated in his declaration prior to signing it and submitting it to the Court shows a reckless disregard for the truth.

101.    The Court finds that the following facts additionally prove a reckless disregard for the truth:

a.  During the TTAB proceeding, Defendant and Sanchez claimed under oath that the Ghost Logo was designed first, in 2006 or 2007, with the Tilted Star Logo designed two or three years later.[133] If true, that would mean the Tilted Star Logo would have been designed no earlier than 2008—more than a year after the asserted date of first use of the Tilted Star Logo, which was January 1, 2007 (a date sworn to in the trademark application for the first Tilted Star Logo).[134]

b.  During the TTAB proceeding, Defendant and Sanchez also claimed under oath that the Ghost Logo was used in commerce prior to the Tilted Star Logo and that products bearing the Ghost Logo were sold prior to January 1, 2007.[135] But in his trial declaration in the TTAB proceeding below, Sanchez claimed that he "designed the Ghost Logo around late 2007."[136] Obviously, it would be impossible for Defendant to have sold products bearing

---

[131] Declaration of Alfredo Arturo Sanchez [Doc. No. 46-1]
[132] *Compare* Declaration of Alfredo Arturo Sanchez [Doc. No. 46-1] *with* (1) November Deposition at 287:23 through 293:12; (2) November Deposition at 303:8 through 318:12; (3) November Deposition at 320:5-22; and (4) November Deposition at 325:16-21.
[133] TTAB Deposition at 17:9-18 and 25:2-4.
[134] Defendant's Exhibit 28 at 104-112.
[135] TTAB Transcript at 57:25 through 58:12 and 59:4-9.
[136] Plaintiff's Exhibit 29.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 26**

the Ghost Logo "at least as early as January 1, 2007," if the Ghost Logo was not even designed until late 2007. It would be equally impossible for Registrant's date of first use of the Tilted Star Logo to be January 1, 2007, as claimed in Registration No. 4586688[137], if the Ghost Logo designed in late 2007 predated the creation of the Tilted Star Logo by two or three years, as Defendant claimed.[138]

    c.   During this Action, Sanchez has been equally careless with dates. Indeed, in his declaration submitted in support of Defendant's Motion for Summary Judgment, Sanchez once again claimed that he "designed the Ghost Logo around late 2007."[139] But he has also claimed in his deposition that "around late 2007" includes all of 2006.[140]

102.    The application and maintenance documents for the First Tilted Star Logo Registration (Application SN 85/537,432; U.S. Registration No. 4,586,688) contain the following false representations:

    a.   The application swore that Youssef was "the owner of the trademark/service mark sought to be registered"[141] when Youssef was not the sole owner;

    b.   The application swore that "to the best of [the applicant's] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to

---

[137] Defendant's Exhibit 28 at 65.
[138] Plaintiff's Exhibit 29 at 5 (¶ 5).
[139] July Deposition at 33:3 through 34:8.
[140] Amended Joint Pretrial Order [Doc. No. 91] at 6 (paragraph 7 of "Defendant admitted the following facts in its Answer to the First Amended Complaint.").
[141] Defendant's Exhibit 28 at 104-112.

cause mistake, or to deceive."[142] Both the attorney who signed the declaration and Youssef

knew about the City's rights in its highly similar trademark[143];

c.  The application swore that the Tilted Star Logo was used in interstate commerce on or in

connection with all of the claimed goods since at least as early as January 1, 2007, when

the Tilted Star Logo had not been used in connection with many goods included in the

application's recitation of goods[144];

d.  The application swore that the Tilted Star Logo had been used in interstate commerce on

or in connection with all of the claimed goods since at least as early as January 1, 2007,

when based on the testimony of Sanchez and Defendant, the Tilted Star Logo had not even

been created as of January 1, 2007[145]; and

e.  After U.S. Registration No. 4,586,688 was issued, the Combined Declaration of Use and

Incontestability under Sections 8 & 15 was filed, and it swore that the Tilted Star Logo was

"in use in commerce on or in connection with **all** of the goods…listed in the existing

registration for this specific class: Athletic apparel, namely, shirts, pants, jackets, footwear,

hats and caps, athletic uniforms" (emphasis in original).[146] The truth is that Defendant had

never used the mark on or in connection with some of the goods, such as footwear or

athletic uniforms, much less that it was in use at that time.[147]

---

[142] Defendant's Exhibit 28 at 108.
[143] Plaintiff's Exhibit 48; Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraphs 1-4 of "Defendant admitted the following facts in its response to Requests for Admission.").
[144] Defendant's Exhibit 28 at 105; Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraph 5 of "Defendant admitted the following facts in its response to Requests for Admission.").
[145] Defendant's Exhibit 28 at 105; TTAB Deposition at 17:9-18 and 25:2-4.
[146] U.S. Registration No. 4,586,688 was issued on August 19, 2014; the Combined Declaration of Use and Incontestability under Sections 8 & 15 was filed on February 19, 2021. Defendant's Exhibit 28 at 50 and 32-38.
[147] TTAB Transcript at 61:24 through 63:9.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 28**

103.     The application for the Second Tilted Star Logo Registration (Application SN 88/802,417; U.S. Registration No. 6,330,048) and its Statement of Use contains the following false representations:

a. The application swore that Defendant was "the owner of the trademark/service mark sought to be registered"[148] when Defendant was not the sole owner;

b. The application swore that "to the best of [his] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." [149]Sanchez, who signed the declaration, knew about the City's rights in its highly similar trademark[150];

c. The application swore that the Tilted Star Logo was used in interstate commerce on or in connection with all of the claimed goods in International Class 025 since at least as early as 2008[151], when the Tilted Star Logo had not been used in connection with many goods included in the application's recitation of goods in International Class 025[152]; and

d. The Statement of Use swore that the Tilted Star Logo was used in interstate commerce on or in connection with *all* of the claimed services[153] when the Tilted Star Logo had not been used on many of the claimed services, including retail store services featuring eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, clothing, headgear,

---

[148] Defendant's Exhibit 30 at 111-118.
[149] Defendant's Exhibit 30 at 118.
[150] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraphs 1-4 of "Defendant admitted the following facts in its response to Requests for Admission.").
[151] Defendant's Exhibit 30 at 112.
[152] TTAB Deposition at 65:9-24.
[153] Defendant's Exhibit 30 at 91-97.

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 29**

and footwear; online retail store services in the field of eyeglasses, sunglasses, rings, key rings, watches, clocks, umbrellas, bags, wallets, luggage and other goods made of leather or imitations of leather, cushions, cups, mugs, and footwear; or retail apparel stores.[154]

104.    The application for the Ghost Logo Registration (Application SN 88/850,773; U.S. Registration No. 6,141,994) contains the following false representations:

a. The application swore that Defendant was "the owner of the trademark/service mark sought to be registered"[155] when Defendant was not the owner at all—Sanchez was[156];

b. The application swore that "to the best of [his] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."[157] Sanchez, who signed the declaration, knew about the City's rights in its highly similar trademark[158];

c. The application swore that the Ghost Logo was used in interstate commerce on or in connection with all of the claimed goods since at least as early as 2007[159], when the Ghost Logo had not been used in connection with many goods included in the application's recitation of goods, such as pants, footwear, jackets, jerseys, sweaters, tank tops, swimwear, underwear, shorts, socks, jeans, leggings, robes, ties, coats, polo shirts, suits, footwear, or bottoms as clothing[160]; and

---

[154] Amended Joint Pretrial Order [Doc. No. 91] at 10-11 (paragraphs 9-11 of "Defendant admitted the following facts in its response to Requests for Admission.").
[155] Defendant's Exhibit 29 at 28-33.
[156] Plaintiff's Exhibit 68 at 11 (answer to Interrogatory No. 23).
[157] Defendant's Exhibit 29 at 32.
[158] Amended Joint Pretrial Order [Doc. No. 91] at 10 (paragraphs 1-4 of "Defendant admitted the following facts in its response to Requests for Admission.").
[159] Defendant's Exhibit 29 at 29.
[160] TTAB Deposition at 68:19-23.

d. The application swore that the Ghost Logo was used in connection with all of the claimed goods since at least as early as 2007[161], when there is no *credible* testimony that the Ghost Logo had even been created as of 2007. Defendant has only Sanchez's word to support its claim of use in 2007 and no independently verifiable supporting evidence.

105.    Defendant's misrepresentations concerning the types of goods/services on which it was using its Tilted Star and/or Ghost Logos in each of the foregoing sworn filings is sufficient to infer intent to deceive the USPTO.

106.    To the extent that any of these proposed conclusions of fact include, state, or refer to conclusions of law, such are also adopted and incorporated as conclusions of law.

## II.    Proposed Conclusions of Law

107.    This is a civil action for review of a decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("TTAB") pursuant to 15 U.S.C. § 1071(b)(2) and for cancellation of fraudulently obtained registrations pursuant to 15 U.S.C. §§ 1119 and 1120.

108.    The City seeks review of the TTAB's decision dated August 23, 2023, in the matter of *City of Dallas. v. Triple D Gear, LLC*, Cancellation No. 92077406.

109.    The City seeks cancellation of U.S. Trademark Registration Nos. 6,141,994, 4,586,688 and 6,330,048 in order to rectify the register with respect to the registrations of Defendant.

110.    The City also seeks cancellation of U.S. Trademark Registration Nos. 6,141,994, 4,586,688 and 6,330,048 on the basis that they were obtained by false or fraudulent declarations or representations and that the City of Dallas has been injured by such registrations.

---

[161] Defendant's Exhibit 29 at 29.

111.     This court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a), as it arises under an Act of Congress relating to trademarks.

112.     This Court has personal jurisdiction over Defendant because it is a Texas limited liability company operating in this District.

113.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

### A.  Proposed Conclusions of Law related to Count One (Request for Judicial Review of the TTAB Decision [15 U.S.C. § 1071(b)(1) and 37 CFR § 2.145(c)])

114.     The first count seeks a de novo review and reversal of the TTAB's denial of the City's Petition to Cancel Defendant's U.S. Registration No. 6,141,994 for D (stylized) pursuant to 15 U.S.C. § 1071(b)(1) and 37 CFR § 2.145(c).

115.     To establish that a registration should be cancelled pursuant to Section 2(d) of the Trademark Act, the plaintiff must prove two elements: (1) the plaintiff is the owner of a protectable trademark for which it has priority of use; and (2) a likelihood of confusion. *Kemi Organics, LLC v. Rakesh Gupta*, 126 U.S.P.Q.2d 1601, 2018 BL 171749 (T.T.A.B. 2018).

116.     To prove priority, the City must prove that it had established proprietary rights in the City's Logo that precede Defendant's actual or constructive use of Defendant's mark. *Id*

117.     Likelihood of confusion exists when the defendant's use of a mark is "likely to create confusion in the mind of the ordinary consumer as to the source, affiliation, or sponsorship" of a product or service. *Conan Properties, Inc. v. Conans Pizza, Inc*., 752 F.2d 145, 149 (5th Cir. 1985).

118.     Accordingly, in order to succeed on its claim for cancelation of the Ghost Logo registration, the City must show (1) that it owns trademark rights in the City's Logo that were established prior to Defendant's earliest use of the Ghost Logo in commerce, and (2) that

Defendant's use of the Ghost Logo is likely to cause confusion, or to cause mistake or to deceive. *Kemi Organics, LLC v. Rakesh Gupta*, 126 U.S.P.Q.2d 1601, 2018 BL 171749 (T.T.A.B. 2018).

119.     The TTAB erroneously denied the City's petition to cancel the Ghost Logo Registration because the City did not offer evidence that it offered "t-shirts for others" prior to March 27, 2020 (even though it was undisputed that the City used its mark for various services and on employee uniforms prior to the first use of the Ghost Logo). It was error for the TTAB to impose this requirement.

120.     Although priority and likelihood of confusion are two separate considerations, hornbook trademark law on likelihood of confusion facially shows that the TTAB could not be correct in requiring identical goods to prove priority. That is because "the goods or services do not have to be identical or even competitive to find a likelihood of confusion. The issue is not whether the goods and/or services will be confused with each other, but rather whether consumers would be confused as to their source." TMEP § 1207.01(a); *accord Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods. It is this sense of relatedness that matters in the likelihood of confusion analysis.").

121.     This law would never have come to exist if cases were dismissed for lack of priority when the senior trademark owner failed to establish that it offered the same type of goods before the likelihood of confusion analysis even began. In other words, if the TTAB was correct, courts would only evaluate likelihood of confusion after priority was established via proof of the same goods—and there never would have been a chance for any court or the TTAB to determine whether goods that are not "identical or even competitive" could be infringing

122.        The facts establish that the City has enforceable trademark rights in the City's Logo and priority over Defendant's use of the Ghost Logo in commerce. Based on the evidence in this case, the Court concludes that the City has priority of rights in the City's Logo.

123.        Fifth Circuit authority requires the Court to consider "digits of confusion," not all of which need favor the trademark owner in order for likelihood of confusion to be found. *Bd of Supervisors for LA State Univ. Agric & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).

124.        The digits are:

    1) the type of mark infringed;

    2) the similarity between the two marks;

    3) the similarity of the products or services;

    4) the identity of the retail outlets and purchasers;

    5) the identity of the advertising media use;

    6) the defendant's intent;

    7) any evidence of actual confusion; and

    8) the degree of care exercised by potential purchasers.

*Id.*; *Am. Rice, Inc. v. Producers Rice Mill, Inc.,* 518 F.3d 321, 329 (5th Cir. 2000).

125.        No single factor is dispositive, and a finding of likelihood of confusion need not be supported by a majority of the factors. *Smack Apparel*, 550 F.3d at 478.

126.        As discussed below, there is evidence that favors the City on all relevant factors.

            *a)  The City's Logo is a strong trademark.*

127.        "Type of trademark" refers to the strength or degree of distinctiveness of the senior mark. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 34**

128.     Generally, the stronger the mark, the greater the likelihood that consumers will be confused by another's use of a similar mark. *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998); *Amstar Corp. v. Domino's Pizza, Inc.*, 645 F.2d 252, 259 (5th Cir. 1980).

129.     The strength of a mark is determined by two factors: its inherent distinctiveness, and the level of awareness among the purchasing public. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008); *Sun Banks of Florida, Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315 (5th Cir. 1981).

**(1) The City's Logo is inherently distinctive.**

130.     Inherent distinctiveness depends on where the mark falls on a spectrum under the now-classic test originally formulated in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976). Under the *Abercrombie* test, marks are classified as generic, descriptive, suggestive, or arbitrary/fanciful. *Id.* at 9; *see also Am. Rice*, 518 F.3d at 330 ("Marks may be classified as generic, descriptive, suggestive, or arbitrary and fanciful. . . . [W]ithin this spectrum the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks.") (internal citation omitted).

131.     Marks that are suggestive or arbitrary/fanciful are inherently distinctive. *USPTO v. Booking.com B.V.*, 591 U.S. 549, 553 (2020).

132.     The City's Logo as used for the City's goods and services (including t-shirts for others) is neither descriptive of nor generic for the City's goods and services.

133.     The City's Logo is inherently distinctive because it has no descriptive meaning in relation to the goods and services for which it is used as a mark. *Abercrombie*, 537 F.2d at 9 n.6 ("To take a familiar example 'Ivory' would be generic when used to describe a product made from the tusks of elephants but arbitrary as applied to soap.").

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 35**

134.    As an arbitrary mark, it is at the high end of the spectrum of distinctiveness. *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992).

135.    As an arbitrary mark, the City's Logo is an inherently distinctive mark for the City's goods and services.

**(2) The City's Logo is commercially strong.**

136.    The City's Logo has achieved a high level of awareness among the public, which makes it a strong mark.

137.    The City's Logo is inherently distinctive, which also makes it a strong mark.

138.    The foregoing facts strongly support the conclusion that the City's Logo is a strong mark. As such, it is entitled to protection with respect to a broad range of goods and services. *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 520 F.2d 266, 276 (7th Cir. 1976); *John Walker & Sons v. Tampa Cigar Co.*, 124 F. Supp. 254, 255-56 (S.D. Fla. 1954), *aff'd* 222 F.2d 460 (5th Cir. 1955).

139.    The first digit—the strength of the City's Logo—thus strongly favors the City.

***b) The City's Logo and Defendant's Logos are substantially identical.***

140.    Similarity is determined by comparing the marks' sight, sound, and meaning. *Elvis Presley Enters*., 141 F.3d at 201.

141.    The marks should not be compared side by side. *Xtreme Lashes, LLC*, 576 F.3d at 299. Defendant's marks should be evaluated on the basis of the likely effect on consumers who do not have the City's Logo before them, but have a "general, vague, or even hazy, impression or recollection" of that mark that may trigger a belief that a relationship exists between the City and Defendant. *James Burrough Ltd*., 540 F.2d at 275. The test is not whether the public would confuse the marks, but whether the public is likely to confuse the source of the goods and services provided under the respective marks. *Id.*

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 36**

142.     Indeed, even if purchasers realize that the two marks are distinct, confusion may still result if the marks are sufficiently similar that prospective consumers are likely to believe that the two users are somehow associated. *Elvis Presley Enters.*, 141 F.3d at 201.

143.     Undoubtedly, the City's Logo and Defendant's marks are not just similar; they are essentially identical. While there may be one distinguishable visual feature when the marks are viewed side by side—specifically the presence of an oak leaf in the City Logo—that is not the test. *James Burrough Ltd.*, 540 F.2d at 275. "Confusion of origin, not the identity of marks, is the gravamen of trademark infringement." *Xtreme Lashes, LLC*, 576 F.3d at 299 (citing *KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc.*, 543 U.S. 111, 117 (2004)).

144.     To the extent the City's Logo and Defendant's marks have one distinguishing visual component when viewed side by side, that is not the appropriate test. In making the comparison between potentially conflicting marks, the Court must consider whether the differences would be recognized by the prospective consumer who did not have an opportunity to compare them side by side. *Standard Oil Co. (Kentucky) v. Humble Oil & Ref. Co.*, 363 F.2d 945, 950 (5th Cir. 1966).

145.     Although the two marks must be compared in their entireties, it is proper to give more weight to elements of a composite mark that contribute to the commercial impression created by the mark and less weight to non-distinctive elements that would not be considered source-indicating. *Xtreme Lashes, LLC*, 576 F.3d at 228; *Elvis Presley Enters.,* 141 F.3d at 202.

146.     In this case, the City's Logo and Defendant's marks are substantially identical. The dominant portion of the marks is the stylized D, and its appearance and meaning is the same for each mark (as both are a "triple d," a meaning Defendant reinforces by using the name TRIPLE D).

147.     The second digit—similarity of the marks—thus strongly favors the City.

### c) *The parties offer similar goods.*

148.     The greater the similarity between products and services, the greater the likelihood of confusion. *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 505 (5th Cir. 1980).

149.     It is black-letter law that the parties' respective goods and services need not be the same, or even competitive for there to be a likelihood of confusion. *Elvis Presley Enters.*, 141 F.3d at 202 ("Direct competition between the parties' services or products is not required in order to find a likelihood of confusion.").

150.     Confusion is likely when the nature of the respective goods/services is such that the ordinary consumer could relate one party's goods to the other. *See, e.g., Beef/Eater Rest., Inc. v. James Burrough Ltd*., 398 F.2d 637 (5th Cir. 1968) (affirming summary judgment in favor of trademark owner, which sold gin under the mark, against infringing use of mark for restaurant services).

151.     Confusion as to affiliation or sponsorship increases when the respective goods and services are ones that consumers perceive as coming from the same source when identified by the same or confusingly similar marks. *Elvis Presley Enters.*, 141 F.3d at 202.

152.     "If consumers believe, even though falsely, that the natural tendency of producers of the type of goods marketed by the prior user is to expand into the market for the type of goods marketed by the subsequent user, confusion may be likely." *Elvis Presley Enters*., 141 F.3d at 202 (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21 cmt. j.).

153.     Many governmental entities offer or sell apparel, either directly or through licensees. These include t-shirts bearing the "Don't Mess with Texas" trademark and t-shirts bearing the "I [heart] NY" trademark:



154.     It is thus natural for the public, seeing a governmental entity's mark on apparel to assume there is a relationship between that governmental entity and the purveyor of the apparel. *See Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.),* 544 F.2d 1167, 1174 (2d Cir. 1976) (finding that plaintiff, who used trademark for apparel, was entitled to prevent defendant's use of the same mark on cosmetics and fragrances and finding relevant that "Plaintiff proved that many, if not most, of the leading designers sell perfumes and cosmetics under their own trademarks."); *cf Elvis Presley Enters.*, 141 F.3d at 203 (finding that "public's strong familiarity with such restaurants" as Hard Rock Café and Planet Hollywood made "a restaurant and bar business with live music. . . a natural area of expansion" for trademark owner, weighing in favor of holding that defendants' use of "The Velvet Elvis" for restaurant and tavern services infringed Plaintiff's marks).

155.     The third digit—similarity of the products—strongly favors the City.

### d) The parties market their goods to the same purchasers.

156.     If goods bearing the parties' respective trademarks are sold to the same consumers, likelihood of confusion is enhanced. *Sun Banks of Florida, Inc.*, 651 F.2d at 318.

157.     The City's goods and services are provided to both its residents and to nonresident visitors to Dallas (whether they are tourists from another state or country or residents of the greater

DFW area). Such visitors are free to take advantage of many services offered using the City's Logo, such as visiting City parks and using City wayfinding signs to navigate. Moreover, nonresident visitors to Dallas partake in events in which they receive t-shirts bearing the City's Logo.

158.     Defendant asserts that the purchasers of its products are individuals with an interest in hip-hop culture in Dallas, Texas, making it overwhelmingly likely that those consumers are residents of or visitors to Dallas that also receive the City's services and associated goods.

159.     Accordingly, this fourth digit—similarity of the consumers—strongly favors the City.

### e) Defendant intended to associate its goods with the City.

160.     The City did not have to prove an intent to deceive to establish likelihood of confusion because a lack of an intent to deceive is not a defense. *Source, Inc. v. SourceOne, Inc.*, No. 3:05- CV-1414-G, 2006 WL 2381594, at *6 (N.D. Tex. Aug. 16, 2006) ("Proof of intent to deceive is not a condition precedent to a finding of a likelihood of confusion. . . Where a defendant acted in good faith, this 'digit of confusion' becomes a non-factor in the analysis. . . It weighs neither in favor of likelihood of confusion nor against it."). The lack of any finding of intent to infringe would merely make this digit neutral. *Id.*

161.     "Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there is a likelihood of confusion." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017).

162.     A district court's "intent inquiry focuses on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Id.*

163.        "In some situations, the defendant's use of the mark with knowledge of the senior user's mark may give rise to a presumption that the defendant intended to cause public confusion." *Id.* (internal citation omitted).

164.        A junior user, such as Defendant, has the duty to avoid choosing a mark that may cause confusion with a senior mark, such as the City's Logo. *Xtreme Lashes, LLC*, 576 F.3d at 229.

165.        Intent is often inferred from an infringer's acts that can be explained only by an intention to appropriate the plaintiff's goodwill. *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 704 (5th Cir. 1981).

166.        Here, there is evidence from which the Court concludes that Defendant had intent to trade on the goodwill and strength of the City's Logo.

167.        The sixth digit—the Defendant's intent—strongly favors the City.

### f) Actual confusion

168.        "It is well established...that evidence of actual confusion is not necessary for a finding of likelihood of confusion." *Smack Apparel*, 550 F.3d at 483 (citing *Elvis Presley Enters.*, 141 F.3d at 203). Indeed, it is not present in many cases in which likelihood of confusion is found.

169.        Many courts have recognized that in practice it may be almost impossible to prove actual confusion. *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 761 (2d Cir. 1960); *see also David Sherman Corp. v. Heublein, Inc.,* 340 F.2d 377 (8th Cir. 1965); *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979); *Chevron Chem. Co.*, 659 F.2d at 704.

170.        As the leading treatise notes, "Persons who are truly confused will often never be aware of the deception. Others who were confused and later learned of their deception will often

not bother to report the fact." J. Thomas McCarthy, MᴄCᴀʀᴛʜʏ Oɴ Tʀᴀᴅᴇᴍᴀʀᴋꜱ ᴀɴᴅ Uɴꜰᴀɪʀ Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ § 23:12 (4th Ed.).[162]

171.    The seventh digit—actual confusion—is neutral and does not weigh in favor of either party.

### g) Consumers of the parties' goods are unlikely to exercise a high degree of care.

172.    When items are relatively inexpensive, a buyer may take less care in selecting them, thereby increasing the risk of confusion. *Sun Fun Prods., Inc. v. Suntan Research & Dev. Inc.*, 656 F.2d 186, 191 (5th Cir. 1981).

173.    Because the price point of Defendant's goods is low, it is reasonable to assume that members of the public exercise a low degree of care in purchasing decisions, making confusion more likely. *Smack Apparel*, 550 F.3d at 483.

174.    The eighth digit—the degree of care exercised by potential purchasers—strongly favors the City.

### h) The balance of the digits of confusion compels a finding of a likelihood of confusion.

175.    The Ghost Logo registration (U.S. Registration No. 6,141,994) is subject to cancellation pursuant to Section 2(d) of the Trademark Act because the City has met its burden of proof to prove priority and a likelihood of confusion. The Court overturns the TTAB opinion on appeal and will order the Commissioner of Trademarks to cancel U.S. Registration No. 6,141,994.

176.    The Second Tilted Star Logo registration (U.S. Registration No. 6,330,048) is subject to cancellation pursuant to 15 U.S.C. § 1119 and Section 2(d) of the Trademark Act

---

[162] McCarthy is, of course, frequently cited with approval by the Fifth Circuit. *See e.g., Chevron Chemical Co.*, 659 F.2d at 701 n.6; *Exxon Corp.*, 628 F.2d at 506; *Elvis Presley Enters.*, 141 F.3d at 193; *Westchester Media v. PRL Holdings*, 214 F.3d 658 (5th Cir. 2000); *Smack Apparel*, 550 F.3d at 478

**ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW—PAGE 42**

because the City has met its burden of proof to prove priority and a likelihood of confusion. The

Court will order the Commissioner of Trademarks to cancel U.S. Registration No. 6,330,048.

### B. Proposed Conclusions of Law related to Count Two (Request for Cancellation of Trademark Registrations to Rectify the Register [15 U.S.C. § 1119])

177.     The second count seeks to cancel U.S. Registration Nos. 6,141,994, 4,586,688 and

6,330,048 pursuant to 15 U.S.C. § 1119. This section states that "[i]n any action involving a

registered mark the court may determine the right to registration, order the cancelation of

registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register

with respect to the registrations of any party to the action."

178.     The City's first specific basis for seeking cancellation pursuant to 15 U.S.C. § 1119

is that the evidence proves that each of the three applications that culminated in U.S. Registration

Nos. 6,141,994, 4,586,688 and 6,330,048 pursuant to 15 U.S.C. § 1119 were filed by

persons/entities who were not the owners of the marks.

179.     An application filed in the name of an entity that did not own the mark as of the

filing date of the application is void." 37 C.F.R. § 2.71(d). As the TTAB has explained:

> Trademark Act Section 1 requires that an applicant 'be the owner of the mark sought to be registered.' 15 U.S.C. § 1051(a)(3)(A). *See also In re Wella A.G.*, 787 F.2d 1549, 229 USPQ 274, 277 (Fed. Cir. 1986) (C.J. Nies concurring) ('Under section 1 of the Lanham Act, only the owner of a mark is entitled to apply for registration. If one who is not the owner seeks registration, the application must be denied and any registration which issues is invalid.'). '[A]n application filed by one who is not the owner of the mark sought to be registered is a void application.' *In re Tong Yang Cement Corp.*, 19 USPQ2d 1689, 1690 (TTAB 1991) (citing *In re Techsonic Ind., Inc.*, 216 USPQ 619 (TTAB 1982) ). *See also Great Seats Ltd. v. Great Seats Inc.*, 84 USPQ2d 1235, 1239 (TTAB 2007) ('In a use-based application under Trademark Act Section 1(a), only the owner of the mark may file the application for registration of the mark; if the entity filing the application is not the owner of the mark as of the filing date, the application is void *ab initio*.'; Trademark Rule 2.71(d), 37 C.F.R. § 2.71(d) ('An application filed in the name of an entity that did not own the mark as of the filing date of the application is void.').

*Philip J. Terry v. Seymore House of Productions*, 2018 BL 276722 (T.T.A.B. 2018) (cancelling registration because the applicant was not the owner of the mark).

180.    An application to obtain a federal trademark registration must be filed by the mark's owner. 37 C.F.R. § 2.71(d). If someone other than the mark's owner is named as the owner in the application, this error—whether intentional or mistaken—cannot be fixed. *Id.* That is because the error renders the application void. *Tracie Martyn, Inc. v. Tracy Artman*, Opposition No. 91173009 (T.T.A.B. May 1, 2008) ("When an application is filed in the name of the wrong party, such that the application is void, this defect cannot be cured by amendment or assignment.").

181.    Moreover, any resulting registration from the void application is likewise void and not curable. *Terry v. Seymore House of Productions*, 2018 BL 276722 (T.T.A.B. 2018) (cancelling registration when application was not filed by owner).

182.    Youssef was not the sole owner of the Tilted Star Logo on the date of the filing of the application that resulted in the First Tilted Star Logo Registration. Whether Rich Mind Records was the owner, or Defendant was the owner, or Sanchez and Youssef were the co-owners of the Tilted Star Logo on the date Youssef filed the application, the result is the same: Youssef was not the sole owner of the mark, and the application and resulting registration are both void. *Third Educ. Grp., Inc. v. Phelps*, Case No. 07-C-1094, 2009 BL 396231 (E.D. Wis. May 15, 2009).

183.    Accordingly, the First Tilted Star Logo Registration is void. 37 C.F.R. § 2.71(d); *Terry*, 2018 BL 276722 (T.T.A.B. 2018).

184.    With regard to the Second Tilted Star Registration, Defendant has claimed that it acquired ownership of the Tilted Star Logo via Youssef's assignment to it. But Youssef was not the sole owner of the Tilted Star Logo, and his assignment of whatever ownership rights he did possess could not cure that ownership flaw. *Third Educ. Grp.*, 2009 BL 396231, at *5 (recognizing

that individual who was not the owner of the mark on the date of the trademark application had "no interest that could be assigned.").

185.    Defendant was at most the joint owner of Tilted Star Logo on the date it filed the application that resulted in in the Second Tilted Star Logo Registration.

186.    Accordingly, the Second Tilted Star Logo Registration, too, is void as a result of Defendant's lack of sole ownership of the mark when the application was filed. 37 C.F.R. § 2.71(d); *Terry*, 2018 BL 276722.

187.    According to Defendant in its sworn response to the City's Interrogatory No. 23, Sanchez was the sole owner of the Ghost Logo at all times and Defendant "managed" it. Since the application named "manager" Defendant instead of owner Sanchez, the application and resulting registration are void. 37 C.F.R. § 2.71(d); *Terry*, 2018 BL 276722.

188.    The City's second specific basis for seeking cancellation pursuant to 15 U.S.C. § 1119 is that the evidence proves that the Ghost and the Tilted Star Logo are not only confusingly similar to the City's Logo, but they were deliberately selected for the purpose of trading upon the notoriety of the City's Logo and falsely suggesting a connection with the City of Dallas, Texas.

189.    Defendant should never have been granted U.S. Registration Nos. 6,141,994, 4,586,688, and 6,330,048, as they reward a deliberate attempt by Defendant to falsely suggest an affiliation between Defendant and the City and/or to cause confusion, or to cause mistake, or to deceive and, further, to conceal these motives from the United States Patent and Trademark Office by repeatedly making false declarations under oath.

190.    The Court will direct the United States Patent and Trademark Office to rectify the register by cancelling U.S. Registration No. 6,141,994, U.S. Registration No. 4,586,688, and U.S. Registration No. 6,330,048 pursuant to 15 U.S.C. § 1119.

### C. Proposed Conclusions of Law related to Count Three (Request for Cancellation of Fraudulently Obtained Trademark Registrations [ 15 U.S.C. § 1120])

191.    "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *Torres v. Cantine Torresella S.r.l.,* 808 F.2d 46, 48 (Fed. Cir. 1986) (affirming finding that registrant obtained trademark registration via fraud).

192.    "The obligation to refrain from knowingly making false, material statements applies with equal force to renewal applications." *Id.; see also Look Cycle International v. Kunshan Qiyue Outdoor Sports Goods Co., Ltd.*, 2024 U.S.P.Q.2d 1424, 2024 BL 275141 at *11-12 (T.T.A.B. August 9, 2024) (recognizing that "[f]raud in procuring or maintaining a trademark registration occurs when an applicant for registration, or a registrant in a post-registration submission, knowingly makes a false, material representation of fact in connection with an application to register, or a post registration maintenance document, with the intent of obtaining or maintaining a registration to which it is otherwise not entitled").

193.    The Court can infer that an applicant or registrant has knowingly made false, material statements when the applicant or registrant has acted with reckless disregard for the truth. *Id.* at *12. And "'because direct evidence of deceptive intent is rarely available,' such intent can be inferred from indirect and circumstantial evidence." *In re Bose Corp.,* 580 F.3d 1240, 1245 (Fed. Cir. 2009). (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 88 U.S.P.Q.2d 1001 (Fed. Cir. 2008)).

194.    The City bears the burden of proving Defendant's fraud by clear and convincing evidence. *Look Cycle International*, 2024 BL 275141 at *12.

195.    The Court finds that the City has met its burden.

196.     Defendant and its predecessor fraudulently obtained U.S. Registration Nos. 6,141,994, 4,586,688 and 6,330,048 by making affirmative misstatements as to ownership, dates of first use in commerce, and/or use on goods not offered by Defendant (and with regard to the First Tilted Star Registration, original registrant Youssef) at the time of the applications and, in the case of U.S. Registration No. 4,586,688, at the time Defendant filed its Combined Declaration of Use and Incontestability under Sections 8 & 15.

197.     The City is harmed by Defendant's and its predecessor's fraudulently obtained U.S. Registration Nos. 6,141,994, 4,586,688 and 6,330,048 because they have been cited as barring references to the City's registration of its own logo in connection with stationery goods, apparel, and other promotional materials of the type normally distributed by municipalities.

198.     The City is harmed by Defendant's and its predecessor's fraudulently obtained U.S. Registration Nos. 6,141,994, 4,586,688 and 6,330,048 because the registrations legitimize and protect Defendant's colorable imitations of the City's Logo.

199.     The Court will direct the United States Patent and Trademark Office to cancel U.S. Registration No. 6,141,994, U.S. Registration No. 4,586,688, and U.S. Registration No. 6,330,048 pursuant to 15 U.S.C. § 1120.

200.     To the extent that any of these proposed conclusions of law include, state, or refer to findings of fact, such are also adopted and incorporated as findings of fact.

DATED: November 24, 2025

Respectfully submitted,

/s/ Megan M. O'Laughlin
Megan M. O'Laughlin (TX24013263)
E-Mail: molaughlin@hitchcockevert.com
Anne M. Turner (TX24085626)
E-Mail: aturner@hitchcockevert.com
HITCHCOCK EVERT LLP
5802 Tremont Street
Dallas, TX 75214
Telephone: (214) 953-1111
Facsimile: (214) 953-1121

COUNSEL FOR PLAINTIFF
CITY OF DALLAS

## CERTIFICATE OF SERVICE

On November 24, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

  /s/ Megan M. O'Laughlin
Megan M. O'Laughlin